# EXHIBIT 1

## DECLARATION OF PRIYA KHATKHATE

1.      I am a resident of the State of Illinois. I am over the age of 18 and have personal knowledge of all the facts stated herein, except to those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

### **Professional and Agency Background**

2.      The Illinois Department of Human Services (IDHS) provides Illinois residents with streamlined access to integrated services, especially those who are striving for economic independence, and others who face multiple challenges to self-sufficiency.

3.      I am Deputy for Programs and have held this position since March 2025.  As part of my work at IDHS, I am familiar with the Illinois programs that are funded by the Child Care and Development Fund (CCDF); Temporary Assistance for Needy families (TANF); and the Social Services Block Grant (SSBG) (together, the "ACF Funds").

### **Background on CCDF, TANF, and SSBG**

4.      The ACF Funds help Illinois provide food, shelter, childcare and other critical services to hundreds of thousands of vulnerable Illinois residents—including children, the elderly, domestic violence victims, and lower-income families.

   a.     **CCDF**

5.      The CCDF program provides over $12 billion nationwide annually in federal funding to support State, territorial, and tribal programs that provide low-income families with funding for child care, so that those families can work or go to school. CCDF funds also support teacher training and development, as well as programming and consumer education that educates

1

parents about child care options. CCDF is comprised of two separate funding streams: Child Care and Development Block Grant (CCDBG) and Child Care Entitlement to States (CCES).

6. For FY 2025, Illinois was allocated approximately $400 million in CCDF funding (comprising CCDBG and CCES funds combined).

7. Illinois relies on CCDF funding to fund the Illinois Child Care Assistance Program (CCAP), which provides financial assistance to low-income families to help cover child care costs, enabling parents to work or attend school.

8. Illinois draws down CCDF funding on a monthly basis. Soon thereafter, money drawn for CCAP is sent to child care providers for reimbursement for services provided to Illinois families.

9. Illinois initiated a $16 million drawdown on January 2, 2026. Illinois has not yet received those funds.

**b.    TANF**

10. TANF is a block grant program that provides over $16.5 billion nationwide annually in federal funding to States, territories, and tribal governments, who in turn provide cash assistance and non-cash benefits to low-income families with children. In Illinois, the TANF program provides temporary financial assistance for pregnant women and families with one or more dependent children. TANF provides financial assistance to help pay for food, shelter, utilities, and expenses other than medical. It is one of the largest sources of cash assistance to low-income American families. TANF was created through the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA, P.L. 104-193).

11. To receive TANF funds, Illinois must submit to ACF a plan that outlines how it will conduct the TANF program in compliance with federal work requirements, privacy

protections, and other provisions. 42 U.S.C. § 602(a). Illinois submitted its last TANF plan on December 30, 2025.

12. TANF funds are allocated according to a mandatory formula based on the share each State had of TANF funding in 2002. Illinois currently receives approximately $583 million annually in TANF funds and spends approximately $500 million on CCAP. Illinois uses state dollars in addition to the federal grant to fund the TANF cash assistance benefits to eligible Illinoisians.

13. In Illinois, TANF is administered by the Family & Community Services Division of IDHS. Illinois families work with a local Family Community Resource Center, operated and staffed by IDHS, to apply for TANF cash assistance.

14. In 2025, more than 70,000 individuals (in more than 26,000 families) received benefits through the TANF cash assistance program each month to help pay for, food, shelter, utilities, and expenses other than medical.

15. TANF funds are awarded quarterly.  Illinois received its Fiscal Year 2026, First Quarter award on 12/16/2025. Illinois expected to receive its Second Quarter award in mid-January.

16. Illinois draws down TANF funding monthly.

17. Illinois initiated a $25 million drawdown on January 5, 2026. It arrived on January 7. Illinois has not yet initiated another drawdown but expects to initiate another drawdown for the remainder of the first quarter award on January 14.

  c. SSBG

18. The SSBG program provides $1.7 billion nationwide annually in federal funding to States, providing them with "flexibility" and funding to support social services in one of five

categories: (1) "achieving or maintaining economic self-support"; (2) "achieving or maintaining self-support"; (3) addressing neglect, abuse, or exploitation of children and vulnerable adults; (4) preventing institutional care and supporting community-based care; and (5) where institutional care is needed, supporting application and admission and providing services to institutionalized individuals. 42 U.S.C. § 1397.

