# EXHIBIT 3

# DECLARATION OF IAN MCMAHON, DIRECTOR FOR THE DIVISION OF ECONOMIC WORKFORCE SUPPORT

# COLORADO DEPARTMENT OF HUMAN SERVICES

I, Ian McMahon, pursuant to 28 U.S.C. § 1746 declare as follows:

1. I am a resident of the State of Colorado. I am over the age of 18, competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

**Personal Background and Qualifications**

2. I am currently the Director for the Division of Economic and Workforce Support at the Colorado Department of Human Services (CDHS)). As Division Director, I oversee Colorado's implementation of the Temporary Assistance for Needy Families (TANF) program, known as Colorado Works. I have more than a decade of experience in human services, including performing eligibility and application processing as a front line worker for Colorado Works. I know first hand the regulatory requirements, administrative challenges, and complexities of the program. I also know that the children and families we serve come to us during a moment of extreme crisis: a parent experiencing the sudden loss of a job with no money to pay for basic needs, families with young children facing eviction, survivors of domestic violence in need of immediate safety for their children. These are just some of the challenges they face. The children and families we serve are the most

vulnerable and most needy in our state, and our program is their last hope for survival. This is their reality.

3. I submit this declaration in connection with Plaintiff States' Motion for a Temporary Restraining Order and Complaint for Injunctive and Declaratory Relief pertaining to the January 6, 2026 directive letter from the United States Department of Health and Human Services (HHS) Administration for Children and Families (ACF) restricting the State of Colorado's access to Temporary Assistance for Needy Families (TANF). I have personal knowledge of the matters set forth below, or with respect to matters for which I do not have personal knowledge, I have reviewed information gathered from CDHS records by others within the organization.

**TANF in Colorado**

4. In Colorado, TANF is utilized through the Colorado Works Program. The Colorado Works Program is an employment program that supports families with dependent children, in extreme poverty, on their path to self-sufficiency. Its purposes include assisting participants towards self-sufficiency, encouraging economic mobility and family safety, providing assistance to families in need to ensure proper care of children, and developing strategies to promote career goals. *See* § 26-2-705, C.R.S. (2025). Colorado Works is administered by counties and supervised by the State. Under this model, CDHS establishes guidance, promulgates program rules, and provides technical and training support to county departments of human services.

5. In 2025, Colorado Works provided support to over 77,000 individuals and more than 50,000 children. Over 27,000 Colorado households, including 50,000 children, rely on the basic cash assistance component of Colorado Works.

6. Beyond Colorado Works, TANF in Colorado supports grandparents caring for grandchildren involved in child welfare, emergency housing assistance for mothers with children fleeing from extreme domestic violence, community resource centers providing emergency food to families, and case management to connect a parent to critical supports like behavioral health services so they can maintain employment. TANF in Colorado also supports transportation for youth in foster care and innovative workforce programming for non-custodial parents to gain and retain employment so they can continue to meet their child support obligations and improve the economic stability of their own children.

**Fraud Prevention and Detection in TANF in Colorado**

7. To ensure TANF funds are issued only to TANF-eligible recipients, Colorado has implemented a robust eligibility determination process for basic cash assistance clients, and clearly defined program requirements for other services and supports offered with TANF funding. Additionally, the Division of Economic and Workforce Support conducts reviews of county departments to ensure program compliance, in accordance with state and federal rules and regulations.

8. Applicants and recipients of basic cash assistance grants must prove that they are TANF eligible at each application and redetermination process, and if changes occur in between that would result in ineligibility - that is required to be

reported timely by the recipient as well. The eligibility determination process includes an interview with the client, and several documents are then requested from the client to prove their eligibility, including verification of citizenship and lawful presence status, identity verification, verification of all recipient's social security numbers, and income verification.

9. Additionally, Colorado utilizes approved federal and state databases to validate and monitor elements of program eligibility for each recipient of basic cash assistance. The Income Eligibility Verification Service (IEVS) is reviewed to verify potential earnings through SSA benefits and unemployment benefits. In addition to being reviewed at application and redetermination, action on IEVS discrepancies must be taken by the county department within 20 calendar days of receipt. Public Assistance Reporting Information System (PARIS) is reviewed to identify if benefits are being received in another state. Colorado Department of Labor and Employment (CDLE) database is reviewed to identify income. Systematic Alien Verification for Entitlements (SAVE) is reviewed to verify qualified alien and sponsorship status. Lastly, the Colorado Department of Motor Vehicles (DMV) interface is utilized to validate identity requirements. If any discrepancies are found through any of the databases, the discrepancy must be researched and validated, and if determined to be valid, the corrections must be made to the case information.

