# EXHIBIT 6

## DECLARATION OF KIRA YOUNGER

1.     I am a resident of the State of California. I am over the age of 18 and have personal knowledge of all the facts stated herein, except to those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

## PROFESSIONAL AND AGENCY BACKGROUND

2.     The California Department of Social Services (CDSS) is responsible for the administration of public social services, except health care services and medical assistance, throughout California.

3.     I am currently employed by CDSS as Chief Financial Officer and Deputy Director of the Finance and Accounting Division (CFO) and have held this position since June 2025. The Finance and Accounting Division provides fiscal support and oversight through budget development, financial management, accounting, and fund management for CDSS.

4.     As CFO, I oversee all fiscal operations of CDSS and supervise staff performing administrative and operational functions including budgeting and forecasting, allocating funding to local governments and tribes, budgeting and administering state operations, and accounting for accounts payable. This includes fiscal activities for California programs that are funded by the Child Care and Development Fund (CCDF); Temporary Assistance for Needy Families (TANF); and the Social Services Block Grant (SSBG) (together, the "Administration of Children and Families (ACF) Funds").

5.     Prior to my current position as CFO, I have been employed by CDSS since November 2019; first as Budget Officer from November 2019 through May 2021; then as Chief of Fiscal Forecasting from June 2021 through June 2025. I was the Financial Manager at the Office of Systems Integration from November 2018 through October 2019.  From October 2016 through October 2018, I was employed by CDSS as a Staff Services Manager.

6.     I have a Master of Business Administration degree in Strategic Management and a Bachelor of Business Administration degree in Accounting from Western Governors University.

## BACKGROUND ON CCDF, TANF, and SSBG

7.    Millions of vulnerable Californians—including children, the elderly, domestic violence victims, and lower-income families—require the food, shelter, childcare and other critical services that the ACF Funds help California provide.

8.    Among the social services programs administered or overseen by CDSS that utilize ACF Funds are its child care and development programs, the California Work Opportunity and Responsibility to Kids (CalWORKs) program, Child Welfare Services (CWS), Foster Care, Community Care Licensing, and Deaf Access.

CCDF

9.    CCDF is an aggregate of several funding sources that are distributed in block grants by the federal government to states and is a source of funding for many of CDSS' child care and development programs. The Child Care and Development Block Grant Act (CCDBG), together with section 418 of the Social Security Act, authorize CCDF as the primary federal funding source devoted to helping families with low incomes afford child care and increasing the quality of child care for all children. SSBG (Title XX) and TANF are additional sources of federal funding for this purpose.

10.    CDSS is designated as the CCDF Lead Agency and administers California's CCDF child care program in accordance with applicable federal laws and regulations and the provisions of the approved CCDF State Plan for Federal Fiscal Years (FFY) 2025-2027. CDSS' CCDF child care programs comprise a high-quality, affordable, early childhood system of care designed to comprehensively and effectively serve California's children and working families.

11.    CDSS child care and development programs support the healthy physical, cognitive, social and emotional growth and development of children; help families achieve personal, social, economic, and emotional stability and enhance parenting skills through participation; and allow families to have maximum choice in planning, implementation, operation, and evaluation of child care programs.

12.    Child care quality initiatives administered by CDSS and funded by CCDF provide system infrastructure and professional development support to the childcare workforce to foster the development of ongoing skills and abilities that are intended to create positive outcomes for young children.

13.     CDSS utilizes a combination of federal funding, State funding, and other sources of funding to provide child care and development services. In State Fiscal Year (FY) 2024-25, CDSS' comprehensive system of early learning and care described in California's CCDF State Plan served 367,000 California children through CDSS child care subsidy programs administered by counties or by one of 450 local CDSS contractors. Over 72,000 licensed centers and family child care homes and license-exempt providers cared for these children.

14.     In FY 2024-25, child care and development programs administered by CDSS included $1.8 billion in Federal Funds. In FY 2025-26, child care and development programs administered by CDSS will utilize approximately $1.1 billion in CCDF dollars, $169 million in Title XX funding, and $329 million in TANF funding. CDSS is scheduled to receive two additional quarterly awards of this funding in April and July of this year.

