# EXHIBIT 9

```
Q194STAC
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

STATE OF NEW YORK, *et al.*,

                Plaintiffs,

        v.                                  26 Civ. 172 (AS)

ADMINISTRATION FOR CHILDREN
AND FAMILIES, *et al.*,
                                            Remote Conference
                Defendants.

------------------------------x
                                            New York, N.Y.
                                            January 9, 2026
                                            2:00 p.m.

Before:

                    HON. ARUN SUBRAMANIAN,

                                            District Judge

                        APPEARANCES

NYS OFFICE OF THE ATTORNEY GENERAL
     Attorneys for Plaintiffs
BY:  JESSICA RANUCCI
     RABIA MUQADDAM

U.S. ATTORNEY'S OFFICE, SDNY
     Attorneys for Defendants
BY:  KAMIKA SHAW
     PIERRE ARMAND

```
 1              (Case called)
 2              THE COURT:  Who is appearing on behalf of the
 3   plaintiffs?
 4              MS. RANUCCI:  Good afternoon, your Honor.  This is
 5   Jessica Ranucci from the New York State office of the Attorney
 6   General for plaintiff.  I'm joined on the line by one of my
 7   colleagues as well, who I will let introduce herself.  I'll
 8   also just note there are a number of colleagues from our office
 9   and from other plaintiff state offices who are listening in on
10   this line.
11              THE COURT:  All right.
12              MS. MUQADDAM:  Good afternoon.
13              THE COURT:  Please proceed.
14              MS. MUQADDAM:  This is Rabia Muqaddam also from the
15   New York Office of the Attorney General office for the
16   plaintiff states.
17              THE COURT:  All right.  And who will be speaking on
18   behalf of the defendants?
19              MS. SHAW:  Good afternoon, your Honor.  This is Kamika
20   Shaw from the U.S. Attorney's Office from the Southern District
21   of New York on behalf of defendants.  I'm joined by a
22   colleague, who will introduce himself as well.
23              MR. ARMAND:  Good afternoon, your Honor.  Pierre
24   Armand also from the U.S. Attorney's Office on behalf of the
25   defendants.
```

1      THE COURT:  Good afternoon to everyone.  Just so
2 everyone is aware, I received notice of the plaintiffs'
3 application for a temporary restraining order yesterday before
4 this case had been assigned.  And so in this Court's part one
5 capacity, we scheduled this hearing, just so everyone
6 understands why I am here, as opposed to Judge Broderick, who
7 will be your judge for the remainder of this case.
8      For today's purposes let me start with Ms. Shaw or
9 Mr. Armand.  I had asked Mr. Oestericher earlier this morning
10 whether there was some way to address the immediate issue for
11 purposes of the temporary restraining order while the
12 defendants would reserve all rights concerning any relief that
13 would be granted.
14      MS. SHAW:  I'm conferring with our client and at this
15 time our client does not think there would be a path forward
16 that might obviate the need for a TRO at this time.  Our client
17 intends to go forward and oppose the TRO.
18      THE COURT:  All right.  And do you know at this time
19 whether the defendants will be making an argument that their
20 actions were consistent with the requirement to not engage in
21 arbitrary and capricious decision making and act in accordance
22 with law?  Are they going to be making that argument, or rather
23 are they going to simply be making an argument on jurisdiction
24 that this case actually belongs in the Court of Claims?  Do you
25 have clarity on that at this juncture?

1              MS. SHAW:  I don't have full clarity on that yet at

2     this juncture.  I would not want to make any representations

3     yet about what defendants intend to argue.

4              THE COURT:  All right.  So at this time if I were to

5     ask you whether the policy, as reflected in the letters that

6     were sent to the plaintiffs, were consistent with the statutes

7     and regulations cited in the plaintiffs' briefs, would you be

8     able to answer that question at this time?

9              MS. SHAW:  I would not be able to make any

10    representations about that at this time.  We are still

11    analyzing the allegations in the complaint and in the

12    accompanying exhibits as well as plaintiffs' arguments in its

13    motion for a TRO.

14             THE COURT:  All right.  So given that, should the TRO

15    simply be granted at this time subject to any revision at the

16    preliminary injunction stage?

17             MS. SHAW:  No, the defendants would request an

18    opportunity to put in briefing opposing the TRO, laying out its

19    standpoint and the factual course for the way the defendants

20    have proceeded.

21             THE COURT:  All right.  Let me turn to Ms. Ranucci.

22             Ms. Ranucci, maybe you can help me with a logistical

23    issue, which is that Judge Broderick, I believe, is prepared to

24    address the temporary restraining order and any further

25    proceedings in this matter.  And I'm assuming that if there was

1    a resolution on the temporary restraining order, let's say by
2    the end of next week or shortly thereafter, then that would not
3    cause -- there would not be some unaddressed harm that would
4    happen between now and then; is that fair?
