# EXHIBIT 12

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK; STATE OF CALIFORNIA; STATE OF COLORADO; STATE OF ILLINOIS; and STATE OF MINNESOTA,<br><br>                Plaintiffs,<br>           v.<br><br>ADMINISTRATION FOR CHILDREN AND FAMILIES; ALEX J. ADAMS, in his official capacity as the ASSISTANT SECRETARY OF THE ADMINISTRATION FOR CHILDREN AND FAMILIES; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; and ROBERT F. KENNEDY, JR., in his official capacity as the SECRETARY OF THE U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>                Defendants. | Case No. 26-cv-00172<br><br>**AMENDED DECLARATION OF JOSEPH HOMLAR** |

# AMENDED DECLARATION OF JOSEPH HOMLAR, DIRECTOR OF DIVISION OF CHILD WELFARE COLORADO DEPARTMENT OF HUMAN SERVICES

I, Joseph Homlar, pursuant to 28 U.S.C. § 1746 declare as follows:

1. I am a resident of the State of Colorado. I am over the age of 18, competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2. I am currently the Director of the Division of Child Welfare (DCW) at the Colorado Department of Human Services (CDHS). I have served in my current role for over 6 years and I have over 25 years of experience as a social worker and almost 19 years of professional experience specific to child welfare in many roles, including direct service and leadership, at both CDHS and in two different Colorado county departments of human services. As the Director of DCW, I oversee the delivery and quality of child welfare services throughout Colorado as administered by county departments of human services through their directors and boards of social services. Among funding sources utilized by CDHS and county departments of human services is the federal Social Services Block Grant (SSBG) which is utilized, in part, to provide funding to counties to deliver child maltreatment prevention and child protection services.

3. I submit this declaration in connection with Plaintiff States' Motion for a Preliminary Injunction pertaining, in part, to the January 6, 2026 directive letter

from the United States Department of Health and Human Services (HHS) Administration for Children and Families (ACF) restricting the State of Colorado's access to Social Services Block Grant (SSBG) funding (the SSBG Letter).

4. I have personal knowledge of the matters set forth below, or with respect to matters for which I do not have personal knowledge, I have reviewed information gathered from CDHS records by others within the organization.

**Federal Funding Relied Upon by Colorado**

5. In Colorado, CDHS provides child welfare services through a state supervised-county administered service model, under which CDHS establishes practice standards, provides training and technical assistance, and issues subawards for programmatic funding under several federal grant programs, including the SSBG program established pursuant to 42 U.S.C. § 1397 *et seq.*, to county departments of human/social services. CDHS has complied with the statutory requirements to receive SSBG funds, with its most recent Intended Use Plan (IUP) submitted on June 27, 2025 and set to expire on March 31, 2027.

6. Under the SSBG, CDHS receives approximately $27 million annually. Of the total SSBG allotment, DCW receives approximately $24 million.

7. Funding is authorized on a quarterly basis, via a Notice of Award providing a quarterly credit allotment, with the most recent Notice of Award having been issued by ACF on December 10, 2025. Funding is then drawn down on a daily basis, as authorized expenditures are incurred, against the quarterly credit allowance.

**Communications from ACF**

8. On January 6, 2026, ACF issued the SSBG Letter to Colorado Governor Jared Polis, indicating that Colorado "is not authorized to further draw down SSBG without complying with the terms of a temporary restricted drawn down[,]" until ACF completes a review of "the complete universe of SSBG administrative data that exist and are in the state's possession for all grantees, their recipients and subrecipients, for all available years and at least 2022 through 2025.

9. The same day, HHS issued an immediate press release stating that it "froze access" to SSBG grant funds for Colorado, and several other states.

10. As of the time of this amended declaration, SSBG funding continues to be withheld from Colorado and drawdowns remain pending. I am una BOLOware of any further communication, clarification, or guidance provided by ACF since the SSBG letter was issued.

**Harm to Colorado**

11. Colorado is currently and will continue to experience harm as a result of the SSBG letter, ACF's public communications, and the restrictions being placed on Colorado's access to SSBG funding.

12. Of the approximately $24 million in SSBG annual funding, DCW distributes approximately $18 million directly to child protection services through county departments of human services. These funds are then utilized to support adoption services, child welfare case management, and child placement and maltreatment prevention services.

13. In Colorado, child protection services are mandatory. When a county agency receives a report of concern, and the statutory criteria for child protection involvement is met, counties are required to investigate and provide services where necessary.

14. For context, during the Colorado state fiscal year ending June 30, 2025, county departments of human services received more than 118,000 child welfare referrals. Of these referrals, approximately 31,200 met criteria for child maltreatment investigations. Pursuant to these investigations, county child welfare services provided placement prevention and intervention services for approximately 14,400 children and youth, and out-of-home placement support for approximately 6,000 children and youth.

