# EXHIBIT 13

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK; STATE OF CALIFORNIA; STATE OF COLORADO; STATE OF ILLINOIS; and STATE OF MINNESOTA, <br><br> Plaintiffs, <br> v. <br><br> ADMINISTRATION FOR CHILDREN AND FAMILIES; ALEX J. ADAMS, in his official capacity as the ASSISTANT SECRETARY OF THE ADMINISTRATION FOR CHILDREN AND FAMILIES; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; and ROBERT F. KENNEDY, JR., in his official capacity as the SECRETARY OF THE U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, <br><br> Defendants. | Case No. 26-cv-00172 <br><br> **AMENDED DECLARATION OF AMY MILLER** |

# AMENDED DECLARATION OF AMY MILLER, DIRECTOR OF DIVISION OF AGING AND ADULT PROTECTIVE SERVICES COLORADO DEPARTMENT OF HUMAN SERVICES

I, Amy Miller, pursuant to 28 U.S.C. § 1746 declare as follows:

1. I am a resident of the State of Colorado. I am over the age of 18, competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2. I am currently the Director of Aging and Adult Protective Services (AAPS) at the Colorado Department of Human Services (CDHS). As the Director of AAPS, I oversee staff and operations for the State Unit on Aging as well as Adult Protective Services. I also oversee the 64 county departments of social/human services in the administration of their Adult Protective Services programs and the sixteen Area Agencies on Aging in the administration of programs and services funded by the Older Americans Act and State Funding for Senior Services. I am a Licensed Clinical Social Worker and have worked in the field of aging for more than fifteen years.

3. I submit this declaration in connection with Plaintiff States' Motion for a Preliminary Injunction pertaining, in part, to the January 6, 2026 directive letter from the United States Department of Health and Human Services (HHS) Administration for Children and Families (ACF) restricting the State of Colorado's access to Social Services Block Grant (SSBG) funding (the SSBG Letter).

4.  I have personal knowledge of the matters set forth below, or with respect to matters for which I do not have personal knowledge, I have reviewed information gathered from CDHS records by others within the organization.

**Federal Funding Relied Upon by Colorado**

5.  In Colorado, adult protection services are provided through a state supervised-county administered service model, under which CDHS establishes practice standards, provides training and technical assistance, and issues subawards for programmatic funding under several federal grant programs, including the SSBG program established pursuant to 42 U.S.C. § 1397 *et seq.*, to county departments of human/social services. County departments then conduct investigations, coordinate services, and engage directly with APS clients. CDHS has complied with the statutory requirements to receive SSBG funds, with its most recent Intended Use Plan (IUP) submitted on June 27, 2025 and set to expire on March 31, 2027.

6.  Under the SSBG, CDHS receives approximately $27 million annually. Of the total SSBG allotment APS receives approximately $2 million.

7.  Funding is authorized on a quarterly basis, via a Notice of Award providing for a quarterly credit allotment, with the most recent Notice of Award having been issued by ACF on December 10, 2025. Funding is then drawn down on a daily basis, as authorized expenditures are incurred, against the quarterly credit allowance.

**Communications from ACF**

8.      On January 6, 2026, ACF issued the SSBG Letter to Colorado Governor Jared Polis, indicating that Colorado "is not authorized to further draw down SSBG without complying with the terms of a temporary restricted drawn down[,]" until ACF completes a review of "the complete universe of SSBG administrative data that exist and are in the state's possession for all grantees, their recipients and subrecipients, for all available years and at least 2022 through 2025.

9.      The same day, HHS issued an immediate press release stating that it "froze access" to SSBG grant funds for Colorado, and several other states.

10.     ACF did not communicate any concerns related to Colorado's use of SSBG funding, including allegedly providing benefits to undocumented aliens with SSBG funds, or request to review SSBG related data or records prior to the issuance of the SSBG Letter or HHS's press release stating it was "freezing" Colorado's SSBG fund.

11.     As of the time of this amended declaration, SSBG funding continues to be withheld from Colorado and drawdowns remain pending. I am unaware of any further communication, clarification, or guidance provided by ACF since the SSBG letter was issued.

**Harm to Colorado**

12. Colorado is currently and will continue to experience harm as a result of the SSBG letter, ACF's public communications, and the restrictions being placed on Colorado's access to SSBG funding.

13. APS utilizes SSBG funding to provide direct support to county adult protection services programs. County programs, in turn, are charged with investigating reports of physical and sexual abuse, caretaker neglect, exploitation, and self-neglect of at-risk adults. Where appropriate, counties then provide support and case coordination services, such as connection to services such as nutrition programs; caregiver support; transportation providers; or support transitioning to a higher level of care. In rare circumstances an APS worker may serve as guardian of an at-risk adult, if no other options are available.

