# EXHIBIT 23

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK; STATE OF CALIFORNIA; STATE OF COLORADO; STATE OF ILLINOIS; and STATE OF MINNESOTA,<br><br>     Plaintiffs,<br><br>     v.<br><br>ADMINISTRATION FOR CHILDREN AND FAMILIES; ALEX J. ADAMS, in his official capacity as the ASSISTANT SECRETARY OF THE ADMINISTRATION FOR CHILDREN AND FAMILIES; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; and ROBERT F. KENNEDY, JR., in his official capacity as the SECRETARY OF THE U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br>     Defendants. | Case No. 26-cv-00172 |

**DECLARATION OF KATHRYN WEEKS**

  1. I am a resident of the State of Minnesota. I am over the age of 18 and have personal knowledge of all the facts stated herein, except to those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

**Professional and Agency Background**

  2. The Minnesota Department of Children, Youth, and Families (DCYF) is responsible for the administration of public social services, except health care services and medical assistance, throughout Minnesota.

  3. I am an Assistant Commissioner within DCYF and have held this position since January 8, 2025. I currently assist with and share oversight of Minnesota programs that are

1

funded by the Child Care and Development Fund (CCDF); Temporary Assistance for Needy families (TANF); and the Social Services Block Grant (SSBG) (together, the "ACF Funds").

4. Prior to my employment with DCYF, I led the Minnesota Department of Public Safety Office of Justice Programs as the Executive Director. In this role, one of my responsibilities was to oversee granting of state and federal funds for crime victim services and programs, crime prevention and intervention programs, and youth delinquency and prevention and intervention work.

5. I am currently employed by DCYF as Assistant Commissioner of theEconomic Opportunity and Youth Services Administration. My educational background includes a Bachelor of Arts degree, Masters in Public Policy degree, and Juris Doctor degree. With my experience overseeing numerous state and federal funds, I understand the critical role that these funds serve in support of Minnesota's most vulnerable populations.

**Background on CCDF, TANF, and SSBG**

6. The ACF Funds help Minnesota provide food, shelter, childcare and other critical services to vulnerable Minnesotans —including children, the elderly, domestic violence victims, and lower-income families. ACF funds are disbursed to eligible households to assist families with children maintain stable housing, purchase food, clothing, and pay utilities such as electricity, gas, and water. TANF funds assist job seekers to prepare for and maintain employment by providing support services to employed adults.

     **CCDF**

7. The CCDF program provides over $12 billion nationwide annually in federal funding to support State, territorial, and tribal programs that provide low-income families with funding for childcare, so that those families can work or go to school. CCDF funds also support teacher training and development, as well as programming and consumer education that educates

parents about childcare options. CCDF is comprised of two separate funding streams: Child Care and Development Block Grant (CCDBG) and Child Care Entitlement to States (CCES).

8. To receive CCDF funds, Minnesota must comply with the Child Care and Development Block Grant Act (42 U.S.C. §§ 9858–9858r) and its implementing regulations at 45 C.F.R. Part 98, including an approved CCDF State Plan and adherence to federal requirements related to eligibility, parental choice, equal access, health and safety, quality investment, fiscal accountability, and program integrity. Minnesota last submitted a 2025-2027 plan amendment 2, which was approved on November 14, 2025.

9. In Minnesota, CCDF is administered by a joint interagency office comprised of DCYF and the Minnesota Department of Human Services. The Minnesota Department of Children, Youth, and Families (DCYF) is the designated Lead Agency for CCDF and holds primary responsibility for program administration and federal compliance.

10. For FY 2025, Minnesota was allocated approximately $180 million in CCDF funding (comprising CCDBG and CCES funds combined).

11. In FY 2025, Minnesota's CCDF program served 18,066 families, including 34,951 children, through payments to 3,156 child care providers statewide. CCDF investments also supported access to high-quality care for 22,512 children and strengthened the child care workforce and supply through targeted slot creation and retention, professional development, coaching, consumer education, and grant programs, including training events, quality coaching, scholarship and retention initiatives, and one-time stabilization and quality grants to licensed providers.

