

Office of the New York State  
Attorney General

Letitia James  
Attorney General

January 30, 2026

Honorable Vernon S. Broderick  
Thurgood Marshall United States Courthouse  
40 Foley Square  
New York, NY 10007

      Re: *New York v. Administration for Children and Families*, Case No. 26-cv-00172

Dear Judge Broderick,

      I write on behalf of all Parties in this action to provide the joint letter requested by the Court in its January 23, 2026 Order extending the Temporary Restraining Order, ECF No. 64 ("Order").

### 1. Parties' Respective Positions on a Bond

*Defendants' Position:*

      Defendants' request for a bond is based on Federal Rule of Civil Procedure 65(c) and required by the President's March 11, 2025 Memorandum titled "Ensuring the Enforcement of Federal Rule of Civil Procedure 65(c)," *see* https://www.whitehouse.gov/presidential-actions/2025/03/ensuring-the-enforcement-of-federal-rule-of-civil-procedure-65c/. Current DOJ policy also requires this Office to include a request for bond when opposing a preliminary injunction. HHS has represented that since the Court entered the Temporary Restraining Order on January 9, 2026, Plaintiffs have drawn down $282,349,826.17 in the three programs at issue. Accordingly, HHS will request that plaintiffs post an initial bond of $282,349,826.17. Should the Court grant this request of bond, HHS further requests that the Court require Plaintiffs to post a supplemental bond, should the current estimate fall short of the actual expenditure. A bond of $282,349,826.17 will ensure that funds are protected and possibly available for programmatic purposes should it later be determined that HHS was wrongfully enjoined. *See, e.g., Com. of Puerto Rico v. Price Comm'n*, 342 F. Supp. 1308, 1309 (D.P.R. 1972) (noting a prior order for the Commonwealth of Puerto Rico to pay a $100,000 bond under FRCP 65(c)).

*Plaintiffs' Position:*

      Defendants' request for a bond of over $282 million is patently unreasonable.

The Court is "'vested with wide discretion'" in determining what amount of security, if any, is appropriate under Federal Rule of Civil Procedure 65(c). *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) (quoting *Ferguson v. Tabah*, 288 F.2d 665, 675 (2d Cir. 1961)). "Courts have the discretion . . . to require no security at all depending on the specific circumstances." *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 86 (2d Cir. 2024). The Court should exercise its discretion to not require Plaintiffs to post bond because this is a "case involving the enforcement of public interests arising out of comprehensive federal health and welfare statutes." *Pharm. Soc'y of State of New York, Inc. v. New York Dep't of Soc. Servs.*, 50 F.3d 1168, 1174 (2d Cir. 1995) (cleaned up) (explaining that the "central consideration" is "the nature of the rights being enforced"). Requiring states to post security, particularly hundreds of millions of dollars, in order to effectuate federal welfare programs would frustrate Plaintiff States' enforcement of the public's interest.

A bond of this magnitude would not only "place too great a burden on litigation pursued in the public interest," *Pharm. Soc'y of State of New York, Inc.,* 50 F.3d at 1175, but would also "have the effect of denying [] plaintiffs their right to judicial review of administrative action," *New York v. U.S. Dep't of Just.,* 25-CV-00345, 2025 WL 2618023, at *25 (D.R.I. Sept. 10, 2025). And as other courts have observed, "requiring a bond as a condition of obtaining an injunction against unlawful executive action under the circumstances presented here would risk deterring other litigants from pursuing their right to judicial review of unlawful executive action." *California v. Trump*, 786 F. Supp. 3d 359, 395 (D. Mass. 2025) (citing *LULAC v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 225 (D.D.C. 2025)). Where, as here, "HHS is alleged to have unlawfully terminated large sums of appropriated and committed funds to numerous recipients against Congress's will and in excess of HHS' statutory authority, it would defy logic . . . to hold the States hostage for the resulting harm." *Colorado v. U.S. Dep't of Health & Hum. Servs.,* 788 F. Supp. 3d 277, 315 (D.R.I. 2025) (quotation omitted), *appeal dismissed*, No. 25-1671, 2025 WL 4057116 (1st Cir. July 29, 2025).