19. Congress has provided that SSBG funds must be allocated based on each State's percentage of the national population, based on census data. 42 U.S.C. § 1397b(b). Unlike CCDF and TANF, States are not required to submit a State plan to be eligible for SSBG funding. Instead, Illinois must submit annual reports describing how it used the funds in the year prior. 42 U.S.C. § 1397e; see also 45 C.F.R. § 96.74. Illinois submitted its last annual report on December 31, 2025.

20. For FY 2025, Illinois was allotted approximately $62 million in SSBG funds.

21. SSBG funds support several social service programs, including programs that support maternal and family health, nutrition and food assistance, family support and prevention, domestic violence prevention, behavioral health and disability services, employment and self-sufficiency, youth services, corrections and reentry, and aging services.

22. In FY2025, approximately 216,000 Illinois recipients—including approximately 21,000 children—received SSBG-funded services.

23. Illinois draws down SSBG funding monthly.

24. Illinois initiated a drawdown on January 6, 2026. It arrived on January 7. Illinois has not yet initiated another drawdown but expected to initiate another drawdown on January 14.

**The Funding Freeze Letters**

25. On January 6, 2026, ACF sent correspondence to Illinois relating to CCDF, TANF, and SSBG (collectively, the "Freeze Letters"). A true and correct copy of each of the Freeze Letters are attached hereto as Exhibits A through C.

    a. **The CCDF Letter**

26. The CCDF Letter states that "ACF will be conducting a thorough review of the State's use of funding for compliance and alignment with statutory requirements. ACF is placing the State on temporarily restricted drawdown of CCDF funds until additional fiscal accountability requirements are implemented and necessary information is provided for ACF to complete its review."

27. The CCDF Letter directs Illinois to implement "fiscal accountability requirements" to "improve compliance with relevant statutes and program regulations," and specifies that such requirements must "include submission of verified attendance documentation for subsidized child care services to the State prior to further draw down of federal CCDF funding." That documentation must establish the days or hours of care provided; must contain "contemporaneous payment information"; and must be "sufficient for ACF to determine that the drawdown amount is reasonable, allowable, and allocable."

28. The CCDF Letter further states that "CCDF funds shall be temporarily placed on restricted drawdown until these additional fiscal accountability requirements are implemented" and that Illinois "will be placed on this temporary restricted drawdown for all CCDF funds provided by ACF until further notice, pending successful and satisfactory review of the requested information."

b.  **The TANF Letter**

29. The TANF Letter states that "[e]ffective today," ACF is reviewing Illinois' "TANF State Plan for completeness and for program compliance with applicable laws. As a result, ACF is placing the state TANF program on a restricted drawdown in accordance with 2 C.F.R. § 200.339."

30. The TANF Letter makes three specific demands.

31. ***First***, the TANF Letter requires Illinois to "provide the complete universe of TANF administrative data that exist and are in the state's possession for all recipients for all available years, and at least 2022 to 2025. This includes recipient name, address, Social Security Number (if collected), date of birth, A-number (as applicable), and any state identification numbers used for program administration."

32. ***Second***, the TANF Letter demands "documentation demonstrating that the State of Illinois has verified the eligibility of all TANF applicants and recipients in accordance with the requirements of the Personal Responsibility and Work Opportunity Reconciliation Act, 8 U.S.C. § 1611, which limits TANF eligibility to United States citizens and qualified aliens. This documentation should include the policies, procedures, system controls, and verification records used by Illinois to confirm citizenship or qualified alien status during the application and recertification processes."

33. ***Third***, the TANF Letter requests "a comprehensive list of all organizations, subcontractors, service providers, local agencies, community groups, and any other entities that received TANF funds from the State of Illinois, directly or indirectly, during the period from 2019 through 2025. For each organization, to the extent the information exists and is in the state's possession, I request the amount of TANF funding provided, the purpose for which the funds were

6

awarded, and documentation describing the State's oversight mechanisms, monitoring activities, and verification processes used to ensure proper use of TANF dollars."

34. The TANF Letter sets a deadline of January 20, 2026 for Illinois to provide the required information.

35. The Letter states that Illinois will be placed "on a temporary restricted drawdown for all TANF funds provided by ACF until further notice, pending review of the state's current TANF plan for completeness and ACF confirming compliance with applicable laws."

    c. **The SSBG Letter**

36. The SSBG Letter states that "ACF will be conducting a thorough review of the State's use of funding. As a result, ACF is notifying your office that the State is not authorized to further draw down" SSBG funds "without complying with the terms of a temporary restricted draw down until this review is complete."