10. The county department is required to establish claims to recover any benefits issued in error to the liable individual when it is determined that they were ineligible and that fraud has occurred. When the county department determines it

has paid a client as a result of fraud, the facts used in the determination are reviewed with the department's legal counsel within the attorney general's office and/or a representative from the district attorney's office. If suspected fraud is substantiated by the available evidence, the case is referred to the district attorney. All referrals to the district attorney must be made in writing and include the amount of assistance fraudulently received by the client.

11. Individuals who have committed fraud as determined by a court or determination of an International Program Violation (IPV) by administrative hearing shall result in the disqualified caretaker being removed from the grant for a twelve (12) month period for the first offense, twenty-four (24) months for the second offense, and lifetime for the third offense. An IPV from another state shall be used to determine eligibility for an individual. The level of the IPV established by the Administrative Law Judge from the other state shall be used to determine the level of the IPV for Colorado Works.

12. <u>Verification for non-BCA programs and services:</u> Colorado Works Rule (9 CCR 2503-6, 3.600.31) outlines requirements and verification processes that are required for contracts executed by counties when they choose to contract out the provision of goods or services for TANF recipients.

13. <u>Additional oversight mechanisms:</u> Additionally, the Division of Quality Assurance (QA) randomly samples a sufficient number of Colorado Works work-eligible cases statewide, on a monthly basis, to meet a statistically valid 95% confidence interval (number of cases will vary based upon statewide caseload).

5

These monthly reviews include a detailed analysis of both eligibility and workforce components, and ensure that any work activities entered for the review month have corresponding hours and documentation to support those hours, per the Work Verification Plan (WVP). If any errors are identified, the county must correct those errors immediately and recover any overpayments identified.

14. Program managers conduct management evaluations with a minimum of 10 counties per year, and evaluate each county no less than every 5 years. These include full-scale reviews of business processes, performance data, case review trends or concerns, fiscal oversight and budget, contracts, and security access. These reviews are intended to provide targeted technical assistance and may include direct observation of county practice (including the collection and input of work activity hours and verification), and ensure the county department corrects any identified findings to ensure TANF funds are utilized only for TANF-eligible recipients.

**ACF Authorization of TANF Base Block Grant Draw Downs**

15. The typical TANF annual base block grant for Colorado is $135.6 million. Colorado is authorized to draw down TANF base block grant funds upon quarterly authorization from ACF. Typically, authorization is done via quarterly letters of credit. In December 2025, ACF, via letter of credit, authorized a draw down of $33.9 million out of TANF base block grant. Additionally, on January 6, 2026, CDHS received $6.8 million in contingency funding, which are awarded on a first-come first-serve basis to eligible states. CDHS received previous authorization

via letter of credit from ACF in fiscal year 2025 to draw down funds, of which $52.8 million has not yet been drawn down. Prior to receiving the January 6, 2026 letter, Colorado had authority from ACF to draw down $92.5 million in TANF block grant funds.

16. Drawdown authorization occurs on a quarterly basis, however, actual draw downs occur upon expenditure and can be as frequently as daily expenditure draw downs. Draw down expenditures are completed upon CDHS receiving pending expenditures and are given to CDHS in the form of reimbursement. Pending expenditures can be received at any point, which is why draw down expenditure reimbursements can occur as frequently as daily. Expenditure draw downs reimbursements are completed through the Payment Management System federal portal (PMS). Expenditure draw downs are submitted when program reimbursement is appropriate. Through PMS, CDHS chooses the timeframe to receive the expenditure reimbursement funds. CDHS typically requests draw down expenditure reimbursements are received in one to three business days to ensure timely payments and avoid interest charges. After CDHS receives the expenditure draw down reimbursement funds, the quarterly letter of credit is reduced by the amount of funds CDHS is reimbursed by. On average, CDHS monthly draws down approximately $12.4 million in TANF base block grants for pending expenditure reimbursements.