15.     To receive CCDF funds, CDSS must submit to ACF a state plan that the Secretary of the U.S. Department of Health and Human Services (HHS) determines includes all mandatory program requirements. To initiate drawdown, CDSS must first receive a Notice of Award from ACF. Notices of Award for CCDF are generally issued on a quarterly basis. CCDF funds that are awarded to California sit in bank accounts with the United States Department of Treasury. CDSS submits requests to draw down CCDF funds from the federal bank accounts when needed through the federal Payment Management System (PMS). CDSS last submitted a draw down request for $125,897 in CCDF funds on January 2, 2026. As of January 8, 2026, these funds have not yet been released. Typically, the funds are released within two days of a draw down request.

16.     CDSS typically submits multiple CCDF fund draw down requests in any given month. In the month of January 2026, California was scheduled to complete five payment calculations on or about the following dates: January 2; January 8; January 16; January 21; and January 30.  Following the completion of these payment calculations, CDSS would have subsequently submitted the required CCDF fund draw down into PMS.

17.     The estimated total magnitude of CCDF funds needed to complete January 2026 payments is at least $70 million. In the event that CCDF draw downs are delayed or paused, it is not clear whether available state funds would be sufficient to cover outstanding child care costs. Without CCDF funding, California will not be able to process January 2026 payment calculations occurring after January 7, 2026 within normal business processes and

protocols. These delays disrupt cash flows to hundreds of local contractors that administer child care programs and providers who rely on reimbursement.

<u>TANF</u>

18.     TANF is a block grant program that provides over $16.5 billion nationwide annually in federal funding to states, territories, and tribal governments, who in turn provide time-limited assistance, including cash aid and other benefits, to needy families with children. It is one of the largest sources of cash assistance to low-income American families.

19.     California receives federal TANF funds and implements most of those TANF funds through its CalWORKs program. CalWORKs is overseen by CDSS and is administered by the State's 58 counties. CalWORKs provides temporary cash assistance for a family's basic needs. It also provides education, employment, training programs, supportive services, and child care subsidies to assist the family's progress toward self-sufficiency.

20.     TANF funds also support several other service programs, including financial aid for low-income college students.

21.     CalWORKs is funded through a combination of federal, State, and county funds. The federal funds are provided to California through the annual TANF block grant, which is calculated according to a mandatory formula based on the share each state had of TANF funding in 2002.  Since 1996, the federal TANF block grant amount to California has been set at approximately $3.7 billion annually.

22.     Approximately 350,000 families receive CalWORKs benefits each month.

23.     CalWORKs is a key component of California's safety net for low-income families.  Families that qualify for ongoing assistance utilize that funding to pay for housing, food, electricity, and other necessary basic needs.  Loss of TANF funds would increase the risk of low-income families becoming homeless or facing increasing financial pressures, including poverty, which could increase the risk of involvement with other public social service programs, such as child welfare.

24.     To receive TANF funds, CDSS must submit to ACF a state plan that the Secretary of HHS determines includes all mandatory components of a plan, including how the state will conduct its TANF program in compliance with federal work requirements, privacy protections, and other mandatory provisions. CDSS submitted its renewal plan to ACF on December 18, 2025.

25.     To initiate drawdown, CDSS must first receive a Notice of Award from ACF. Notices of Award for TANF are generally issued on a quarterly basis. TANF funds that are awarded to CDSS sit in bank accounts with the United States Department of Treasury. CDSS submits requests to draw down TANF funds from the federal bank accounts when needed through the federal Payment Management System (PMS).

26.     On December 16, 2025, California received a Notice of Award from ACF for $908,528,802 in TANF funds.

SSBG

27.     The SSBG program provides $1.7 billion nationwide annually in federal funding to States, providing them with "flexibility" and funding to support social services in one of five categories: (1) "achieving or maintaining economic self-support"; (2) "achieving or maintaining self-support"; (3) addressing neglect, abuse, or exploitation of children and vulnerable adults; (4) preventing institutional care and supporting community-based care; and (5) where institutional care is needed, supporting application and admission and providing services to institutionalized individuals.

28.     Congress has provided that SSBG funds must be allocated based on each state's percentage of the national population, based on census data. Unlike CCDF and TANF, states are not required to submit a state plan to be eligible for SSBG funding. Instead, California must submit annual reports describing how it used the funds in the year prior.  CDSS submitted its last annual report on December 30, 2025.

29.     For FY 2025, California was allotted approximately $160 million in SSBG funds.

30.     SSBG funds support several social service programs, all of which are administered locally by counties and supervised by CDSS. These programs include Child Welfare Services (CWS), Foster Care, Community Care Licensing, Deaf Access, and CalWORKs. The California Department of Developmental Services (DDS) uses SSBG funds to support seven state developmental centers and a statewide network of 21 private, nonprofit Regional Centers. In FY 2022, approximately 1.7 million Californians—including approximately 1.4 million children—received SSBG-funded services.