5              MS. RANUCCI:  We're certainly not in a position to say
6    that right now, your Honor.  For example, there was a
7    $106 million drawdown request by the State of New York earlier
8    this week that remains pending, even though those requests are
9    usually fulfilled within 24 to 48 hours.  Colorado is in the
10   same boat there.  Illinois and California both have drawdown
11   requests, those are under the TANF program, under the CCDBG
12   program that are being unfulfilled.  We are talking about harm
13   every day in the magnitude of hundreds of millions of dollars.
14   This cannot wait a week from plaintiffs' perspective.
15             THE COURT:  And can you put some more color on that.
16   Like, I understand that there are reimbursement requests and
17   drawdowns that are not being presently honored.  And so what
18   harm does that cause today, for instance, right?  Let me just
19   make clear what I'm asking.  It may be, hypothetically
20   speaking, the case that a state has funds in reserve or funds
21   at their disposal, and so the inability to drawdown funds today
22   may not impair any programs being operated under what's at
23   issue here.  However, it poses a risk for the near-term future
24   because obviously the funds are going to run out.  That's one
25   scenario.

1          The alternative scenario is that the funds that need
2    to be drawn down today need to be used today because there are
3    not other funds available, and so programs will be stopping
4    today.  And so that presents a more immediate harm.  Which of
5    those two buckets is it?
6          MS. RANUCCI:  Your Honor, I don't think I'm going to
7    be able to give you a simple answer because of the fact we are
8    talking about different funding streams with different drawdown
9    schedules across different states, and I think there is going
10   to be a lack of uniformity as to those.  I would say the
11   current harms are like operational chaos is going to come to
12   the states if we are unable to follow the typical accounting
13   practices that rely on these funds, not only prospectively but
14   also for reimbursement.
15         I would also note that these requests impose sweeping
16   data demands within two weeks which will require significant
17   state resources to respond to, that would be unreasonable for
18   the state to wait for the next week.  So that would be a drain
19   on the states' resources.
20         THE COURT:  What's your proposal because Ms. Shaw
21   fairly says that the government needs to be able to respond to
22   the TRO.  And so what's your proposal as to how we might
23   proceed here?
24         MS. RANUCCI:  Could you allow me one minute to confer
25   with my colleagues?

1           THE COURT:  Of course.

2           MS. RANUCCI:  Your Honor, plaintiffs believe we have
3  made the requisite showing for a TRO to be granted today in
4  advance of the government's response, given the magnitude of
5  the harm here and the lack of legal basis for the actions that
6  the government has taken, that TRO would be, as is required,
7  short term and would allow the parties to turn to preliminary
8  injunction briefing where, of course, defendants would have the
9  opportunity to make any of the arguments that they are able to
10 make.  And I would note that that TRO would just preserve the
11 status quo that existed for decades in which states have
12 entitlement to these funds that were designated by congress.

13          THE COURT:  Understood.

14          Let me go back to what the short-term harm is.  I
15 think you've mentioned a chaos that would ensue due to the need
16 to deal with these new accounting realities.  Could you explain
17 that to me a little bit more.

18          MS. RANUCCI:  Absolutely, your Honor.  These programs
19 we are talking about hundreds of millions of dollars, billions
20 over the course of the year, but right now we are talking about
21 hundreds of millions of dollars to plaintiff states that
22 include, for example, reimbursement to municipalities.  It
23 includes payments to nonprofits.  I think the child care
24 context is perhaps particularly concrete.  If we go a week in
25 which plaintiff states like even I believe Illinois and

1    California are experiencing now, they have child care fund
2    reimbursement requests that should have, in the normal course,
3    would have been fulfilled that have not been fulfilled, we
4    understand due to the freeze.  That means that those states
5    have uncertainty about how they will be able to pay for the
6    many nonprofit and other providers of child care, in turn
7    creating uncertainty for those nonprofits and for the family.
8    The uncertainty is immediate.  And even if there is some runway
9    for some of these programs, it will create tremendous burdens
10   on the state administrative systems.  And also harms, sort of
11   the ripple effects within the community of plaintiff state
12   residents will also -- the chaos sort of is a harm in and of
13   itself.
14            THE COURT:  Understood.  So what you're saying is,
15   look, even if there is some runway for the funding of these
16   programs, the harm starts today because there will be immense
17   burdens on the states to try to deal with the funding freeze
18   and all the consequences of it.  There will be uncertainty as
19   to the availability of these programs in the immediate near
20   term that poses problems for the program recipients and that
21   additionally causes additional administrative burdens for the
22   states in having to deal with all of that.