15. Based on state fiscal year 2025 data and existing funding sources, suspension of SSBG funding will reduce funding for county human services departments to provide vital services to children and families in need. These services include:

    a. Responding to reports of child abuse and neglect;

    b. Meeting with children and their families to assess child safety, parental protective capacity, and the willingness of parents and families to maintain and ensure a safe home environment;

    c. In situations where a vulnerable child's safety cannot be assured, assuming legal custody of that child and placing that child into protective care;

    d. Providing rehabilitative and supportive services to families in an effort to reunify families;

    e. When reunification with a child's primary caregivers or kin is not possible, ensuring permanency for a child through adoption or other means in a safe, loving family home environment.

16. As child protection services are mandatory, CDHS and its county partners must ensure that necessary services are provided regardless of funding availability. Loss of previously awarded SSBG funding would likely result in budgetary shortfalls for county departments providing child protection services, create the potential for reduction in staff and the efficacy of services, and may have potential consequences to other state and county programs to ensure adequate funding levels for child protection services are maintained.

17. Furthermore, SSBG funding is utilized to support child welfare related education, training, and information technology costs. This includes delivery of more than 500 vital trainings for approximately 6,500 new child protection caseworkers, casework supervisors, and foster parents and other caregivers.

18. SSBG funding also supports Colorado's statewide child protection information system, Trails. Trails is used by approximately 6,000 caseworkers and other qualified and credentialed staff by collecting critical data on children and youth involved in child welfare and youth services to ensure appropriate services are delivered, families are strengthened, and children and youth can safely grow and thrive within the foster care and juvenile justice systems.

19. DCW also applies SSBG funds towards allowable administrative costs, such as personnel services, Colorado Public Employees' Retirement Association (PERA), information technology, operating expenses, workers' compensation, risk management, legal services, and utilities.

20. I expect the ACF's freeze to impact the above services and programs. In addition, ACF's actions have created a significant administrative burden on DCW. To my knowledge, ACF's request for the "complete universe of SSBG administrative data" far exceeds what has historically been requested from ACF in terms of SSBG oversight. SSBG funds are utilized by departments of human services serving all 64 Colorado counties, providing broad support for program operations. Individual expenditures, receipts, invoices, and the like are held by the county agencies. It is virtually impossible to collate such detailed records from each county child welfare program, especially within the two weeks provided by ACF. Notwithstanding ACF's data request, each county department requires notice and direction on the status and availability of funds, creating a significant administrative burden. This burden is exacerbated by the cryptic and inconsistent communications from ACF, and the uncertainty as to whether funding remains available for restricted draw downs or if it is wholly inaccessible.

21. At a minimum, a restricted draw down creates operational and budgetary uncertainty, making administration and basic planning for the future nearly impossible.

22. As to the stated basis for ACF's actions, I am unaware of any reports or concerns of systemic fraud in the use of SSBG funding. SSBG funds are not provided as a direct client benefit, but rather are provided to counties for operational, personnel, and out-of-home placement costs. Deliberate misuse of child welfare services by clients is seldom heard of. Additionally, end-user client benefits received through child welfare programming are not easily exploited. These benefits are largely rehabilitative, therapeutic, and often court-ordered.

23. Furthermore, CDHS maintains multiple layers of oversight to monitor county practices and ensure lawful and appropriate use of state and federal funding. At the top, CDHS maintains a Public Assistance Cost Allocation Plan (PACAP) that carefully allocates expenditures to ensure SSBG and other federal grant funds are expended appropriately and for their lawful and intended purposes. This PACAP undergoes review and approval by both state and federal agencies, including ACF.

24. When expenditures are made against SSBG funds, they are subject to multiple levels of internal review and statewide financial audits.

25. At the individual case level, CDHS maintains an Administrative Review Division (ARD) to serve as an independent third-party review entity. ARD ARD reviews all cases involving children in out-of-home care and conducts semiannual audits of in-home and assessment cases.

26. The child protection system already faces financial strain, which is further emblematic of Colorado's interest in preventing fraud and misuse of child

welfare funding. Allegations of fraud and funding misuse are serious, thoroughly investigated, and appropriate action is taken, if needed.

27.    ACF's actions directly harm Colorado children and families. CDHS and its county partners have a legal duty to ensure the appropriate delivery of protective services for children suffering from maltreatment. Any reduction in resources to counties hinders their efforts to protect Colorado's children, and causes harm on an individual human level. Funding reductions limit placement and prevention services, result in greater need for out-of-home placement, further increasing funding needs and preventing reunification of families and permanency for children.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on January 13, 2026, in Denver, Colorado.

_____
Joseph Homlar
Director, Division of Child Welfare
Colorado Department of Human Services