14. These services ensure the safety and well-being of Colorado's most vulnerable populations, including the elderly and developmentally disabled.

15. In Colorado, adult protection services are mandatory. When a county agency receives a report of concern, and the statutory criteria for adult protection involvement is met, counties are required to investigate and provide services where necessary.

16. For context, in Colorado state fiscal year 2025, county agencies received more than 35,000 adult protection reports. Further, county agencies managed approximately 9,000 adult mistreatment cases with ongoing need for services,

approximately 7,000 of which stemmed from investigations commenced during that year.

17.   Based on state fiscal year 2025 data and existing funding sources, suspension of SSBG funding represents more than a 10% reduction in funding for county adult protection agencies to provide vital services for vulnerable Coloradans. These services include intake and evaluation of reports of self-neglect and mistreatment; assignment of response priority; investigation of eligible reports; client risk/safety assessments; case planning; service coordination, and community education and outreach.

18.   As adult protection services are mandatory, CDHS and its county partners must ensure that necessary services are provided regardless of funding availability. Loss of previously awarded SSBG funding would likely result in budgetary shortfalls, creating the potential for reductions in county APS staff and the efficacy of services. Any failure by the counties to provide quality APS services caused by reductions in county staff would force AAPS to receive and investigate resulting complaints, and potentially take on other APS functions such as investigations and supportive services. AAPS does not have the ability to absorb these additional duties. Loss of SSBG funding would have similar potential consequences to other state and county programs, whose funds would potentially be depleted to ensure adequate funding levels for adult protection services are maintained.

19. ACF's actions have also created a significant administrative burden. To my knowledge, ACF's request for the "complete universe of SSBG administrative data" far exceeds what has historically been requested from ACF in terms of SSBG oversight. SSBG funds are utilized by departments of human services APS programs in all 64 Colorado counties, providing broad support for program operations. Individual expenditures, receipts, invoices, and the like are held by the county agencies. It is virtually impossible to collate such detailed records from each county APS program, especially within two weeks provided by ACF. Notwithstanding ACF's data request, each county program requires notice and direction on the status and availability of SSBG funds, creating a significant administrative burden. This burden is exacerbated by the cryptic and inconsistent communications from ACF, and the uncertainty as to whether and when funding will be available for restricted draw downs or if it is wholly inaccessible.

20. At a minimum, a restricted draw down creates operational and budgetary uncertainty, making administration and basic planning for the future nearly impossible.

21. As to the stated basis for ACF's actions, I am unaware of any reports or concerns of systemic fraud in the use of SSBG funding. Contrary to the suggestions in the SSBG letter, SSBG funding is not allocated as a direct client benefit and instead is issued to county agencies as subrecipients to support their APS operations. Furthermore, CDHS maintains multiple layers of oversight to monitor county practice and ensure lawful and appropriate use of state and federal funding.

22.    At the top, CDHS maintains a Public Assistance Cost Allocation Plan (PACAP) that carefully allocates expenditures to ensure SSBG and other federal grant funds are expended appropriately and for their lawful and intended purposes. This PACAP undergoes review and approval by both state and federal agencies, including ACF.

23.    When expenditures are made against SSBG funds, they are subject to multiple levels of internal review and statewide financial audits by CDHS.

24.    At the individual case level, CDHS maintains an Administrative Review Division (ARD) to serve as an independent third-party review entity. Within APS, ARD conducts annual quality assurance reviews of Adult Protective Services cases in each county, including assessment and investigation reviews, service provision reviews, and county-held guardianship reviews, ensuring program integrity and accountability.

25.    Further, working alongside the Colorado Office of the State Auditor, CDHS maintains a fraud, waste, and abuse hotline to detect and investigate alleged misuse of state and federal funding.

26.    ACF's directives and communications directly harm vulnerable Coloradans. When APS' ability to provide the level of investigation and services needed suffers as a result of inadequate or delayed funding, Colorado's at-risk adults are at greater risk for mistreatment and self-neglect. When APS cannot respond in an adequate or timely manner due to lack of resources, at-risk adults experiencing mistreatment or self-neglect are left in dangerous situations for longer

periods of time, increasing the risk of negative outcomes, including poorer physical and mental health, loss of financial resources due to exploitation, and even death. Premature case closures or incomplete investigations caused by lack of adequate resources puts clients at continued risk of future abuse and allows perpetrators continued access to at-risk adults.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on January 13, 2026, in Denver, Colorado.

*Amy Miller* (Digitally signed by Amy Miller, Date: 2026.01.13 15:21:09 -07'00')

Amy Miller
Director, Aging and Adult Protective Services
Colorado Department of Human Services