12. In Minnesota, CCDF funds support a range of entitlement programs, grants, and program administration and oversight. Payments are disbursed on a daily basis and federal draws

are typically initiated within one to two business days after the expenditure. Some programming, such as state entitlement programs, include a blend of state and federal CCDF funding which may allow Minnesota to continue to support critical activities for a period of time. However, a permanent freeze or long-term interruption in CCDF reimbursement will result in program disruptions and additional costs for the State.

**TANF**

13. TANF is a block grant program that provides over $16.5 billion nationwide annually in federal funding to States, territories, and tribal governments, who in turn provide cash assistance and non-cash benefits to low-income families with children. It is one of the largest sources of cash assistance to low-income American families. TANF was created through the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA, P.L. 104-193).

14. To receive TANF funds, Minnesota must submit to ACF a plan that outlines how it will conduct the TANF program in compliance with federal work requirements, privacy protections, and other provisions. 42 U.S.C. § 602(a). Minnesota submitted its most recent TANF plan in January 2024. Minnesota's TANF Plan details how Minnesota's TANF program complies with the four purposes of TANF outlined in 45 C.F.R. § 260.20: (1) Provide assistance to needy families so children can be cared for in their own homes or in the homes of relatives; (2) End the dependence of needy parents on government benefits by promoting job preparation, work, and marriage; (3) Prevent and reduce out-of-wedlock pregnancies, especially among teenagers; (4) Encourage the formation of and maintenance of two-parent families. States use federal TANF funds to achieve these goals, focusing on helping families become self-sufficient.

15. TANF funds are allocated according to a mandatory formula based on the share each State had of TANF funding in 2002. Minnesota currently receives approximately $260 million annually in TANF funds.

16. In Minnesota, TANF is administered by DCYF through the Minnesota Family Investment Program (MFIP) and provides cash and food assistance to eligible low-income households. MFIP is administered by local county and Tribal agencies. As of October 2025, approximately 23,000 families, including approximately 44,000 children, were accessing the MFIP program.

17. In Minnesota, TANF funds support a range of entitlement programs, grants, and program administration and oversight. Minnesota TANF funds are utilized to partner with the Department of Health for community health boards (CHBs) and Tribal Nations for family support programs. Services funded with TANF funds are targeted toward families with children or pregnant women who are at or below 200 percent of the federal poverty guidelines and exhibit risk factors such as a history of child abuse or neglect, substance abuse, or homelessness. The funds are specifically for non-medical interventions designed to foster healthy beginnings, improve pregnancy outcomes, promote school readiness, and prevent child abuse and neglect. The primary goal of using TANF funds aligns with federal TANF objectives, including providing assistance so children can be cared for in their homes, ending dependence on government benefits, and promoting self-sufficiency and family well-being. Payments are disbursed on a daily basis and federal draws are typically initiated within one to two business days after the expenditure. Some programming includes a blend of state and federal TANF funding which may allow Minnesota to continue to support critical activities for a period of time. However, a

permanent freeze or long-term interruption in TANF reimbursement will result in program disruptions and additional costs for the State.

**SSBG**

18. The SSBG program provides $1.7 billion nationwide annually in federal funding to States, providing them with "flexibility" and funding to support social services in one of five categories: (1) "achieving or maintaining economic self-support"; (2) "achieving or maintaining self-sufficiency"; (3) addressing neglect, abuse, or exploitation of children and vulnerable adults; (4) preventing institutional care and supporting community-based care; and (5) where institutional care is needed, supporting application and admission and providing services to institutionalized individuals. 42 U.S.C. § 1397.

19. Congress has provided that SSBG funds must be allocated based on each state's percentage of the national population, based on census data. 42 U.S.C. § 1397b(b). Unlike CCDF and TANF, States are not required to submit a State plan to be eligible for SSBG funding. Instead, Minnesota must submit annual reports describing how it used the funds in the year prior. 42 U.S.C. § 1397e; see also 45 C.F.R. § 96.74. Minnesota submitted its most recent annual report on Dec. 22, 2025.

20. For FY 2025, Minnesota was allotted approximately $27 million in SSBG funds.

21. SSBG funds support several social service programs, most of which are administered locally by counties and supervised by DCYF and DHS. These programs include child protection, foster care, and adoption services, adult protection, counseling, education and training, prevention services, transportation, and residential treatment. SSBG funds also to support grants for Indian child welfare legal services and migrant day care.