Further, it is "proper for the court to require no bond where," as here, "there has been no proof of likelihood of harm." *Doctor's Assocs.*, 85 F.3d at 985 (2d Cir. 1996) (quoting *Ferguson*, 288 F.2d at 675). Defendants have, beyond the bare allegations in their letters, not made any showing of harm to justify that a bond, let alone a bond of over $280 million, is necessary to effectively screen and claw back any alleged fraudulent spending of ACF program funds. The compliance procedures Congress set forth *already* provide Defendants a mechanism to recoup every dollar of any funds found to have been spent unlawfully. *See* 42 U.S.C § 9858g (CCDF); 42 U.S.C. § 609 (TANF); 42 U.S.C. § 1397e (SSBG). That was precisely the holding in *California v. United States Dep''t of Agriculture*, where the court declined to impose a bond because "there is no showing that a realistic likelihood of harm to USDA will occur" given that "USDA could . . . impose any amount of [SNAP] disallowance it finds appropriate" via statutory mechanisms. No. 25-CV-06310-MMC, 2025 WL 2939227, at *14 (N.D. Cal. Oct. 15, 2025) (quotation omitted). Defendants offer no explanation on this point, simply asserting in generic terms that a bond would "ensure that funds are protected."

Plaintiff States are aware of no instance in which a Court has issued a bond anywhere comparable to the one Defendants propose, and Defendants cite none (the lone case they cite includes a bond that is 00.03% percent of the amount sought here). The Court should follow the overwhelming consensus of courts adjudicating similar cases in which the state challenged action by the federal government and forego the bond, or if the Court decides to impose a bond, require

only a nominal amount. *See e.g.*, *New York v. Trump*, 769 F. Supp. 3d 119 (D.R.I.) (no bond); *New York v. U.S. Dep't of Just.*, 25-CV-00345, 2025 WL 2618023, at *25 (D.R.I. Sept. 10, 2025) (no bond); *New York v. Noem*, 25-CV-8106, ECF No. 12 at 2 (S.D.N.Y. Oct. 1, 2025) ($10 bond); *New York v. U.S. Dep't of Education*, 25-CV-02990, ECF No. 106 at 3 (S.D.N.Y. Jun. 3, 2025) ($1,000 bond); *New York v. Kennedy*, 789 F. Supp. 3d 174, 214 (D.R.I. 2025) ($100 bond); *California v. Trump,* 786 F. Supp. 3d 359, 395 (D. Mass. 2025) (no bond); *Maryland v. Corp. for Nat'l & Cmty. Serv.*, 785 F. Supp. 3d 68, 125 (D. Md. 2025) ($100 bond); *New York v. McMahon*, 784 F. Supp. 3d 311, 373 (D. Mass. 2025) (no bond); *Colorado v. U.S. Dep't of Health & Hum. Servs.,* 788 F. Supp. 3d 277, 315 (D.R.I. 2025) (no bond); *Maine v. United States Dep't of Agric.*, 778 F. Supp. 3d 200, 238 (D. Me. 2025) ($1,000 bond); (*Washington v. United States Dep't of Educ.*, No. C25-1228-KKE, 2025 WL 3004675, at *12 (W.D. Wash. Oct. 27, 2025) (no bond); *California v. U.S. Dep't of Agriculture*, 25-CV-06310, ECF No. 106 at 24 (N.D. C.A. Oct. 15, 2025) (no bond); *California v. United States Dep't of Transportation*, 788 F. Supp. 3d 316, 324 (D.R.I. 2025) (no bond).

### 2. Potential Stipulation

As directed by the Court, the Parties conferred as to whether they could "stipulate to hold in abeyance during the pendency of this litigation (or another time frame agreed to by the parties) Defendants' plans to implement any "temporary restricted drawdown" and/or a freeze of the disbursement of funds related to Plaintiffs in connection with the Child Care Development Fund, Temporary Assistance for Needy Families, and Social Services Block Grants programs." Order at 2. However, they were unable to reach agreement.

Sincerely,

Molly Thomas-Jensen
*Attorney for Plaintiff State of New York*