37. The SSBG Letter make three specific demands of Illinois that are nearly identical to the requests made in the TANF Letter described above. The SSBG Letter also sets a deadline of January 20, 2026 for Illinois to provide the information requested.

<u>**Harms associated with Funding Freeze**</u>

38. The freeze on ACF funds created uncertainty in IDHS's budgeting process, as it must prepare to cover expenses with state revenue in the absence of federal funding. Furthermore, to account for the possibility of budget shortfall, IDHS must immediately use substantial resources to consider how to reduce program liabilities to account for the decrease in program funds that results from the freeze in funds. IDHS could be required to change the eligibility to participate in early childhood programming (causing fewer children to receive care), increase the co-pay a

7

family must pay to receive child care, create a wait list for program participation, or cut the amounts that the agency pays out to child care providers.

39. A disruption in the provision of child care benefits to Illinois parents would have catastrophic consequences for the state. ACF funds allow low-income families to secure child care while they work or attend school. In Illinois, there are currently over 150,000 children who receive ACF-funded child care. While these children are receiving quality care, their parents can participate in the work force, which supports the regional economy and increases families' household income. ACF funds also are used to support access to after-school and summer programming, which supports children's growth and allows parents to work.

40. If such care were disrupted and parents were forced to stay home to care for children, household budgets would suffer, employers would lose productive employees, and demands for unemployment benefits would increase. Even children who do not receive ACF-funded care may lose care if facilities are forced to reduce staff or shut down due to a lack of funding. Children would lose access to quality childcare and other programming, which could result in placement in unsafe situations and the long-term harm that comes from lack of access to quality early-childhood education often provided in daycare settings. Illinois would have to expend additional resources to identify, review, and license new child care providers to replace those that shut down due to the lack of federal funding. The net result of these employment and productivity losses would be slowed economic growth in Illinois and a strained Illinois budget.

41. Furthermore, if parents are required to leave the workforce due to an inability to obtain child care, those parents may be unable to meet work requirements necessary to participate in federal support programs such as SNAP or Medicaid. The loss in federal benefits for food and health care for individuals would strain the Illinois budget.

42. Furthermore, removing access to TANF and SSBG funds in Illinois would sow chaos for families in Illinois, and would harm Illinois as the state would be required to find funds for services.

43. IDHS also faces the risk of damage to its reputation from the impending cut back and/or cessation of services as the public face of these services. The ACF Funding Freeze generates the public perception that state agencies have failed or engaged in wrongdoing, thereby damaging their reputation and damaging the trust that Illinois agencies have spent years building up.

**The Feasibility of the Data and Documentation Demands**

44. I am informed and believe that the scope of the data and documentation demands is not how any oversight body has ever conducted quality control, audits, or any other program integrity purpose relating to CCDF, TANF, or SSBG.

45. Furthermore, attempting to comply with the onerous data and documentation demands would require the re-deployment of significant personnel and resources diverted from administering Illinois critical programs.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on January 8, 2026, at Chicago, Illinois.

Priya Khatkhate
Digitally signed by Priya Khatkhate
Date: 2026.01.08 16:48:58 -06'00'

Priya Khatkhate

10

# EXHIBIT A



January 6, 2026

Governor JB Pritzker
Office of the Governor
401 S. Spring St.
Springfield, IL 62704

Dear Governor Pritzker,

The Trump Administration has made clear its commitment to rooting out fraud, protecting taxpayer dollars, and ensuring program integrity across all federal benefit programs. The Administration for Children and Families (ACF) is concerned by the potential for extensive and systemic fraud in Illinois Child Care and Development Fund (CCDF) services that rely on federal funding. These concerns have been heightened by recent federal prosecutions and additional allegations that substantial portions of federal resources were fraudulently diverted away from the American families they were intended to assist. Additionally, ACF has reason to believe that the State of Illinois is illicitly providing illegal aliens with CCDF benefits intended for American citizens and lawful permanent residents.

ACF will be conducting a thorough review of the State's use of funding for compliance and alignment with statutory requirements.  ACF is placing the State on temporarily restricted drawdown of CCDF funds until additional fiscal accountability requirements are implemented and necessary information is provided for ACF to complete its review.