**Communications from the Federal Government**

17. On or about January 6, 2026, ACF's Assistant Secretary, Alex Adams, sent a letter communication to Colorado Governor Jared Polis stating ACF was placing Colorado's TANF program on a "restricted drawdown" effective immediately due to unidentified allegations that Colorado supplies illegal aliens with TANF benefits. The letter indicates the "restricted drawdown" for all TANF funds is effective until further notice "pending review of the state's current TANF plan for completeness and ACF confirming compliance with applicable laws." The letter is attached as Exhibit 1.

18. Through this letter, ACF requested Colorado provide "the complete universe of TANF administrative data that exist[s] and are in the state's possession for all recipients for all available years, and at least 2022 to 2025" including personal identifiable information for recipients. ACF also requested documentation demonstrating Colorado verified TANF eligibility for applicants and recipients and a list of all organizations, subcontractors, providers, groups, and agencies that received TANF funds from 2019 to 2025. In addition to a list, ACF requests amounts, purposes for funding, oversight documentation, and verification procedures for use of TANF dollars by organizations, providers, and agencies. *See* Exhibit 1.

19. The January 6, 2026 letter requests information and documentation be provided by January 20, 2026. *See* Exhibit 1. Attempting to comply with the onerous data and document requests will require significant personnel and resources. With its model of administration by counties and supervision of the

State, document collection will heavily involve counties. It will also involve coordination with third parties, some of which are small non-profits with limited workforces. The requested information is voluminous and will require significant time and coordination with organizations, agencies, and entities.

20. At the time of this declaration, no further guidance or clarification has been provided by ACF, compounding the uncertainty facing Colorado. The January 6, 2026 letter is the first communication CDHS received from ACF regarding the allegations of "providing illegal aliens with TANF benefits" and restricted draw downs *See* Exhibit 1. CDHS did not receive prior communications expressing a possibility for a restricted draw down nor did CDHS receive prior communications requesting action or cessation of action prior to placement of a restricted draw down.

**Harm to Colorado**

21. As of January 7, 2026, Colorado is prohibited from and blocked from drawing down the previously authorized $92.5 million in TANF base block grants. As of January 7, 2026, Colorado is blocked from drawing down the $33.9 million authorized in December 2025, the $6.8 million in contingency fees awarded on January 6, 2026, and the $52.8 million authorized in fiscal year 2025. As of January 7, 2026, CDHS can submit expenditure draw downs through PMS, but the subsequent cash deposits to the State are not being processed and therefore no funds are received. As such, CDHS cannot receive any reimbursement for program expenditures that have occurred or will occur.

9

22. TANF programs operate on federal funds utilizing a reimbursement process through the PMS. As such, programs do not have State General Fund appropriations that can be utilized to offset or float program expenditures over a sustained period.

23. Without funding, the following programs are at significant risk of abruptly ceasing, causing harms including:

   a. Cessation of monthly financial support for over 14,000 families, which live below 30% of the federal poverty level. February 2026 basic cash assistance payments will not be issued without funding.

   b. Cessation of emergency housing supports for children in families experiencing domestic and sexual violence.

   c. Cessation of financial support to relatives caring for children involved in child welfare and removed from their home.

   d. Cessation of case management and supports for children in families with parents facing extreme barriers to employment, such as homelessness, behavioral health needs, lack of child care access and no transportation to work.

   e. Cessation of services for emergency food, clothing and shelter for children and families living in extreme poverty.

   f. Disruption of child support enforcement services for individuals receiving TANF.

24. Breaks in case management support could negatively impact individuals' ability to meet their employment and self-sufficiency goals, which could keep individuals reliant on public assistance or other social services longer.

25. TANF program services and supports have already been provided to communities across Colorado, but have not yet been reimbursed. Many community partners rely on this funding to be reimbursed to provide services to their community. Without funding, these community partners cannot be reimbursed.

26. The TANF Block Grant supports County Department of Human Services staffing costs. Without funding, there is risk of loss of county staff, including staff that support eligibility, fraud prevention and detection, administrative positions, accountants, case managers, legal, case management, and call center employees. Limited work forces and salary funding concerns could harm the ability to process new applications, pursue ongoing fraud investigations, conduct TANF appeal hearings, and more.

27. The TANF Block Grant also supports State level employees supporting TANF programs. Inability to access funds risks state level employment and positions tasked with overseeing quality assurance, program integrity, child support enforcement, training, fiscal, system, policy, and accounting staff.