**THE FUNDING FREEZE LETTERS**

31.     On January 6, 2026, ACF sent correspondence to California relating to CCDF, TANF, and SSBG (collectively, the "Freeze Letters").  A true and correct copy of each of the Freeze Letters are attached hereto as Attachments A through C.

The CCDF Letter

32.     The CCDF Letter states that "ACF will be conducting a thorough review of the State's use of funding for compliance and alignment with statutory requirements. ACF is placing the State on temporarily restricted drawdown of CCDF funds until additional fiscal accountability requirements are implemented and necessary information is provided for ACF to complete its review."

33.     The CCDF Letter directs California to implement "fiscal accountability requirements" to "improve compliance with relevant statutes and program regulations," and specifies that such requirements must "include submission of verified attendance documentation for subsidized child care services to the State prior to further draw down of federal CCDF funding." That documentation must establish the days or hours of care provided; must contain "contemporaneous payment information"; and must be "sufficient for ACF to determine that the drawdown amount is reasonable, allowable, and allocable."

34.     The CCDF Letter further states that "CCDF funds shall be temporarily placed on restricted drawdown until these additional fiscal accountability requirements are implemented" and that California "will be placed on this temporary restricted drawdown for all CCDF funds provided by ACF until further notice, pending successful and satisfactory review of the requested information."

The TANF Letter

35.     The TANF Letter states that "[e]ffective today," ACF is reviewing California's "TANF State Plan for completeness and for program compliance with applicable laws. As a result, ACF is placing the state TANF program on a restricted drawdown in accordance with 2 C.F.R. § 200.339."

36.     The TANF Letter makes three specific demands.

37.     First, the TANF Letter requires California to "provide the complete universe of TANF administrative data that exist and are in the state's possession for all recipients for all available years, and at least 2022 to 2025. This includes recipient name, address, Social

Security Number (if collected), date of birth, A-number (as applicable), and any state identification numbers used for program administration."

38.    Second, the TANF Letter demands "documentation demonstrating that California has verified the eligibility of all TANF applicants and recipients in accordance with the requirements of the Personal Responsibility and Work Opportunity Reconciliation Act, 8 U.S.C. § 1611, which limits TANF eligibility to United States citizens and qualified aliens. This documentation should include the policies, procedures, system controls, and verification records used by [Plaintiff States] to confirm citizenship or qualified alien status during the application and recertification processes."

39.    Third, the TANF Letter requests "a comprehensive list of all organizations, subcontractors, service providers, local agencies, community groups, and any other entities that received TANF funds from California, directly or indirectly, during the period from 2019 through 2025. For each organization, to the extent the information exists and is in the state's possession, I request the amount of TANF funding provided, the purpose for which the funds were awarded, and documentation describing the State's oversight mechanisms, monitoring activities, and verification processes used to ensure proper use of TANF dollars."

40.    The TANF Letter sets a deadline of January 20, 2026, for California to provide the required information.

41.    The TANF Letter states that California will be placed "on a temporary restricted drawdown for all TANF funds provided by ACF until further notice, pending review of the state's current TANF plan for completeness and ACF confirming compliance with applicable laws."

The SSBG Letter

42.    The SSBG Letter states that "ACF will be conducting a thorough review of the State's use of funding. As a result, ACF is notifying your office that the State is not authorized to further draw down" SSBG funds "without complying with the terms of a temporary restricted draw down until this review is complete."

43.    The SSBG Letter make three specific demands of California that are nearly identical to the requests made in the TANF Letter described above. The SSBG Letter also sets a deadline of January 20, 2026 for California to provide the information requested.

**THE FEASIBILITY OF THE DATA AND DOCUMENTATION DEMANDS**

44.     I am informed and believe that it would be nearly impossible for California to comply with the Freeze Letters' data and documentation demands by January 20, 2026. The various public benefit programs and services supported by the ACF funds are, in many instances, decentralized across the entire State of California within counties, tribes, school districts, contractors, and other entities.

45.     Furthermore, the documentation being requested is not necessarily stored in an electronic format, and especially in a child care setting, may include a significant volume of paper records.  The request for de-identified and aggregate records for the CCDF would require an unknown, and at this time incalculable amount of staff time, to gather records and distill the requested data into an appropriate format.  Attempting to comply with the onerous data and documentation demands would require the re-deployment of significant personnel and resources diverted from administering California's critical programs.