23            In the meantime, the letters request the collection
24   and provision of significant information that would cause a
25   burden, again, today.  And so the harm that's being incurred is

1    one that is there right now.
2              MS. RANUCCI:  Precisely, your Honor.  And I would just
3    highlight that these are mandatory entitlement spending
4    programs that have been in place for decades and upon which
5    plaintiff states have reasonably relied in setting expectation
6    like their budgets that were approved pursuant to state plans.
7    And the sort of chaos this has created is on the longstanding
8    background that plaintiffs understood when the rug was pulled
9    out from under us on Tuesday.
10             THE COURT:  All right.  And understanding what you're
11   saying, would it be fair if the defendants were able to respond
12   to the TRO over the weekend, and you would get a decision by,
13   let's say Monday or Tuesday, would that be consistent in terms
14   of what you're talking about, sort of the real immediacy of
15   this?
16             MS. RANUCCI:  If you just allow me one moment, your
17   Honor.
18             Your Honor, plaintiffs' position is strongly that
19   there should be a TRO issued and that the next round of
20   briefing should be preliminary injunction briefing.  We are
21   willing to go as quickly as the government would propose.  But
22   given the significant evidence and allegations that have been
23   raised, we strongly feel that -- we are seeking a decision
24   today in order to move quickly.
25             THE COURT:  All right.  And your point on the TRO is

Case 1:26-cv-00172-VSB   Document 40-9   Filed 01/15/26   Page 11 of 17    10
Q194STAC

1   that this relief would be interim in nature and really interim
2   within interim because it would be interim to any disposition
3   of the motion for a preliminary injunction; right?
4             MS. RANUCCI:  Precisely, your Honor.
5             THE COURT:  Okay.  And then last question is in your
6   brief you note that for purposes of a TRO in this context, the
7   only thing that you need to show is serious questions going to
8   the merits.  You don't need to show a likelihood of success, as
9   long as the balance of equities tips in your favor.  And in
10  this case your position at least is that those equities do
11  point in your favor.  And given the defendant's position at
12  least at this time that they don't have a representation as to
13  the merits without even sort of inquiring as to the merits
14  arguments that you have, there should be grounds for relief at
15  this preliminary stage; is that fair?
16            MS. RANUCCI:  Yes, your Honor.
17            THE COURT:  Anything further, Ms. Ranucci, that you
18  would like to add?  If not, I will turn to Ms. Shaw and allow
19  her a chance to respond.
20            MS. RANUCCI:  Not at this time.  Thank you.
21            THE COURT:  Ms. Shaw, I'm happy for you to respond to
22  the colloquy that I had with Ms. Ranucci and add anything else
23  that you would like to.
24            MS. SHAW:  Thank you, your Honor.
25            As I mentioned, we are still gathering information and

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    are not in a position to make firm factual representations.
2    But from our conversations with our client, our preliminary
3    understanding is that there is not actually a funding freeze in
4    place at this time.  What's been conveyed to me is that there
5    is a temporary restriction in place on drawdowns.  But I
6    understand that funds are still flowing.
7            What I understand is that HHS has put into place
8    certain procedures to further vet funding before recipients can
9    drawdown from funds, and they are in the process of reviewing
10   that additional information and I believe that funds are being
11   disbursed.  So from that perspective, we do think that further
12   briefing on the TRO is necessary to develop a fuller factual
13   record because the irreparable harm that plaintiff is alleging,
14   I think it turns on this question of whether or not there is,
15   in fact, a freeze and from our client's perspective it's not a
16   freeze, and funds are still going out the door.
17           THE COURT:  All right.  Ms. Ranucci, just to clarify
18   the relief you are seeking on the TRO, what you're seeking is
19   to, on an interim basis, set aside the policy as reflected in
20   the January 5th and 6th letters that were the basis for the
21   freeze.  And it is not that the defendants have to immediately
22   disburse funds.  If, as Ms. Shaw is saying, they are just
23   conducting a review of files that they would have the authority
24   to do in the normal course, that's not what you're challenging
25   here.  Am I right about that?

1           MS. RANUCCI:  Your Honor, I agree with what you said
2   that plaintiffs are not seeking relief that would somehow
3   compel defendants to issue funds if they had some lawful basis
4   for not doing so that's separate and apart from the thing
5   that's challenged in this case.  However, I strongly disagree
6   with the characterization that my colleague offered of what's
7   going on here.  I'm not sure if it will be helpful now or later
8   to sort of point you to the places in the record that don't
9   match up with that.