22. In FY 2025, approximately 395,000 Minnesotans—including approximately 215,000 children—received SSBG-funded services.

23. In Minnesota, the majority of SSBG funds are allocated to counties on an annual basis and disbursed in monthly payments. Federal reimbursement is typically drawn within one to two business days of payments being made to counties. If these federal funds were not available, there are no other funds appropriated as a substitute for these payments.

**The Funding Freeze Letters**

24. On January 5 and 6, 2026, ACF sent correspondence to Minnesota relating to CCDF, TANF, and SSBG (collectively, the "Freeze Letters"). A true and correct copy of each of the Freeze Letters are attached hereto as Exhibits A through C.

**The CCDF Letter**

25. Minnesota received its CCDF Letter on January 5, 2026. The CCDF letter states that "[ACF] has placed the State of Minnesota on a restricted drawdown status for all Child Care and Development Fund (CCDF) awards administered by your office."

26. The CCDF Letter outlines the conditions that Minnesota must meet before any further CCDF funds may be accessed and is attached as Exhibit A.

**The TANF Letter**

27. The TANF Letter states that "[e]ffective today," ACF is reviewing Minnesota's "TANF State Plan for completeness and for program compliance with applicable laws. As a result, ACF is placing the state TANF program on a restricted drawdown in accordance with 2 C.F.R. § 200.339."

28. The TANF Letter makes three specific demands.

29. First, the TANF Letter requires Minnesota to "provide the complete universe of TANF administrative data that exist and are in the state's possession for all recipients for all available years, and at least 2022 to 2025. This includes recipient name, address, Social Security

7

Number (if collected), date of birth, A-number (as applicable), and any state identification numbers used for program administration."

30. Second, the TANF Letter demands "documentation demonstrating that Minnesota has verified the eligibility of all TANF applicants and recipients in accordance with the requirements of the Personal Responsibility and Work Opportunity Reconciliation Act, 8 U.S.C. § 1611, which limits TANF eligibility to United States citizens and qualified aliens. This documentation should include the policies, procedures, system controls, and verification records used by [Plaintiff States] to confirm citizenship or qualified alien status during the application and recertification processes."

31. Third, the TANF Letter requests "a comprehensive list of all organizations, subcontractors, service providers, local agencies, community groups, and any other entities that received TANF funds from Minnesota, directly or indirectly, during the period from 2019 through 2025. For each organization, to the extent the information exists and is in the state's possession, I request the amount of TANF funding provided, the purpose for which the funds were awarded, and documentation describing the State's oversight mechanisms, monitoring activities, and verification processes used to ensure proper use of TANF dollars."

32. The TANF Letter sets a deadline of January 20, 2026 for Minnesota to provide the required information.

33. The Letter states that Minnesota will be placed "on a temporary restricted drawdown for all TANF funds provided by ACF until further notice, pending review of the state's current TANF plan for completeness and ACF confirming compliance with applicable laws."

**The SSBG Letter**

34. The SSBG Letter states that "ACF will be conducting a thorough review of the State's use of funding. As a result, ACF is notifying your office that the State is not authorized to further draw down" SSBG funds "without complying with the terms of a temporary restricted draw down until this review is complete."

35. The SSBG Letter make three specific demands of Minnesota that are nearly identical to the requests made in the TANF Letter described above. The SSBG Letter also sets a deadline of January 20, 2026 for Minnesota to provide the information requested.

**Harms associated with the Funding Freeze**

36. The Child Care Assistance Program provides financial assistance to help families with low incomes pay for child care so that parents can work, and children are well cared for and thrive as learners. Without access to child care, families may lose their jobs. Children could be left uncared for or in less stable care settings. Child care providers may close or need to downsize due to lost revenue. The Minnesota economy may be impacted, as employers rely on families having access to affordable, stable child care.