Specifically, to facilitate a timely review, ACF requests that the State of Illinois immediately begin implementing additional fiscal accountability requirements to improve compliance with relevant statutes and program regulations.  For the CCDF program, the State must always have sufficient fiscal controls and accounting procedures to establish that funds have not been used in violation of the Child Care and Development Block Grant (CCDBG) Act of 1990, as amended (42 U.S.C. §§ 9857 *et seq.*), and the CCDF regulations at 45 C.F.R. Part 98.  45 C.F.R. § 98.67(c)(2).  Enhancements of fiscal accountability requirements are clearly necessary to mitigate fraudulent activity.  These additional fiscal accountability requirements now requested by ACF must include submission of verified attendance documentation for subsidized child care services to the State prior to further draw down of federal CCDF funding through the Payment Management System (PMS).  This verified attendance documentation must, at least, establish: (1) actual units of service delivered (e.g., days, hours, or other units consistent with the Lead Agency's approved payment practices); and (2) contemporaneous payment information maintained by the provider or State.  The State must ensure this verified attendance documentation is sufficient for ACF to determine that the drawdown amount is reasonable, allowable, and allocable.

Until ACF determines that the State has established and implemented these and other internal controls sufficient to ensure that all future drawdown requests are supported by reliable, non-identifiable attendance documentation, the State must report this verified attendance information to ACF in an aggregated, non-identifiable format prior to further drawing down CCDF funding. This information will facilitate ACF's review of the State's compliance with the CCDF program, grant terms, and federal law.

To maintain strong protections for every child involved, the State must aggregate or otherwise de-identify such verifiable attendance documentation so that no personally identifiable information (PII) or identifiable child-level data is disclosed, consistent with the confidentiality protections required under the CCDBG Act. Such information and data include the names of children or parents, Social Security numbers, dates of birth, addresses, and any other information that directly identifies an individual child or family.

CCDF funds shall be temporarily placed on restricted drawdown until these additional fiscal accountability requirements are implemented. ACF must be able to determine that the attendance documentation submitted adequately supports the amount requested, demonstrates that services were delivered to eligible children consistent with the CCDBG Act, and meets all applicable federal fiscal control and accounting requirements.

My staff will coordinate directly with the appropriate state officials to establish a secure reporting method and confirm technical specifications.

The State of Illinois will be placed on this temporary restricted drawdown for all CCDF funds provided by ACF until further notice, pending successful and satisfactory review of the requested information. These additional fiscal accountability requirements may help avoid delayed drawdowns, disallowances, or other corrective actions necessary to further mitigate fraud in the CCDF program.

Thank you for your attention to this critical matter. Please contact my office with any questions or to arrange next steps.

Sincerely,

Alex J. Adams
Assistant Secretary
Administration for Children and Families
U.S. Department of Health and Human Services

CC: Grace B. Hou, Secretary, Illinois Department of Human Services
Bethany Patten, Associate Director, Office of Early Childhood.

# EXHIBIT B



January 6, 2026

Governor JB Pritzker
Office of the Governor
401 S. Spring St.
Springfield, IL 62704

Dear Governor Pritzker,

The Trump Administration has made clear its commitment to rooting out fraud, protecting taxpayer dollars, and ensuring program integrity across all federal benefit programs. The Administration for Children and Families (ACF) is concerned by the potential for extensive and systemic fraud in Temporary Assistance for Needy Families (TANF) services that rely on federal funding. These concerns have been heightened by recent federal prosecutions and additional allegations that substantial portions of federal resources were fraudulently diverted away from the American families they were intended to assist. Additionally, ACF has reason to believe that the State of Illinois is illicitly providing illegal aliens with TANF benefits intended for American citizens and lawful permanent residents.

Effective today, ACF is reviewing Illinois's TANF State Plan for completeness and for program compliance with applicable laws. As a result,  ACF is placing the state TANF program on a restricted drawdown in accordance with 2 C.F.R. § 200.339.

To aid ACF in a timely review, I am requesting that the State of Illinois provide the complete universe of TANF administrative data that exist and are in the state's possession for all recipients for all available years, and at least 2022 to 2025. This includes recipient name, address, Social Security Number (if collected), date of birth, A-number (as applicable), and any state identification numbers used for program administration. This information, requested pursuant to 45 C.F.R. § 98.90, is necessary for ACF to conduct a thorough review of program operations and to assess the extent of any irregularities that may have occurred.