28. Without funding, TANF program administrative operations will be at significant risk for harm and will experience burdens, including, but not limited to:

   a. Increase in telephone calls and communications with the public, counties, and third parties explaining the likely cessation of benefits.

11

      i. If funding was not available to pay for staff salaries, client inquiries regarding the loss of TANF benefits could be unanswered.

  b. Burden of assessment of alternative methods to provide services to families in Colorado.

  c. Burden of discontinuing services for the current recipients, and then restarting services and processing all new applications and required verifications.

  d. Payment for functional updates to other public assistance programs and potential for increase in payments to other public assistance programs and confusion with other public assistance programs.

29. At a minimum, the draw down restriction creates operational and budgetary uncertainty, making administration and basic planning for the future nearly impossible.

30. As of January 8, 2026, CDHS began receiving several questions from its partners and the community related to the ACF January 6, 2026 letter, its impact, and whether benefits will cease.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

    Executed on January 8, 2026, in Denver, Colorado.

/s/ Ian McMahon

Ian McMahon
Director, Division of Economic Workforce Support
Colorado Department of Human Services

13



Declaration of I. McMahon, Exhibit 1

January 6, 2026

Governor Jared Polis
Office of the Governor
State Capitol Building
200 E. Colfax Ave., Rm. 136
Denver, CO 80203

Dear Governor Polis,

The Trump Administration has made clear its commitment to rooting out fraud, protecting taxpayer dollars, and ensuring program integrity across all federal benefit programs. The Administration for Children and Families (ACF) is concerned by the potential for extensive and systemic fraud in Temporary Assistance for Needy Families (TANF) services that rely on federal funding. These concerns have been heightened by recent federal prosecutions and additional allegations that substantial portions of federal resources were fraudulently diverted away from the American families they were intended to assist. Additionally, ACF has reason to believe that the State of Colorado is illicitly providing illegal aliens with TANF benefits intended for American citizens and lawful permanent residents.

Effective today, ACF is reviewing Colorado's TANF State Plan for completeness and for program compliance with applicable laws. As a result, ACF is placing the state TANF program on a restricted drawdown in accordance with 2 C.F.R. § 200.339.

To aid ACF in a timely review, I am requesting that the State of Colorado provide the complete universe of TANF administrative data that exist and are in the state's possession for all recipients for all available years, and at least 2022 to 2025. This includes recipient name, address, Social Security Number (if collected), date of birth, A-number (as applicable), and any state identification numbers used for program administration. This information, requested pursuant to 45 C.F.R. § 98.90, is necessary for ACF to conduct a thorough review of program operations and to assess the extent of any irregularities that may have occurred.

ACF also requests documentation demonstrating that the State of Colorado has verified the eligibility of all TANF applicants and recipients in accordance with the requirements of the Personal Responsibility and Work Opportunity Reconciliation Act, 8 U.S.C. § 1611, which limits TANF eligibility to United States citizens and qualified aliens. This documentation should include the policies, procedures, system controls, and verification records used by Colorado to confirm citizenship or qualified alien status during the application and recertification processes.

In addition to individual-level recipient data, ACF is requesting a comprehensive list of all organizations, subcontractors, service providers, local agencies, community groups, and any other entities that received TANF funds from the State of Colorado, directly or indirectly, during the period from 2019 through 2025. For each organization, to the extent the information exists and is in the state's possession, I request the amount of TANF funding provided, the purpose for which the funds were awarded, and documentation describing the State's oversight mechanisms, monitoring activities, and verification processes used to ensure proper use of TANF dollars.

I request that this information be transmitted to ACF by January 20, 2026. My staff will coordinate directly with the appropriate state officials to establish a secure transfer method and confirm technical specifications.

The State of Colorado is placed on a temporary restricted drawdown for all TANF funds provided by ACF until further notice, pending review of the state's current TANF plan for completeness and ACF confirming compliance with applicable laws.

Thank you for your attention to this critical matter. Please contact my office with any questions or to arrange next steps.

Sincerely,

Alex J. Adams
Assistant Secretary
Administration for Children and Families
U.S. Department of Health and Human Services


CC: Michelle Barnes, Executive Director, Colorado Department of Human Services
Ian McMahon, Director, Division of Economic and Workforce Support