46.     I am further informed and believe that the scope of the data and documentation demands is not how any oversight body has ever conducted quality control, audits, or any other program integrity purpose relating to CCDF, TANF, or SSBG.

**HARMS ASSOCIATED WITH FUNDING FREEZE**

47.     The pause in our federal funding will have crippling effects on the administration of these programs.  Significant pauses or delays in these disbursements could result in the State's inability to fund all of CalWORKs' payments, subsidies, vouchers, housing assistance, and other services to CalWORKs clients.  This would not only devastate clients, who will have less cash available to pay rent, buy food, and support their families, but also impact service providers that serve clients who utilize CalWORKs for services including mental health and substance abuse, domestic violence, education and workforce support, child care, and housing and homelessness intervention.

48.     In FY 2025-26, CDSS is scheduled to receive disbursements of $1.6 billion, between the three different funding sources utilized for Child Care and Development Programs administered by CDSS. The freezing of these disbursements will result in the State being forced to operate as the sole source of funding for child care and development programs.  Afterwards, the State would be unable to support families in need of child care.

49.     The freezing of CDSS' federal funding will also force parents who use CDSS childcare providers to cut back on work if they are unable to find alternative care, which

8

would harm not only the parent and child, but also State and federal revenues. According to research completed by the First Five Years Fund, child care, and investments in child care and early childhood education, yield enormous returns to society. Every $1 invested in high-quality child care yields $7 to $12 in social returns, including long term impacts on educational attainment, employment, and earnings both for the children who attend and participating families. Child care is also key to increasing labor force participation, employment, and earnings among parents; during the pandemic, federal American Rescue Plan stabilization funds led to a 2-3 percentage point increase in the labor force participation rate among mothers of young children, nationally, in the two years after their onset—roughly 325,000 more women were working each year over two years. See Guevara, New Research: ARP Stabilization Dollars Were Critical For Our Nation's Child Care, First Five Years Fund (Nov. 21, 2023).

50.    Child care providers may also no longer be able to maintain a sustainable business model due to the already slim margins associated with operating a child care center. Losing even a small portion of clients could cause a cascading impact throughout the child care system, resulting in closures of child care facilities across the State – further impacting families, child care providers who are now out of jobs, and additional impacts to State and federal tax revenues.

51.    If the federal funding remains paused, blocked, denied or delayed, we are concerned that we will not be able to meet the needs of families who rely on these programs and that the impacts on their well-being and economic stability will be significant.

52.    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Executed on January 8, 2026, at Fair Oaks, CA.


                                        /s/ *Kira Younger*
                                        KIRA YOUNGER

# ATTACHMENT A



ADMINISTRATION FOR
CHILDREN & FAMILIES
**Office of the Assistant Secretary** | 330 C Street, S.W., Suite 4034
Washington, DC 20201 | www.acf.gov

January 6, 2026

Governor Gavin Newsom
Office of the Governor
1021 O Street, Suite 9000
Sacramento, CA 95814

Dear Governor Newsom,

The Trump Administration has made clear its commitment to rooting out fraud, protecting taxpayer
dollars, and ensuring program integrity across all federal benefit programs. The Administration for
Children and Families (ACF) is concerned by the potential for extensive and systemic fraud in
California Child Care and Development Fund (CCDF) services that rely on federal funding. These
concerns have been heightened by recent federal prosecutions and additional allegations that
substantial portions of federal resources were fraudulently diverted away from the American families
they were intended to assist. Additionally, ACF has reason to believe that the State of California is
illicitly providing illegal aliens with CCDF benefits intended for American citizens and lawful
permanent residents.

ACF will be conducting a thorough review of the State's use of funding for compliance and alignment
with statutory requirements.  ACF is placing the State on temporarily restricted drawdown of CCDF
funds until additional fiscal accountability requirements are implemented and necessary information is
provided for ACF to complete its review.