10           THE COURT:  Please, I think you should do that now.
11           MS. RANUCCI:  Thank you.
12           First, I'm reading from the press release that was
13  issued with this.  This was on January 5, "The U.S. Department
14  of Health and Human Services today froze access to child care
15  and family assistance funds for California, Colorado, Illinois,
16  Minnesota, and New York."  So start there.
17           Then there is also, I'll just point you to a few
18  places in the record.  First, in the Colorado declaration from
19  Mr. McMahon, I believe that's ECF 9-3, Paragraph 21.  That
20  shows the Colorado has not been able to access its Temporary
21  Assistance for Needy Families, TANF, drawdown in the normal
22  course.  California and Illinois, if you go to ECF 9-1 in
23  Paragraph 9, and ECF 9-6 and Paragraph 15 are in the same
24  position as to the child care development funds.  They've
25  requested a drawdown.  In the normal course, it would have been

1    processed. It has not been processed. So I understand that
2    defendant's counsel is still getting up to speed, but I think
3    there is evidence in the record to support that plaintiffs are
4    not getting the funds that defendants themselves have frozen.
5           THE COURT: Ms. Shaw, would you like to respond to
6    that?
7           MS. SHAW: Yes, your Honor. My apologies. I was
8    muted.
9           Again, I think the decision here that I'm trying to
10   make is, yes, HHS has put in place additional procedures for
11   states seeking funds. But, again, from HHS's perspective, my
12   preliminary understanding is that it's not a freeze on funds,
13   and they are, in fact, disbursing funds.
14          Additionally, your Honor, you inquired earlier as to
15   what legal arguments my client intends to make. Again, we are
16   still analyzing the complaint, particularly with respect to
17   whether or not we will be making an argument, but at this stage
18   I would contend that it's not clear that this Court does have
19   jurisdiction to enter a TRO, and I think further briefing is
20   needed before that determination can be made.
21          THE COURT: And when you make that jurisdictional
22   argument, is that the Tucker Act argument?
23          MS. SHAW: Correct, your Honor.
24          THE COURT: And so how would you respond to Footnote
25   12 in the plaintiffs' brief that addresses that issue and says

1     that given the opinion of Justice Barrett that sort of
2     delineates what's a proper challenge to be raised in district
3     court, as opposed to the Court of Claims, there is kind of on
4     the one side there's attack on a policy.  And that's why I was
5     speaking with Ms. Ranucci I talked about the policy as
6     reflected in the letters, as opposed to a demand for payment or
7     a mandated payment which may fall on the other side of the
8     divide.  Do you have a response on that point at this time?
9              MS. SHAW:  A preliminary response, your Honor, and
10    again, we are still reviewing our legal arguments here.  But,
11    yes, partially the plaintiffs may argue they are challenging a
12    policy, but this does implicate the use of funds which is
13    subject to, for example, it may be subject to HHS's standard
14    terms and conditions.  So I don't think at this point we can
15    make a determination that rely on cases saying that to the
16    extent what you are really talking about is a policy controls
17    here.  Again, the government contends that is why briefing is
18    needed on this TRO before the Court decides to enter the TRO.
19             THE COURT:  All right.  Thank you.  Anything else that
20    you'd like to add?
21             MS. SHAW:  If the Court does intend to enter a TRO, we
22    would request a bond.
23             THE COURT:  Of what kind?
24             MR. ARMAND:  Your Honor, it's Pierre Armand.
25             We would have to talk to the client in terms of

1    getting a monetary figure.  We don't have that information.
2    But there is an executive order and a DOJ policy that requires
3    us to make the request for the bond in this scenario.  But we
4    don't have a specific number to provide to the Court at this
5    time.
6              THE COURT:  Okay.  Understood.
7              Ms. Ranucci, anything further to add?
8              MS. RANUCCI:  Just very briefly on the bond point.  I
9    think the last sentence of our brief cites some authority that
10   shows that if defendants were to follow lawful procedures, they
11   would be able to recover any funds that were improperly
12   expended.  So I think that obviates the need for a bond in this
13   case.
14             THE COURT:  Very good.
15             Thank you to the parties for appearing at this hearing
16   on such short notice.  The Court greatly appreciates it and
17   good argument on both sides.  We will take the matter under
18   submission, and the Court will issue an order regarding the TRO
19   and any next steps very shortly.
20             With that anything further, Ms. Ranucci, before we
21   adjourn?
22             MS. RANUCCI:  One minute, your Honor.
23             Nothing further.  Thank you.
24             THE COURT:  Thank you.
25             And Ms. Shaw, anything on your end?

Q194STAC

1    MS. SHAW:  No, nothing further, your Honor.  Thank
2 you.
3    THE COURT:  Thank you, Ms. Shaw and everyone.
4 Have a great weekend.  We are adjourned.
5    (Adjourned)

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300