37. The loss of CCDF resources would significantly harm Minnesota's child care system, families, providers, and the state economy. CCDF supports the Child Care Assistance Program, which enables low-income families to afford child care so parents can work or attend school. Without these funds, families could lose access to care and employment, and providers could face reduced revenue, capacity, or closure. Programs rely on CCDF funding to meet licensing requirements for training and background studies. Without this funding, children could be left in the care of unqualified caregivers, including individuals with disqualifying criminal histories. CCDF quality set-aside funds support core statewide systems, including Child Care Resource and Referral agencies, provider training and professional development, the Parent

Aware quality rating system, background studies, and related data systems, as well as infant and toddler supports such as ParentAware.org, coaching, and consultation services. Loss of these funds would undermine licensing and safety requirements, reduce the availability of qualified caregivers, and destabilize Minnesota's early care and education infrastructure.

38. Nearly ninety-three percent of Minnesota's SSBG allocation is paid to counties to support the needs of vulnerable children, adolescents, and adults. Minnesota combines its SSBG allocation with an additional $4.8 million per year from TANF to distribute about $2.5 million to counties each month. Counties use these funds for the provision of social services. If these federal funds are not available, Minnesota does not have access to another financial source to replace the SSBG funds, causing local agencies to lose funding and end SSBG-funded supports for children, adolescents, and adults.

39. Losing TANF funding can create serious risks for the 23,000 Minnesota families, and 44,000 children, and communities. Without TANF cash assistance, families may struggle to afford basic needs like food, housing, utilities, diapers, and clothing, increasing homelessness and food insecurity. Increased financial stress can lead to neglect, unstable housing, or unsafe living conditions, and may increase involvement with child welfare systems. Losing funding can make it harder for parents to work or stay employed. Loss of TANF funding increases strain on other public systems such as emergency shelters, food banks, Medicaid, schools, and hospitals, increasing costs elsewhere. Loss of TANF funding can lead to higher long-term costs due to increased poverty, poorer health outcomes, and lower educational attainment. Children raised in deep poverty are more likely to experience academic difficulties, health issues, and reduced earning potential as adults. TANF funds often help survivors leave abusive situations. Losing funding may keep individuals, including children, in unsafe relationships.

40. The following draw down requests are drawdowns which DCYF understands to be within the scope of the January 5 and January 6 letters and remain pending as of January 14, 2026:

| Program Type | Date of Drawdown Submission | Amount | STATUS |
|---|---|---|---|
| TANF | 1/13/2026 | $239,964.70 | PENDING |
| TANF | 1/13/2026 | $1,209,075.44 | PENDING |
| CCDF | 12/31/2025 | $459,524.15 | REJECTED on 1/5/26 (Requested again on 1/12/26; Rejected again on 1/12/26) |
| CCDF | 12/31/2025 | $920,969.40 | REJECTED on 1/5/26 (Requested again on 1/12/26; Rejected again on 1/12/26) |
| CCDF | 1/5/2026 | $7,357.34 | REJECTED on 1/12/26 |
| CCDF | 1/5/2026 | $255,919.85 | REJECTED on 1/12/2026 |
| CCDF | 1/6/2026 | $425.59 | REJECTED on 1/12/26 |
| CCDF | 1/6/2026 | $52,390.79 | REJECTED on 1/12/26 |
| CCDF | 1/12/2026 | $23,686,271.22 | REJECTED on 1/12/26 |
| CCDF | 1/12/2026 | ($23,272,369.36) | REJECTED on 1/12/26[1] |
|  |  |  |  |
| **TOTAL PENDING** |  | $1,449,040.14 |  |
| **TOTAL DENIED** |  | $2,110,488.88 |  |

**The Feasibility of the Data and Documentation Demands**

41. I am informed and believe that the scope of the data and documentation demands is not how any oversight body has ever conducted quality control, audits, or any other program integrity purpose relating to CCDF, TANF, or SSBG.

---

[1] Note: This is an expenditure correction to move expenditures from the 2025 CCDF award back to the 2024 CCDF award. This corrects an erroneous draw on the 2025 award made prior to 12/31/2025 that should've been drawn on the 2024 award.

42. Furthermore, attempting to comply with the onerous data and documentation demands would require the re-deployment of significant personnel and resources diverted from administering Minnesota's critical programs.

43. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on January 15, 2026, at St. Paul, MN.

_____
KATHRYN WEEKS
Assistant Commissioner – Economic Opportunity
and Youth Services Administration
MN Department of Children, Youth, and Families