ACF also requests documentation demonstrating that the State of Illinois has verified the eligibility of all TANF applicants and recipients in accordance with the requirements of the Personal Responsibility and Work Opportunity Reconciliation Act, 8 U.S.C. § 1611, which limits TANF eligibility to United States citizens and qualified aliens. This documentation should include the policies, procedures, system controls, and verification records used by Illinois to confirm citizenship or qualified alien status during the application and recertification processes.

In addition to individual-level recipient data, ACF is requesting a comprehensive list of all organizations, subcontractors, service providers, local agencies, community groups, and any other entities that received TANF funds from the State of Illinois, directly or indirectly, during the period from 2019 through 2025. For each organization, to the extent the information exists and is in the state's possession, I request the amount of TANF funding provided, the purpose for which the funds were awarded, and documentation describing the State's oversight mechanisms, monitoring activities, and verification processes used to ensure proper use of TANF dollars.

I request that this information be transmitted to ACF by January 20, 2026. My staff will coordinate directly with the appropriate state officials to establish a secure transfer method and confirm technical specifications.

The State of Illinois is placed on a temporary restricted drawdown for all TANF funds provided by ACF until further notice, pending review of the state's current TANF plan for completeness and ACF confirming compliance with applicable laws.

Thank you for your attention to this critical matter. Please contact my office with any questions or to arrange next steps.

Sincerely,

*Alex J. Adams*

Alex J. Adams
Assistant Secretary
Administration for Children and Families
U.S. Department of Health and Human Services


CC: Grace B. Hou, Secretary, Illinois Department of Human Services
Elizabeth M. Whitehorn, Director, Illinois Department of Health and Families Services

# EXHIBIT C



January 6, 2026

Governor JB Pritzker
Office of the Governor
401 S. Spring St.
Springfield, IL 62704

Dear Governor Pritzker,

The Trump Administration has made clear its commitment to rooting out fraud, protecting taxpayer dollars, and ensuring program integrity across all federal benefit programs. The Administration for Children and Families (ACF) is concerned by the potential for extensive and systemic fraud in Social Services Block Grant (SSBG) programs that rely on federal funding. These concerns have been heightened by recent federal prosecutions and additional allegations that substantial portions of federal resources were fraudulently diverted away from the American families they were intended to assist. Additionally, ACF has reason to believe that the State of Illinois is illicitly providing illegal aliens with SSBG benefits intended for American citizens and lawful permanent residents.

ACF will be conducting a thorough review of the State's use of funding. As a result, ACF is notifying your office that the State is not authorized to further draw down SSBG without complying with the terms of a temporary restricted draw down until this review is complete.

To aid ACF in a timely review, I am requesting that the State of Illinois provide the complete universe of SSBG administrative data that exist and are in the state's possession for all grantees, their recipients and subrecipients, for all available years and at least 2022 through 2025. This includes recipient name, address, Social Security Number (if collected), date of birth, A-number (as applicable), and any state identification numbers used for program administration. This information is necessary for ACF to conduct a thorough review of program operations and to assess the extent of any irregularities that may have occurred.

ACF also requests documentation demonstrating that the State of Illinois has verified the eligibility, where applicable, of all recipients and subrecipients of SSBG-funded entities in accordance with the requirements of the Personal Responsibility and Work Opportunity Reconciliation Act, 8 U.S.C. §1611, which limits the eligibility of federal public benefits to United States citizens and qualified aliens. This documentation should include the policies, procedures, system controls, and verification records used by Minnesota to confirm citizenship or qualified alien status during the application and recertification processes.

ACF is requesting a comprehensive list of all organizations, subcontractors, service providers, local agencies, community groups, and any other entities that received SSBG funds from the State of Illinois, directly or indirectly, during the period from 2019 through 2025. For each organization, to the extent the information exists and is in the state's possession, I request the amount of SSBG funding provided, the purpose for which the funds were awarded, and documentation describing the state's oversight mechanisms, monitoring activities, and verification processes used to ensure proper use of SSBG dollars.

I request that this information be transmitted to ACF by January 20, 2026. My staff will coordinate directly with the appropriate state officials to establish a secure transfer method and confirm technical specifications.

The State of Illinois will be placed on a temporary restricted drawdown for all SSBG funds provided by ACF until further notice, pending successful and satisfactory review of the requested information.

Thank you for your attention to this critical matter. Please contact my office with any questions or to arrange next steps.

Sincerely,

*[signature: Alex J. Adams]*

Alex J. Adams
Assistant Secretary
Administration for Children and Families
U.S. Department of Health and Human Services


CC: Grace B. Hou, Secretary, Illinois Department of Human Services