Specifically, to facilitate a timely review, ACF requests that the State of California immediately begin
implementing additional fiscal accountability requirements to improve compliance with relevant
statutes and program regulations.  For the CCDF program, the State must always have sufficient fiscal
controls and accounting procedures to establish that funds have not been used in violation of the Child
Care and Development Block Grant (CCDBG) Act of 1990, as amended (42 U.S.C. §§ 9857 *et seq.*),
and the CCDF regulations at 45 C.F.R. Part 98.  45 C.F.R. § 98.67(c)(2).  Enhancements of fiscal
accountability requirements are clearly necessary to mitigate fraudulent activity.  These additional
fiscal accountability requirements now requested by ACF must include submission of verified
attendance documentation for subsidized child care services to the State prior to further draw down of
federal CCDF funding through the Payment Management System (PMS).  This verified attendance
documentation must, at least, establish: (1) actual units of service delivered (e.g., days, hours, or other
units consistent with the Lead Agency's approved payment practices); and (2) contemporaneous
payment information maintained by the provider or State.  The State must ensure this verified

attendance documentation is sufficient for ACF to determine that the drawdown amount is reasonable, allowable, and allocable.

Until ACF determines that the State has established and implemented these and other internal controls sufficient to ensure that all future drawdown requests are supported by reliable, non-identifiable attendance documentation, the State must report this verified attendance information to ACF in an aggregated, non-identifiable format prior to further drawing down CCDF funding. This information will facilitate ACF's review of the State's compliance with the CCDF program, grant terms, and federal law.

To maintain strong protections for every child involved, the State must aggregate or otherwise de-identify such verifiable attendance documentation so that no personally identifiable information (PII) or identifiable child-level data is disclosed, consistent with the confidentiality protections required under the CCDBG Act. Such information and data include the names of children or parents, Social Security numbers, dates of birth, addresses, and any other information that directly identifies an individual child or family.

CCDF funds shall be temporarily placed on restricted drawdown until these additional fiscal accountability requirements are implemented. ACF must be able to determine that the attendance documentation submitted adequately supports the amount requested, demonstrates that services were delivered to eligible children consistent with the CCDBG Act, and meets all applicable federal fiscal control and accounting requirements.

My staff will coordinate directly with the appropriate state officials to establish a secure reporting method and confirm technical specifications.

The State of California will be placed on this temporary restricted drawdown for all CCDF funds provided by ACF until further notice, pending successful and satisfactory review of the requested information. These additional fiscal accountability requirements may help avoid delayed drawdowns, disallowances, or other corrective actions necessary to further mitigate fraud in the CCDF program.

Thank you for your attention to this critical matter. Please contact my office with any questions or to arrange next steps.

Sincerely,

Alex J. Adams
Assistant Secretary
Administration for Children and Families
U.S. Department of Health and Human Services

CC: Kim Johnson, Secretary, California Health & Human Services Agency
Jennifer Troia, Director, California Department of Social Services
Lupe Jaime-Mileham, of Fresno, Deputy Director, Child Care and Development Division

# ATTACHMENT B



ADMINISTRATION FOR
CHILDREN & FAMILIES
**Office of the Assistant Secretary** | 330 C Street, S.W., Suite 4034
Washington, DC 20201 | www.acf.gov

January 6, 2026

Governor Gavin Newsom
Office of the Governor
1021 O Street, Suite 9000
Sacramento, CA 95814

Dear Governor Newsom,

The Trump Administration has made clear its commitment to rooting out fraud, protecting
taxpayer dollars, and ensuring program integrity across all federal benefit programs. The
Administration for Children and Families (ACF) is concerned by the potential for extensive and
systemic fraud in Temporary Assistance for Needy Families (TANF) services that rely on federal
funding. These concerns have been heightened by recent federal prosecutions and additional
allegations that substantial portions of federal resources were fraudulently diverted away from
the American families they were intended to assist. Additionally, ACF has reason to believe that
the State of California is illicitly providing illegal aliens with TANF benefits intended for
American citizens and lawful permanent residents.

Effective today, ACF is reviewing California's TANF State Plan for completeness and for
program compliance with applicable laws. As a result, ACF is placing the state TANF program
on a restricted drawdown in accordance with 2 C.F.R. § 200.339.

To aid ACF in a timely review, I am requesting that the State of California provide the complete
universe of TANF administrative data that exist and are in the state's possession for all recipients
for all available years, and at least 2022 to 2025. This includes recipient name, address, Social
Security Number (if collected), date of birth, A-number (as applicable), and any state
identification numbers used for program administration. This information, requested pursuant to
45 C.F.R. § 98.90, is necessary for ACF to conduct a thorough review of program operations and
to assess the extent of any irregularities that may have occurred.

ACF also requests documentation demonstrating that the State of California has verified the
eligibility of all TANF applicants and recipients in accordance with the requirements of the
Personal Responsibility and Work Opportunity Reconciliation Act, 8 U.S.C. § 1611, which
limits TANF eligibility to United States citizens and qualified aliens. This documentation should
include the policies, procedures, system controls, and verification records used by California to
confirm citizenship or qualified alien status during the application and recertification processes.

In addition to individual-level recipient data, ACF is requesting a comprehensive list of all organizations, subcontractors, service providers, local agencies, community groups, and any other entities that received TANF funds from the State of California, directly or indirectly, during the period from 2019 through 2025. For each organization, to the extent the information exists and is in the state's possession, I request the amount of TANF funding provided, the purpose for which the funds were awarded, and documentation describing the State's oversight mechanisms, monitoring activities, and verification processes used to ensure proper use of TANF dollars.

I request that this information be transmitted to ACF by January 20, 2026. My staff will coordinate directly with the appropriate state officials to establish a secure transfer method and confirm technical specifications.

The State of California is placed on a temporary restricted drawdown for all TANF funds provided by ACF until further notice, pending review of the state's current TANF plan for completeness and ACF confirming compliance with applicable laws.

Thank you for your attention to this critical matter. Please contact my office with any questions or to arrange next steps.

Sincerely,

Alex J. Adams
Assistant Secretary
Administration for Children and Families
U.S. Department of Health and Human Services


CC: Kim Johnson, Secretary, California Health & Human Services Agency
Jennifer Troia, Director, California Department of Social Services

# ATTACHMENT C



ADMINISTRATION FOR
CHILDREN & FAMILIES
**Office of the Assistant Secretary** | 330 C Street, S.W., Suite 4034
Washington, DC 20201 | www.acf.gov

January 6, 2026

Governor Gavin Newsom
Office of the Governor
1021 O Street, Suite 9000
Sacramento, CA 95814

Dear Governor Newsom,

The Trump Administration has made clear its commitment to rooting out fraud, protecting taxpayer dollars, and ensuring program integrity across all federal benefit programs. The Administration for Children and Families (ACF) is concerned by the potential for extensive and systemic fraud in Social Services Block Grant (SSBG) programs that rely on federal funding. These concerns have been heightened by recent federal prosecutions and additional allegations that substantial portions of federal resources were fraudulently diverted away from the American families they were intended to assist. Additionally, ACF has reason to believe that the State of California is illicitly providing illegal aliens with SSBG benefits intended for American citizens and lawful permanent residents.

ACF will be conducting a thorough review of the State's use of funding. As a result, ACF is notifying your office that the State is not authorized to further draw down SSBG funding without complying with the terms of a temporary restricted draw down until this review is complete.

To aid ACF in a timely review, I am requesting that the State of California provide the complete universe of SSBG administrative data that exist and are in the state's possession for all grantees, their recipients and subrecipients, for all available years and at least 2022 through 2025. This includes recipient name, address, Social Security Number (if collected), date of birth, A-number (as applicable), and any state identification numbers used for program administration. This information is necessary for ACF to conduct a thorough review of program operations and to assess the extent of any irregularities that may have occurred.

ACF also requests documentation demonstrating that the State of California has verified the eligibility, where applicable, of all recipients and subrecipients of SSBG-funded entities in accordance with the requirements of the Personal Responsibility and Work Opportunity Reconciliation Act, 8 U.S.C. §1611, which limits the eligibility of federal public benefits to United States citizens and qualified aliens. This documentation should include the policies, procedures, system controls, and verification records used by Minnesota to confirm citizenship or qualified alien status during the application and recertification processes.

ACF is requesting a comprehensive list of all organizations, subcontractors, service providers, local agencies, community groups, and any other entities that received SSBG funds from the State of California, directly or indirectly, during the period from 2019 through 2025. For each organization, to the extent the information exists and is in the state's possession, I request the amount of SSBG funding provided, the purpose for which the funds were awarded, and documentation describing the state's oversight mechanisms, monitoring activities, and verification processes used to ensure proper use of SSBG dollars.

I request that this information be transmitted to ACF by January 20, 2026. My staff will coordinate directly with the appropriate state officials to establish a secure transfer method and confirm technical specifications.

The State of California will be placed on a temporary restricted drawdown for all SSBG funds provided by ACF until further notice, pending successful and satisfactory review of the requested information.

Thank you for your attention to this critical matter. Please contact my office with any questions or to arrange next steps.

Sincerely,

Alex J. Adams
Assistant Secretary
Administration for Children and Families
U.S. Department of Health and Human Services


CC: Kim Johnson, Secretary, California Health & Human Services Agency
Jennifer Troia, Director, California Department of Social Services