cryptocurrency Ponzi...

December 18, 2025



✉ **Southern District of New York**
26 Federal Plaza, 37th Floor
New York, NY 10278

📞 Main Office & Criminal Division: (212) 637-2200

ACF 000615

1/5/2026 3:05:21 PM (GMT)                                                                                               Page 1 of 6

# SSBG Pre-Expenditure Report

Year: 2026  Group: New York

## Contacts

| Contact Type Name | First Name | Last Name | Title | Agency | Street1 | Street2 | City | State Name | Zip | Phone Number | Fax Number |
|---|---|---|---|---|---|---|---|---|---|---|---|
| State CFO Contact Info | Mala | Boolchandani | Director of Finance | New York State Office of Children and Family Services | 52 Washington St. | | Rensselaer | New York | 12144 | 518-486-7217 | |
| State SSBG Contact Info | Christine | McNall | Policy Analyst | New York State Office of Children and Family Services | 52 Washington St. | | Rensselaer | New York | 12144 | 518-402-1362 | |
| State Official Contact Info | DaMia | Harris-Madden | Commissioner | New York State Office of Children and Family Services | 52 Washington St. | | Rensselaer | New York | 12144 | 518-473-7793 | |

## Definitions

| | |
|---|---|
| Child | A child means a person actually or apparently under the age of 18 years or a person under the age of 21 years whose guardianship and custody have been committed to a social services official or a voluntary authorized agency |
| Adult | Adult protective services are available to New Yorkers age 18 or older, living in the community, who due to physical or mental impairment are at risk of abuse, neglect, or exploitation |
| Family | The basic family unit consisting of one or more adults and children, if any, related by blood, or law, and residing in the same. |

## Assurances

| Assurance Name | Yes | No | Comment |
|---|---|---|---|
| Is the total amount of funds transferred from TANF to SSBG equal to the amount reported for the related period in the TANF financial report (ACF196R)? | | X | The ACF196R includes the transfer amounts for Title XX while this pre-expenditure report is an estimation of the actual spending |
| The grantee certifies that funds transferred from TANF to SSBG comply with the statutory requirements described in Section 404(d) of the Social Security Act. | X | | |
| The grantee certifies that no carryover extends beyond the two year expenditure period outlined in the code Sec.2002 42 U.S.C. 1397a (c) | X | | |
| Was the actual use of funds transferred from TANF to SSBG reflected in the pre-expenditurereport? | | X | It is an estimate based on prior year actual data |

## Expenditures and Recipients

Source: SSBG Data Collection System
For technical assistance, please contact the SSBG Technical Team at support@ssbgportal.net.

ACF 000616

# SSBG Pre-Expenditure Report

Year: 2026  Group: New York

| Service Categories | Current Year SSBG and CBG Allocation Expenditures | Carried Over SSBG and CBG Allocation Expenditures | Funds Transferred into SSBG | Carry Over of Funds Transferred into SSBG from Previous FY | Expenditures of All Other Federal, State, and Local Funds | Total Expenditures | Public | Private | Include All | Children | Adults Age 59 Years & Younger | Adults Age 60 years & Older | Adults of Unknown Age | Total Adults | Total Recipients | Actual | Estimated | Sampled | Duplicated | Unduplicated | Eligibility Comment | Email |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1) Adoption Services | $0 | $0 | $0 | $0 | $0 | $0 | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |
| 2) Case Management | $0 | $0 | $0 | $0 | $0 | $0 | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |
| 3) Congregate Meals | $0 | $0 | $0 | $0 | $0 | $0 | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |
| 4) Counseling Services | $0 | $0 | $0 | $0 | $0 | $0 | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |
| 5) Day Care - Adults | $0 | $0 | $0 | $0 | $0 | $0 | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |
| 6) Day Care - Children | $0 | $0 | $3,281,889 | $0 | $30,457,579 | $33,739,468 | X | X | X | 106,154 | 0 | 0 | 0 | 0 | 106,154 | X | | | X | Title XX: For children under 13 years of age at the time of the eligibility determination. For child care services provided under the New York State Child Care Block Grant Program, a child who turns 13 years of age remains eligible for assistance through the end of the eligibility period or until the child reaches 14 years of age, unless otherwise eligible under paragraph | |

Source: SSBG Data Collection System
For technical assistance, please contact the SSBG Technical Team at support@ssbgportal.net.

# SSBG Pre-Expenditure Report

Year: 2026  Group: New York

| Service Categories | Current Year SSBG and CBG Allocation Expenditures | Carried Over SSBG and CBG Allocation Expenditures | Funds Transferred into SSBG | Carry Over of Funds Transferred into SSBG from Previous FY | Expenditures of All Other Federal, State, and Local Funds | Total Expenditures | Public | Private | Include All | Children | Adults Age 59 Years & Younger | Adults Age 60 years & Older | Adults of Unknown Age | Total Adults | Total Recipients | Actual | Estimated | Sampled | Duplicated | Unduplicated | Eligibility Comment | Email |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | | | | | | (2) or (3). For child care services provided under Title XX of the federal Social Security Act or provided as child protective services or preventive services under other than the New York State Child Care Block Grant Program, a child who turns 13 years of age during a school year may continue to receive child care services through the end of that school year. | |
| 7) Education and Training Services | $0 | $0 | $0 | $0 | $0 | $0 | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |
| 8) Employment Services | $0 | $0 | $0 | $0 | $0 | $0 | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |
| 9) Family Planning Services | $0 | $0 | $0 | $0 | $0 | $0 | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |
| 10) Foster Care Services - Adults | $0 | $0 | $0 | $0 | $0 | $0 | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |

# SSBG Pre-Expenditure Report

Year: 2026  Group: New York

| Service Categories | Current Year SSBG and CBG Allocation Expenditures | Carried Over SSBG and CBG Allocation Expenditures | Funds Transferred into SSBG | Carry Over of Funds Transferred into SSBG from Previous FY | Expenditures of All Other Federal, State, and Local Funds | Total Expenditures | Public | Private | Include All | Children | Adults Age 59 Years & Younger | Adults Age 60 years & Older | Adults of Unknown Age | Total Adults | Total Recipients | Actual | Estimated | Sampled | Duplicated | Unduplicated | Eligibility Comment | Email |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11) Foster Care Services - Children | $0 | $0 | $0 | $0 | $0 | $0 | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |
| 12) Health-Related Services | $0 | $0 | $0 | $0 | $0 | $0 | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |
| 13) Home-Based Services | $0 | $0 | $0 | $0 | $0 | $0 | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |
| 14) Home-Delivered Meals | $0 | $0 | $0 | $0 | $0 | $0 | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |
| 15) Housing Services | $0 | $0 | $0 | $0 | $0 | $0 | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |
| 16) Independent/Transitional Living Services | $0 | $0 | $0 | $0 | $0 | $0 | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |
| 17) Information and Referral | $0 | $0 | $0 | $0 | $0 | $0 | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |
| 18) Legal Services | $0 | $0 | $0 | $0 | $0 | $0 | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |
| 19) Pregnancy and Parenting | $0 | $0 | $0 | $0 | $0 | $0 | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |
| 20) Prevention and Intervention | $0 | $0 | $99,714,074 | $0 | $220,976,502 | $320,690,576 | X | X | X | 91,614 | 33,022 | 2,451 | 0 | 35,473 | 127,087 | | X | | | X | Title XX: Prevention service to children for prevention of placement of a child in foster care; for adult, for prevention of domestic violence | |
| 21) Protective Services - Adults | $66,000,000 | $0 | $894,335 | $0 | $142,775,295 | $209,669,630 | X | X | X | 0 | 13,900 | 37,284 | 0 | 51,184 | 51,184 | | X | | | X | Title XX Services: protecting Adult from Domestic Violence | |

Source: SSBG Data Collection System
For technical assistance, please contact the SSBG Technical Team at support@ssbgportal.net.

ACF 000619

1/5/2026 3:05:21 PM (GMT)

Page 5 of 6

# SSBG Pre-Expenditure Report

Year: 2026  Group: New York

| Service Categories | Current Year SSBG and CBG Allocation Expenditures | Carried Over SSBG and CBG Allocation Expenditures | Funds Transferred into SSBG | Carry Over of Funds Transferred into SSBG from Previous FY | Expenditures of All Other Federal, State, and Local Funds | Total Expenditures | Public | Private | Include All | Children | Adults Age 59 Years & Younger | Adults Age 60 years & Older | Adults of Unknown Age | Total Adults | Total Recipients | Actual | Estimated | Sampled | Duplicated | Unduplicated | Eligibility Comment | Email |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 22) Protective Services - Children | $22,464,220 | $0 | $102,649,286 | $0 | $251,901,271 | $377,014,777 | X | X | X | 81,066 | 0 | 0 | 0 | 0 | 81,066 | | X | | | X | Title XX: Services protecting children from domestic violence | |
| 23) Recreation Services | $0 | $0 | $0 | $0 | $0 | $0 | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |
| 24) Residential Treatment | $0 | $0 | $0 | $0 | $0 | $0 | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |
| 25) Special Services - Disabled | $0 | $0 | $0 | $0 | $0 | $0 | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |
| 26) Special Services - Youth at Risk | $0 | $0 | $0 | $0 | $0 | $0 | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |
| 27) Substance Abuse Services | $0 | $0 | $0 | $0 | $0 | $0 | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |
| 28) Transportation | $0 | $0 | $0 | $0 | $0 | $0 | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |
| 29) Other Services | $0 | $0 | $0 | $0 | $0 | $0 | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |
| 30) SUM OF EXPENDITURES FOR SERVICES | $88,464,220 | $0 | $206,539,584 | $0 | $646,110,647 | $941,114,451 | | | | 278,834 | 46,922 | 39,735 | 0 | 86,657 | 365,491 | | | | | | | |
| 31) Administrative Costs | $4,656,012 | $0 | $0 | $0 | | $4,656,012 | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |
| 32) SUM OF EXPENDITURES FOR SERVICES AND ADMINISTRATIVE COSTS | $93,120,232 | $0 | $206,539,584 | $0 | $646,110,647 | $945,770,463 | | | | 278,834 | 46,922 | 39,735 | 0 | 86,657 | 365,491 | | | | | | | |
| 33) Total SSBG Expenditures | $299,659,816 | | | | | | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |
| 34) Remaining funds to be carried over into the next fiscal year | $92,546,856 | $3,952,179 | | | | | | | | 0 | 0 | 0 | 0 | 0 | 0 | | | | | | | |

Source: SSBG Data Collection System
For technical assistance, please contact the SSBG Technical Team at support@ssbgportal.net.

ACF 000620

1/5/2026 3:05:21 PM (GMT)                                                    Page 6 of 6

# SSBG Pre-Expenditure Report

Year: 2026  Group: New York

### Comments

| | |
|---|---|
| **From which block grant(s) were these funds transferred:** | TANF funds |
| **\*\*Please list the sources of these funds:** | Federal, State and Local |
| **\*\*\*Please list other services:** | |
| **Additional Comments** | |

Source: SSBG Data Collection System
For technical assistance, please contact the SSBG Technical Team at support@ssbgportal.net.

ACF 000621



ADMINISTRATION FOR
CHILDREN & FAMILIES
330 C Street, S.W., Washington, DC 20201    www.acf.hhs.gov

May 15, 2024

Ms. Barbara C. Guinn
Acting Commissioner
New York State Office of Temporary and Disability Assistance
40 North Pearl Street
Albany, NY  12207-2729

Dear Ms. Guinn:

In accordance with section 402(a) of the Social Security Act, New York must periodically renew its funding status to continue to be eligible to receive federal funds under the Temporary Assistance for Needy Families (TANF) program. This renewal process requires the state to submit a TANF plan that contains all the required elements listed in section 402 of the Social Security Act, including the certifications specified under sections 402(a)(2)-(8). I am pleased to inform you that, as of January 1, 2024, New York continues to qualify as an eligible state under the TANF program. Accordingly, New York is entitled to an annual SFAG of $2,434,868,931 subject to the availability of funds.

Under section 402 of the Social Security Act, the Secretary of Health and Human Services has authority to determine completeness of a state's TANF plan but lacks the authority to approve or disapprove a plan. Therefore, the determination of completeness should not be construed as an approval of any particular activity, or as a determination that any particular expenditure is an allowable use of federal TANF or state maintenance-of-effort funds.

If you have any questions about the information in this letter, please contact Ms. Shantel Mickens, the TANF Program Manager for Region II, at (646) 905-8143 or Shantel.Mickens@acf.hhs.gov.

Sincerely,

Julie L.
Siegel -S

Digitally signed by Julie
L. Siegel -S
Date: 2024.05.15
14:01:08 -04'00'

Julie L. Siegel
Director
Division of State TANF Policy

ACF 000622

# STATE PLAN

## Outline of The General Provisions of Its Temporary Assistance for Needy Families (TANF) Program

(a) The State intends to do the following:

1. Conduct a program, designed to serve all political subdivisions in the State (not necessarily in a uniform manner), that provides assistance to needy families with (or expecting) children and promotes individual responsibility and family independence. The primary component of such program will be entitled the Family Assistance (FA) program. The State will fulfill these goals by conforming to the program policy provisions described herein.

   All of the following determinations made as of September 30, 1996, in regard to any individual AFDC recipient shall continue to apply to that recipient under the TANF program:

   i. State hearing decisions and any court decisions based thereon

   ii. Overpayments and recoupments

   iii. Disqualifications, sanctions, and occurrences

   iv. Child support arrearages or collections assigned to the State

   v. Time limited income disregards

   vi. Accrued months of assistance underlying any claim for transitional Medicaid (MA) and child care

2. Section 407of the Social Security Act requires a parent or caretaker receiving assistance under the program to engage in work (as defined by the State) once the State determines the parent or caretaker is ready to engage in work, or once the parent or caretaker has received assistance under the program for 24-months (whether or not consecutive), whichever is earlier. New York will fulfill this goal by requiring all individuals to be assessed and assigned to work, with certain limited exemptions from federally countable work activity requirements, provided that there is no exemption from the 24-month work requirement.

   i. The following are the only exemptions from federally countable work activities:

      a. Single custodial parents caring for children who have not attained six years of age, and the individuals prove that they have a demonstrated inability (as determined by the State) to obtain needed child care, for one or more of the following reasons:

         I. Unavailability of appropriate child care within a reasonable distance from the individual's home or work site;

         II. Unavailability or unsustainability of informal child care by a relative or under other arrangements;

         III. Unavailability of appropriate and affordable child care arrangements;

      b. Custodial parents or caretakers of children under one year of age for a total of 12-months (lifetime), with only 3-months exemption for any one child of the

1

ACF 000623

parent or caretaker, unless the district decides to use more than the 3-months or all of the maximum 12-month period for any one child;

 c. A woman who is pregnant, beginning 30 days prior to the medically verified date of delivery of the child;

 d. Individuals who are ill, incapacitated, sixty years old or older, or disabled pursuant to State law;

 e. An individual whose full-time presence is required in the home as a caretaker of an incapacitated family member; and/or

 f. A child who is under sixteen years of age or under the age of nineteen and attending full time at a secondary, vocational or technical school.

ii. Districts may provide, but are not limited to providing, the following work activities:

 a. Unsubsidized employment;

 b. Subsidized private sector employment;

 c. Subsidized public sector employment;

 d. Work experience in the public and non-profit sectors;

 e. On-the-job training;

 f. Job search and job readiness assistance countable toward participation rate;

 g. Job search and job readiness assistance beyond the level allowed to count toward participation rate;

 h. Community service;

 i. Vocational educational training;

 j. Job skills training directly related to employment;

 k. Education directly related to employment, including recipients who have not completed secondary school or high school equivalency;

 l. Satisfactory attendance at secondary school or course of study leading to a high school equivalency;

 m. Provision of child care for an individual who is participating in community service;

 n. Certain educational, training and employment activities intended to assist individuals to train for and obtain experience in demand occupations including but not limited to, careers in the eldercare, healthcare workforce, home health care, personal care, Certified Nursing Assistants and Licensed Practical Nurses; and/or

 o. Other programs designed to meet the goals of Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA) of 1996 and Title 9-B of the New York Social Services Law and included in a Social Services District's (districts) local plan as accepted by the Office of Temporary and Disability Assistance (OTDA).

iii. Work experience and community service must meet the worker displacement requirements enumerated in Federal and State law. The maximum period that an individual can be assigned to any combination of activities is 40 hours per week. Workers Compensation and tort claims protection shall be provided to participants of work experience and community service.

iv. State law provides sanctions for individuals who quit employment to obtain assistance, as follows:

2

ACF 000624

a. Applicants - disqualified for 90 days from the date of the quit.

b. Recipients - sanctioned the same as an individual whose family fails to comply with employment requirements. (See Section b. Special Provisions, Paragraph 15).

v. Enable parents and caretakers receiving assistance under the program to engage in work activities. Districts will also provide, to the extent Federal and State resources are available, support services including but not limited to transportation, child care, case management and job placement assistance to enable such parents and caretakers to engage in work activities and obtain and maintain employment.

3. Take such reasonable steps as the State deems necessary to restrict the unauthorized access, use and/or disclosure of information about individuals and families receiving assistance under the program attributable to the funds provided by the Federal government. This goal will be accomplished by adhering to all State and Federal mandates governing confidentiality requirements including, but not limited to, New York State Social Services Law Sections 21 and 136 and the New York regulations outlined in Attachment A, except that information shall be shared with law enforcement agencies as required by Federal law.

4. Establish goals and take action to prevent and reduce the incidence of out-of-wedlock pregnancies, with special emphasis on teenage pregnancies. Out-of-wedlock births have decreased in New York State since the inception of TANF. In 2020, there were approximately 80,008 out-of-wedlock births in New York, down from 104,300 such births in the 1996 base year. State programs and activities directed at preventing and reducing the incidence of out-of-wedlock pregnancies include the following:

i. New York State Summer Youth Employment Program (SYEP) – The SYEP has served as a way to introduce youth into the labor market, helping them acquire skills that can be used to improve school performance and become responsible adults. Since many low-income youth face the prospect of a challenging transition to work or college, constructive workforce experiences can provide great benefits. In addition to the income it provides, experience in the workforce and interaction with working adults can help youths recognize the importance of educational achievement and expand their education and career goals. OTDA has administered SYEP since 2005 and allocates SYEP funds to each district. All earned income derived from participation in the SYEP is exempted from the determination of need for Temporary Assistance (TA).

ii. The New York State Youth Employment Program (YEP) - The YEP was established to help reduce community gun violence and youth criminal justice involvement by providing year-round employment opportunities to at-risk youth. The program will commence on January 1, 2024, and will include employment, education and/or career exploration opportunities for TANF-eligible youth from low-income households. Funds for the YEP are allocated to select districts that are in receipt of New York State Gun Involved Violence Elimination (GIVE) funding, as provided by the Division of Criminal Justice Services.

iii. Advantage After-School Program – The New York State Office of Children and Family Services (OCFS) administers the Advantage After-School Program, an after-school youth development initiative. This program, which is operated across the State, offers a broad range of age-appropriate activities, reinforcing the learning experiences of the school day. This program offers safe and accessible places for

3

ACF 000625

school-aged children to learn and play for a minimum of three hours directly after school, as research has shown that these are the hours when pre-adolescent and adolescent problem behaviors occur. The selected programs are operated primarily in school buildings by community organizations in partnership with local schools and other partners;

iv.  Services for Children and Youth – One of the best ways of preventing next generation dependency is to improve the educational achievement level of TANF-eligible children.  School collaboration initiatives are designed to do just that by positively influencing the academic achievement, school attendance, and behavior of TANF-eligible children. Programming includes merit incentives for positive school outcomes, summer learning and/or summer camp scholarships, life skills, and mentoring programs. These programs are based on financial eligibility and meet the TANF purpose of preventing and reducing the incidence of out-of-wedlock pregnancies. The programs have received positive feedback from the children, their parents, the schools and the communities;

v.  Mentoring Services – Some districts are working with voluntary agencies to provide mentoring for TANF-eligible families. Mentoring is done differently by each agency. However, the basic concept is for a mentor or a group of mentors to work directly with the TANF recipient and/or family to help them overcome barriers to financial and emotional stability. The mentor(s) may do various things, including helping the recipient search for a job, helping the family learn to manage conflict, or just listening and work with the family to establish priorities and sort out issues;

vi.  Child Well-Being Projects – It has been three decades since a district caseworker was able to authorize cash benefits, visit families receiving assistance in their homes and provide case management to increase family stability. Since 2005, TANF funding has supported efforts aimed at families who are in receipt of cash benefits and also have open children's services cases. This collaboration and ability to widen the lens through which a family is served allows districts to manage cases and recommend services that assist in the prevention and reduction of adolescent pregnancies;

vii.  Home Visiting Services – In accordance Section 332 of the Social Services Law, PA applicants and recipients may receive voluntary parental, infant, and early childhood home visiting services if they meet the eligibility criteria and such services are available. Districts provide information about home visiting services that use an evidence-based or evidence-informed service delivery model to those who may be interested in such services. In addition, districts help determine the most appropriate program for referrals based on the needs of the applicant or recipient household.

viii.  Child-Only Case Projects – OTDA and many districts have focused on Child-Only cases in which the child's parent(s) is not in receipt of TANF-funded assistance. Child-Only cases comprise approximately 40 percent of the TANF caseload. Based on OTDA's suspicion that many of the children on Child-Only cases share similar characteristics with the foster care caseload, OTDA contracted with Cornell University to conduct a research study of New York State's Child-Only caseload. Cornell University staff in the College of Human Ecology completed a study entitled *An Examination of Child-Only Temporary Assistance for Needy Families (TANF) Cases in New York State,* which provides a detailed picture of the children in Child-Only cases, as well as the families within which they live. Three distinct family types were examined: non-parent relative families; families in which the parent receives

4

ACF 000626

Supplemental Security Income (SSI); and non-citizen families. Many children and family members in all three family types can benefit from targeted services and supports. To meet those needs, several districts continue to fund discreet programs targeting the children, and often the caregivers, in Child-Only cases. The goal is to improve family stability and increase child well-being, including financial stability as children age out of their Child-Only cases. Services include respite for the caregivers; specialized services for the children to increase school attendance and success, giving them an opportunity to participate in school activities similarly to their peers; increasing training and educational opportunities; and developing interests and career/employment goals to help the children plan for an independent young adulthood in an age appropriate way; and

ix. Pre-Kindergarten (Pre-K) Activities – The Pre-K program, which is similar to the federal Head Start program, provides a structured environment for young children to socialize in positive ways by supporting responsible behaviors, promoting self-control, exposing children to positive adult role models, and fostering self-esteem. The foundation established by Pre-K is intended to help children develop the skills they will need in later years to avoid the negative peer pressures that could lead to out-of-wedlock pregnancies. Accordingly, Pre-K provides early interventions as part of a more comprehensive pregnancy prevention strategy.

5. Conduct a program, designed to reach State and local law enforcement officials, the education system, and relevant counseling services, that provides education and training on the problem of statutory rape so that teenage pregnancy prevention programs may be expanded in scope to include men. This goal will be accomplished through gender-neutral programs developed by the New York State Department of Health (DOH), including the following:

i. Comprehensive Adolescent Pregnancy Prevention Program - Focuses on healthy relationships, coercion, age differential, consent and abuse. Project goals include the advancement of a comprehensive and sustainable local community effort to improve the community environment for adolescents through the development of a coordinated community plan;

ii. ACT for Youth Center for Community Action – Provides training and technical assistance for adolescent health providers and has published resources on intimate partner violence to help inform New York State DOH's adolescent health providers. In addition, adolescent health providers have developed a robust referral system to engage local entities, including mental health services/counseling and local law enforcement;

iii. Regional Centers for Sexual Violence Prevention - Work on community-level strategies, including healthy nightlife and healthy school community initiatives to create safe spaces free of sexual violence. The Regional Centers work closely with bar owners and managers, staff, and local entities such as law enforcement, Chambers of Commerce and Business Improvement Districts;

iv. Rape Prevention Program (RPE) – Currently implements the Healthy Schools Initiative, within which RPE subcontractors work directly with schools (primarily high schools, but some middle schools as well) and have developed strong working relationships with administrators, leadership and/or decision-makers within these establishments. Additionally, within this initiative, RPE subcontractors are required to work on community-level components that include policy, environment and social

5

ACF 000627

media/marketing, creating a comprehensive outlook addressing issues of sexual violence at multiple levels of the social ecological model;

v. Healthy Nightlife Initiative – Aimed at addressing sexual violence within establishments that serve alcohol by partnering with the New York State Liquor Authority and local law enforcement to provide training for bar proprietors and their staff on what constitutes sexual violence, how to observe and assess situations for signs of sexual violence, bystander intervention skills building, policy change assistance and environmental assessments; and

vi. Enough is Enough State Agency Workgroup – An on-campus domestic and sexual violence prevention initiative with partners including the New York State Police and New York State Division of Criminal Justice Services. Members provide updates on all domestic and sexual violence prevention activities within their organizations and determine opportunities to collaborate.

(b) Special provisions:

1. The following individuals are eligible for the FA program, if otherwise eligible:

   i. A United States (U.S.) citizen;

   ii. A U.S. national;

   iii. A non-citizen[1] admitted to the U.S. as a refugee, under Section 207 of the Immigration and Nationality Act (INA);

   iv. A non-citizen granted asylum under Section 208 of the INA;

   v. A non-citizen whose deportation has been withheld under Section 243(h) of the INA as in effect prior to April 1, 1997, or a non-citizen whose removal has been withheld under Section 241(b)(3) of the INA;

   vi. A non-citizen granted conditional entry under Section 203(a)(7) of the INA as in effect prior to April 1, 1980;

   vii. A non-citizen who is a Cuban or Haitian entrant, as defined in Section 501(e) of the Refugee Education Assistance Act of 1980;

   viii. A non-citizen admitted into the U.S. as an Amerasian immigrant as described in Section 402(a)(2)(A)(i)(V) of PRWORA of 1996 (8 U.S.C. 1612(a)(2)(A)(v));

   ix. Certain Hmong or Highland Laotian non-citizens;

   x. A qualified non-citizen who was lawfully admitted for permanent residence into the U.S. prior to August 22, 1996, or who entered the U.S. on or after August 22, 1996, and has resided in the U.S. for five or more years in a qualified status;

   xi. A qualified non-citizen who has worked for 40 (Social Security) qualifying quarters and was lawfully admitted for permanent residence into the U.S. prior to August 22, 1996, or who entered the U.S. on or after August 22, 1996, and has resided in the U.S. for five or more years in a qualified status.  A qualifying quarter includes any quarter worked by the parent of a non-citizen while the non-citizen was under 18 and any quarter worked by a spouse during marriage if the non-citizen remains married

---

[1] The term "non-citizen" means a person who is not a citizen or national of the U.S. The term "qualified non-citizen" means a person who is a "qualified alien" as that term is defined in 8 U.S.C. §1641.

ACF 000628

to the spouse or the spouse is deceased.  Quarters earned after December 31, 1996, do not count if the non-citizen receives any Federal means-tested public benefits during these quarters;

xii.    A qualified non-citizen who is on active military duty, other than active duty for training, in the U.S. Armed Forces, or their spouse, un-remarried surviving spouse, or unmarried dependent child if such spouse or dependent child is also a non-citizen in a qualified status;

xiii.   A qualified non-citizen who is a veteran and who (1) has received a discharge from the U.S. Armed Forces characterized as honorable and not on account of alienage, or (2) has a qualifying condition, as defined in Section 350 of the New York State Executive Law, and has received a discharge other than bad conduct or dishonorable (and not on account of alienage) from the Armed Forces, or (3) is a discharged LGBT veteran, as defined in Section 350 of the New York State Executive Law, and has received a discharge other than bad conduct or dishonorable (and not on account of alienage) from the Armed Forces; or their spouse, un-remarried surviving spouse, or unmarried dependent child if such spouse or dependent child is also a non-citizen in a qualified status;

xiv.    Certain battered non-citizens as defined in 8 U.S.C. 1641(c) admitted into the U.S. before August 22, 1996, or who entered the U.S. on or after August 22, 1996, and have resided in the U.S. for five or more years in a qualified status;

xv.     A non-citizen who is in receipt of a certification or eligibility letter from the U.S. Department of Health and Human Services identifying them to be a victim of severe form of trafficking in persons or a non-citizen classified as a nonimmigrant under 8 U.S.C 1101(a)(15)(T)(ii) in accordance with the Victims of Trafficking and Violence Protection Act of 2000, as amended;

xvi.    A non-citizen paroled into the U.S. under Section 212(d)(5) of the INA for a period of at least one year prior to August 22, 1996, or who entered the U.S. on or after August 22, 1996, and has resided in the U.S. for five or more years in a qualified status;

xvii.   Certain Iraqi or Afghan nationals granted special immigrant status under Section 101(a)(27) of the INA or Section 602(B)(1) of the Afghan Allies Protection Act of 2009 (AAPA)/Sec 1059(a) of the National Defense Authorization Act of 2006 (NDAA);

xviii.  Certain non-citizens granted Afghan Humanitarian parole under section 212(d)(5)(A) of the INA who were (1) paroled into the U.S. between July 31, 2021 and September 30, 2023, or (2) paroled into the U.S. after September 30, 2022, and are: (a) the spouse or child of an evacuee from Afghanistan paroled into the U.S. between July 31, 2021 and September 30, 2023, or (b) the parent or legal guardian of an unaccompanied child paroled into the U.S. between July 31, 2021 and September 30, 2023;

xix.    Certain non-citizens granted Ukrainian Humanitarian parole under section 212(d)(5) of the INA (8 U.S.C. 1182(d)(5)) who were (1) paroled into the U.S. between February 24, 2022, and September 30, 2023, or (2) paroled into the U.S. after September 30, 2023, and are: (a) the spouse or child of a citizen or national of Ukraine, or a person who last habitually resided in Ukraine, paroled into the U.S. between February 24, 2022, and September 30, 2023, or (b) the parent, legal guardian, or primary caregiver of an unaccompanied child who is a Ukrainian citizen

7

ACF 000629

or national and the child was paroled into the U.S. between February 24, 2022, and September 30, 2023;

xx.   A North American Indian born in Canada to whom the provisions of Section 289 of the INA apply;

xxi.   A member of a federally recognized Indian tribe, as defined in Section 4(e) of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 5304(e)), who was born outside of the U.S;

xxii.   Other non-citizens as authorized by law.

2. New York shall utilize objective criteria for the delivery of assistance and the determination of eligibility and for fair and equitable treatment that includes opportunities for recipients who have been adversely affected to be heard in a State administrative and judicial appeal process, as set forth in Attachment B.

3. In accordance with Section 408(a)(10)(B) of the Social Security Act, the State has established good cause criteria for minor children who have been, or are expected to be, absent from the home for 45 days or more as outlined in Attachment C.

4. The FA program will include a component entitled Emergency Assistance to Needy Families (EAF). EAF may be provided for aid, care, Foster Care, tuition and services other than care and maintenance, preventive services, child protective services, and other services to meet the emergency needs of a child or the household in which the child resides and meets all the conditions outlined in Attachment D, provided, however, that the child is under age 18, or under age 19 and a full-time student regularly attending a secondary school, or the equivalent level of vocational or technical training; and the child is living with an adult related by blood, marriage or adoption.

In addition, New York shall operate an EAF component (see subsection 25 of this Section) which will adhere to the same eligibility criteria which was used prior to PRWORA pursuant to Section 404(a)(2) of PRWORA.

5. The categories of persons who may be eligible include households containing individuals less than 18 years or age, 19-year-olds regularly attending school at the secondary level and women with no children who have a medically verified pregnancy.

6. The sixty-month limit on the receipt of TANF-funded assistance was effective in New York on December 2, 1996. In New York, the limitation will be extended to include any months in which State-funded cash Safety Net Assistance (SNA) was received.

7. The sixty-month time limit on TANF-funded assistance may be waived on the basis of hardship when an adult family member is unable to work because of an independently verified physical or mental impairment, including those which result from domestic violence, or when the adult family member is in receipt of SSI payments under Title XVI of the Social Security Act.

8. The local district must screen all heads of household and all adult household members applying for PA as well as all heads of household and adult recipients of PA, using the LDSS-4571 "Alcohol and Drug Abuse Screening and Referral Form", at a minimum whenever there is evidence to indicate potential alcohol and/or substance abuse, unless the recipient is actively participating in alcoholism and/or substance abuse treatment in accordance with 18 NYCRR 351.2(i) and Social Services Law Section 132. Additionally, local districts may routinely screen recipients of PA on a schedule determined by the local district provided the policy is applied consistently and is not more frequently than every six months.

8

ACF 000630

If the screening process indicates that there is reason to believe that an applicant or recipient is dependent on alcohol or drugs, the local district will require a formal assessment, which may include drug testing to be performed by a person who bears an alcohol and/or substance abuse counselor credential or provisional substance abuse counselor credential, which is currently in good standing, issued by The New York State Office of Addiction Services and Supports (OASAS). If the formal assessment determines that the applicant or recipient is unable to work by reason of alcoholism or substance use disorder, the individual must be referred to an appropriate treatment program. Such person and other members of that household, if otherwise eligible, will receive non-cash assistance, following timely and adequate notice.

A person who fails to participate in the screening and/or assessment process is ineligible for PA. Other members of a household which includes an individual who has failed to participate in the screening and/or assessment process shall, if otherwise eligible, receive non-cash assistance. If an applicant or recipient of PA who is required to participate in an appropriate treatment program fails to participate without good cause or leaves the program prior to completion without good cause, the individual is disqualified from receiving assistance for the time periods listed below:

i.  In the first instance, until the failure to participate ceases or 45 days, whichever is longer;

ii.  In the second instance, until failure to participate ceases, or 120 days, whichever is longer; and

iii.  For the third and subsequence instances, until failure to participate ceases or 180 days, whichever is longer.

The family of the disqualified person may be eligible to receive non-cash assistance. Persons disqualified for failing to participate in or complete treatment who return to treatment prior to the end of the disqualification who are receiving care in an Office of Alcoholism and Substance Abuse Services certified Congregate Care Level II facility, or residential program, if otherwise eligible, may receive non-cash assistance. Whether the applicant or recipient has completed the treatment program will be determined solely by using the guidelines and rules of the treatment program.

Alcohol and substance use disorder services, including residential substance use disorder treatment for adolescents, will utilize TANF Block Grant funding, where appropriate. If services are provided through a separate State program or exclusively with TANF Block Grant funds, program eligibility may be established for individuals whose incomes do not exceed 200% of the Federal Poverty Level.

9. The FA grant will be continued for up to one month after family circumstances change as a result of one of the following eligibility criteria:

i.  the FA adult relative is absent, or

ii.  a child aged 18 leaves school.

10. The amount of assets that a family may own at application and qualify for PA is $2,500 except for households in which any member is age 60 or over or is disabled in which case $3,750 in assets can be owned. PA recipients may own assets totaling up to $10,000, regardless of age or disability status. The following are exempt assets which are not applied in determining eligibility:

i.  The home which is the usual residence of the assistance unit;

9

ii.   One automobile, up to $12,000 fair market value, or such other higher dollar value as the local social services district may elect to adopt. Where the fair market value of the first automobile exceeds the specified maximum exemption, those automobiles must be further evaluated to determine the amount of equity in the automobiles. In such instances, the automobile's equity value must be applied against the resource limit as outlined in Section (b) (10). Effective May eleventh, two thousand and twenty, a vehicle which is not an exempt resource as defined in Social Services Law § 131-n(1)(a) and 18 NYCRR 352.23(b), and in which the owner has minimal or no equity interest, is not an "available" resource which would disqualify the applicant or recipient from the receipt of PA;

iii.  Basic maintenance items essential to day-to-day living, such as clothes, furniture and household appliances, and other similarly essential items of limited value;

iv.   One burial plot per household member;

v.    One bona fide funeral agreement per household member up to an equity value of $1,500 per household member;

vi.   For a period of six months, real property which the assistance unit is making a good faith effort to sell, but only if the assistance unit agrees in writing to use the proceeds from the sale to repay public assistance received which would not have been granted if the property had been sold immediately. If the property has not been sold within six months or if eligibility stops for any other reason, any payment of aid for that period must, at the time of the disposal, be considered an overpayment;

vii.  Tangible personal property necessary for business or for employment purposes, including, but not limited to, the following types of income-producing property when currently in use or reasonably expected to be used in the near future for their livelihood:

a.   business and farm equipment;

b.   tools used for employment; and

c.   livestock and produce;

viii. Funds in an individual development account;

ix.   Earned Income Tax Credits (EITC) are exempt as income or resources;

x.    An amount up to $4,650 in a separate bank account established by an individual while currently in receipt of public assistance for the sole purpose of enabling the individual to purchase a first or replacement vehicle for the recipient to seek, obtain or maintain employment, so long as the funds are not used for any other purpose. Funds withdrawn for reasons other than for the purchase of first or replacement vehicle will result in the full amount of funds in the account prior to the withdrawal being countable toward the public assistance household's resource limit beginning on the first day of the month of the withdrawal;

xi.   An amount up to $1,400 in a separate bank account established by an individual while currently in receipt of public assistance for the sole purpose of paying tuition at a two-year or four-year accredited post-secondary education institution, so long as the funds are not used for any other purpose. Funds withdrawn for reasons other than paying tuition at a two-year or four-year accredited post-secondary educational institution will result in the full amount of funds in the account prior to the withdrawal

ACF 000632

being countable toward the public assistance household's resource limit beginning on the first day of the month of the withdrawal;

xii. Funds in a qualified tuition program that satisfies the requirement of section 529 of the Internal Revenue Code of 1986; and

xiii. Funds in a New York Achieving a Better Life Experience Savings Account established in accordance with article 84 of the mental hygiene law.

11. The standard of need for determining eligibility and the amount of assistance is outlined in Attachment E. The Earned Income Disregard (EID), if applicable, is applied in calculating eligibility and the amount of assistance for recipients first and then the $150 work disregard is applied, regardless of family size. As of June 2023 the percentage of earnings that will be disregarded is set at 62%, but this amount is adjusted annually to reflect revised Poverty Level Guidelines issued by the United States Bureau of the Census. In order to qualify for the EID in the month of application, a working applicant must have received public assistance in one of the previous four months, or the working applicant must be eligible for public assistance without the earned income disregard. The amount of assistance is the standard of need less any income which is not disregarded. The disregard is available from earned income only until gross earned and unearned income equals the poverty level.

In addition, the State does not intend to treat families moving from another State differently from other families under the program.

12. Beginning Federal Fiscal Year (FFY) '24 and following, TANF recipients who enter unsubsidized employment are eligible to have 100% of their earned income disregarded for calculating eligibility and amount of assistance for a period of up to six consecutive months following job entry, provided that the recipient's resulting total income is not more than 200% of the Federal Poverty Level. This disregard is limited once per lifetime of each recipient.

13. Beginning FFY '24 and following, all of the earned income a TANF recipient derives from participation in a qualified work activity or training program as determined by the OTDA, is exempt and must be disregarded as income for calculating eligibility and amount of assistance, provided the recipient's resulting total income is not more than 200% of the Federal Poverty Level.

14. The relationship of the caretaker to the child shall be documented. At a minimum, documentation must include the applicant's declaration of the relationship on the application plus a third-party statement attesting to the relationship. The caretaker must cooperate with any attempt by the State to secure additional documentation of relationship.

15. Intentional program violations will result in sanctions based on the number of previous offenses and the dollar value of the offense as follows:

**6 Months Disqualification**
- first offense, and
- offense is less than $1,000


**12 Months Disqualification**
- second offense, or
- offense is between $1,000 and $3,900

ACF 000633

**18 Months Disqualification**
- third offense, or
- offense is greater than $3,900

**5 Year Disqualification**
- any subsequent offense

16. The benefits which would otherwise be available to a household must be reduced pro-rata for each individual in the household who willfully and without good cause fails or refuses to comply with work requirements and activities. PA recipients who do not comply with employment requirements are subject to the sanctions as outlined below:

| Instance Number | Individuals living outside a city with a population of one million or more | Individuals living in a city with a population of one million or more |
|---|---|---|
| **1st instance** | Sanction lasts until compliance | Sanction lasts until compliance |
| **2nd instance** | Sanction lasts 90 days (3 months) **and** thereafter until compliance | Sanction lasts until compliance |
| **3rd instance or greater** | Sanction lasts 180 days (6 months) **and** thereafter until compliance | Sanction lasts until compliance |

17. Individual development accounts may be established by or on behalf of individuals eligible for PA for post-secondary education, first home purchase, or business capitalization. Contributions to accounts may be made from the disregarded portion of the reported earned income, and such accounts are exempt from the resource limits for as long as the funds are held in the account or used for one of the above reasons. The funds may be matched by a not-for-profit organization or districts acting in conjunction with a not-for-profit organization. However, neither the State nor districts will be required to match contributions or administer the accounts.

18. The State of New York, under Section 121 of the NYS Welfare Reform Act of 1997, elects to exempt all individuals from the application of subsection (a) of Section 115 of PRWORA of 1996.

19. The Child Assistance Program (CAP) may be made available statewide as a local district optional component of the State's FA (TANF-funded) program. CAP eligibility is limited to FA custodial parents who possess a child support order for each child participating in the program, unless the custodial parents do not possess a child support order because:

    i.    the absent parent is deceased;

    ii.   the custodial parent has good cause for not establishing paternity or pursuing a child support order;

    iii.  despite a diligent effort by the custodial parent, a child support order is not available in a reasonable period of time for reasons outside the custodial parent's control; or

12

ACF 000634

iv.  the child resides with both parents and paternity has been acknowledged or adjudicated.

The program's financial eligibility guidelines are structured so that an enhanced disregard structure is provided to participants. While program participants must meet the FA resource test at initial certification for CAP, no assets test is applied thereafter, allowing participants to acquire assets in excess of the ordinary FA limits.

20. A SNA program will provide assistance for certain categories of persons. To the extent such persons are otherwise eligible for TANF-funded assistance, the State may elect to use Federal funding.

21. New York has opted to use the TANF Block Grant transfer provision and will transfer TANF funds to both the Title XX and Child Care Development Block Grants (CCDBG).

22. New York offers child care assistance to eligible families applying for or in receipt of public assistance to enable a child's parent or caretaker relative to engage in work or to participate in an activity, orientation, assessment, or work activity as required in their employment plan or if child care is needed for the child to be protected. For FFY '99 and following, New York provides child care under a separate State program, and as a TANF program in the case of specifically defined State initiatives, to eligible families with income at or below established eligibility levels, which have increased over the past few years, provided the family income does not exceed 85% of the State median income, who are transitioning from public assistance with earned income if child care is needed for the  parent or caretaker to work;  or who are at risk of becoming dependent on public assistance who need child care for the parent or caretaker to work or who are working and need child care to participate in educational activities. Effective October 1, 2023, where services are provided through a separate State program, program eligibility has been established for families with income at or below 85% of the State median income.

The State Income Standard is based on the Federal Poverty Level.

The assets test in paragraph 10, the disregard provisions in paragraph 11, and the standard of need provisions in Attachment E do not apply to eligible individuals who are not receiving a cash grant.

23. The State has adopted the Family Violence Option and will provide comprehensive screening and referral for victims of domestic violence. These procedures (Attachment F) enable victims of domestic violence to receive appropriate alternative services and allow for good cause waivers to certain program requirements.

24. For FFY '99 and following, the State will provide a fully refundable State and/or local EITC to families eligible during the previous calendar year. This may be done as a TANF program or as a separate State program.

Families eligible for TANF or State funded EITC payments during a fiscal year are those that included a child living with a parent or other adult relative (or a pregnant woman), if the family met the State's financial criteria established under the State or local EITC program, whichever is appropriate, during the year in which they qualified for EITC.

25. TANF funds may be used for Foster Care maintenance, tuition and related services and juvenile justice services, only if authorized under prior law, including alternatives to detention and community reinvestment, for persons placed pursuant to Articles 3, 7 and 10 of the Family Court Act and for voluntary placements and child protective services and preventive services including determining eligibility therefor, to the same extent as such activities were authorized under the State's emergency assistance program as of

13

September 30, 1995. A child is financially eligible for EAF if the income and resources of the child, at the time of the emergency, are not immediately available to meet all costs of care, maintenance or administrative activities associated with the child's placement and at least one member of the household is in receipt of public assistance or SSI. To be eligible, the child must have been living with a specified relative within 6 months prior to the emergency situation which has given rise to the need for Foster Care. In addition, the reason for care must not have arisen due to the parent's refusal to accept training or employment or due to the parent's mismanagement of public assistance funds. Funding is available for emergency assistance which the State authorizes during one period of 30 consecutive days in any given 12 months.  Once the initial eligibility is determined and EAF funding is authorized for the case, eligibility continues until the need arising from the emergency ceases to exist without any specified time limits. The continuation of the emergency situation must be re-determined at each case service plan based on the continuing emergency of the child and the needs arising from the emergency that are documented in the case record. Title IV-E remains the program of choice for Foster Care claiming whenever the child is Title IV-E eligible.

26. The State will utilize TANF Block Grant funding to provide services, which enable long term, hard to place/serve recipients of TANF with significant barriers to long term independence to overcome these barriers. These services will assist in improving the marketability or preparation of TANF funded recipients for employment. The Block Grant funding can also be used by districts to contract independent medical advisors to aid in determining the employability of clients who claim physical or mental impediments to engaging in work activities. In addition, services may target participants who are employed and have recently left TANF funded assistance and require supports to remain off assistance, former recipients who are, or should be, actively seeking additional employment opportunities, persons who are at risk of requiring TANF funded assistance or adults who are noncompliant with program requirements and require outreach/re-engagement services. These services will be limited to eligible individuals, including but not limited to non-custodial parents, whose incomes do not exceed 200% of the Federal Poverty Level.

27. For FFY '99 and following, the State may provide TANF funded or State funded benefits and services, either as a TANF program or as a separate State program, to eligible individuals and families whose incomes do not exceed 200% of the Federal Poverty Level, MA recipients whose income does not exceed 200% Federal Poverty Level,  or are eligible to receive benefits and services under the Home Energy Assistance Program (HEAP) or the New York State CCDBG. Such benefits and services may include, but shall not be limited to, support of food pantries and soup kitchens which serve eligible families, and services and benefits to eligible individuals and families which increase self-sufficiency; job training and work; children to be cared for in their own homes or in the homes of relatives; nurse-family partnership programs; Pre-K programs; counseling and education to prevent substance use disorders; settlement house programs; caretaker relative programs; promotion of educational opportunities; prevention or reduction of the incidence of out-of-wedlock pregnancy; promotion of job preparation, work and marriage; and encouragement to form and maintain two-parent families. Benefits and services under this provision also include, but are not limited to, the process for determining eligibility for assistance under the State Central Register of Child Abuse and Maltreatment. In FFY '23 and following, the State will require local districts to screen, assess and refer potentially eligible applicants and recipients to prenatal and early childhood home visiting services, if appropriate and available.

14

ACF 000636

The assets test in paragraph 10, the disregard provisions in paragraph 11, and the standard of need provisions in Attachment E do not apply to eligible individuals who are not receiving a cash grant. Determination of income in establishing income eligibility for various services in this Plan will be based upon individual or family income, as appropriate.

28. The State will provide a fully refundable (amount paid back to the recipient) State Dependent Care Tax Credit to families eligible during the previous calendar year.

    Families eligible for TANF or State funded Dependent Care Tax Credit payments during a Federal fiscal year are those that included a child living with a parent or other adult relative (or a pregnant woman). For State funded payments, the definition of a needy family will be the definition used in the Dependent Care Tax Credit program and financial eligibility will be determined using the criteria used for financial eligibility for the Dependent Care Tax Credit program.

29. For FFY '99 and following, the State may provide TANF funded or State funded benefits and services to eligible individuals and families whose incomes do not exceed 200% of the Federal Poverty Level unless otherwise provided in the program or unless they meet the eligibility definition outlined in 45 CFR 263.2(a)(4)(ii), to prevent or reduce the incidence of out-of-wedlock pregnancy; and to encourage the formation and maintenance of two-parent families. The services will be targeted to youth under 25 years of age and other individuals at risk of out-of-wedlock births or single parenthood, and non-custodial parents. Such services may include vocational and educational counseling, job skills training, family life and parenting education, life skills development, case management, pre-pregnancy family planning services, social and recreational programs, programs to provide supervised activities for elementary, middle and high school students during the hours school is not in session, outreach, advocacy, youth development activities and crisis intervention services. If such benefits and services are provided either as a TANF program or as a separate State program, they will be provided only to needy families.

    The assets test in paragraph 10, the disregard provisions in paragraph 11, and the standard of need provisions in Attachment E do not apply to eligible individuals who are not receiving a cash grant.

30. The State may provide TANF funded or State funded benefits and services, either as a TANF program or as a separate State program, to eligible individuals and families whose incomes do not exceed 200% of the Federal Poverty Level or, are eligible to receive benefits and services under the HEAP or the New York State CCDBG.  Such benefits and services may include, but shall not be limited to, providing transitional work support payments to those families that voluntarily close their public assistance case, and/or work-related items of need (such as clothing, transportation and other expenses related to work). The transitional work support payments can be an amount up to a maximum of $200 per month and can be received for up to 24 months in a lifetime, if otherwise eligible.

31. TANF funds or separate State funds may be used to provide short term benefits to defray heating costs for families whose income does not exceed 200% of the Federal Poverty Level or are eligible to receive benefits under the HEAP or the New York State CCDBG.

15

ACF 000637

The assets test in paragraph 10, the disregard provisions in paragraph 11, and the standard of need provisions in Attachment E do not apply to eligible individuals who are not receiving a cash grant.

32. For FFY '06 and following, TANF funds or separate State funds may be used to provide prospective rent supplements to families who have incomes that do not exceed 200% of the Federal Poverty Level or are eligible to receive benefits and services under the HEAP or the New York State CCDBG.

The assets test in paragraph 10, the disregard provisions in paragraph 11, and the standard of need provisions in Attachment E do not apply to eligible individuals who are not receiving a cash grant.

33. For FFY '09 and following, TANF funds or separate State funds may be used to provide parenting and employment initiatives for non-custodial parents who have incomes that do not exceed 200% of the Federal Poverty Level or are eligible to receive benefits and services under the Supplemental Nutrition Assistance Program (SNAP), HEAP Block Grant or the New York State CCDBG or are eligible pursuant to 45 USC 263.2(a)(4)(ii).

The assets test in paragraph 10, the disregard provisions in paragraph 11, and the standard of need provisions in Attachment E do not apply to eligible individuals who are receiving a cash grant.

34. State funded TANF assistance shall not be used in any electronic benefits transfer (EBT) transaction in: (a) any liquor store; (b) any casino, gambling casino, or gaming establishment; or (c) any retail establishment which provides adult-oriented entertainment in which performers disrobe or perform in an unclothed state for entertainment.

The State of New York has implemented policies and procedures to prevent access to assistance provided under the TANF funded program through any EBT transaction at an automated teller machine (ATM) or point-of-sale (POS) device located in liquor stores; casinos, gambling casinos, or gaming establishments; and retail establishments which provide adult-oriented entertainment in which performers disrobe or perform in an unclothed state for entertainment. Such policies and procedures are detailed in a report submitted annually to the Secretary of the Department of Health and Human Services and include the appropriate New York State licensing agencies identifying the prohibited venues under each agency's jurisdiction and directing or requesting that such venues not accept the New York State EBT card.

Under the terms of the contract between the New York State OTDA and OTDA's Electronic Benefits Transfer (EBT) vendor, the State of New York requires its EBT vendor to ensure that recipients of TANF funded assistance have adequate access to their cash assistance, and to ensure that recipients of TANF funded assistance have access to using or withdrawing such assistance with minimal fees or charges, including an opportunity to access such assistance with no fee or charges. Specifically:

• OTDA's EBT vendor is required to identify at least one bank or non-bank owned ATM in the borders of a ZIP code or an adjacent ZIP code with an EBT cash issuance amount of up to $5,000. For ZIP codes with issuance amounts greater than $5,000, three banks or non-bank owned ATMs will be identified in the borders of a ZIP code or an adjacent ZIP code and one additional ATM location will be identified for each additional increment of $5,000 in daily cash issuance. If ATM locations do not exist within a ZIP code with cash issuances, the cash access requirement is met through POS or Point of Banking (POB) locations providing cash to EBT cardholders.

16

ACF 000638

- OTDA's EBT vendor is required to maintain a database of retailers that provide cash back on EBT purchases made at POS terminals and cash back without a purchase requirement for EBT cardholders, as EBT POS transactions are always surcharge-free. The EBT vendor also maintains a list of currently participating ATM owners and their surcharge policies. The EBT vendor encourages all retailers authorized to accept SNAP benefits in the State of New York to participate in their EBT programs as cash-only and cash-back providers.

- OTDA pays for the first two transaction fees per month per EBT cardholder, and the EBT cardholder pays for any monthly transactions other than the first two. To provide a financial incentive to OTDA's EBT vendor to recruit surcharge-free ATMs for EBT cardholders, OTDA does not pay transaction fees on surcharged transactions.

OTDA provides recipients of TANF funded assistance with information on applicable fees and surcharges that apply to electronic fund transactions involving TANF assistance, and OTDA makes such information publicly available.

TANF State Plan Effective Date:    January 1, 2024.

17

ACF 000639

**Office of Temporary and Disability Assistance**

# EXECUTIVE CERTIFICATION

1.      **Certification that the State will operate a Child Support Enforcement Program.**

New York certifies that during the fiscal year, the State will operate a Child Support Enforcement program under the State Plan approved under Part D of Title IV of the Social Security Act.

2.      **Certification that the State will operate a Foster Care and Adoption Assistance Program.**

New York certifies that during the fiscal year, the State will operate a Foster Care and Adoption Assistance program under the State Plan approved under Part E of Title IV of the Social Security Act, and the State will take such actions as necessary to ensure that children receiving assistance under such part are eligible for Medical Assistance under the State Plan under Title XIX of the Social Security Act.

3.      **Certification of the administration of the program.**

New York State certifies that the Office of Temporary and Disability Assistance of the Department of Family Assistance will administer and supervise those portions of the State's program operated with the Temporary Assistance for Needy Families Block Grant funds which relate to financial support, training and work programs.  This Office will work cooperatively with the Department of Health, the Office of Children and Family Services and other agencies.

New York also assures that the local governments and the private sector organizations will have been consulted regarding the plan and the design of welfare services in the State so that services are provided in a manner appropriate to local populations; and will have had at least 45 days to submit comments on the plan and design of such services.

4.      **Certification that the State will provide Indians with equitable access to assistance.**

New York will provide each member of an Indian tribe, who is domiciled in the State and is not eligible for assistance under a Tribal Family Assistance plan approved under Section 412 of the Social Security Act, with equitable access to assistance under the State program funded under this part attributable to funds provided by the Federal government.

5.      **Certification of standards and the procedures to ensure against program fraud and abuse.**

New York certifies that the State has established and is enforcing standards and procedures to ensure against program fraud and abuse, including standards and procedures concerning nepotism, conflicts of interest among individuals responsible for the administration and supervision of the State program, kickbacks, and the use of political patronage.

18

ACF 000640

**6.     Public availability of state plan summary.**

New York certifies that the State shall make available to the public a summary of any plan submitted by the State under this section.

**7.     Family violence option.**

New York State has established and is enforcing standards and procedures to (a) screen and identify individuals with a history of domestic violence, while maintaining the confidentiality of such individuals; (b) refer such individuals to counseling and supportive services, where appropriate; and (c) for good cause, waive other program requirements which would make it more difficult for individuals receiving assistance to escape domestic violence or would place individuals at further risk of domestic violence.

**8.     Violence against women act.**

New York State certifies that the State will establish and enforce standards and procedures to ensure that applicants and potential applicants for assistance under the State program funded under this part are notified of assistance made available by the State to victims of sexual harassment and survivors of domestic violence, sexual assault, or stalking. New York State will ensure that case workers and other agency personnel responsible for administering the State program funded under this part are trained in: the nature and dynamics of sexual harassment and domestic violence, sexual assault, and stalking; State standards and procedures relating to the prevention of, and assistance for, individuals who are victims of sexual harassment or survivors of domestic violence, sexual assault, or stalking; and methods of ascertaining and ensuring the confidentiality of personal information and documentation related to applicants for assistance and their children who have provided notice about their experiences of sexual harassment, domestic violence, sexual assault, or stalking. New York State will ensure that the TANF program provides information about the options available to current and potential beneficiaries; and case workers and other agency personnel responsible for administering the TANF program are provided with training regarding State standards and procedures.

_____
Kathy Hochul
Governor


_____                    _____January 24, 2024_____
Barbara C. Guinn                            Date
Acting Commissioner
Office of Temporary and Disability Assistance

19

ACF 000641

# CONFIDENTIAL NATURE OF RECORDS

## New York State Social Services Law § 136.  Protection of public welfare records.

1.  The names or addresses of persons applying for or receiving  public  assistance  and care  shall  not  be  included in any published report or printed in any newspaper or reported at any  public  meeting  except  meetings  of  the county  board of supervisors, city council, town board or other board or body authorized and required to appropriate funds for public  assistance and care in and for such county, city or town; nor shall such names and addresses and the amount received by or expended  for  such  persons  be disclosed  except  to  the  commissioner  of  social  services  or  his  authorized representative, such county, city or town board or  body  or  its authorized representative, any other body or official required to  have such information properly to discharge its or his duties,  or,  by  authority of such county, city or town appropriating board or body or of  the social services official of the county, city or town, to a person or agency considered entitled to such information. However, if a bona fide  news disseminating firm or organization makes a written request  to  the  social services official or the appropriating board or body of a county,  city or town to allow inspection by an authorized representative of such  firm  or organization of the books and records of the disbursements made  by such county, city or  town  for  public  assistance  and  care, such  requests shall be granted within five days and such firm or organization  shall  be considered entitled to the information contained in such books  and records, provided such firm or organization shall give assurances in  writing that it will not publicly disclose, or participate or  acquiesce  in  the  public disclosure of, the names and addresses of applicants for  and recipients  of  public assistance  and  care  except  as  expressly permitted  by  subdivision  four.    If such firm or organization shall, after giving such assurance, publicly disclose, or participate or acquiesce in the public disclosure of, the names and addresses of applicants for or recipients of public assistance and care except as expressly permitted by subdivision four, then such firm or organization shall be deemed to have violated this section and such violation shall constitute a misdemeanor. As used herein a news disseminating firm or organization shall mean and include: a newspaper; a newspaper service association or agency; a magazine; a radio or television station or system; a motion picture news agency.

2.  All communications and information relating to a person  receiving  public  assistance  or care  obtained  by any social services official,  service officer, or employee in the course of his or her work  shall  be  considered  confidential  and,  except  as  otherwise provided  in this  section, shall be disclosed only to the  commissioner,  or  his  or  her authorized  representative,  the  commissioner of labor, or   his or her  authorized representative, the commissioner of health,  or  his  or  her  authorized  representative, the welfare inspector general, or his or her  authorized representative,  the  county board  of  supervisors,  city  council,  town  board  or other board or body authorized and required to  appropriate funds for public assistance and care in and for such county,  city or town or its authorized representative or, by  authority  of  the  county,  city  or  town social services official, to a person or agency  considered entitled to such information. Nothing herein shall preclude a social services official from reporting  to  an  appropriate agency  or official,  including  law  enforcement  agencies  or officials, known or suspected instances of  physical  or  mental  injury,  sexual  abuse  or  exploitation,

1

ACF 000642

sexual contact with a minor or negligent treatment or maltreatment of a child of which the official becomes aware in the administration of public assistance and care nor shall it preclude communication with the federal immigration and naturalization service regarding the immigration status of any individual.

3. Nothing in this section shall be construed to prevent registration in a central index or social service exchange for the purpose of preventing duplication and of coordinating the work of public and private agencies.

4. No person or agency shall solicit, disclose, receive, make use of, or authorize, knowingly permit, participate in, or acquiesce in the use of, any information relating to any applicant for or recipient of public assistance or care for commercial or political purposes. Nothing in this or the other subdivisions of this section shall be deemed to prohibit bona fide news media from disseminating news, in the ordinary course of their lawful business, relating to the identity of persons charged with the commission of crimes or offenses involving their application for or receipt of public assistance and care, including the names and addresses of such applicants or recipients who are charged with the commission of such crimes or offenses.

5. A social services official shall disclose to a federal, state or local law enforcement officer, upon request of the officer, the current address of any recipient of family assistance, or safety net assistance if the duties of the officer include the location or apprehension of the recipient and the officer furnishes the social services official with the name of the recipient and notifies the agency that such recipient is fleeing to avoid prosecution, custody or confinement after conviction, under the laws of the place from which the recipient is fleeing, for a crime or an attempt to commit a crime which is a felony under the laws of the place from which the recipient is fleeing, or which, in the case of the state of New Jersey, is a high misdemeanor under the laws of that state, or is violating a condition of probation or parole imposed under a federal or state law or has information that is necessary for the officer to conduct his or her official duties. In a request for disclosure pursuant to this subdivision, such law enforcement officer shall endeavor to include identifying information to help ensure that the social services official discloses only the address of the person sought and not the address of a person with the same or similar name.

## 18 NYCRR 357.1 Nature of information to be safeguarded.

(a) Information to be safeguarded includes names and addresses of applicants, recipients, and their relatives, including lists thereof; information contained in applications and correspondence; reports of investigations; reports of medical examination, diagnostic tests and treatment, including reports on whether an applicant or recipient has had an HIV-related test or has been diagnosed as having AIDS, HIV infection or an HIV-related illness; resource information; financial statements; and record of agency evaluation of such information. This applies to all information secured by the agency whether or not it is contained in the written record.

(b) For purposes of this Part:

1. AIDS means acquired immune deficiency syndrome, as may be defined from time to time by the Centers for Disease Control of the United States Public Health Service.

2. HIV infection means infection with the human immunodeficiency virus, or any other related virus identified as a probable causative agent of AIDS.

2

ACF 000643

3.  HIV-related illness means any illness that may result from or may be associated with HIV infection.

4.  HIV-related test means any laboratory test or series of tests for any virus, antibody, antigen or etiologic agent whatsoever thought to cause or to indicate the presence of AIDS.

## 18 NYCRR 357.2 Prohibition against disclosure of information.

(a) Officers and employees of social services districts shall not reveal information obtained in the course of administering public assistance for purposes other than those directly connected with the administration of public assistance, except for the name, address and the amount received by or expended for a recipient of public assistance when the appropriating body or social services official has authorized their disclosure to an agency or person deemed entitled to it pursuant to section 136 of the Social Services Law.

(b) Any release of information pursuant to this section which would reveal that a person has been the subject of an HIV-related test, or has HIV infection, HIV-related illness or AIDS, is subject to the provisions of section 2782 of the Public Health Law. In  accordance with such section, confidential HIV-related information relating to a recipient of a health or social service as defined in section 2780 of the Public Health Law, may be disclosed to authorized employees of the department or of social services districts when reasonably necessary for such employees to supervise, monitor, administer or provide such service and such employees would, in the ordinary course of business, have access to records relating to the care of, treatment of or provision of a health or social service to such recipient.

(c) Each social services official shall designate the person, or persons, within the agency with authority to disclose information.

## 18 NYCRR 357.3 Basis for disclosure of information.

(a) Safeguards in disclosing information.

Information shall be released to another agency or person only when the public welfare official providing such data is assured that:

1.  the confidential character of the information will be maintained.

2.  the information will be used for the purposes for which it is made available, such purposes to be reasonably related to the purposes of the public welfare program and the function of the inquiring agency; and,

3.  the information will not be used for commercial or political purposes.

(b) Disclosure of medical information.

1.  Upon the transfer of a foster child to the care of another authorized agency, the former agency must provide to the receiving agency the child's comprehensive health history, both physical and mental, to the extent it is available.

2.  To the extent they are available, the comprehensive health history of the child and of his or her biological parents and the health care needs of the child must be provided by an authorized agency to foster parents at the time of the child's placement in foster care. In all cases, information identifying the biological parents must be removed from the comprehensive medical history.

ACF 000644

3. To the extent it is available, the comprehensive health history, both physical and mental, of a child legally freed for adoption and of his or her biological parents must be provided by an authorized agency to the child's prospective adoptive parent(s). Prospective adoptive parent means an individual who meets criteria as defined in 18 NYCRR section 421.16 and who has indicated an interest in adopting a particular child, and for whom the authorized agency has begun the placement agreement process in accordance with 18 NYCRR section 421.18.  In the case of finalized adoptions, such information must be provided upon request to the child's adoptive parents. In all cases, information identifying the biological parents must be removed from the comprehensive health history.

4. To the extent it is available, the comprehensive health history, including both physical and mental, of the child in foster care and of his or her biological parents must be provided by an authorized agency at no cost to such child when discharged to his or her own care.  Such information must include the names and addresses of the child's health care providers.

5. To the extent it is available, the comprehensive health history of a child in foster care must be provided to the child's parents or guardian when the child is discharged to their care, except that confidential HIV-related information must not be disclosed without a written release from the child if the child has the capacity to consent as defined in 18 NYCRR section 360-8.1(a)(8) and in article 27-F of the Public Health Law.  The conditions for the written release authorizing such disclosure are described in 18 NYCRR section 360-8.1(a)(8) and in article 27-F of the Public Health Law.  The term confidential HIV-related information is defined in 18 NYCRR section 360-8.1(a)(5) and in article 27-F of the Public Health Law.

6. To the extent it is available, the comprehensive health history, both physical and mental, of any adopted former foster child and of his or her biological parents must be provided by an authorized agency to the adopted former foster child upon request.  In all cases, information identifying the biological parents must be removed from the comprehensive health history.

7. For the purposes of this subdivision, the comprehensive health history must include, but is not limited to, conditions or diseases believed to be hereditary, where known; drugs or medication taken during pregnancy by the child's biological mother, where known; immunizations received by the child while in foster care and prior to placement in care, where known; medications dispensed to the child while in care and prior to placement in care, where known; allergies the child is known to have exhibited while in care and prior to placement in care, where known; diagnostic tests, including developmental or psychological tests and evaluations given to the child while in care and prior to placement in care, where known, and their results, laboratory tests for HIV, where known, and their results; and any follow-up treatment provided to the child prior to placement in care, where known, or provided to the child while in care, or still needed by the child.

(c) Disclosure to applicant, recipient, or person acting in his behalf.

1. The case record shall be available for examination at any reasonable time by the applicant or recipient or his authorized representative upon reasonable notice to the local district. The only exceptions to access are:

    i. those materials to which access is governed by separate statutes, such as child welfare, foster care, adoption or child abuse or neglect or any records maintained for the purposes of the Child Care Review Service.

ACF 000645

      ii.  those materials being maintained separate from public assistance files for purposes of criminal prosecution and referral to the district attorney's office; and,

     iii.  the county attorney or welfare attorney's files.

2. Information may be released to a person, a public official, or another social agency from whom the applicant or recipient has requested a particular service when it may properly be assumed that the client has requested the inquirer to act in his behalf and when such information is related to the particular service requested.

(d) Disclosure to relatives and other legally responsible persons.

1. To the extent available and upon request, an authorized agency must provide a relative or other legally responsible person with whom a child is placed, or to whom a child is discharged or released, by the family court pursuant to section 1017 or 1054 of the Family Court Act, but who is not a foster parent for the child, with the same background information regarding the child as is provided to a foster parent with whom a child is placed. Such information, as available, must include the child's medical history and any other information which is provided to a foster parent as necessary for the child's health, safety and welfare pursuant to this section, 18 NYCRR section 443.3, and any other applicable regulations of the Office of Children and Family Services.  However, if the child's medical history includes confidential HIV-related information, such information must not be provided to the relative or other legally responsible person without a written release from:

      i.  the child, if the child has capacity to consent as defined in 18 NYCRR section 360-8.1(a)(8) and in article 27-F of the Public Health Law; or

     ii.  a person authorized to consent to health care for the child, if the child lacks capacity to consent.

2. A social services district is required, under section 132 of the Social Services Law, to investigate the ability and willingness of relatives, and the liability of legally responsible relatives, to contribute to the support of an applicant for or recipient of public assistance or care.  In regard to these investigations, such a relative is a person considered entitled, under section 136 of the Social Services Law, to necessary and appropriate information regarding the applicant or recipient. Information concerning the applicant's or recipient's needs and basic circumstances may be disclosed to such a relative to the extent necessary to discuss contributions of support from that relative. However, confidential HIV-related information may not be disclosed to such a relative without a written release from:

      i.  the applicant or recipient, if the applicant or recipient has capacity to consent as defined in section 18 NYCRR 360-8.1(a)(8) and in article 27-F of the Public Health Law; or

     ii.  from a person authorized to consent to health care for the applicant or recipient, if the applicant or recipient lacks capacity to consent.

3. The social services district or other authorized agency must, in writing, inform the relative or other legally responsible person receiving information under this subdivision, of the confidential nature of the information and of any restrictions against re-disclosure of such information.  In the case of confidential HIV-related information, the warning statement against re-disclosure set forth in 18 NYCRR section 360-8.1(h) and in article 27-F of the Public Health Law must be provided to the person receiving confidential HIV-related information.

ACF 000646

4. The term confidential HIV-related information is defined in 18 NYCRR section 360-8.1(a)(5) and in article 27-F of the Public Health Law. The conditions for the written release authorizing disclosure of such information are set forth in section 18 NYCRR 360-8.1(g) and in article 27-F of the Public Health Law.

(e) Disclosure to Federal, State or local official.

1. Information may be disclosed to any properly constituted authority. This includes a legislative body or committee upon proper legislative order, an administrative board charged with investigating or appraising the operation of public welfare, law enforcement officers, grand juries, probation and parole officers, government auditors, and members of public welfare boards, as well as the administrative staff of public welfare agencies.

2. Information may be released to a selective service board when such information is necessary in order that the board may arrive at a valid and consistent decision regarding dependency.

3. A social services official must disclose to a Federal, State or local law enforcement officer, upon request of the officer, the current address of any recipient of family assistance, or safety net assistance if the duties of the officer include the location or apprehension of the recipient and the officer furnishes the social services official with the name of the recipient and notifies the agency that such recipient is fleeing to avoid prosecution, custody or confinement after conviction, under the laws of the place from which the recipient is fleeing for a crime or an attempt to commit a crime which is a felony under the laws of the place from which the recipient is fleeing, or which, in the case of the state of New Jersey, is a high misdemeanor under the laws of that state, or is violating a condition of probation or parole imposed under a Federal or State law or has information that is necessary for the officer to conduct his or her official duties. In a request for disclosure pursuant to this paragraph, such law enforcement officer must endeavor to include identifying information to help ensure that the social services official discloses only the address of the person sought and not the address of a person with the same or similar name.

4. Nothing in this Part precludes a social services official from reporting to an appropriate agency or official, including law enforcement agencies or officials, known or suspected instances of physical or mental injury, sexual abuse or exploitation, sexual contact with a minor or negligent treatment or maltreatment of a child of which the social services official becomes aware of in the administration of public assistance and care.

5. Nothing in this Part precludes a social services official from communicating with the Federal Immigration and Naturalization Service regarding the immigration status of any individual.

(f) Disclosure upon subpoena by court.

1. When a public assistance record is subpoenaed by court, the public welfare agency shall immediately consult its legal counsel before producing any record or revealing any information or giving any testimony.

2. When the subpoena is for a purpose directly related to the administration of public assistance or protection of the child, the agency before complying with the subpoena shall endeavor to get in touch with the client whose record is involved or his attorney and secure permission to reveal the contents of the record which relate to the administration of public assistance.

6

ACF 000647

3. In the event that the subpoena is for a purpose not directly related to the administration of public assistance or the protection of a child, the agency shall plead, in support of its request to withhold information, that the Social Security Act, the Social Services Law and the regulations of the State Department of Social Services prohibit disclosure of confidential information contained in records and files, including names of clients. The agency will be governed by the final order of the court after this plea is made.

(g) Disclosure to bona fide news disseminating firm.

The written assurance required by section 136 of the Social Services Law that the names and addresses of applicants and recipients of assistance shall not be published, shall be obtained by the public welfare official before allowing examination of records of disbursements by that bona fide news disseminating firm.

(h) Disclosure of confidential HIV-related information.

1. Notwithstanding any other provision of any law or regulation, confidential HIV-related information concerning persons claiming disability benefits under the provisions of titles II and XVI of the Social Security Act may be disclosed to persons employed by or acting on behalf of the department's Office of Disability Determinations engaged in the conduct of processing such claims on the basis of a general medical release in the form approved by the Social Security Administration of the United States Department of Health and Human Services.  The employees and agents of the office of disability determinations, including providers of clinical laboratory services, consultative medical examinations or claimant-related medical information, to the extent they have acted in accordance with office procedures and instructions, will be held harmless and indemnified by the office for any liability for the disclosure or redisclosure of any HIV related information when such information is solicited by or provided to the office of disability determination.

2. All medical information, including confidential HIV-related information, solicited by or provided to the office of disability determinations for the purpose of determining a person's disability will be treated as confidential and this information must not be disclosed except as prescribed by the regulations of the Secretary of the United States Department of Health and Human Services.

3. The term confidential HIV-related information is defined in 18 NYCRR section 360-8.1.

(i) Disclosure of domestic violence related information.

1. Information with respect to victims of domestic violence collected as a result of procedures for domestic violence screening, assessment, referrals and waivers pursuant to 18 NYCRR Part 351 shall not be released to any outside party or parties or other government agencies unless the information is required to be disclosed by law, or unless authorized in writing by the public assistance applicant or recipient.

2. Employees of the office, social services district or any agency providing domestic violence liaison services, consistent with applicable statute and regulation, may have access to client identifiable information maintained by a domestic violence liaison or by the welfare management system only when the employees' specific job responsibilities cannot be accomplished without access to client identifiable information.

3. Each social service district and agency providing domestic violence liaison services, with access to the welfare management system, must develop and implement policies and practices to ensure the maintenance of confidential individual information.

(j) Disclosure of education information.

ACF 000648

To the extent available, an authorized agency must provide a copy of a foster child's education record at no cost to the child when such foster child is discharged to his or her own care. For the purposes of this subdivision, the education record of a foster child includes the names and addresses of the child's educational providers; the child's grade level performance; assurances that the child's placement in foster care took into account proximity to the school in which the child was enrolled at the time of placement; and any other relevant education information concerning the child.

## 18 NYCRR 357.4 - Prohibition against improper use of lists of applicants and recipients.

All material sent to applicants and recipients of public assistance, including material enclosed in envelopes containing checks, must be directly related to the administration of the public assistance programs and shall not have political implications.

## 18 NYCRR 357.5 - Procedures for safeguarding information maintained by the New York State Department of Social Services, local social services districts and other authorized agencies.

(a) Records containing individually identifiable information shall be marked "confidential" and kept in locked files or in rooms that are locked when the records are not in use.

(b) When in use, records shall be maintained in such a manner as to prevent exposure of individual identifiable information to anyone other than the authorized party directly utilizing the case record.

(c) No records shall be taken from the place of business without prior authorization by appropriate supervisory staff of the New York State Department of Social Services, the local social services district or other authorized agency.

(d) No records shall be taken home by agency staff except upon prior authorization by appropriate supervisory staff in order to perform a function which requires the possession of the records outside of the agency and where return of the records to the agency at the close of business would result in an undue burden to the staff. In those cases where records are taken home by staff, the records are to be maintained in a secure location and are not to be disclosed to anyone other than those expressly authorized by statute or regulation. The records are to be returned to the agency by staff on the following business day.

(e) Records shall be transmitted from one location to another in sealed envelopes stamped "confidential," and a receipt shall be obtained documenting delivery of said records.

(f) Interviews with clients shall be conducted at a location and in a manner which maximizes privacy.

(g) Employees of the New York State Department of Social Services, the local social services district or the other authorized agency, consistent with applicable statute and regulation, shall have access to individual identifiable information only where the employee's specific job responsibilities cannot be accomplished without access to individual identifiable information.

## 18 NYCRR 357.6 Confidentiality policy and procedures manual.

8

ACF 000649

**Attachment A**

The New York State Department of Social Services, local social services districts, and other authorized agencies shall disseminate to staff a policy and procedures manual establishing and describing:

(a)  responsibilities of staff to safeguard information pursuant to statute, regulation and policy.

(b)  procedures for properly informing clients of records collection, access, utilization and dissemination.

(c)  policies and practices relating to the safeguarding of confidential information by the agency.

(d)  procedures relating to employee access to information; and,

(e)  disciplinary actions for violations of confidentiality statutes, regulations and policies.

ACF 000650

# FAIR HEARINGS

## 18 NYCRR 358

Fair Hearings:  Family Assistance, Safety Net Assistance, Medical Assistance, Emergency Assistance to Aged, Blind or Disabled Persons, Emergency Assistance to Needy Families with Children, Supplemental Nutrition Assistance Program, Home Energy Assistance, and Services funded through the Department of Family Assistance.

## 18 NYCRR Subpart 358-1. Scope and Effective Date

## 18 NYCRR Section 358-1.1 General.

These regulations govern the fair hearing process and establish the rights and obligations of applicants, recipients, and social services agencies when an applicant or recipient seeks review of a social services agency action or determination regarding that individual's assistance or benefits under public assistance programs, medical assistance, the Supplemental Nutrition Assistance Program (SNAP), and the Home Energy Assistance Program (HEAP) and under various service programs as defined in 18 NYCRR 358-2.20 and any program or service administered through the New York State Office of Temporary and Disability Assistance (OTDA) as described in 18 NYCRR Part 385.

## 18 NYCRR 358-1.2 Applicant/recipient.

For applicants and recipients, these regulations govern the following:

(a) Notice.

These regulations set forth what information you are entitled to receive if you have been accepted for or denied public assistance, medical assistance, HEAP, or SNAP benefits or services, or if there is to be a discontinuance, reduction, or suspension in the public assistance, medical assistance, or SNAP benefits or services which you are receiving, or if there is an increase in the public assistance, medical assistance or SNAP benefits you are receiving, or if there is to be a change in the calculation of such assistance or benefits, or if you are involuntarily discharged from a tier II facility as defined in 18 NYCRR Part 900.

(b) Timing.

These regulations set forth the time periods within which you are obligated to request a fair hearing and/or conference if your application for public assistance, medical assistance, HEAP, or SNAP benefits or services is not acted upon in a timely manner, or if you have been denied public assistance, medical assistance, or SNAP benefits or services, or if there is to be a discontinuance, reduction, or suspension in the public assistance, medical assistance, or SNAP benefits or services you are receiving, or if there is an increase in the public assistance, medical assistance or SNAP benefits you are receiving, or if there is to be a change in the calculation of such assistance or benefits; or if you are told that you have received an over-issuance of SNAP benefits.

(c) Procedures.

These regulations set forth what you are required to do to have an action of a social services agency reviewed when you are denied public assistance, medical assistance, SNAP, or HEAP benefits or services, or when there is a discontinuance, reduction, or suspension in the public assistance, medical assistance, or SNAP benefits or services which

1

ACF 000651

you are receiving, or when there is an increase in the public assistance, medical assistance or SNAP benefits which you are receiving, or if you are involuntarily discharged from a tier II facility as defined in 18 NYCRR Part 900, or if the social services agency has not acted in a timely manner, or if there is a change in the calculation of such assistance or benefits, or if you are told that you have received an over-issuance of SNAP benefits; how to ask for a conference and fair hearing; how to exercise your right to have your public assistance, medical assistance, or SNAP benefits or services continued until a hearing decision is issued; how to request another hearing date if you are unable to attend the fair hearing on the day it is scheduled to be held; how to get an interpreter if you do not speak English or if you are deaf; and whom you may bring to a conference or fair hearing.

(d) Decision.

These regulations set forth what you should do if the social services agency which is a party to the fair hearing does not comply with your fair hearing decision.

## 18 NYCRR 358-1.3 Social services agencies.

For social services agencies, these regulations govern the following:

(a) notices to be sent to applicants and recipients of covered programs or services;

(b) agency conferences;

(c) information and documents to be provided to applicants/recipients, or their representatives, who have requested a fair hearing;

(d) the fair hearing process; and

(e) compliance with fair hearing decisions.

## 18 NYCRR 358-1.4 Effective date.

Repealed, effective September 3, 2003.

## 18 NYCRR Subpart 358-2.  Definitions

## 18 NYCRR 358-2.0 Introduction.

The terms in Part 358 have the meanings set forth in this Subpart.

## 18 NYCRR 358-2.1 Action taken notice.

An action taken notice means a notice from a social services agency advising:

(a) an applicant for SNAP or a recipient of SNAP at recertification of the social service agency's determination to accept or deny SNAP benefits; or

(b) a recipient of SNAP benefits, of an increase in benefits.

## 18 NYCRR 358-2.2 Adequate notice.

(a) Except as provided in subdivision (b) of this section, an adequate notice means a notice of action or an adverse action notice or an action taken notice which sets forth all of the following:

1. the action the social services agency proposes to take or is taking, and if a single notice is used for all affected assistance, benefits or services, the effect of such action, if any, on a recipient's other assistance, benefits or services. Otherwise the notice shall state that there will be a separate notice for other affected assistance, benefits or services. In addition, in the case of:

   i. a reduction of public assistance or SNAP benefits: both the dollar amount of assistance or benefits prior to the reduction and the reduced amount must be specified;

   ii. an increase in the amount of a medical assistance spenddown: the amount of the spenddown, if any, prior to the increase and the spenddown amount after the increase must be specified. In addition, such notice must include an explanation of the procedures to be followed for meeting the spenddown;

   iii. a recoupment: the total amount to be recouped and the rate of recoupment must be specified. In addition, in the case of a recoupment of a public assistance grant, the right to claim that the rate of recoupment will cause undue hardship must be specified;

   iv. an acceptance of a SNAP application:

      a. the benefit level, including variations based on changes anticipated and at the time of certification, the date when benefits become available and the dates covering the certification/eligibility period must be specified. In addition, if the initial allotment contains benefits for both the month of application and the current month, the notice must explain that the initial allotment includes more than one month's benefits, and must indicate the monthly allotment amount for the remainder of the certification period;

      b. when an application is approved on an expedited basis without verification, the notice must explain that the household must provide the verification which was postponed and any special conditions applicable to the household if a normal certification period was assigned to such household;

   v. a denial of a SNAP application: when a household is potentially categorically eligible for SNAP benefits but is denied SNAP benefits, the notice must ask the applicant to inform the social services agency if the applicant is approved to receive family assistance, federally funded safety net assistance or supplemental security income benefits;

   vi. a notice of authorization of a public assistance grant: the amount of the grant must be specified;

   vii. an increase in a public assistance grant or SNAP benefits: the new amount of the grant or benefits must be specified;

   viii. a restriction of a medical assistance authorization: the date the restriction will begin, the effect and scope of the restriction, the reason for the restriction, the right of the recipient to select a primary care provider within two weeks of the date of the notice of intent to restrict, if the social services agency provides a limited choice of providers to the recipient; the right of the social services agency to select a primary provider for the recipient, if a list of primary care providers is not provided or where the recipient fails to select a primary care provider within two weeks if the recipient is given a choice; and the right of the recipient to change providers every three months, or sooner for good cause shown; the right of the recipient to explain and present documentation, either at a conference or by submission, showing the

3

ACF 000653

medical necessity of the services cited in the recipient information packet; the right of the recipient to examine records maintained by the social services agency which identify medical assistance services paid for on behalf of the recipient (i.e., claim detail of recipient profile information), must be specified;

ix. an acceptance of an application for services: the type of services to be provided, the duration of services planned, the name of the worker or unit responsible for the case and such person's telephone number, and the right of the applicant and recipient to accept or reject the services shall be specified. In addition, the notice must include a statement regarding the continuing responsibility of the recipient to report any changes in status;

x. a determination that an applicant is eligible for the HEAP program: if Federal funds are available; the amount of benefits must be specified. If Federal funds are unavailable, a statement shall be included that HEAP benefits will be provided if sufficient Federal funds become available;

xi. an acceptance of an application for medical assistance: the extent of coverage, including what care and services are authorized as well as any limitations, must be specified. In addition, if only part of the cost of a particular service will be allowed, such limitation must be specified. If the notice of acceptance indicates a spenddown liability, such notice must include an explanation of the procedures to be followed for meeting the spenddown;

xii. a disqualification of a SNAP household, or a member of such household for failure to comply with SNAP registration or work requirements: the particular act of noncompliance, the proposed period of disqualification and that the household or individual may reapply in order to resume participation in the SNAP at the end of the disqualification period as well as information about avoiding or ending the disqualification, must be specified;

xiii. a notice of action taken in the SNAP when a member of the applicant household has without good cause failed to comply with work registration requirements: the particular act of noncompliance, the proposed period of disqualification, that the individual or household may reapply in order to participate at the end of the disqualification period as well as information about ending the disqualification, must be specified; and,

xiv. a disqualification of a household from the SNAP based upon the voluntary termination of employment by the head of household: the proposed period of disqualification, the household's right to reapply in order to resume participation at the end of the disqualification period as well as information about ending the disqualification, must be specified.

2. except in the case of a denial, the effective date of the action;

3. except in the case of an acceptance of an application for a covered program or service, the specific reasons for the action;

4. the specific laws and/or regulations upon which the action is based;

5. the applicant's or recipient's right to request an agency conference and fair hearing;

6. the procedure for requesting an agency conference or fair hearing, including an address and telephone number where a request for a fair hearing may be made and the time limits within which the request for a fair hearing must be made;

ACF 000654

7.  an explanation that a request for a conference is not a request for a fair hearing and that a separate request for a fair hearing must be made. Furthermore, that a request for a conference does not entitle one to aid continuing, and that a right to aid continuing only arises pursuant to a request for a fair hearing;

8.  when the agency action or proposed action is a reduction, discontinuance, restriction or suspension of public assistance, medical assistance, SNAP benefits or services, the circumstances under which public assistance, medical assistance, SNAP benefits or services will be continued or reinstated until the fair hearing decision is issued; that a fair hearing must be requested separately from a conference; and a statement that when only an agency conference is requested and there is no specific request for a fair hearing, there is no right to continued public assistance, medical assistance, SNAP benefits or services; and that participation in an agency conference does not affect the right to request a fair hearing;

9.  the right of the applicant or recipient to review the applicant's or recipient's case record and to obtain copies of documents which the agency will present into evidence at the hearing and other documents necessary for the applicant or recipient to prepare for the fair hearing at no cost. The notice must contain an address and telephone number where the applicant or recipient can obtain additional information about: the applicant's or recipient's case; how to request a fair hearing; access to the case file; and/or obtaining copies of documents;

10. the right to representation by legal counsel, a relative, friend or other person or to represent oneself, and the right to bring witnesses to the fair hearing and to question witnesses at the hearing;

11. the right to present written and oral evidence at the hearing;

12. the liability, if any, to repay continued or reinstated assistance and benefits, if the recipient loses the fair hearing;

13. information concerning the availability of community legal services to assist an applicant or recipient at the conference and fair hearing;

14. a copy of the budget or the basis for the computation, in instances where the social services agency's determination is based upon a budget computation; and

15. when an action concerning medical assistance is based on a change in law, a statement of the circumstances under which a hearing may be obtained and assistance continued. Such statement must advise the recipient that although the recipient has the right to have a hearing scheduled, the hearing officer at the hearing may determine that the recipient did not have a right to a hearing or continuation of assistance if the sole issue is a Federal or State law requiring an automatic change adversely affecting some or all medical assistance recipients.

(b) Where an automatic public assistance grant adjustment is required for a class of recipients because of a change in either State or Federal law, the notice provided to a member of such class will be adequate if it includes:

1.  a statement of the intended action;

2.  the reasons for such intended action;

3.  a statement of the specific change in the law requiring such action;

4.  a statement of the circumstances under which a hearing may be obtained and assistance continued. Such statement must advise the recipient that although the

5

recipient has the right to have a hearing scheduled, the hearing officer at the hearing may determine that the recipient did not have a right to a hearing or continuation of assistance unless the reason for the appeal is the incorrect computation of the grant; and

5.  the liability, if any, to repay continued or reinstated assistance, if the recipient loses the fair hearing.

## 18 NYCRR 358-2.3 Adverse action notice.

Adverse action notice means a notice from a social services agency advising a recipient of SNAP benefits of its determination to discontinue, reduce, or suspend such recipient's SNAP benefits, within the SNAP certification period.

## 18 NYCRR 358-2.4 Agency conference.

Agency conference means an informal meeting at which an applicant or recipient may have any decision of a social services agency concerning the applicant's or recipient's public assistance, medical assistance, SNAP benefits, HEAP or services reviewed or may have any other aspect of the applicant's or recipient's case reviewed by an employee of that agency who has the authority to change the decision with which the applicant or recipient disagrees.

## 18 NYCRR 358-2.5 Aid continuing.

Aid continuing means the right to have public assistance, medical assistance, SNAP benefits or services continued unchanged until the fair hearing decision is issued.

## 18 NYCRR 358-2.6 Appellant.

Appellant means the party for whom the fair hearing is requested.

## 18 NYCRR 358-2.7 Applicant.

Applicant means a person who has applied for public assistance, medical assistance, HEAP, SNAP benefits, or a service.

## 18 NYCRR 358-2.8 Commissioner.

Commissioner means the New York State Commissioner of Temporary and Disability Assistance, or the Commissioner of Health or the Commissioner of the Office of Children and Family Services, depending upon the type of hearing involved as set forth in 18 NYCRR 358-2.30, or their designees.

## 18 NYCRR 358-2.9 Covered programs or services.

Covered programs or services means one or more of the following: family assistance, safety net assistance, medical assistance, emergency assistance to aged, blind or disabled persons, emergency assistance to needy families with children, SNAP, HEAP, and any services funded through the New York State Department of Family Assistance as defined in 18 NYCRR 358-2.20.

ACF 000656

## 18 NYCRR 358-2.10 Department.

Department means the New York State Department of Family Assistance.

## 18 NYCRR 358-2.11 Expiration notice.

Expiration notice means a notice sent by a social services agency which advises a household in receipt of SNAP benefits that its certification period is due to expire.  The expiration notice must contain:

(a) the consequences of failure to comply with the expiration notice;

(b) the date the current certification period ends;

(c) the date by which the recipient's household must reapply to receive uninterrupted benefits;

(d) the date of any scheduled interview, and a statement that the recipient is responsible for rescheduling a missed interview;

(e) the number of days the recipient has for submitting missing verification after the interview or after the recertification form is received by the local social services district if no interview is required;

(f) the specific regulation upon which the action is based;

(g) the household's right to request an application for SNAP benefits and the obligation of the local social services district to accept the application, provided that the application is signed and contains a legible name and address;

(h) the address where the application must be filed;

(i) the household's right to apply for SNAP benefits by mail or through an authorized representative;

(j) information that any household consisting only of Supplemental Security Income (SSI) applicants or recipients is entitled to apply for SNAP recertification at any office of the Social Security Administration (SSA);

(k) the household's right to a fair hearing;

(l) the procedure for requesting an agency conference or fair hearing, including an address and telephone number where a request for a fair hearing may be made and the time limits within which the request for a fair hearing must be made;

(m) the right of the recipient to review the recipient's case record.  The notice must contain an address and telephone number where the recipient can obtain additional information about the recipient's case; how to request a fair hearing; access to the case file; and/or obtaining copies of documents;

(n) the right to representation by legal counsel, a relative, friend or other person or to represent oneself, and the right to bring witnesses to the fair hearing and to question witnesses at the hearing; and

(o) the right to present written and oral evidence at the hearing.

7

ACF 000657

## 18 NYCRR 358-2.12 Fair hearing.

Fair hearing means a formal procedure provided by OAH upon a request made for an applicant or recipient to determine whether an action taken or failure to act by a social services agency was correct.

## 18 NYCRR 358-2.13 Hearing officer.

Hearing officer means an attorney assigned by OAH to preside at hearings.

## 18 NYCRR 358-2.14 Mass change in the Supplemental Nutrition Assistance Program.

Mass change in SNAP means changes initiated by the Federal government or a social services agency which affect all SNAP households or a significant portion of all SNAP households.  Mass changes may include, but are not limited to, adjustments to income eligibility standards, shelter and dependent care deductions; the thrifty food plan and the standard deduction; annual and seasonal adjustments to social security, supplemental security income and other Federal benefits.

## 18 NYCRR 358-2.15 Notice of action.

Notice of action means a notice from a social services agency advising an applicant, recipient or resident of a tier II facility of any action the agency intends to take or has taken on any assistance or benefits except SNAP benefits, including the acceptance, denial, discontinuance, suspension, or reduction of public assistance, medical assistance or services, an increase in public assistance or medical assistance, a change in the amount of one of the items used in the calculation of a public assistance grant or medical assistance spenddown although there is no change in the amount of such public assistance grant or medical assistance spenddown, a change in the manner or method or form of payment of a public assistance grant, a determination that an applicant for or a recipient of public assistance is not exempt from work program requirements pursuant to 18 NYCRR section 385.2, a restriction of a medical assistance authorization, and a denial or acceptance of HEAP or a determination to discharge a resident of a tier II facility involuntarily after such resident requests and participates in a hearing held by the facility or the social services district in which the facility is located.

## 18 NYCRR 358-2.16 Parties to a fair hearing.

Parties to a fair hearing means the person for whom a fair hearing is requested and the social services agency or agencies whose decision, action or failure to act is subject to review at the fair hearing.

## 18 NYCRR 358-2.17 Public assistance.

Public assistance includes family assistance and safety net assistance, emergency assistance to aged, blind or disabled persons, emergency assistance to needy families including special grants and benefits available pursuant to 18 NYCRR Part 352 and, for the purposes of this Part, refugee cash assistance issued in accordance with 18 NYCRR Part 373.

ACF 000658

## 18 NYCRR 358-2.18 Recipient.

Recipient means a person who is, or has been, receiving a covered program or service.  For the purpose of this Part, recipient includes a former recipient seeking to review a determination of a social services agency and who would have a right to a hearing under 18 NYCRR 358-3.1 if such person were a current recipient.

## 18 NYCRR 358-2.19 Restricted payment.

Restricted payment means one of the methods of payment described in 18 NYCRR Part 381, including restricted money payment, indirect or vendor payment and protective payment.

## 18 NYCRR 358-2.20 Services funded through the New York State Department of Family Assistance.

Services funded through the New York State Department of Family Assistance means services provided pursuant to the local social services district's consolidated services plan or integrated county plan. Such services may include, but are not limited to childcare services, preventive services for children and families and for adults, protective services for children and adults, homemaker services, housekeeper/chore services, and information and referral services.

## 18 NYCRR 358-2.21 Social services agency.

Social services agency means the State, county, city, town official or town agency, social services district, HEAP certifying agency or other entity responsible for making the determination or for the failure to act, which is the subject of review at the fair hearing.

## 18 NYCRR 358-2.22 Social services district.

Social services district means the county department of social services or the New York City Department of Social Services.

## 18 NYCRR 358-2.23 Timely notice.

Timely notice means a notice which is mailed at least 10 days before the date upon which the proposed action is to become effective.

## 18 NYCRR 358-2.24 Title.

Title means Title 18 of the New York State Official Compilation of Codes, Rules and Regulations (NYCRR) also referred to as the regulations of the Department of Family Assistance.

## 18 NYCRR 358-2.25 Witness.

Witness means a person, other than the applicant, recipient, or the representative thereof, who presents testimony and/or documentary evidence at a fair hearing.

## 18 NYCRR 358-2.26 Resident of a tier II facility.

Resident of a tier II facility means a family or family member residing in a tier II facility as defined in 18 NYCRR Part 900.

ACF 000659

## 18 NYCRR 358-2.27 Food stamps.

Whenever the term food stamps is used in this Part it means SNAP benefits.

## 18 NYCRR 358-2.28 Notice of missed interview.

Notice of missed interview means a notice sent by a social services district informing an applicant or recipient that they have missed a scheduled SNAP eligibility or recertification interview and advising them that it is their responsibility to reschedule the interview.

## 18 NYCRR 358-2.29 Request for contact notice.

Request for contact notice means a notice sent by a social services district advising a household that information needs to be verified or clarified during its SNAP certification period.

## 18 NYCRR 358-2.30 Office of Administrative Hearings.

Office of Administrative Hearings (OAH) means the office established in the Office of Temporary and Disability Assistance for the purpose of conducting fair hearings under this Part. The OAH is authorized to conduct hearings under this Part for:

(a) [Reserved]

(b) applicants for and recipients of medical assistance on behalf of the Department of Health; and

(c) applicants for and recipients of services and foster parents challenging rates paid to them for foster care on behalf of the Office of Children and Family Services.

## 18 NYCRR Subpart 358-3. Rights and Obligations of Applicants and Recipients and Sponsors of Aliens

## 18 NYCRR Section 358-3.0 Introduction.

The rights and obligations of applicants and recipients and sponsors of aliens receiving SNAP benefits are governed by this Subpart.

## 18 NYCRR 358-3.1 Right to a fair hearing.

(a) An applicant or recipient has the right to challenge certain determinations or actions of a social services agency or such agency's failure to act with reasonable promptness or within the time periods required by other provisions of this Title, by requesting that the OAH provide a fair hearing. The right to request a fair hearing cannot be limited or interfered with in any way.

(b) If you are an applicant or a recipient of assistance, benefits or services you have a right to a fair hearing if:

　1. your application has been denied by a social services agency, or you have agreed in writing that your application should be withdrawn but you feel that you were given incorrect or incomplete information about your eligibility for the covered program or service; or

　2. a social services agency has failed to:

10

ACF 000660

    i.   determine your eligibility for a covered program or service with reasonable promptness or within the time periods required by other provisions of this Title;

    ii.  issue or adjust your cash grant;

    iii. issue or adjust your SNAP benefits; or

    iv. authorize medical care or services for you; or

3.   your public assistance, medical assistance, SNAP or services have been discontinued, suspended or reduced, or your public assistance, medical assistance or SNAP benefits have been increased; or

4.   the method or manner or form of payment of all or part of your public assistance grant has been changed, a restricted payment is being made or is being continued or a medical assistance authorization is restricted; or

5.   you object to the payee selected for a restricted payment; or

6.   your public assistance, medical assistance, HEAP or services are inadequate; or

7.   although there has been no change in the amount of your public assistance grant, medical assistance spenddown or SNAP benefits, you wish to challenge the social services agency's determination that the amount of one of the items used in the calculation of your public assistance grant, medical assistance spenddown or SNAP benefits has changed; or

8.   your request for restoration of any SNAP benefits lost less than one year prior to the request for restoration has been denied; or you do not agree with the amount of SNAP benefits restored or any other action taken by the social services agency to restore such benefits; or

9.   your SNAP benefits have been reduced, suspended or cancelled as a result of an order issued by the United States Food and Nutrition Service to reduce allotments because the requirements of states participating in SNAP will exceed appropriations; however, in such case you have the right to a fair hearing only if you believe that your benefit level was computed incorrectly under Federal rules, or that Federal rules were misapplied or misinterpreted; or

10. you are aggrieved by a mass change in SNAP; or

11. within a certification period, the amount of your SNAP benefits is inadequate and you have made the request for a fair hearing within such certification period; or

12. your application for SNAP benefits has been denied or your SNAP benefits have been reduced or discontinued due to a determination that you are not exempt from SNAP work requirements and that you have failed to comply with work registration or employment and training requirements. You may request a fair hearing to review such determination including the determination of exemption status, the type of requirement imposed, or a social services agency's refusal to make a finding of good cause for failure to comply with such requirements if you believe that the finding of failure to comply was improper; or

13. you are required to participate in a service, except when required to do so by court order; or

14. you are an applicant for or a recipient of public assistance and you object to a social services agency determination that you are not exempt from work program requirements

11

or to the determination that you are not work-limited as provided by 18 NYCRR section 385.2; or

15. you object to the amount deducted from your initial payment of supplemental security income as reimbursement of public assistance; or

16. the amount you are being charged for a service has been increased and such increase is not based on a change in the fee or family share schedule; or

17. you disagree with the amount of a claim for the overpayment of public assistance or the over-issuance of SNAP benefits, except if the amount of such claim has already been determined in accordance with 18 NYCRR Part 359 or 18 NYCRR Part 399, by an administrative disqualification hearing, a waiver for an administrative disqualification hearing, a court determination or a disqualification consent agreement; or

18. you are a recipient of medical assistance and you have reached a utilization threshold and your application for an exemption from or increase to such threshold has been denied; or

19. you are participating in a work-related program or activity under 18 NYCRR Part 385 and you have a complaint regarding the calculation of your hours of participation in work experience or in work experience as part of community service; or

20. you have been denied a waiver of public assistance program requirements under 18 NYCRR section 351.2(l) or an extension of such waiver has been denied or such waiver has been terminated or modified.

(c) As the sponsor of an alien receiving SNAP benefits and for whom there has been an over-issuance of benefits for which you are liable, you have a right to a hearing to contest the following:

1. the determination that you were responsible for the incorrect information which was provided and which resulted in the over-issuance; and,

2. the amount of the over-issuance for which you are liable.

(d) As a relative or friend of a deceased person, you have a right to a fair hearing if you have paid for the burial arrangements of such deceased person and your claim for reimbursement made pursuant to section 141 of the Social Services Law is denied by the local social services agency.

(e) As a recipient of SNAP benefits, you do not have the right to a fair hearing to challenge the following:

1. the placement of your household on an alternate issuance system; or

2. the length of time that your household is required to participate in an alternate issuance system; or

3. an adverse decision in an administrative disqualification hearing; or

4. a disqualification penalty imposed after you have waived your rights to an administrative disqualification hearing.

(f) As an applicant or recipient, you do not have the right to a fair hearing in all situations. For example, you do not have a right in the following situations:

1. the Department of Health has discontinued payment to the medical facility in which you are or had been residing because the facility has been decertified from participation in the Medical Assistance Program; or

12

2. your physician has ordered a change in the level of care being provided to you; or

3. a utilization review committee has ordered a higher level of care; or

4. the sole issue involving your receipt of medical assistance is a Federal or State law requiring an automatic change which adversely affects some or all recipients; or

5. you are complaining about the amount of any lien taken by a social services agency; or

6. a local social services agency has demanded restitution, in accordance with the provisions of section 104 or 106-b of the Social Services Law, of public assistance paid, other than by a reduction of the public assistance grant; or

7. you are complaining about the amount of a child support payment which is passed through to you; or

8. your services have been discontinued as a result of a court order, or the court order which required the provision of services has expired; or

9. you are a member of a class of public assistance recipients for whom either State or Federal law requires an automatic grant adjustment, unless the reason for your appeal is the incorrect computation of your grant; or

10. you are a foster family care services recipient, a foster family caregiver, or a respite caregiver pursuant to 18 NYCRR section 505.29, and a sponsoring agency terminates the foster family caregiver's or the respite caregiver's authority to provide foster family care services or a social services district or the Office of Children and Family Services or the Department of Health terminates its contract with a sponsoring agency; or

11. you have been sent a request for contact notice in order to verify or clarify information during your SNAP certification period; or

12. you have been sent a notice of missed interview informing you that you have missed a scheduled SNAP eligibility or recertification interview and advising you that it is your responsibility to reschedule the interview.

(g) If you are an institutionalized spouse or a community spouse, as defined in 18 NYCRR section 360-4.10, and a determination has been made on an application for medical assistance for the institutionalized spouse, you have a right to a fair hearing to challenge:

1. the amount of the community spouse monthly income allowance; and/or

2. the amount of monthly income determined to be otherwise available to the community spouse; and/or

3. the amount of resources attributed to the community spouse or to the institutionalized spouse; and/or

4. the amount of the community spouse resource allowance.

(h) You have a right to a fair hearing if you are a resident of a shelter for families as defined in section 900.2 of this Title and you have been involuntarily discharged from the shelter after having requested and participated in a hearing, held by the facility or by the social services district in which the facility is located, to determine whether you should be involuntarily discharged. If you do not request and participate in such a hearing you do not have a right to a fair hearing. You also do not have a right to a hearing under this Part if the basis for the discharge is that you are or a family member is no longer medically appropriate to reside in the facility, as determined by qualified medical personnel, you or a family member's temporary housing assistance has been discontinued pursuant to the provisions of 18 NYCRR section 352.35 or, you have or a family member has been absent from the facility

13

ACF 000663

for more than 48 hours without having complied with the facility's rules concerning absence and you have not or the family member has not been readmitted to the facility.

## 18 NYCRR 358-3.2 Right to priority in hearing and determination.

Priority in scheduling of your hearing and determination will be provided when:

(a) you are an applicant for emergency assistance to needy families with children, emergency assistance to aged, blind or disabled persons or emergency safety net assistance and you are appealing the denial of such benefits; or

(b) your circumstances warrant priority in scheduling and your hearing is being scheduled because you have:

1.  no food; or

2.  no shelter, or your shelter is imminently about to be lost or terminated; or

3.  an inadequate or inappropriate emergency shelter placement; or

4.  an eviction/dispossess notice; or

5.  no fuel for heat during the cold weather period; or

6.  a utility disconnect scheduled for a specific date; or

7.  a utility shut-off; or

8.  need for rental security deposit, broker's fee and/or first month's rent, if necessary to obtain permanent housing, and failure to expedite processing will lead to loss of such housing; or

9.  urgent need for medical care, services or supplies; or

10. a denial or discontinuance of or inadequate personal care services; or

11. a denial or discontinuance of or inadequate adult protective services; or

12. been involuntarily discharged from a tier II facility as defined in 18 NYCRR Part 900 and you requested and participated in a hearing, held by the facility or by the social services district in which the facility is located, to determine whether you should be involuntarily discharged; or

13. any other problem which is determined at the commissioner's discretion, to be an appropriate subject for priority processing and which presents a crisis situation or a threat to your health and safety or that of your family; or

(c) you are requesting a fair hearing concerning your SNAP benefits and your household is planning to move away from the local social services district before the fair hearing decision would normally be issued; or

(d) you have been denied public assistance for yourself or your dependent child because:

1.  you are under the age of 18;

2.  you have never married;

3.  you either reside with and provide care for your dependent child or are pregnant;

4.  you are not residing in a place of residence maintained as a home by your parent, legal guardian or other adult relative or in an adult-supervised supportive living arrangement; and,

14

ACF 000664

5. you have alleged that your physical or emotional health or safety or that your dependent child would be jeopardized if you or such child lived in the same residence with your parent or legal guardian and an investigation conducted in accordance with section 424 of the Social Services Law did not support your allegation.

## 18 NYCRR 358-3.3 Notice requirements.

(a) Public assistance, medical assistance and services: notice of action.

1. Action to discontinue, suspend, reduce, restrict; changes in the manner of payment for childcare services; denial of an extension of a waiver of public assistance program requirements or termination or modification of such waiver. Except as set forth in subdivision (d) of this section, you have a right to timely and adequate notice when a social services agency proposes to:

    i. take any action to discontinue, suspend, or reduce your public assistance grant, medical assistance authorization or services; or

    ii. change the manner or method or form of payment of your public assistance grant; or

    iii. restrict your medical assistance authorization; or

    iv. make changes in the manner or amount of payment for your childcare services and such change results in the discontinuance, suspension, reduction or termination of benefits or forces you to make changes in childcare arrangements; or

    v. make changes in the manner of payment for your supportive services provided to enable you as a recipient of public assistance to participate in work activities pursuant to 18 NYCRR Part 385 and such changes result in the discontinuance, suspension, reduction or termination of benefits, or force you to change child care arrangements; or

    vi. deny an extension of a waiver of public assistance program requirements under 18 NYCRR section 351.2(l) or such waiver has been terminated or modified.

2. Action to accept, deny, increase or make change in calculation; denial of utilization threshold exemption or increase application; employability determination changes in the manner of payment for denial of a waiver of public assistance program requirements. You have a right to adequate notice when a social services agency:

    i. accepts or denies your application for public assistance, medical assistance or services; or

    ii. increases your public assistance grant; or

    iii. determines to change the amount of one of the items used in the calculation of your public assistance grant or medical assistance spenddown although there is no change in the amount of your public assistance grant or medical assistance spenddown; or

    iv. denies an application for an exemption from or an increase of a medical assistance utilization threshold and you have reached the utilization threshold; or

    v. changes the manner or amount of payment for your childcare services except as provided in subparagraph (1)(iv) of this subdivision; or

    vi. determines that you are not eligible for an exemption requested from work requirements as described in 18 NYCRR Part 385 and you are an applicant for or recipient of public assistance; or

15

ACF 000665

vii.    denies a waiver of public assistance program requirements under 18 NYCRR section 351.2(l).

3.    Action based on a change in State or Federal law requiring automatic public assistance grant adjustments for classes of recipients. When you are a member of a class of public assistance recipients for whom changes in either State or Federal law require automatic grant adjustments, you are entitled to timely notice of such grant adjustment. This notice will be adequate if it includes those items listed in 18 NYCRR section 385-2.2(b).

(b)  SNAP.

1.    Action to discontinue, reduce or recoup: action notice. Except as set forth in subdivision (e) of this section, when a social services agency proposes to take any action to discontinue or reduce your SNAP benefits you have the right to timely and adequate notice.

2.    Action to accept, deny, increase, change in calculation: adverse action taken notice. When a social services agency accepts or denies your application for SNAP benefits or increases your SNAP benefits, or changes the amount of one of the items used in the calculation of your SNAP benefits although there is no change in the amount of your SNAP benefits, you have the right to adequate notice.

3.    Expiration notice.

i.    Before or at the beginning of the last month of your household's current certification period for SNAP benefits, you have a right to an expiration notice as defined in section 18 NYCRR 358-2.11; however, if your household was recertified for both public assistance and SNAP benefits prior to the last month of the SNAP certification period, an expiration notice is not required.

ii.    For households with certification periods longer than one or two months the notice of expiration must be sent by the social services agency so that your household receives it no earlier than the first day of the second to the last month of the certification period and no later than one day before the last month of the certification period.

iii.    Households certified for one month only, or initially certified for two months during the month following the month of application, must be sent the expiration notice at the time of certification.

(c)  Home Energy Assistance Program (HEAP).

When a social services agency accepts or denies your application for HEAP benefits or determines that you are eligible for HEAP benefits but Federal funds are unavailable, you have a right to adequate notice.

(d)  Public assistance and medical assistance programs: exceptions to timely notice requirements.

1.    As a recipient of either public assistance or medical assistance you have the right to adequate notice sent no later than the effective date of the proposed action when:

i.    the social services agency has factual information confirming the death of a recipient or the payee of a family assistance case, and there is reliable information that no relative is available to serve as a new payee; or

ii.    the social services agency has received a clear written statement signed by you which includes information that requires the social services agency to discontinue or reduce your public assistance or medical assistance and you have indicated in such

16

ACF 000666

statement that you understand that such action will be taken as a result of supplying such information; or

    iii.    the social services agency has received a clear written statement from you indicating that you no longer wish to receive public assistance or medical assistance; or

    iv.    the agency has reliable information that you have been admitted or committed to an institution or prison which renders you ineligible for assistance or services under the Social Services Law; or

    v.    your whereabouts are unknown and mail addressed to you by the social services agency has been returned by the post office with an indication that there is no known forwarding address. However, public assistance or medical assistance will be given to you if the social services agency is made aware of your whereabouts during the period covered by the returned public assistance check or medical assistance authorization; or

    vi.    you have been accepted for public assistance or medical assistance in another local social services district, state, territory or commonwealth, and that acceptance has been verified by the social services district previously providing you with such assistance.

2.  As a recipient of public assistance, you have the right to adequate notice sent no later than the date of the proposed action when the following actions affect your public assistance grant:

    i.    you have been placed for long-term care in a skilled nursing facility, intermediate care facility or hospital; or

    ii.    a child has been removed from your home as a result of a judicial determination, or voluntarily placed in foster care by the child's legal guardian; or

    iii.    a special allowance granted for a specific period has been terminated and you had been informed in writing at the time that you were first granted the special allowance that the allowance would automatically terminate at the end of the specified period; or

    iv.    the social services agency has determined to accept your application for public assistance or has determined to increase your assistance;

    v.    the social services agency action results from information you furnished in a quarterly report required by 18 NYCRR section 351.24;

    vi.    you are a recipient of public assistance and you have been determined eligible for supplemental security income and the social services agency has made a determination that the amount of supplemental security income makes you no longer eligible for public assistance.

3.  As a recipient of medical assistance, you have the right to adequate notice if you are in a general hospital, not receiving chronic care services and a utilization review committee has determined that your medical assistance payment should be reduced or discontinued.

(e)  SNAP: exemption from notice requirements or timely notice requirements.

1.  You are not entitled to an individual adverse action notice when:

    i.    a mass change is initiated which affects all SNAP households or significant portions thereof; or

17

ii. based on reliable information, the social services agency determines that all members of your household have died or that the household has moved from the social services district or will not be residing in the social services district and will be unable therefore to obtain its next SNAP allotment from such district; or

iii. your certification period has expired, you were previously informed of the expiration, and you have not reapplied for benefits; or

iv. your household has been receiving an increased SNAP allotment to restore lost benefits, the restoration is complete, and the household was previously notified in writing of the date when the increased SNAP allotment would terminate; or

v. your household's allotment of SNAP benefits varies from month to month within the certification period to take into account changes which were anticipated at the time of certification, and the household was notified that the SNAP allotment would vary at the time of certification; or

vi. your household applied jointly for public assistance and SNAP benefits and has been receiving SNAP benefits pending the approval of the public assistance grant and was notified at the time of SNAP certification that SNAP benefits would be reduced upon approval of the public assistance grant; or

vii. a household member is disqualified from SNAP for an intentional program violation in accordance with 18 NYCRR Part 359 or 18 NYCRR Part 399 or the SNAP benefits of the remaining household members are reduced or terminated to reflect the disqualification of that household member; or

viii. the social services agency has elected to assign a longer certification period to your household which was certified on an expedited basis and for which verification was postponed. The household must have received written notice that in order to receive benefits past the month of application the household must provide the verification which was initially postponed and the social services agency may act on the verified information without further notice; or

ix. a social services agency has converted your household from cash repayment of an intentional program violation claim or an inadvertent household error to benefit reduction, as a result of the household's failure to make an agreed upon cash repayment; or

x. you are a resident of a treatment center or group living arrangement which is determined to be ineligible for SNAP benefits because the facility has either lost its certification from the appropriate State agency/agencies or lost its status as an authorized representative due to its disqualification by the Federal Food and Nutrition Service as a retailer. However, residents of group living arrangements applying on their own behalf may remain eligible to participate in the SNAP; or

xi. your household voluntarily requests, in writing or in the presence of an agency employee, that its SNAP benefits be terminated. If the household does not provide a written request, the social services agency must send the household a letter confirming the voluntary withdrawal.

2. Mass changes.

i. When the Federal government initiates an adjustment to eligibility standards, allotments or deductions and the State initiates adjustments to utility standards, you are not entitled to a notice of adverse action.

ACF 000668

    ii.    When OTDA initiates a mass change in SNAP eligibility or benefit levels simultaneously for the entire caseload or that portion of the caseload that is affected, or by conducting individual desk reviews in place of the mass change, no later than the date your household is scheduled to receive the benefits which have been changed, you shall be informed of the following:

        a.  the general nature of the change;

        b.  examples of the effect the changes will have on household allotments;

        c.  the month in which the change will take effect;

        d.  the right to a fair hearing;

        e.  the right to continued benefits and under what circumstances benefits will be continued, pending issuance of the fair hearing decision. You will be informed that at the hearing, the hearing officer may determine to end your continuation of benefits if it is determined that the issue being contested is not based on improper computation of benefits or misapplication or misinterpretation of Federal law or regulation;

        f.  general information on whom to contact for additional information; and,

        g.  the liability the household will incur for any over-issued benefits if the fair hearing decision is adverse.

3.    As a recipient of SNAP benefits, you have the right to an adequate notice sent no later than the date of the proposed action when the social services agency action results from information you furnished on a periodic report. As a recipient of SNAP benefits, you have the right to an adequate and timely notice because you failed to return a periodic report required by 18 NYCRR section 387.17(d).

(f)  Involuntary discharges from tier II facilities.

As a resident of a tier II facility you have a right to adequate notice when you have been involuntarily discharged from a tier II facility as set forth in 18 NYCRR section 900.8 and you have requested and participated in a hearing, held by the facility or by the social services district in which the facility is located, to determine whether you should be involuntarily discharged. Such notice must be on a form mandated by OTDA, which meets the requirements for adequate notice as set forth in 18 NYCRR section 358-2.2.

(g)  Concurrent benefits.

For the purposes of this subdivision, the term benefits has the same meaning as that used in 18 NYCRR section 351.9 and concurrent benefits has the same meaning as that used in 18 NYCRR section 351.9.

1.    Denial of benefits. You have the right to an adequate notice when a social services official determines to deny you benefits on the grounds that you are receiving or have been accepted to receive a concurrent benefit in that social services district or in another social services district, state, territory or commonwealth.

2.    Discontinuance of benefits—timely and adequate notice. You have the right to timely and adequate notice when:

    i.    a social services official determines to discontinue your benefits because you are receiving concurrent benefits in that social services district and in another state, territory or commonwealth, but you are not receiving concurrent benefits from social services districts solely within the State; or

ACF 000669

    ii.    a social services official determines to discontinue your benefits because you are receiving benefits in that social services district and all concurrent benefits in that district and in any other social services district in the State have been discontinued and no aid continuing has been granted under 18 NYCRR 358-3.6 for any such discontinuances.

3.    Discontinuance of benefits—exception to timely notice. Notwithstanding any other provision of this section, you have a right to adequate notice sent no later than the effective date of the proposed action when a social services official determines to discontinue your benefits because you are receiving concurrent benefits in the same social services district or in another social services district within the State.

## 18 NYCRR 358-3.4 Rights in the fair hearing process.

As an appellant, you have the right:

(a)    to the continuation or reinstatement of your public assistance, medical assistance authorization, SNAP benefits or services until the issuance of a decision in your fair hearing, to the extent authorized by 18 NYCRR 358-3.6. You have the right to request that your assistance, benefits or services not be continued or reinstated until the fair hearing decision is issued;

(b)    to examine your case record and to receive copies of documents in your case record which you need to prepare for the fair hearing, upon your request, to the extent authorized by and within the time periods set forth in 18 NYCRR 358- 3.7;

(c)    to examine and receive copies of all documents and records which will be submitted into evidence at the fair hearing by a social services agency, upon your request, to the extent authorized by and within the time periods set forth in 18 NYCRR 358-3.7;

(d)    to the rescheduling (adjournment) of your hearing, to the extent authorized by 18 NYCRR 358-5.3;

(e)    to be represented by an attorney or other representative at any conference and hearing, or to represent yourself;

(f)    to have an interpreter at any fair hearing, at no charge to you, if you do not speak English or if you are deaf. You should advise OAH prior to the date of the fair hearing if you will need an interpreter;

(g)    to appear and participate at your conference and fair hearing, to explain your situation, to offer documents, to ask questions of witnesses, to offer evidence in opposition to the evidence presented by the social services agency and to examine any documents offered by the social services agency;

(h)    to bring witnesses to present written and oral evidence at any conference or fair hearing;

(i)    at your request to the social services agency, to receive necessary transportation or transportation expenses to and from the fair hearing for yourself and your representatives and witnesses and to receive payment for your necessary child care costs and for any other necessary costs and expenditures related to your fair hearing;

(j)    to have the fair hearing held at a time and place convenient to you as far as practicable, taking into account circumstances such as your physical inability to travel to the regular hearing location;

(k)    to request removal of a hearing officer in accordance with 18 NYCRR 358-5.6; and,

ACF 000670

(l)  to seek review by a court if the decision is not in your favor.

## 18 NYCRR 358-3.5 Requests for a fair hearing.

(a)  A fair hearing may be requested in writing, by telephone, by electronic means, or facsimile or in person.

(b)

1.  A request for a fair hearing must be made within 60 days after the social services agency's determination, action, or failure to act about which you are complaining except as provided in paragraphs (2) and (3) of this subdivision for fair hearings relating to SNAP benefits, and paragraph (4) relating to HEAP benefits and paragraph (5) relating to involuntary discharges from tier II facilities, and paragraph (6) relating to determinations of exemptions from work activities due to disability. Where the social services agency's action is based on a change in State or Federal law requiring automatic public assistance grant adjustments for classes of recipients, a request for a fair hearing must be made within 60 days after the changed grant becomes available to you.

2.  A request for a fair hearing to complain about any action by the social services agency affecting your SNAP benefits, including a loss of SNAP benefits, must be made within 90 days after the determination, action or failure to act about which you are complaining. Action includes a denial of a request for restoration of any benefits lost more than 90 days but less than one year prior to the request for restoration. Where the social services agency's action is the result of a mass change, a request for a fair hearing must be made within 90 days after the changed level of benefits become available to you.

3.  A request for a fair hearing to dispute the current level of SNAP benefits granted to your household must be made during the SNAP certification period.

4.  A request for a fair hearing to review the denial of, the failure to act on an application for, or the adequacy of a HEAP benefit must be made no later than 60 days after the mailing of the notice.  Notwithstanding the provisions of 18 NYCRR Part 358 and 18 NYCRR Part 393, no person shall be certified as eligible to receive a HEAP benefit as a result of a fair hearing if no Federal funds are available for such purpose.  Federal funds are available for the provision of a HEAP benefit until the end of the Federal fiscal year succeeding the end of the HEAP program year for which such benefit is claimed.  The issuance of a HEAP benefit in compliance with a fair hearing decision can only be provided if the hearing request is made during the period of time when Federal funds are available.

5.  A request for a fair hearing to review the involuntary discharge of a resident from a tier II facility after the resident has requested and participated in a hearing, held by the facility or social services district in which the facility is located, must be made no later than 30 days after the decision of the facility or social services district is rendered.

6.  A request for a fair hearing relating to determinations of exemptions from work activities due to disabilities must be made with 10 days of the agency's notice of determination pursuant to 18 NYCRR 385.2(d)(7)(i).

7.  If the last day for requesting a fair hearing falls on a weekend or holiday, a hearing request postmarked or received by OAH on the day after the weekend or holiday will be considered as timely received.

21

ACF 000671

# 18 NYCRR 358-3.6 Right to aid continuing.

In certain situations, you have the right to have your public assistance, medical assistance, SNAP benefits, and services continued unchanged until your fair hearing decision is issued. OAH will determine whether you are entitled to aid continuing and advise the appropriate social services agency and you of its decision.

(a) Public assistance, medical assistance and services.

For public assistance, medical assistance and services, the right to aid continuing exists as follows:

1.

  i. Except as provided in paragraph (2) of this subdivision, where the social services agency is required to give you timely notice before it can take any action in your case, you have the right to aid continuing for your public assistance and medical assistance and services until the fair hearing decision is issued if you request a fair hearing before the effective date of a proposed action as contained in the notice of action. In the Medical Assistance Program, if you have been receiving assistance based on a spenddown of excess income, the right to aid continuing includes the right to have your spenddown liability continue unchanged.

  ii. If your assistance or services have been reduced or discontinued, restricted or suspended by the social services agency and you requested a hearing before the effective date contained in the notice, your assistance or services must be restored by the social services agency as soon as possible but no later than five business days after notification from OAH that you were entitled to have your public assistance, medical assistance or services continue uninterrupted pursuant to this paragraph.

  iii. In cases where the action is an automatic public assistance grant adjustment based on a change in State or Federal law, the effective date for determining the right to continued public assistance, medical assistance and SNAP benefits will be deemed to be 10 days after the date the changed grant becomes available to you.

  iv. If the effective date of the proposed action falls on a weekend or holiday, a hearing request postmarked or received by OAH on the day after the weekend or holiday will be considered timely for the purposes of aid continuing.

2. There is no right to aid continuing of:

  i. public assistance where OAH has determined that the sole issue is one of State or Federal law or policy, or change in State or Federal law and not one of incorrect grant computation; or

  ii. medical assistance or services where OAH has determined that the sole issue is one of State or Federal law or policy; or

  iii. medical assistance when you have been determined presumptively eligible for medical assistance and have subsequently been denied eligibility for medical assistance; or

  iv. medical assistance if you are a recipient in a general hospital, not receiving chronic care services, and you are in short-term hospitalization and a utilization review committee determines that such level of care is no longer required; or

ACF 000672

    v.    public assistance, medical assistance or services when the social services official determines to discontinue your benefits because you are receiving concurrent benefits as described in 18 NYCRR 351.9 in the same social services district or in another social services district within the State; or

    vi.    childcare assistance provided pursuant to 18 NYCRR section 415.2(a)(1)(i) before the eligibility determination and you have subsequently been determined ineligible for childcare assistance pursuant to 18 NYCRR section 415.2(a)(1)(ii).

3.

    i.    Where the social services agency is required only to give you adequate notice but not timely notice and has discontinued, reduced, restricted or suspended your public assistance, medical assistance or services, you have the right to have your public assistance, medical assistance or services reinstated and continued until a fair hearing decision is issued only if you request a fair hearing within 10 days of the mailing of the agency's notice of the action and if OAH determines that the action on your public assistance or medical assistance benefits or services did not result from the application of or change in State or Federal law or policy. If OAH determines that you are entitled to have your public assistance, medical assistance or services reinstated and continued in accordance with this paragraph, the social services agency must restore your public assistance, medical assistance or services as soon as possible but not later than five business days after being advised by OAH of such determination. With the exception of childcare services, there is no right to reinstatement for supportive services provided to enable you to participate in work activities pursuant to 18 NYCRR Part 385.

    ii.    If the 10th day of the mailing of the agency's notice of the action falls on a weekend or holiday, a hearing request postmarked or received by OAH on the day after the weekend or holiday will be considered timely for the purposes of reinstatement pursuant to subparagraph (i) of this paragraph.

4.

    i.    Where an applicant for or a recipient of public assistance has claimed to be exempt from work requirements under the disability program pursuant to 18 NYCRR 385.2(d) and has been determined not to be exempt or to be work limited and a hearing is requested to contest such determination within 10 days of the date of the agency's notice, any failure to comply with employment requirements within the 10-day period or thereafter until a fair hearing decision is issued will not be considered noncompliance regardless of the outcome of the fair hearing.

    ii.    If the 10th day after effective date of the agency's notice of the action falls on a weekend or holiday, a hearing request postmarked or received by OAH on the day after the weekend or holiday will be considered to be received within 10 days of the effective date of the agency notice for purposes of subparagraph (i) of this paragraph.

(b) Public assistance, medical assistance, and services will not be continued pending the issuance of a fair hearing decision when:

    1.   you have voluntarily waived your right to the continuation of such assistance, benefits or services in writing; or

    2.   you do not appear at the fair hearing and do not have a good reason for not appearing; or

23

ACF 000673

3.  prior to the issuance of your fair hearing decision, a social services agency proposes to take or takes an action which affects your entitlement to public assistance, medical assistance, or services, and you do not make a request for a fair hearing regarding the subsequent notice.

(c)  SNAP benefits.

For SNAP households, including households in receipt of both SNAP and public assistance, the right to aid continuing exists as follows:

1.

  i.  You have the right to have your SNAP benefits continue at the same level as you have been receiving until the fair hearing decision is issued only where the proposed adverse action is to take place during the certification period of your SNAP authorization and your request for a hearing is made prior to the effective date contained in a timely notice for your case closing or authorization reduction.

  ii.  If your SNAP benefits have been reduced or discontinued by the social services agency and you have made a timely hearing request by the effective date contained in the notice, your SNAP benefits must be restored by the social services agency as soon as possible but no later than five business days after notification from OAH that you are entitled to have your benefits continue unchanged pursuant to this paragraph.

  iii.  Where the action being taken is the result of a mass change, the effective date of the action is deemed to be 10 days after the date the changed level of benefits become available to you.

  iv.  If the effective date of the proposed action falls on a weekend or holiday, a hearing request postmarked or received by OAH on the day after the weekend or holiday will be considered timely for the purposes of this paragraph.

2.  There is no right to aid continuing where:

  i.  OAH has determined that the sole issue is one of Federal law or regulation and your claim that your benefits were improperly computed or the law or regulation was misapplied or misinterpreted is invalid; or

  ii.  your SNAP benefits have been reduced, suspended or cancelled as a result of an order to reduce allotments issued by the Food and Nutrition Service because the requirements of states participating in the SNAP will exceed appropriations; or

  iii.  a social services official determines to discontinue your benefits because you are receiving concurrent benefits as described in 18 NYCRR 351.9 in the same social services district or in another social services district within the State.

3.  When SNAP benefits are reduced or terminated because you fail to make the request for a hearing within the required period stated in the notice, upon your request for a fair hearing your SNAP benefits will be reinstated if you establish that your failure to request a hearing in a timely manner was for good cause. If OAH determines that you have the right to have your SNAP benefits reinstated in accordance with this paragraph, the social services agency must reinstate your SNAP benefits as soon as possible but no later than five business days after being advised by OAH of such determination.

4.  When benefits are reduced or terminated due to a mass change, your benefits will be reinstated only if the issue being contested is that:

  i.  SNAP eligibility or benefits were improperly computed; or

24

    ii.    Federal law or regulation is being misapplied or misinterpreted by a State agency or by a social services agency.

         If OAH determines that you have the right to have your SNAP benefits reinstated in accordance with this paragraph, the social services agency must reinstate your SNAP benefits as soon as possible but no later than five business days after being advised by OAH of such determination.

5.   If the action proposed in the notice results from a regularly scheduled recertification of your SNAP authorization, your level of participation in the SNAP will be continued at the level determined at your recertification. You do not have the right to have your level of benefits continued at the prior benefits level unless and until the fair hearing decision is issued requiring such benefit level.

6.   Once your benefits are continued or reinstated, your benefits should continue without change until you receive your hearing decision unless:

    i.    your certification period expires, in which case you may reapply and may be determined eligible for a new certification period; or

    ii.    a change affecting your household's eligibility for SNAP benefits or the basis of issuance of SNAP benefits occurs before your hearing decision is issued and you fail to make a request for a fair hearing regarding a subsequent notice of adverse action; or

    iii.    before the hearing decision is issued a mass change occurs which affects your household's eligibility for SNAP benefits or basis of issuance.

(d) If your public assistance grant, child care services, or SNAP benefits are continued until a fair hearing decision is issued and you lose the fair hearing, the social services agency may recover the benefits or services which you should not have received. This subdivision does not apply to fair hearings to review the imposition of a work sanction under 18 NYCRR 351.2(i)(2), 18 NYCRR 385.12 and 18 NYCRR 385.13.

(e) If you are involuntarily discharged from a tier II facility after requesting and participating in a hearing, held by the facility or the social services district in which the facility is located, and you request a fair hearing to review this determination, you do not have the right to remain at the facility pending the outcome of your fair hearing.

## 18 NYCRR 358-3.7 Examination of case record before the fair hearing.

(a)

1.   At any reasonable time before the date of your fair hearing and also at the fair hearing, you or your authorized representative have the right to examine the contents of your case record and all documents and records to be used by the social services agency at your fair hearing.

2.   Except as provided in paragraph (3) of this subdivision, the only exceptions to access to your case record are:

    i.    those materials to which access is governed by separate statutes, such as records regarding child welfare, foster care, adoption or child abuse or neglect or any records maintained for the purposes of the Child Care Review Service; and,

ACF 000675

    ii.    those materials being maintained separately from public assistance files for the purposes of criminal prosecution and referral to the district attorney's office. This exception applies only to records which are part of an active and ongoing investigatory action; and,

    iii.    the county attorney or county welfare attorney's files.

3. Case records secured by the Commission for the Visually Handicapped or by a local rehabilitation agency acting on behalf of such commission will not ordinarily be made available for examination since they contain information secured from outside sources; however, particular extracts will be furnished to you or your authorized representative when provision of such information will be beneficial to you. The case record, or any part thereof, admitted as evidence in a fair hearing shall be available for review by you or your authorized representative.

(b)

1. Upon request, you have a right to be provided at a reasonable time before the date of the hearing, at no charge, with copies of all documents which the social services agency will present at the fair hearing in support of its determination. If the request for copies of documents which the social services agency will present at the hearing is made less than five business days before the hearing, the social services agency must provide you with such copies no later than at the time of the hearing. If you or your representative request that such documents be mailed, such documents must be mailed within a reasonable time from the date of the request; provided however, if there is insufficient time for such documents to be mailed and received before the scheduled date of the hearing such documents may be presented at the hearing instead of being mailed;

2. Upon request, you have the right to be provided at a reasonable time before the date of the hearing, at no charge, with copies of any additional documents which you identify and request for purposes of preparing for your fair hearing. If the request for copies of documents is made less than five business days before the hearing, the social services agency must provide you with such copies no later than at the time of the hearing. If you or your representative request that such documents be mailed, such documents must be mailed within a reasonable time from the date of the request; provided however, if there is insufficient time for such documents to be mailed and received before the scheduled date of the hearing such documents may be presented at the hearing instead of being mailed;

3. Your request for copies of documents pursuant to paragraphs (1) and (2) of this subdivision may at your option be made in writing, or orally, including by telephone.

4. If the social services agency fails to comply with the requirements of this subdivision the hearing officer may adjourn the case, allow a brief recess for the appellant to review the documents, preclude the introduction of the documents where a delay would be prejudicial to the appellant, or take other appropriate action to ensure that the appellant is not harmed by the agency's failure to comply with these requirements.

## 18 NYCRR 358-3.8 Agency conference.

(a) At any reasonable time before the date of your fair hearing, you may request that the agency schedule an agency conference before your fair hearing to review the agency decision for which you have requested the fair hearing except as provided for in subdivision (c) of this section.

26

ACF 000676

(b) Even though you have not requested a fair hearing, you may request an agency conference to review any action on your case.

(c) No agency conference is required for actions involving the involuntary discharge of residents of tier II facilities.

## 18 NYCRR 358-3.9 Authorization of representative.

(a) Except where impracticable to execute a written authorization, an individual or organization seeking to represent you, other than an attorney or an employee of an attorney, must have your written authorization to represent you at any conference or fair hearing and to review your case record. An employee of your attorney will be considered an authorized representative if such employee presents written authorization from your attorney or if such attorney advises the social services agency by telephone of such employee's authorization.

(b) Once a social services agency and the OAH have been notified that a person or organization has been authorized to represent you at your fair hearing, such representative will receive copies of all correspondence to you from the social services agency and OAH relating to the conference and fair hearing.

## 18 NYCRR Subpart 358-4 Rights and Obligations of Social Services Agencies

## 18 NYCRR 358-4.0 Introduction.

The rights and obligations of social services agencies are governed by this Subpart.

## 18 NYCRR 358-4.1 Proposed actions.

(a) A social services agency must review or cause to be reviewed any of the following intended actions to determine whether the action is correct based upon available evidence included in the applicant's or recipient's case record:

1. proposed approval, denial, discontinuance, suspension or reduction of a public assistance grant, medical assistance authorization, SNAP benefits or services;

2. proposed increase in a public assistance grant, SNAP benefits, or a medical assistance spenddown;

3. proposed change in the amount of one of the items used to calculate a public assistance grant, SNAP benefits, or a medical assistance spenddown;

4. proposed acceptance or denial of an application for HEAP benefits;

5. proposed involuntary discharge of a resident from a tier II facility as defined in 18 NYCRR Part 900; or

6. proposed denial of an exemption from work requirements pursuant to 18 NYCRR 385.2.

(b) Where it is determined that the intended action is correct after review, the social services agency must send to the applicant/recipient a notice which meets the requirements of 18 NYCRR 358-3.3.

## 18 NYCRR 358-4.2 Pre-hearing responsibilities.

(a) When requested, the social services agency must provide assistance to applicants and recipients in making a request for a fair hearing.

ACF 000677

(b)

1. Upon notification by OAH that a fair hearing has been requested and that the appellant's public assistance, medical assistance, SNAP benefits, or services must be continued or reinstated in accordance with 18 NYCRR 358-3.6 until the fair hearing decision is issued, the social services agency, except as provided in 18 NYCRR 358-3.6(b) and (c)(6), must take immediate action to assure that the appellant's public assistance, medical assistance, SNAP benefits and services continue unchanged until the fair hearing decision is issued.

2. Upon receipt of such notification, if public assistance, medical assistance, SNAP benefits or services already have been discontinued, reduced, restricted or suspended, the social services agency must take whatever action is necessary to restore the appellant's public assistance, medical assistance, SNAP benefits or services to their previous level. Such action must be taken as soon as possible but no later than five business days from notification that appellant's public assistance, medical assistance, SNAP benefits or services must continue or be reinstated.

(c) Upon oral or written request, including request by telephone, the social services agency must provide to the appellant and the appellant's authorized representative copies of the documents to be presented at the fair hearing. Such copies must be provided at a reasonable time before the date of the hearing. If the request for copies of documents is made less than five business days before the hearing, the social services agency must provide the appellant and the appellant's authorized representative such copies no later than at the time of the hearing. Such documents must be provided without charge and must be provided to the appellant and the appellant's authorized representative by mail within a reasonable time from the date of the request if the appellant or the appellant's authorized representative request that such documents be mailed; provided however, if there is insufficient time for such documents to be mailed and received before the scheduled date of the hearing such documents may be presented at the hearing instead of being mailed.

(d) Upon oral or written request, including request by telephone, the social services agency must provide to the appellant and the appellant's authorized representative copies of any documents from appellant's case file which the appellant or the appellant's authorized representative identifies and requests for purposes of hearing preparation. Such copies must be provided at a reasonable time before the date of the hearing. If the request for copies of documents is made less than five business days before the hearing, the social services agency must provide the appellant and the appellant's authorized representative such copies no later than at the time of the hearing. Such documents must be provided without charge and must be provided to the appellant and the appellant's authorized representative by mail within a reasonable time from the date of the request if the appellant or the appellant's authorized representative request that such documents be mailed; provided however, if there is insufficient time for such documents to be mailed and received before the scheduled date of the hearing such documents may be presented at the hearing instead of being mailed.

(e) The social services agency must encourage the use of agency conferences to settle disputes and complaints concerning actions regarding an applicant's or recipient's public assistance, medical assistance, SNAP benefits, request for an exemption from work requirements, HEAP benefits or services so as to eliminate the need to hold fair hearings wherever the dispute can be resolved by scrutiny of documents and/or thorough investigation.

ACF 000678

(f)  The social services agency must hold agency conferences when such conference is requested as provided for in 18 NYCRR 358-3.8. The conference may not be used to inhibit the appellant's right to a fair hearing. Agency conferences must be scheduled before the date of the fair hearing. If the appellant is contesting a denial of expedited participation in the SNAP, the conference must be scheduled within two business days of the conference request, unless the appellant requests a later date.

(g)  The social services agency must bring the necessary information and documentation to any agency conference, including a telephone conference, to explain the reason for the agency determination and to provide a meaningful opportunity to resolve the problem.

(h)  Except for telephone agency conferences approved pursuant to subdivision (i) of this section, a representative of the social services agency must appear with the case record at the agency conference. Such representative must have reviewed the case and must have the authority to make binding decisions on behalf of the social services agency, including the authority to withdraw the intended action.

(i)  Social services agencies may provide telephone conferences upon prior approval of OAH. The OAH may approve such requests in its discretion, where holding an in-person conference is not feasible.

(j)  The social services agency must send copies of all correspondence relating to the conference and fair hearing to the authorized representative of the appellant.

## 18 NYCRR 358-4.3 Responsibilities and rights in the fair hearing process.

(a)  The social services agency must provide complete copies of its documentary evidence to the hearing officer at the fair hearing and also to the appellant or appellant's authorized representative, where such documents were not provided previously to the appellant or appellant's authorized representative in accordance with 18 NYCRR 358-3.7 and 18 NYCRR 358-4.2(c). Such documents must be provided without charge.

(b)  Except as provided in subdivision (c) of this section, a representative of the social services agency must appear at the hearing along with the case record and a written summary of the case.  Such representative must:

1.  have reviewed the case; and

2.  be prepared to present evidence in support of the action, including:

    i.    the case number;

    ii.   the applicable category or categories or type of public assistance or care, medical assistance, SNAP benefits or services involved;

    iii.  the names, addresses, relationships and ages of persons affected;

    iv.   the determination regarding which the hearing request was made;

    v.    a brief description of the facts, evidence and reasons supporting such determination, including identification of the specific provisions of law, regulations and approved local policies which support the action;

    vi.   the relevant budget or budgets prepared by the social services agency for the appellant or the household of such appellant, including printouts of relevant budgets produced on the Welfare Management System (WMS); and,

29

ACF 000679

vii.    a copy of the applicable action taken notice, adverse action notice, expiration notice or notice of action, including any notices produced on the client notices system.

3.    have the authority to make binding decisions at the hearing on behalf of the social services agency, including the authority to withdraw the action or otherwise settle the case.

(c)

1.    No later than five calendar days before the hearing date, the social services agency may make application to the OAH to appear at a hearing on papers only. The OAH may approve such application in its discretion where the rights of the appellant can be protected and the personal appearance of the agency is neither feasible nor necessary.

2.    Notwithstanding paragraph (1) of this subdivision, a hearing officer may require the appearance of a representative of a social services agency where such appearance is necessary to protect the due process rights of the appellant.

(d)    Upon request of the appellant, the social services agency must provide necessary transportation and transportation expenses to and from the fair hearing for the appellant and appellant's representatives and witnesses and payment for appellant's necessary child care costs and for any other necessary costs and expenditures related to the fair hearing.

(e)    Social services agencies have those hearing rights which appellants have as set forth in 18 NYCRR 358-3.4(d) (adjournment), 18 NYCRR 358-3.4(e) (representation), 18 NYCRR 358-3.4(g) (present evidence, question witnesses, examine documents), and 18 NYCRR 358-3.4(h) (bring witnesses) and 18 NYCRR 358-3.4(k) (removal of hearing officer).

## 18 NYCRR 358-4.4 Compliance with fair hearing decision.

A social services agency must comply with fair hearing decisions in accordance with 18 NYCRR 358-6.4.

## 18 NYCRR Subpart 358-5 The Fair Hearing Process

## 18 NYCRR 358-5.0 Introduction.

The fair hearing process is governed by this Subpart.

## 18 NYCRR 358-5.1 Notice of fair hearing.

(a)    Except for hearings which are given priority in scheduling in accordance with 18 NYCRR 358-5.2, at least 10 calendar days prior to the date of the fair hearing, a written notice of the fair hearing will be sent by OAH to the appellant, appellant's authorized representative and to the social services agency.

(b)    The fair hearing notice will state the following:

1.    the date, time and place of the fair hearing and an explanation of how and when a change in the date and place of the fair hearing may be requested, and under what circumstances a hearing will be rescheduled if neither the appellant nor the appellant's representative appears at the hearing;

2.    whether public assistance, medical assistance, SNAP benefits or services must be continued unchanged;

ACF 000680

3.  the appellant's right upon request to necessary transportation or to transportation expenses to and from the fair hearing for the appellant and the appellant's authorized representatives and witnesses and for payment of the appellant's necessary child care costs and for any other necessary costs and expenditures related to the fair hearing;

4.  the appellant's right to be represented at the fair hearing by legal counsel, a relative, friend or other person or to represent oneself, and the right to bring witnesses to the fair hearing and to question witnesses at the hearing;

5.  the right to present written and oral evidence at the hearing;

6.  that the appellant should bring the notice of fair hearing to the hearing as well as all evidence that has a bearing on the case such as books, records and other forms of written evidence, and witnesses, if any;

7.  the appellant's right to review appellant's case record prior to and at the fair hearing;

8.  the appellant's right upon request to obtain copies of documents which the social services agency will present at the fair hearing and copies of other additional documents for the purpose of preparing for the fair hearing;

9.  the right of a deaf or non-English speaking appellant to interpreter services at the fair hearing at no charge;

10. the issues which are to be the subject of the hearing.

## 18 NYCRR 358-5.2 Scheduling.

(a) The fair hearing will be held at a time and place convenient to the appellant as far as practicable. In scheduling the hearing, OAH will consider such things as the physical inability of the appellant to travel to the regular hearing location.

(b) Priority scheduling.

1.  Except as set forth in paragraph (4) of this subdivision, a fair hearing which is subject to priority processing pursuant to 18 NYCRR 358-3.2 must be scheduled as soon as practicable after the request therefore is made. In determining the date for which the hearing will be scheduled, consideration must be given to the nature and urgency of the appellant's situation, including any date before which the decision must be issued to allow for meaningful resolution of the issue under review.

2.  When a hearing is requested concerning SNAP benefits and the SNAP household intends to move from the local social services district before the decision normally would be issued, priority will be given to the scheduling of the hearing, taking into account any date before which the hearing must be scheduled to allow for the appellant to receive the decision while still in the district.

3.  Except as set forth in paragraph (4) of this subdivision, after a hearing which was scheduled on a priority basis as set forth above, the decision must be issued as soon as practicable. In determining the date by which the decision will be issued, consideration must be given to the nature and urgency of the appellant's situation, including any date before which the decision must be issued to allow for meaningful resolution of the issue under review. If, at the conclusion of a hearing which was scheduled on a priority basis, the hearing officer determines that the issues do not warrant continued priority processing, the hearing officer will inform the parties that the issuance of the decision will not receive priority processing.

ACF 000681

4.  When a fair hearing is requested concerning the involuntary discharge of a resident of a tier II facility after such resident requests and participates in a hearing, held by the facility or the social services district in which the facility is located, such fair hearing must be scheduled within seven working days of the request. The decision after the fair hearing must be issued within seven working days of the date of the fair hearing.

(c) When a hearing is requested pursuant to 18 NYCRR 358-3.1(g) or has been given priority in accordance with 18 NYCRR 358-3.2(d), the hearing will be held within 30 days of the request, unless delayed by, or adjourned at the request of, the appellant.

## 18 NYCRR 358-5.3 Adjourning the fair hearing.

(a) Upon request of either the appellant or a social services agency, the fair hearing may be rescheduled, upon a showing of good cause for requesting the delay.

(b) When in the judgment of OAH or the hearing officer the parties' due process rights would best be served by adjourning the fair hearing, or if there are special circumstances which make proceeding with the case fundamentally unfair, OAH or the hearing officer may reschedule the fair hearing.

(c) Requests to adjourn a fair hearing must be made in accordance with the instructions in the notice of fair hearing.

(d) If a fair hearing is adjourned based upon a request by the appellant, the time limit set forth in 18 NYCRR 358-6.4 will be extended by the number of days the fair hearing has been postponed.

(e) If public assistance, medical assistance, SNAP benefits or services are continued in accordance with 18 NYCRR 358-3.6 and the fair hearing is rescheduled for the reasons set forth in subdivision (a) or (b) of this section, an appellant has the right to have public assistance, medical assistance, SNAP benefits or services continued until the fair hearing decision is issued.

## 18 NYCRR 358-5.4 Withdrawal of a request for a fair hearing.

(a) OAH will consider a hearing request to be withdrawn under the following circumstances:

1.  OAH has received a written statement from the appellant or appellant's authorized representative stating that the request for a fair hearing is withdrawn; or

2.  the appellant or appellant's authorized representative has made a statement withdrawing the request to the hearing officer on the record at the hearing.

(b) An oral statement by telephone or in person to a social services agency employee that an appellant is withdrawing a request for a fair hearing is insufficient to withdraw a fair hearing request.

## 18 NYCRR 358-5.5 Abandonment of a request for a fair hearing.

(a) Except as provided in subdivision (b) of this section, OAH will consider a fair hearing request abandoned if neither the appellant nor appellant's authorized representative appears at the fair hearing unless either the appellant or appellant's authorized representative:

1.  contacts OAH to request that the fair hearing be rescheduled; and

2.  provides OAH with a good cause reason for failing to appear at the fair hearing on the scheduled date.

ACF 000682

(b) OAH will consider a fair hearing request involving Medical Assistance abandoned if neither the appellant nor the appellant's authorized representative appears at a fair hearing, and the requirements of subdivision (a) of this section are not met within 10 calendar days of the postmark of a letter sent to the appellant and the appellant's authorized representative inquiring whether the appellant still wants a fair hearing.

(c) OAH will reopen an abandoned fair hearing request if, within one calendar year from the scheduled date of the fair hearing, the requirements of subdivision (a) of this section are met..

(d) If neither the appellant nor the appellant's authorized representative appears at a fair hearing that has been rescheduled or reopened pursuant to subdivision (a), (b) or (c) of this section, OAH will consider the fair hearing request abandoned and the letter described in subdivision (b) of this section will not be sent.

(e) If neither the appellant nor the appellant's authorized representative appears at a fair hearing that is subject to aid-continuing, such aid shall discontinue on the date the fair hearing request is abandoned.

1. If the fair hearing request is thereafter reopened pursuant to subdivision (c) of this section based upon a request made within 60 days from the scheduled date of the fair hearing, aid-continuing will be restored retroactively to the date of abandonment.

2. If the fair hearing request is thereafter reopened pursuant to subdivision (c) of this section based upon a request to do so made 60 days or more from the scheduled date of the fair hearing, aid-continuing will be restored prospectively from the date of the request to reopen..

(f) In no event will an abandoned fair hearing request be reopened if such request is made one calendar year or more from the scheduled date of the fair hearing.

## 18 NYCRR 358-5.6 Hearing officer.

(a) The hearing shall be conducted by an impartial hearing officer assigned by OAH to conduct the hearing, who has not been involved in any way with the action in question.

(b) To ensure a complete record at the hearing, the hearing officer must:

1. preside over the fair hearing and regulate the conduct and course of the fair hearing, including at the hearing officer's discretion, requiring sworn testimony, and administering the necessary oaths;

2. make an opening statement explaining the nature of the proceeding, the issues to be heard and the manner in which the fair hearing will be conducted;

3. elicit documents and testimony, including questioning the parties and witnesses, if necessary, particularly where the appellant demonstrates difficulty or inability to question a witness; however, the hearing officer will not act as a party's representative;

4. where the hearing officer considers independent medical assessment necessary, require that an independent medical assessment be made part of the record when the fair hearing involves medical issues such as a diagnosis, an examining physician's report, or a medical review team's decision;

5. adjourn the fair hearing to another time on the hearing officer's own motion or on the request of either party, to the extent allowable by 18 NYCRR 358-5.3;

33

ACF 000683

6. adjourn the fair hearing when in the judgment of the hearing officer it would be prejudicial to the due process rights of the parties to go forward with the hearing on the scheduled hearing date;

7. review and evaluate the evidence, rule on the admissibility of evidence, determine the credibility of witnesses, make findings of fact relevant to the issues of the hearing which will be binding upon the commissioner unless such person has read a complete transcript of the hearing or has listened to the electronic recording of the fair hearing;

8. at the hearing officer's discretion, where necessary to develop a complete evidentiary record, issue subpoenas, and/or require the attendance of witnesses and the production of books and records; and,

9. prepare an official report containing the substance of what transpired at the fair hearing and including a recommended decision to the commissioner or the commissioner's designee.

(c) A party to a hearing may make a request to a hearing officer that the hearing officer remove himself or herself from presiding at the hearing.

1. The grounds for removing a hearing officer are that such hearing officer has:

    i. previously dealt in any way with the substance of the matter which is the subject of the hearing except in the capacity of hearing officer; or

    ii. any interest in the matter, financial or otherwise, direct or indirect, which will impair the independent judgment of the hearing officer; or

    iii. displayed bias or partiality to any party to the hearing.

2. The hearing officer may independently determine to remove himself or herself from presiding at a hearing on the grounds set forth in paragraph (1) of this subdivision.

3. The request for removal made by a party must:

    i. be made in good faith; and

    ii. be made at the hearing in writing or orally on the record; and

    iii. describe in detail the grounds for requesting that the hearing officer be removed.

4. Upon receipt of a request for removal, the hearing officer must determine on the record whether to remove himself or herself from the hearing.

5. If the hearing officer determines not to remove himself or herself from presiding at the hearing, the hearing officer must advise the party requesting removal that the hearing will continue but the request for removal will automatically be reviewed by the general counsel of OTDA or the general counsel's designee.

6. The determination of the hearing officer not to remove himself or herself will be reviewed by the general counsel of OTDA or the general counsel's designee. Such review will include review of written documents submitted by the parties and the transcript of the hearing.

7. The general counsel of OTDA or the general counsel's designee must issue a written determination of whether the hearing officer should be removed from presiding at the hearing within 15 business days of the close of the hearing.

8. The written determination of the general counsel or the general counsel's designee will be made part of the record.

34

## 18 NYCRR 358-5.7 Who may be present at the fair hearing.

The following persons may be present at a fair hearing:

(a) the appellant who has requested the fair hearing;

(b) the appellant's representative;

(c) counsel or other representatives of the social services agency;

(d) witnesses of either party and any who may be called by the hearing officer;

(e) an interpreter; and

(f) any other person admitted at the hearing officer's discretion, with the consent of the appellant.

## 18 NYCRR 358-5.8 Media admission to fair hearing.

(a) The media may be admitted to a fair hearing where the appellant has made a specific waiver of appellant's right to confidentiality both in writing and on the record and has clearly and unequivocally confirmed on the record that the appellant desires and consents to the presence of the media.  The waiver must be unqualified, complete, and made with full knowledge of the ramifications of the waiver, including that the waiver is irrevocable.

(b) Where a waiver has been secured in accordance with subdivision (a) of this section, the extent of any access to be granted to the media is to be determined at the discretion of the hearing officer.  In determining the extent of such access, the hearing officer will consider the following:

1. maintenance of proper hearing decorum;

2. potential disruption to the proceedings;

3. adverse effect on witnesses;

4. impediments to the making of a proper and accurate record;

5. the physical space and conditions of the hearing room;

6. potential disruption to the hearing officer, including impediments to the hearing officer's ability to discharge responsibilities; and

7. any other factor which, in the discretion of the hearing officer, is necessary to ensure the orderly and proper conduct of the hearing and the creation of a complete and accurate hearing record or which is necessary in order to protect confidential information where confidentiality cannot be waived by the appellant.

## 18 NYCRR 358-5.9 Fair hearing procedures.

(a) Burden of proof.

1. Appellant. At a fair hearing concerning the denial of an application for or the adequacy of public assistance, medical assistance, HEAP, SNAP benefits or services, or an exemption from work activity requirements, the appellant must establish that the social services agency's denial of assistance or benefits was not correct, or that the appellant is eligible for a greater amount of assistance or benefits, or is exempt from work requirements pursuant to 18 NYCRR Part 385.

35

ACF 000685

2.   Social services agency.  Except where otherwise established by law or regulation, at a fair hearing, the social services agency must establish that its actions were correct regarding:

    i.   the source of funding and the amount deducted from the initial payment of supplemental security income as reimbursement of public assistance; or

    ii.   the discontinuance, reduction, or suspension of public assistance, medical assistance, or SNAP benefits or services.

(b) The fair hearing decision must be supported by and in accordance with substantial evidence.

(c) Technical rules of evidence followed by a court of law need not be applied. Irrelevant or unduly repetitious evidence and/or cross-examination may be excluded at the discretion of the hearing officer. Privileges recognized by law will be given effect.

(d) Any written record or document or part thereof to be offered as evidence may be offered in the form of a reproduction or copy where such reproduction or copy is identified satisfactorily as a complete and accurate reproduction or copy of the original material.

(e) In addition to subpoenas issued at the discretion of the fair hearing officer as allowed by 18 NYCRR 358-5.6(b)(8), attorneys for parties in fair hearings shall have the same authority to issue subpoenas as is possessed by attorneys under section 2302 of the Civil Practice Law and Rules.

## 18 NYCRR 358-5.10 Consolidated fair hearings.

(a) OAH may consolidate fair hearings where two or more persons request fair hearings in which the individual issues of fact are not disputed and the sole issue in each request is an objection to:

1.   Federal or State law or regulation, or local policy; or

2.   a change in Federal or State law.

(b) Each person whose case has been consolidated with another person's case has the right to:

1.   present one's own case or have one's case presented by a representative; and,

2.   withdraw from the consolidated fair hearing and have an individual fair hearing.

## 18 NYCRR 358-5.11 The hearing record.

(a) Fair hearing record.

Only the OAH may record the fair hearing. A written transcript or recording of the fair hearing testimony and exhibits, or the hearing officer's official report together with the recommended decision of the hearing officer, all papers and requests filed in the proceeding prior to the close of the fair hearing and the fair hearing decision, constitute the complete and exclusive record of the fair hearing. Where a decision without hearing is issued in accordance with 18 NYCRR 358-6.2, the documents submitted by the appellant and the social services agency constitute the complete and exclusive record of the fair hearing.

(b) Review of record.

The exclusive record of the fair hearing is confidential; however, the exclusive record may be examined by either party or their authorized representative at the OAH, or upon request at some other location subject to the approval of the OAH.

36

## 18 NYCRR 358-5.12 Telephone hearings.

(a) OAH may provide that a fair hearing held pursuant to 18 NYCRR Part 398 be conducted by means of telephone. When a hearing is conducted by telephone, the parties and the hearing officer need not be physically present at the same location.

(b) All provisions of this Part, which are not inconsistent with the specific provisions of this section and 18 NYCRR Part 398, shall apply to hearings conducted by telephone.

(c) The hearing will be held by means other than telephone in the following circumstances:

  1.  when the applicant or recipient makes a request for an in-person hearing;

  2.  when, in the judgment of OAH or the hearing officer, a party's due process rights would best be served by conducting a hearing in person; or

  3.  when, in the judgment of OAH or the hearing officer, there are circumstances presented by the appellant which make proceeding with the hearing by telephone fundamentally unfair.

## 18 NYCRR 358-5.13 Video hearings.

(a) OAH may provide that a fair hearing held pursuant to this Part be conducted by means of video equipment. When a hearing is conducted using video equipment, the parties and the hearing officer need not be physically present at the same location.

(b) All provisions of this Part, which are not inconsistent with the specific provisions of this section, shall apply to hearings conducted using video equipment.

(c) An appellant who objects to OAH conducting the fair hearing by video equipment should notify OAH at the earliest possible opportunity before the time set for the hearing, but no later than at the commencement of the hearing. The request must be made in writing, in person, by video equipment, or by telephone.

(d) A fair hearing, with the appellant and the hearing officer physically present at the same location, will be held in the following circumstances:

  1.  when, in the judgment of OAH, an appellant's due process rights would best be served by conducting a hearing in-person; or

  2.  when, in the judgment of OAH, there are circumstances presented by the appellant which make proceeding with the hearing by video equipment fundamentally unfair.

## 18 NYCRR Subpart 358-6 Decision and Compliance

## 18 NYCRR 358-6.0 Introduction.

All decisions of the appropriate commissioner issued after a request for fair hearing are governed by this Subpart.

## 18 NYCRR 358-6.1 All decisions.

(a) The fair hearing decision issued by the commissioner must be based exclusively on the fair hearing record, or in the case of a decision without hearing, on the documents submitted by the appellant and the social services agency. The decision must be in writing and must set forth the fair hearing issues, the relevant facts, and the applicable law, regulations, and approved policy, if any, upon which the decision is based. The decision must make findings

37

of fact, determine the issues and state reasons for the determinations and when appropriate, direct specific action to be taken by the social services agency. In addition, the decision may address the violation of any provision of 18 NYCRR 358 or 18 NYCRR 385 by the social services agency, including but not limited to violations of regulations concerning notice, aid continuing and provision of documents and records and set forth appropriate relief for such violations.

(b)  Upon issuance, the decision is final and binding upon social services agencies and must be complied with in accordance with 18 NCYRR 358-6.4.

(c)  A copy of the decision, accompanied by written notice to the appellant of the right to judicial review will be sent to each of the parties and to their representatives, if any. In addition, such notice will advise the appellant that the appellant or the appellant's authorized representative may request OAH's assistance in obtaining compliance with the decision.

## 18 NYCRR 358-6.2 Decision without hearing.

(a)  Upon the commissioner's own motion or upon request of an appellant in cases in which there is no material issue of fact to be resolved, a decision may be issued without a hearing. The determination to issue a decision without a hearing rests solely within the discretion of the commissioner.

(b)  A request for a decision without a hearing must be accompanied by sufficient information to enable the commissioner to ascertain whether any unresolved material issue of fact exists, and should contain a full and clear statement of the issues and of the appellant's position on these issues.

(c)  When the commissioner determines that a decision without hearing is appropriate, the OAH will send the request for a decision without hearing, or the request for a hearing, along with any supporting documents to the social services agency involved. Within 10 business days of receipt of these documents, the social services agency must forward to OAH, the appellant, and the appellant's representative, a response containing sufficient information to ensure resolution of the dispute.

(d)  Within 10 business days of the receipt of the documents submitted by the social services agency, the appellant or authorized representative may submit comments or rebuttal to the OAH with copies to the other parties.

(e)  At any point after a request for a decision without a hearing has been made, if it appears that there is a material and unresolved issue of fact relating to the issue or issues upon which the hearing was requested, the appellant and the social services agency will be informed that a fair hearing will be scheduled upon notice to all parties.

(f)  A decision without a hearing will be issued by the commissioner based upon the papers submitted in accordance with this section.

## 18 NYCRR 358-6.3 Direction relative to similar cases.

When a fair hearing decision indicates that a social services agency has misapplied provisions of law, regulations, or such agency's own State-approved policy, OAH's letter transmitting such decision to such agency may contain a direction to the agency to review other cases with similar facts for conformity with the principles and findings in the decision.

ACF 000688

## 18 NYCRR 358-6.4 Compliance.

(a) For all decisions, except those involving SNAP issues only, definitive and final administrative action must be taken promptly, but in no event more than 90 days from the date of the request for a fair hearing.

(b)

   1. For all cases involving SNAP issues only the decision must be issued and the parties notified of the decision within 60 days of receipt of the request for the fair hearing by OAH.

   2. If the decision will result in an increase in household SNAP benefits, social services agencies must reflect such increase in the coupon allotment within 10 days of the receipt of the hearing decision; however, the increase may occur later than 10 days after the decision if the social services agency decides to make the decision effective in the household's normal issuance cycle and the issuance will occur within 60 days from the household's request for a hearing. Decisions which result in a decrease in household benefits must be reflected on the next scheduled issuance following receipt of the fair hearing decision.

(c) Upon receipt of a complaint that a social services agency has not complied with the fair hearing decision, the commissioner, through action coordinated by OAH, will secure compliance by whatever means is deemed necessary and appropriate under the circumstances of the case.

## 18 NYCRR 358-6.5 Compliance with direction relative to similar cases.

When a direction has been given to a social services agency to correct a misapplication of law, regulations or such agency's own State-approved policy in all cases similar to the one in which a decision has been issued, such social services agency must report the actions it has taken to comply with such direction to the commissioner or OAH within 30 days after receipt of the direction. The social services agency must make such additional reports as the commissioner may require.

## 18 NYCRR 358-6.6 Corrected decisions and reopened hearings.

(a) Corrected decisions.

   1. The commissioner may review an issued fair hearing decision for purposes of correcting any error found in such decision.

   2. After review, the commissioner may correct any error occurring in the production of an issued fair hearing decision including, but not limited to, typographical and spelling errors.

   3. After review, on notice to the parties, the commissioner may correct any error of law or fact which is substantiated by the fair hearing record.

   4. During the pendency of any review of an issued fair hearing decision, the original decision is binding and must be complied with by the social services agency in accordance with the provisions of 18 NYCRR 358-6.4.

(b) Reopened hearings.

ACF 000689

On notice to all parties, the OAH may reopen a previously closed fair hearing record for purposes of completing such record. If such reopening occurs subsequent to the issuance of a fair hearing decision, the provisions of paragraph (a)(4) of this section apply.

ACF 000690

# 18 NYCRR Section 351.2(k)(4)

**(k) Ineligible individuals.**

In addition to any other individual who is ineligible for public assistance, the following individuals are also ineligible for such assistance:

4. Any individual who is a minor child who has been or is expected to be absent from the home of his or her parent or other caretaker relative for a consecutive period of 45 days or more without good cause.  In addition, no assistance may be given to any parent or other caretaker relative who fails to notify the social services district of the absence of the minor child within five days after it becomes clear to the parent or relative that the child will be absent for a consecutive period of 45 days or more.  Good cause includes absence for placement in foster care if the goal set forth in the child service plan under 18 NYCRR 428.6 and 18 NYCRR 428.7 is the return of the child to a member of the household, visits to friends or relatives, attendance at school, attendance at camp or hospitalization; if it is in the best interests of the child to return home and return is expected within a reasonable time.  A parent or caretaker relative who fails to comply with the provisions of this paragraph is ineligible for public assistance for a period of 30 days for each whole or partial calendar month during which the child was absent from the home before the social services district was notified of the absence.

ACF 000691

# EMERGENCY ASSISTANCE TO NEEDY FAMILIES WITH CHILDREN

(a) Kinds of emergencies covered.

Emergency assistance means all aid, care and services granted to eligible families with children, including migrant workers with families, to deal with crisis situations threatening the family and to meet urgent needs resulting from a sudden occurrence or set of circumstances demanding immediate attention.

Emergency assistance must be provided immediately to or on behalf of a needy child under the age of 18 or under the age of 19 and a full-time student providing:

1. The child is living with an eligible relative;

2. The child, parent or other eligible relative is without income or resources immediately available to meet the need and the households available income on the date of application is at or below 200% of the federal poverty level for that household size or the household is financially eligible to receive public assistance, or for child protective, child preventive or other child welfare services, at least one member of the household is in receipt of public assistance or supplemental security income;

3. The assistance is necessary to avoid destitution of the child or to provide living arrangements for him or her in a home;

4. The occurrence or situation giving rise to the need for emergency assistance could not have been foreseen by the applicant and was not under his or her control;

5. Such destitution or need for living arrangements did not arise because a member of the family refuses, without good cause, to accept employment or training for employment; and,

6. For a recipient of public assistance, such destitution did not arise from the mismanagement of a public assistance grant, or the emergency grant being applied for will not replace or duplicate a public assistance grant already made. This does not prohibit the issuing of emergency assistance to replace a lost or stolen public assistance grant.

(b) Kinds of assistance provided to meet emergency situations.

Cash grants, vendor payments and supplies necessary to meet the identified emergent need.

(c) Kinds of service provided to meet the emergency situation.

Information referral, counseling, securing temporary housing and any other services which meet needs attributable to the emergency situation.

ACF 000692

# DOMESTIC VIOLENCE

## 18 NYCRR 351.2(l)

Requirements for domestic violence screening, assessment, and referral for services, public assistance program waivers.

(a) Definitions

    1.  Victim of domestic violence means an individual who has been subjected to:

        i.  physical acts that resulted in, or could result in, physical injury to the individual;

        ii.  sexual abuse;

        iii.  sexual activity involving a dependent child;

        iv.  being forced as the caretaker relative of a dependent child to engage in nonconsensual sexual acts or activities;

        v.  threats of, or attempts at, physical or sexual abuse;

        vi.  mental abuse; or

        vii.  neglect or the deprivation of medical care; and,

        viii.  such act or acts have or are alleged to have been committed by a family or household member.

    2.  For the above purposes, family or household members mean the following persons:

        i.  persons related by blood or marriage;

        ii.  persons legally married to one another;

        iii.  persons formerly married to one another regardless of whether they still reside in the same household;

        iv.  persons who have a child in common regardless of whether such persons are married or have lived together at any time;

        v.  unrelated persons who are continually or at regular intervals living in the same household or who have in the past continually or at regular intervals lived in the same household;

        vi.  unrelated persons who have had intimate or continuous social contact with one another and who have access to one another's household; or

        vii.  any other persons referenced in section 459-A(2) of the Social Services Law.

(b) Domestic violence liaison.

    1.  Responsibilities.  Domestic violence liaisons are responsible for the following tasks:

        i.  assessing the credibility of the applicant/recipient's assertion of domestic violence based upon information and corroborating evidence;

        ii.  assessing the safety of the victim and the victim's dependents and their need for services and support;

        iii.  informing a victim of domestic violence referred to the liaison about domestic violence and the options for protection, services and other supports;

1

ACF 000693

    iv.  informing a victim of domestic violence referred to the liaison about the rights and responsibilities with respect to obtaining waivers of public assistance program requirements;

    v.  gathering facts regarding the extent to which domestic violence is a barrier to the victim of such violence meeting public assistance program requirements including employment requirements and the need for obtaining waivers of such requirements;

    vi.  determining the need for waivers where compliance with public assistance program requirements would place the victim and/or the victim's children at greater risk of harm or make it more difficult to escape from the abuse, and making recommendations for granting waivers or granting waivers of public assistance program requirements;

    vii.  periodically reassessing the individual's domestic violence circumstances and modifying, terminating or extending the public assistance program waiver(s) at least every six months;

    viii.  maintaining a list of, at a minimum, available domestic violence services and maintaining a relationship with the providers of the services including, but not limited to domestic violence service providers, key court personnel and the local domestic violence coalition, where applicable;

    ix.  coordinating activities with other case managers and examiners within the social services district;

    x.  facilitating emergency safety planning for victims of domestic violence in a crisis situation, as necessary; and

    xi.  developing an appropriate services plan when a waiver is granted, which is designed to lead to work, to the extent that the plan would not make it more difficult for the victim to escape domestic violence or unfairly penalize those individuals who are or have been victimized by domestic violence or who are at risk of further domestic violence.

2.  Qualifications.  Social services districts must give a strong preference to relevant advocacy or counseling experience in determining whether someone should be designated a domestic violence liaison. Domestic violence liaisons must meet the following minimum job qualifications:

    i.  be a caseworker; or

        a.  possess a bachelor's degree; or

        b.  have one year of domestic violence advocacy or domestic violence counseling experience with an approved domestic violence program; or

        c.  have two years of relevant advocacy or domestic violence counseling experience; and

    ii.  complete a course of training for domestic violence liaisons sponsored by the Office of Temporary and Disability Assistance (Office); and

    iii.  possess good communication, listening and assessment skills and the ability to work positively in a team setting.

3.  If a social services district chooses to contract for the domestic violence liaison position(s), it must comply with the following requirements:

2

ACF 000694

**Attachment F**

    i. the agency employing the liaison(s) must be an approved residential program for victims of domestic violence pursuant to regulations 18 NYCRR Parts 452, 453, 454, or 455, and/or a non-residential program for victims of domestic violence pursuant to 18 NYCRR Part 462;

    ii. if it is not feasible for the assessment function to be carried out at the offices of the social services district, the district must make provision for ensuring that individuals can go to the alternative location, that their safety will be ensured and that their confidentiality will be maintained.  The district must make this information available to the Office when requested;

    iii. the liaison must maintain regular contact with appropriate social services district staff, including providing the district with data pertaining to public assistance program waivers; and

    iv. the agency employing the liaison and the district must provide each other with necessary training so that the agency and district can optimally fulfill their obligations.

(c) Universal notification. Social services districts must notify all public assistance applicants and recipients of the procedures for protecting themselves from domestic violence and the availability of domestic violence services.  Such notification will be done by using the Universal Notification Handout, developed by the Office in consultation with the Office for the Prevention of Domestic Violence and statewide domestic violence advocacy groups.

(d) Screening and referral to liaisons.

1. Social services districts must inquire of all public assistance applicants and recipients regarding the existence of any domestic violence committed against the applicant or recipient.  Such inquiry will be done by using the universal screening form developed by the Office in consultation with the Office for the Prevention of Domestic Violence and statewide domestic violence advocacy groups.

2. Social services districts must advise individuals that responding to questions concerning the existence of domestic violence is voluntary and that any response will remain confidential; provided, however, that information regarding suspected maltreatment or abuse of children will be reported to the Statewide Central Register of Child Abuse and Maltreatment.

3. Social services districts must make the screening form available for voluntary client completion, at the application and recertification interview. Such screenings may be conducted by telephone or other digital means at the request of the applicant or recipient. However, the district must accommodate clients who wish to provide this screening information verbally when completion is not possible due to literacy problems. The district must also accommodate clients who wish to provide this screening information at another time when completion is not initially possible due to risk of danger to themselves, for example due to the presence of the batterer at the time of the initial screening.  The district must provide the screening form to any individual who at any time is identified as a victim of domestic violence, or otherwise requests such screening.

4. When an individual indicates the presence of domestic violence by providing an affirmative response on the screening form, the district must refer that individual to a domestic violence liaison as soon as practicable and prior to any other assessment.

(e) Assessment of credibility.

ACF 000695

1.  The domestic violence liaison must, as soon as practicable, assess the credibility of a positively screened individual's assertion of domestic violence based upon all relevant information including, but not limited to: an order of protection; court, medical, criminal, child protective services, social services, psychological, or law enforcement records; presence in a domestic violence shelter; a signed statement by a domestic violence counselor or other counselor or other corroborating evidence.

2.  Such assessment must be based upon the relevant information and corroborating evidence, but must in the absence of other sufficient evidence include, at a minimum, a sworn statement by the individual alleging the abuse.

(f)  Services referral and waiver assessment.  If the domestic violence liaison determines that the allegation of domestic violence is credible, the domestic violence liaison must, as soon as practicable:

1.  inform the individual of services related to domestic violence, which are available to the individual on a voluntary basis;

2.  conduct an assessment to determine if and to what extent domestic violence is a barrier to compliance with public assistance program requirements or to employment;

3.  assess the need for temporary waivers of such program requirements;

4.  recommend or grant any necessary waivers in coordination with social services district staff who are charged with the implementation of such waivers and/or the administration of public assistance program requirements;

5.  inform social services district staff responsible for the administration of public assistance requirements of the final determination or recommendation with respect to waivers; and

6.  develop an appropriate services plan when a waiver is granted, which is designed to lead to work, to the extent that the plan would not make it more difficult for the victim to escape domestic violence or unfairly penalize those individuals who are or have been victimized by domestic violence or who are at risk of further domestic violence.

(g)  Waivers.

1.  Waivers are a temporary suspension of public assistance program requirements including, but not limited to, residency rules, child support and paternity cooperation requirements, alcohol and substance abuse screening and referral requirements, and employment and training requirements.  Any such waivers must be consistent with Federal law.

2.  The granting of a waiver does not affect the amount of the grant or the budgeting of income for the applicant or recipient.

3.  Waivers will be granted in cases where compliance with public assistance program requirements would make it more difficult for the individual or the individual's children to escape from domestic violence or subject them to further risk of domestic violence. Such waivers must be for an initial period of not less than four months.  All such waivers will be subject to ongoing review of the individual's circumstances by the domestic violence liaison and may be extended, modified or terminated based on such review at any time, including the time covered by the initial four-month waiver period.  The need for waivers shall be redetermined at least every six months.

4.  In considering the extension of waivers, the domestic violence liaison must consider the totality of the individual's case circumstances.  However, unwillingness on the part of the

4

individual to engage in any options, steps or activities that might assist the individual in terms of safety or self-sufficiency may affect the individual's credibility.

5.  Waivers may be granted permitting the receipt of family assistance benefits by individuals who have already received benefits for 60 months and who would not be required to participate in work or training activities, pursuant to the regulations of the Office of Temporary and Disability Assistance, because of an independently verified physical or mental impairment resulting from domestic violence that is anticipated to last for three months or longer, or if the individual is unable to work because of the need to care for a dependent child who is disabled as a result of domestic violence.

6.  An individual may decline a waiver or terminate an existing waiver at any time without penalty.

(h) Alien eligibility and deeming.

1.  Under Immigration and Naturalization Services (INS) rules, certain battered aliens not otherwise considered qualified aliens for public assistance eligibility purposes can petition INS and be granted qualified alien status thereby entitling them to receive benefits.  Aliens so qualified will be issued a "Notice of Prima Facie Case" by INS.

2.  Social services districts must exempt such battered aliens from alien deeming requirements in accordance with 18 NYCRR 352.33(c).

5

ACF 000697

# STANDARD OF NEED

## Standard of Need for Determining Eligibility

The eligibility for public assistance of all persons who constitute or are members of a family household must be determined by a social services district by applying the following statewide standard of monthly need which must consist of:

    (a) regular recurring monthly needs, exclusive of shelter, fuel for heating, home energy payments and supplemental home energy payments, in accordance with the following schedule:

**SCHEDULE SA-1 - STATEWIDE STANDARD OF NEED**

**EFFECTIVE October 1, 2012**

Number of persons in household

| One | Two | Three | Four | Five | Six | Each Additional Person |
|-----|-----|-------|------|------|-----|------------------------|
| $158 | $252 | $336 | $433 | $534 | $617 | $85 |

    (b) plus the amount of money for shelter, fuel for heating, home energy payments and supplemental home energy payments, required monthly for such persons in accordance with provisions of law and department regulations; and,

    (c) for any of such persons who may because of their case circumstances require any of the following items in accordance with applicable provisions of law and department regulations, the standard of need must include the cost of the required item or items in accordance with such provisions: furniture and furnishings for the establishment of a home, essential repair of heating equipment, cooking stoves and refrigerators, additional cost of meals for persons unable to prepare meals at home, replacement of clothing or furniture which has been lost in a fire, flood or other like catastrophe, cost of services and supplies already received, miscellaneous shelter costs, day care, camp fees and payment of life insurance premiums.

## Allowances and Grants for Persons who Constitute or are Members of a Family Household.

    (a) Each social services district must utilize the applicable schedules of monthly grants and allowances as found in subdivision (d) of this section to provide for all items of need, exclusive of:

        1.  shelter;

        2.  fuel for heating;

        3.  additional cost of meals for persons who are unable to prepare meals at home;

        4.  purchase of necessary and essential furniture required for the establishment of a home;

        5.  replacement of necessary furniture and clothing for persons in need of public assistance who have suffered the loss of such items as the result of fire, flood, or other like catastrophe;

1

ACF 000698

6.  essential repair of heating equipment, cooking stoves and refrigerators;

7.  allowances for occupational training; and

8.  other items for which specific provision is otherwise made in this Part.

(b) For the purposes of such monthly grants and allowances to households under Family Assistance and non-cash Safety Net Assistance (federally participating), Emergency Assistance to Needy Families with children, and Safety Net Assistance non-federally participating when the household would be eligible for the Federal categories except that it has exhausted the 60-month time limit for the receipt of cash assistance, children and adults residing with an SSI beneficiary must be considered a separate household from the SSI beneficiary with whom they live.

(c) Supplemental allowances and grants may not be made other than as authorized under the regulations nor in excess of established schedules except as provided in 18 NYCRR 352.3(a)(3). In no event, except as provided in 18 NYCRR Part 397, shall a special allowance and grant be required to be made because the cash has been lost, stolen or mismanaged. Any duplicate allowance and grant made for such purpose is not reimbursable by the State unless made as a result of an order made after May 1, 1977 by a court of competent jurisdiction or a payment made after May 1, 1977 pursuant to an order by a court of competent jurisdiction.

(d) The monthly grants and allowances shall be as follows:

**SCHEDULE SA-2a STATEWIDE MONTHLY GRANTS AND ALLOWANCES, EXCLUSIVE OF HOME ENERGY PAYMENTS AND SUPPLEMENTAL HOME ENERGY PAYMENTS FOR SNA-VA-FA**

**EFFECTIVE October 1, 2012 and thereafter**

Number of persons in household

| One | Two | Three | Four | Five | Six | Each Additional Person |
|---|---|---|---|---|---|---|
| $158 | $252 | $336 | $433 | $534 | $617 | $85 |

ACF 000699

### SCHEDULE SA-2b - STATEWIDE MONTHLY HOME ENERGY PAYMENTS FOR SNA-VA-FA

Number of persons in household

| One | Two | Three | Four | Five | Six | Each Additional Person |
|-----|-----|-------|------|------|-----|------------------------|
| $14.10 | $22.50 | $30.00 | $38.70 | $47.70 | $55.20 | $7.50 |

### SCHEDULE SA-2c - STATEWIDE MONTHLY SUPPLEMENTAL HOME ENERGY PAYMENTS FOR SNA-VA-FA

Number of persons in household

| One | Two | Three | Four | Five | Six | Each Additional Person |
|-----|-----|-------|------|------|-----|------------------------|
| $11 | $17 | $23 | $30 | $37 | $42 | $5 |

(e) Provision of home energy assistance payments set forth in subdivision (d) of this section shall be effective for grants made on or after July 1, 1981.

(f) Provision of supplemental home energy assistance payments set forth in subdivision (d) of this section shall be effective for grants made on or after January 1, 1986.

## Rent Allowances

(a)

1. Each social services district must provide a monthly allowance for rent in the amount actually paid, for cases with a verified rental obligation.  For each social services district, the maximum allowance for each public assistance family size is in accordance with the following schedules:

### LOCAL AGENCY MAXIMUM MONTHLY SHELTER ALLOWANCE SCHEDULES WITH CHILDREN

By Family Size

| County | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |
|--------|---|---|---|---|---|---|---|----|
| Albany | 214 | 219 | 309 | 348 | 386 | 404 | 421 | 421 |
| Allegany | 190 | 220 | 273 | 308 | 342 | 358 | 373 | 373 |
| Broome | 218 | 252 | 290 | 317 | 353 | 368 | 384 | 403 |
| Cattaraugus | 186 | 208 | 269 | 303 | 337 | 352 | 367 | 367 |
| Cayuga | 201 | 208 | 290 | 326 | 363 | 380 | 396 | 396 |
| Chautauqua | 198 | 202 | 285 | 321 | 357 | 374 | 390 | 390 |
| Chemung | 197 | 228 | 283 | 319 | 355 | 371 | 387 | 387 |
| Chenango | 189 | 219 | 264 | 298 | 331 | 346 | 361 | 361 |
| Clinton | 191 | 195 | 275 | 310 | 345 | 360 | 376 | 376 |
| Columbia | 201 | 221 | 290 | 326 | 363 | 379 | 396 | 396 |
| Cortland | 199 | 231 | 281 | 317 | 352 | 368 | 384 | 384 |
| Delaware | 200 | 232 | 274 | 309 | 344 | 359 | 374 | 374 |
| Dutchess | 286 | 292 | 412 | 464 | 516 | 540 | 563 | 563 |

3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Erie** | 209 | 214 | 301 | 339 | 377 | 395 | 411 | 411 |
| **Essex** | 199 | 231 | 268 | 302 | 336 | 351 | 366 | 368 |
| **Franklin** | 180 | 191 | 259 | 292 | 325 | 339 | 354 | 354 |
| **Fulton** | 189 | 193 | 272 | 307 | 341 | 357 | 372 | 372 |
| **Genesee** | 204 | 234 | 294 | 332 | 369 | 386 | 402 | 402 |
| **Greene** | 197 | 229 | 281 | 317 | 352 | 368 | 384 | 384 |
| **Hamilton** | 185 | 189 | 267 | 301 | 335 | 350 | 365 | 365 |
| **Herkimer** | 190 | 200 | 275 | 309 | 344 | 359 | 375 | 375 |
| **Jefferson** | 200 | 232 | 276 | 311 | 346 | 362 | 377 | 377 |
| **Lewis** | 193 | 197 | 279 | 314 | 349 | 365 | 381 | 381 |
| **Livingston** | 213 | 217 | 307 | 346 | 384 | 402 | 419 | 419 |
| **Madison** | 210 | 231 | 304 | 342 | 380 | 397 | 414 | 414 |
| **Monroe** | 257 | 298 | 343 | 374 | 405 | 420 | 438 | 477 |
| **Montgomery** | 196 | 200 | 283 | 319 | 354 | 370 | 386 | 386 |
| **Nassau** | 308 | 334 | 445 | 501 | 558 | 583 | 608 | 608 |
| **New York City** | 277 | 283 | 400 | 450 | 501 | 524 | 546 | 546 |
| **Niagara** | 204 | 209 | 294 | 331 | 369 | 385 | 402 | 402 |
| **Oneida** | 199 | 207 | 287 | 323 | 359 | 375 | 391 | 391 |
| **Onondaga** | 210 | 235 | 303 | 341 | 379 | 397 | 413 | 413 |
| **Ontario** | 213 | 240 | 308 | 347 | 386 | 403 | 421 | 421 |
| **Orange** | 292 | 298 | 421 | 473 | 527 | 551 | 574 | 574 |
| **Orleans** | 209 | 234 | 302 | 340 | 378 | 395 | 412 | 412 |
| **Oswego** | 208 | 212 | 300 | 338 | 375 | 393 | 409 | 409 |
| **Otsego** | 200 | 232 | 280 | 315 | 350 | 366 | 382 | 382 |
| **Putnam** | 306 | 312 | 441 | 496 | 553 | 578 | 602 | 602 |
| **Rensselaer** | 205 | 210 | 296 | 334 | 371 | 388 | 405 | 405 |
| **Rockland** | 302 | 350 | 434 | 488 | 543 | 568 | 592 | 592 |
| **St. Lawrence** | 194 | 211 | 281 | 316 | 351 | 368 | 383 | 383 |
| **Saratoga** | 219 | 224 | 316 | 356 | 396 | 414 | 431 | 431 |
| **Schenectady** | 216 | 226 | 311 | 351 | 390 | 408 | 425 | 425 |
| **Schoharie** | 199 | 231 | 286 | 322 | 358 | 374 | 390 | 390 |
| **Schuyler** | 194 | 224 | 275 | 310 | 345 | 360 | 376 | 376 |
| **Seneca** | 204 | 237 | 288 | 324 | 360 | 376 | 392 | 392 |
| **Steuben** | 188 | 192 | 271 | 305 | 339 | 354 | 370 | 370 |
| **Suffolk** | 310 | 358 | 447 | 503 | 560 | 586 | 611 | 611 |
| **Sullivan** | 211 | 244 | 297 | 335 | 372 | 389 | 406 | 406 |
| **Tioga** | 201 | 233 | 285 | 321 | 357 | 373 | 390 | 390 |
| **Tompkins** | 219 | 251 | 317 | 357 | 396 | 414 | 432 | 432 |
| **Ulster** | 263 | 305 | 350 | 382 | 413 | 427 | 445 | 486 |
| **Warren** | 215 | 250 | 299 | 337 | 375 | 392 | 408 | 408 |
| **Washington** | 205 | 231 | 295 | 332 | 370 | 387 | 403 | 403 |
| **Wayne** | 209 | 240 | 302 | 340 | 378 | 395 | 412 | 412 |
| **Westchester** | 295 | 314 | 426 | 479 | 533 | 557 | 581 | 581 |
| **Wyoming** | 199 | 231 | 279 | 314 | 349 | 365 | 381 | 381 |
| **Yates** | 198 | 210 | 286 | 322 | 358 | 375 | 391 | 391 |

ACF 000701

## LOCAL AGENCY MAXIMUM MONTHLY SHELTER ALLOWANCE SCHEDULE WITHOUT CHILDREN

By Family Size

| County | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |
|---|---|---|---|---|---|---|---|---|
| Albany | 184 | 213 | 245 | 267 | 289 | 299 | 311 | 341 |
| Allegany | 190 | 220 | 253 | 276 | 299 | 309 | 321 | 352 |
| Broome | 218 | 252 | 290 | 316 | 342 | 354 | 368 | 403 |
| Cattaraugus | 179 | 208 | 239 | 261 | 282 | 292 | 304 | 332 |
| Cayuga | 179 | 208 | 239 | 261 | 282 | 292 | 304 | 332 |
| Chautauqua | 167 | 194 | 223 | 243 | 263 | 272 | 283 | 310 |
| Chemung | 197 | 228 | 262 | 286 | 309 | 320 | 333 | 364 |
| Chenango | 189 | 219 | 252 | 275 | 297 | 307 | 320 | 350 |
| Clinton | 156 | 181 | 208 | 227 | 245 | 254 | 264 | 289 |
| Columbia | 191 | 221 | 254 | 277 | 300 | 310 | 323 | 353 |
| Cortland | 199 | 231 | 265 | 289 | 313 | 323 | 337 | 368 |
| Delaware | 200 | 232 | 267 | 291 | 315 | 326 | 339 | 371 |
| Dutchess | 216 | 251 | 288 | 314 | 340 | 351 | 366 | 400 |
| Erie | 169 | 201 | 215 | 234 | 254 | 262 | 273 | 299 |
| Essex | 199 | 231 | 265 | 289 | 313 | 323 | 337 | 368 |
| Franklin | 161 | 191 | 212 | 239 | 250 | 259 | 269 | 295 |
| Fulton | 159 | 184 | 212 | 231 | 250 | 259 | 269 | 295 |
| Genesee | 202 | 234 | 269 | 293 | 317 | 328 | 342 | 374 |
| Greene | 197 | 229 | 263 | 287 | 310 | 321 | 334 | 366 |
| Hamilton | 159 | 184 | 212 | 231 | 250 | 259 | 271 | 296 |
| Herkimer | 173 | 200 | 230 | 251 | 271 | 281 | 292 | 320 |
| Jefferson | 200 | 232 | 267 | 291 | 315 | 326 | 339 | 371 |
| Lewis | 152 | 177 | 203 | 221 | 240 | 248 | 258 | 282 |
| Livingston | 187 | 217 | 249 | 271 | 294 | 304 | 316 | 346 |
| Madison | 199 | 231 | 265 | 289 | 313 | 323 | 337 | 368 |
| Monroe | 257 | 298 | 343 | 374 | 405 | 418 | 436 | 477 |
| Montgomery | 158 | 184 | 211 | 230 | 249 | 257 | 268 | 293 |
| Nassau | 288 | 334 | 384 | 419 | 453 | 468 | 527 | 561 |
| New York City | 215 | 250 | 286 | 312 | 337 | 349 | 403 | 421 |
| Niagara | 174 | 202 | 232 | 253 | 274 | 283 | 295 | 322 |
| Oneida | 179 | 207 | 238 | 259 | 281 | 290 | 302 | 331 |
| Onondaga | 203 | 235 | 270 | 294 | 319 | 329 | 343 | 375 |
| Ontario | 207 | 240 | 276 | 301 | 326 | 337 | 351 | 384 |
| Orange | 229 | 265 | 305 | 332 | 360 | 372 | 387 | 424 |
| Orleans | 202 | 234 | 269 | 293 | 317 | 328 | 342 | 374 |
| Oswego | 183 | 212 | 244 | 266 | 288 | 298 | 310 | 339 |
| Otsego | 200 | 232 | 267 | 291 | 315 | 326 | 339 | 371 |
| Putnam | 237 | 275 | 316 | 344 | 373 | 386 | 401 | 439 |
| Rensselaer | 153 | 179 | 193 | 210 | 228 | 235 | 245 | 268 |
| Rockland | 302 | 350 | 402 | 438 | 474 | 490 | 511 | 559 |
| St. Lawrence | 182 | 211 | 242 | 264 | 286 | 295 | 307 | 336 |
| Saratoga | 185 | 215 | 247 | 269 | 291 | 301 | 314 | 343 |

5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Schenectady** | 195 | 226 | 260 | 283 | 307 | 317 | 330 | 361 |
| **Schoharie** | 199 | 231 | 265 | 289 | 313 | 323 | 337 | 368 |
| **Schuyler** | 194 | 224 | 258 | 281 | 304 | 315 | 328 | 359 |
| **Seneca** | 204 | 237 | 272 | 296 | 321 | 332 | 345 | 378 |
| **Steuben** | 159 | 184 | 212 | 231 | 250 | 259 | 269 | 295 |
| **Suffolk** | 309 | 358 | 412 | 449 | 486 | 503 | 523 | 573 |
| **Sullivan** | 211 | 244 | 281 | 306 | 332 | 343 | 357 | 391 |
| **Tioga** | 201 | 233 | 268 | 292 | 316 | 327 | 340 | 373 |
| **Tompkins** | 217 | 251 | 289 | 315 | 341 | 353 | 367 | 402 |
| **Ulster** | 263 | 305 | 350 | 382 | 413 | 427 | 445 | 486 |
| **Warren** | 215 | 250 | 287 | 313 | 339 | 350 | 364 | 399 |
| **Washington** | 199 | 231 | 265 | 289 | 313 | 323 | 337 | 368 |
| **Wayne** | 207 | 240 | 276 | 301 | 326 | 337 | 351 | 384 |
| **Westchester** | 271 | 314 | 361 | 393 | 426 | 440 | 474 | 536 |
| **Wyoming** | 199 | 231 | 265 | 289 | 313 | 323 | 337 | 368 |
| **Yates** | 181 | 210 | 241 | 263 | 284 | 294 | 306 | 335 |

2. Recipients in receipt of a court ordered shelter supplement, or a temporary shelter supplement pursuant to 18 NYCRR 370.10, at the time this paragraph is adopted and, who are otherwise eligible for public assistance will continue to receive that supplement, if higher than the shelter allowance set forth in paragraph (1) of this subdivision, for up to a two year period, provided that there is no break in assistance of more than one calendar month or that the family has not been sanctioned. After a two-year period from the date this paragraph is adopted or upon a break in receipt of a court ordered supplement or a supplement under 18 NYCRR 370.10 of more than one calendar month, applicants and recipients who were receiving a court ordered shelter supplement or a temporary shelter supplement pursuant to 18 NYCRR 370.10, must receive a shelter allowance pursuant to paragraph (1) of this subdivision, if otherwise eligible. The amount of the shelter supplement in excess of the shelter allowance maxima set forth in paragraph (1) of this subdivision is not part of the standard of need.

3.

    i. A social services district, with the approval of the Office of Temporary and Disability Assistance, may provide additional monthly shelter supplement to public assistance applicants and recipients who will reside in private housing, or who currently reside in private housing and are facing eviction. Social services districts choosing to provide such supplements must submit a plan to the Office of Temporary and Disability Assistance, attention: Employment and Income Support Programs Division of Temporary Assistance prior to providing any such supplements. Plans submitted to the Office must include: justification for providing supplement(s), the targeted population, the amount of the supplement(s) and any additional information as required by the Office. The supplement(s) must be a monthly amount that, when combined with the shelter allowance, does not exceed the rental obligation or home ownership shelter expenses of the applicant or recipient. The amount of the shelter supplement is not part of the standard of need.

    ii. The Office may authorize a social services district to provide such supplement or a distinct part of such supplement if it determines that the provision of such

ACF 000703

supplement would accomplish its stated purpose and is justified considering such factors as length of temporary housing stays, existing litigation and other factors affecting the availability of housing.  The Office must also consider the impact of granting the supplement on the economic incentives for self-sufficiency and the impact on low-income households which are not in receipt of public assistance.  The Office may authorize the supplement only if it determines that there are sufficient funds available to provide such reimbursement.

(b) When the recipient is obligated to pay for water as a separate charge to a vendor, an allowance must be made for the additional amount required to be paid.  When the recipient is obligated to pay for sewer, water (except when paid as a separate charge) and/or garbage disposal, an allowance must be made therefor to the extent that the total of the rent allowances plus such charge or charges does not exceed the appropriate maximum amount in the schedule in subdivision (a) of this section.  For the purpose of this subdivision, the term separate charge refers to a billing made directly to a recipient in his or her name which is limited to charges for his or her utility service.

(c) [Reserved]

(d) Public Housing.

   1.

      i. An allowance for rent must be made for recipients who are tenants of city, State or federally aided public housing up to the amount actually paid or the following schedule, whichever is less, except when a modified schedule of allowances is approved by this Office for a specific housing authority and the modified schedule provides for larger allowances or when the housing authority calculates the rent based on a percentage of household income:

         a. Effective August 15, 2007, public housing authorities may charge rent up to 50 percent of the shelter maximums found in subdivision (a) of this section.

         b. Effective August 15, 2008, public housing authorities may charge rent up to 75 percent of the shelter maximum found in subdivision (a) of this section.

         c. Effective August 15, 2009, public housing authorities may charge rent up to the shelter maximums found in subdivision (a) of this section.

      ii. Modified schedule approved.  When a modified schedule is approved by this Office for a specific housing authority, the allowance for rent must be the amount actually paid up to the approved schedule amount.  A housing authority may request, and the Office may grant an increase not to exceed ten percent in a twelve-month period until the modified schedule for the housing authority reaches the maximum allowances for the district found in subdivision (a) of this section.  Effective August 15, 2009, modified schedules approved by this Office shall be void.

      iii. Rent calculated based on a percentage of income.  For any household for which the amount of rent is determined by a public housing authority as a percentage of either gross or adjusted gross income, the applicable shelter allowance is the amount so calculated up to the maximum allowance for the given household size found in subdivision (a) of this section.

   2.

7

ACF 000704

    i.  Subsidized housing other than section 8 housing vouchers. The rent allowance for tenants of housing subsidized under a housing assistance payments program, except as provided in subparagraph (ii) of this paragraph, is the amount of rent actually paid (exclusive of the subsidy) but not more than the amount in the applicable schedule in subdivisions (a) and (b) of this section.

    ii.  Section 8 Voucher Program.

        a.  The rent for recipients whose rental housing payments are subsidized under the Section 8 Voucher Program (not including a recipient participating in the program of special allowances for owners of manufactured homes) shall be the amount actually paid, but not in excess of the amount (rounded to the nearest whole dollar) equal to 30 percent of the applicable standard of need by family size and district of residence, considering only the SA-2a, SA-2b, SA-2c schedules contained in 18 NYCRR 352.2(d), and the local agency monthly shelter allowance schedule with children, exclusive of any supplement. For the purpose of this subparagraph, the allowance amounts are those in Office regulation and in effect on the filing date of this subparagraph.

        b.  Clause (a) of this subparagraph shall not apply to recipients whose Section 8 vouchers are provided by public housing authorities or other local Section 8 voucher issuing agencies that routinely determined the tenants' share of the rent due and payable for months commencing on or before October 1, 2004 to be the local agency shelter maximums under subdivision (a) of this section.

        c.  The Office shall develop an administrative process to certify whether clause (a) or (b) of this subparagraph shall apply to each individual public housing authority or other local Section 8 voucher issuing agency.

(e) Rent allowances for hotel/motel facilities.
An allowance for shelter shall be made for recipients temporarily housed in hotel/motel facilities under the following circumstances:

1. No other suitable housing either public or private is available to house the recipient.

2. Hotel/motel accommodations without cooking facilities shall be utilized only when accommodations with such facilities are not available. An allowance for the actual cost of the rental of a refrigerator, not to exceed $10 per week per room, shall be made when a homeless family is temporarily placed in a hotel/motel which does not have cooking facilities and which provides a refrigerator on a rental basis.

3. The continued need for hotel/motel accommodations shall be reviewed, evaluated and authorized monthly by the social services district.

(f) Reimbursement for shelter costs and restaurant allowances and rental fees for refrigerators as provided for in paragraph (e)(2) of this section is available to social services districts for expenditures made by such districts on behalf of recipients temporarily living in hotels or motels for so long as the recipients are actively seeking permanent housing, but in no event for a period in excess of six months unless the local commissioner of social services determines on an annual basis that housing other than hotels or motels or facilities regulated under 18 NYCRR Part 900 is not readily available in the social services district and the commissioner submits such determination to the department on an annual basis. Upon such a determination and submission, the social services district will continue to be

ACF 000705

reimbursed for shelter costs, restaurant allowances as appropriate and rental fees for refrigerators provided to public assistance recipients beyond such six-month period. A recipient's continued need for hotel/motel accommodations must be reviewed and evaluated monthly. The maximum reimbursable amount for shelter costs after August 1, 1984 is $16 per day for the first person in each hotel room, and $11 per day for the remaining occupants in each room. Restaurant allowances, if necessary must be provided in accordance with department regulations.

(g)  Standards

No family shall be referred to a hotel/motel, nor shall any reimbursement be made for costs incurred from such referral unless all of the requirements set forth below are met:

1.  Primary consideration shall be given to the needs of children. Specific factors considered must include but shall not be limited to educational needs, security, the nature of the facility in which the children would be placed, and factors which will insure the minimum disruption of community ties.

2.  The hotel/motel shall have appropriate contractual or other arrangements for maintenance, repair and sanitation in the hotel/motel. The hotel/motel must have available for review by the local social services district information verifying the above-mentioned arrangements or record of such. Such information would include, for example, contracts with private carters, bills, receipts, or other evidence of performance. Such arrangements shall include but not be limited to agreements for provision of the following services:

    i.   removal of garbage;

    ii.  maintenance of floor coverings, draperies and furniture;

    iii. repainting of the facility at least once every five years;

    iv.  maintenance and inspection of the electrical system;

    v.   maintenance of plumbing and plumbing fixtures;

    vi.  maintenance and inspection of heating, ventilation and air conditioning systems;

    vii. a regular vermin control program; and

    viii. provision to insure that entrances, exits, steps and walkways are kept clear of garbage, ice, snow and other hazards.

3.  Rooms shall be cleaned at least every other day by hotel/motel staff.

4.  Furniture necessary for daily living, including but not limited to tables, bureaus, chairs, beds and cribs must be in each room.

5.  No more than two adults shall be placed in the same room.

6.  When children are placed in the same room as adults, there shall be sufficient beds so children shall not have to share single beds.

7.   All mattresses and bedding material shall be clean. Each bed shall have at least two clean sheets, adequate clean blankets, clean pillows and pillowcases.  A complete change of linens shall be made by hotel/motel staff at least once a week and more often where individual circumstances warrant or when a new family occupies the unit. Each

9

ACF 000706

unit shall be supplied with towels, soap and toilet tissues. A clean towel shall be provided daily to each resident.

8. Each unit must have operational door and window locks. All windows at and above the second floor must have window guards in place unless windows are sealed and the air conditioning works.

9. A heating system shall be permanently installed and operated in accordance with applicable local law. Where local law or code does not govern the provision of heat, the system will provide heat to maintain a temperature of 69°F (20°C) in all occupied parts of the building, including corridors. Where windows do not open, proper ventilation, including but not limited to air conditioning, shall be operational.

10. Each family with children must have a private bathroom. At a minimum, this must include a toilet, a sink and a shower or bathtub, all of which must be properly maintained with hot and cold running water.  Couples without children may be placed in rooms with common bathroom facilities.

(h) Inspection.

Local social services districts which make hotel/motel referral must inspect at least once every six months the hotels/motels in which families are placed. In addition to verifying that the hotel/motel meets the requirements set forth in subdivision (g) of this section, the local district shall make appropriate inquiries to determine whether the hotel/motel is in compliance with all applicable state and local laws, regulations, codes and ordinances. Any violation found during the on-site inspection shall be reported to appropriate authorities. Further, each inspection shall at least review arrangements for hygiene, vermin control, security, furnishings, cleanliness and maintenance and shall include a review of any applicable documents pertaining to compliance with any local laws or codes. A written report shall be made of each such inspection and shall be maintained at the office of the local district together with such other information as the district may maintain concerning the families placed in the hotel/motel.  A copy of any such inspection report shall be provided to the Office of Temporary and Disability Assistance within 30 days of its completion.

(i)

1. To the extent that units of housing are available and subject to department approval based upon the housing conditions in the region, and to the extent of State appropriations made expressly therefor, social services districts may provide an allowance to secure housing to any homeless family:

    i. residing in a municipality having a rental vacancy rate for low-income housing less than three percent;

    ii. for whom no housing can be located at a rent within the shelter maximum under this section; and,

    iii. in which at least one member of the family has resided in a hotel or motel and/or a shelter (including, but not limited to, facilities operated under 18 NYCRR Part 900) at public expense for a period exceeding 12 weeks. Social services districts may consider decreasing this length of stay requirement if a long-term temporary placement in a hotel or motel or shelter would be detrimental to the health and welfare of families, including families with immediate medical needs.

2. In determining priority for placement in housing units for which an allowance is paid under this subdivision, the district must consider factors affecting need such as:

10

ACF 000707

    i.   the length of stay in a hotel or motel and/or a shelter (including, but not limited to, facilities operated under 18 NYCRR Part 900) at public expense;

    ii.   the size of the family; and

    iii.   the location of schools in relation to the temporary housing where the family is residing.

3.  Social services districts must submit to the department for approval annual plans for the operation of programs to make allowances available under this subdivision.  Plans must be submitted within 45 days after funds have been authorized in the State budget for allowances for this program.  Plans must:

    i.   indicate the number of units of housing for which the allowance will be made available pursuant to this subdivision, identifying the number that would-be privately-owned units and the number that would be publicly owned units, and the amount of funds being requested;

    ii.   describe the housing to be utilized;

    iii.   indicate the number of months that the allowance will be available (not to exceed eight months in the case of privately-owned units or four months in the case of publicly owned units);

    iv.   set forth the procedures for assuring local housing code compliance;

    v.   set forth the procedures to identify those families likely to be long-term residents of hotels and motels and/or shelters (including, but not limited to, facilities operated under 18 NYCRR Part 900);

    vi.   indicate the criteria to be used in determining priorities for placement;

    vii.   indicate the services available in the social services district to assist persons to remain in housing after placement under this program;

    viii.   indicate the number of homeless families in the social services district that requested emergency housing each month during the most recent twelve-month period and the number of families that resided in hotels and motels and/or shelters during the most recent twelve-month period; and

    ix.   indicate the number of months that the social services district will require participating landlords to make specified apartments available to selected families.

4.  The allowance consists of a rent supplement in an amount to be determined by the social services district, with the prior approval of the department, but cannot exceed the difference between the maximum shelter allowance and the hotel/motel rate for the family.  Social services districts must submit claims for State reimbursement for such allowances on forms and in the manner prescribed by the department.

5.  No allowance will be paid under this subdivision for housing developed for the homeless financed partially or wholly with public funds.

6.  No allowance under this subdivision will be paid unless the social services district documents that such allowance will not be used to replace funds previously used, or designated for use, to secure housing for homeless families.

7.  No allowance provided under this subdivision will be paid for housing which does not comply with or which is not brought into substantial compliance with the local housing code or which has been occupied by a family receiving FA or SNA within one year prior

ACF 000708

to the payment of an allowance hereunder; provided, however, that such allowance may be held in escrow by the district pending correction of existing code violations. Moreover, no allowance will be paid unless the participating landlord agrees to make a specified apartment available to the selected family for a period of up to 32 months as approved by the department, except as provided herein. The landlord must agree that, in the event that a selected family does not remain for any reason in the specified apartment for the period for which it is to be available, the landlord will return a pro rata portion of the allowance reflecting the balance of the period. In such event, the district may provide an allowance with respect to a subsequently selected family for the balance of the period, provided further that such family meets the eligibility criteria set forth in this subdivision.

8. Allowances provided under this subdivision must be paid for a maximum period specified by the district and approved by the department.

9. Social services districts providing allowances under this subdivision must submit information on a monthly basis in a manner prescribed by the department, including but not limited to:

    i. the number of units rented that were privately owned and the number of units rented that were publicly owned and the addresses of such units;

    ii. the individual allowances issued; and

    iii. the number of families leaving apartments funded with allowances under this subdivision.

(j) If rent has not been paid for the month in which the case is accepted, a non-prorated shelter allowance, not to exceed the appropriate local agency maximum monthly shelter allowance, must be provided to retain the living accommodation.

(k) Emergency shelter allowances.

1. An emergency shelter allowance must be provided, upon request, to a household composed of an applicant for or recipient of public assistance, who has been medically diagnosed as having AIDS or HIV-related illness as defined from time-to-time by the AIDS Institute of the State Department of Health, and any household members residing with such person. Such household must be homeless or faced with homelessness and have no viable and less costly alternative housing available. The social and medical needs of the household members must be considered in making a determination concerning availability of alternative housing.

    i. An applicant for or recipient of public assistance medically diagnosed as having AIDS or HIV-related illness is considered to be the "first person" in the household, and qualifies the household for an emergency shelter allowance. The first person may or may not be in receipt of supplemental security income (SSI).

    ii. The income and needs of the first person medically diagnosed as having AIDS or HIV-related illness and any additional household member that is not in receipt of SSI are used in calculating an emergency shelter allowance, as described in paragraph (3) of this subdivision.

    iii. The SSI income and needs of any household member not considered the first person medically diagnosed as having AIDS or HIV-related illness are not used in calculating an emergency shelter allowance.

ACF 000709

2. An emergency shelter allowance must not exceed $480 for the first person in the household and $330 for each additional household member, and in no event be greater than the household's actual monthly rent due.  Except for cases specified in paragraph (3) of this subdivision, the emergency shelter allowance is considered to be the household's public assistance shelter allowance for public assistance budgeting purposes.

3. When a household comprising both public assistance and SSI eligible persons requests an emergency shelter allowance, the social services district must compute the amount of the allowance as follows:

    i. determine the public assistance grant of the public assistance eligible persons using the appropriate rent schedule amount in subdivision (a) of this section;

    ii. calculate the net amount of actual household shelter costs by subtracting the appropriate rent schedule amount, as determined by referring to subdivision (a) of this section, from the total actual household shelter costs;

    iii. calculate the maximum amount of emergency shelter allowance available to the household by subtracting the appropriate rent schedule amount, as determined by referring to subdivision (a) of this section, from the maximum allowance authorized by paragraph (2) of this subdivision for the total number of persons in the household; and

    iv. subtract the SSI and other income of the SSI eligible person only when such person is included as the first person in the household, from the sum of the amount calculated in accordance with the provisions of subparagraph (ii) or (iii) of this paragraph, whichever is less, and the incremental non-shelter public assistance standard of need of the SSI eligible persons.  The resulting amount, if greater than zero, is the household's emergency shelter allowance.  This allowance is added to the public assistance grant determined in accordance with subparagraph (i) of this paragraph.

4. When necessary, social services districts must:

    i. address the social services needs of a person in receipt of an emergency shelter allowance through the direct provision of services or through the provision of appropriate information and referral services; efforts should be made to ensure that an applicant for or a recipient of such an allowance has established appropriate social and medical support networks;

    ii. assist an applicant for or a recipient of an emergency shelter allowance to secure the required documentation so that eligibility for such allowance can be determined; and

    iii. arrange for required face-to-face interviews to be conducted during home visits or at other appropriate sites.

   In accordance with department regulations, designated representatives may file and sign application and recertification documents on behalf of an applicant for or a recipient of an emergency shelter allowance.

(l) Shelter allowances in excess of the standards.

   A shelter supplement plan under paragraph (a)(3) of this section may include provisions for treatment of SSI family members that differ from the requirements of 18 NYCRR 352.2(b), but only with respect to the shelter supplement and only if approved by the Office.

ACF 000710

(m) Inspection of shelter placements.

Social services districts that make referrals for temporary emergency shelter for eligible homeless households to temporary housing units, which will be paid for by public funds, that are not otherwise governed by Section 460 of the Social Services Law, 18 NYCRR Parts 900 and 491, or subdivision (h) of this section, shall submit for approval by the Office of Temporary and Disability Assistance health and safety standards for those units which comport with all applicable State and local laws, regulations, codes and ordinances. Additionally, social services districts shall be responsible for the inspection of such temporary housing units at least once every 12 months to confirm that such standards are satisfied. A written report shall be made of each such inspection and shall be maintained at the office of the social services district together with such other information as the social services district may maintain concerning the households placed in the temporary housing unit. A copy of any such inspection report shall be provided to the Office of Temporary and Disability Assistance within 30 days of its completion.

## Shelter Costs for Applicant/Recipient-Owned Property

(a) Purchase of interest in low cost housing development.

1.  A social services official may approve a grant, not to exceed $2,500 toward the purchase of an interest in a cooperative unit in a low-cost housing development.

2.  The social services official must require assignment of applicant's/recipient's equity in such cooperative housing.

(b) Carrying charges.

On applicant/recipient-owned property used as a home, carrying charges must be met in the amount actually paid by the applicant/recipient, but not in excess of the appropriate maximum of the rent schedule, for the items of taxes; interest on mortgage; fire insurance; and garbage disposal, sewer and water assessments.

(c) Amortization.

The amounts required to amortize a mortgage on the applicant's/recipient's property must be included in the carrying charges when property is income-producing and the resulting carrying charges do not exceed the property income by an amount in excess of the maximum of the established rent schedule or when property is not income-producing but it is essential to retain the home of the applicant/recipient and the resulting carrying charges do not exceed the appropriate maximum of the established rent schedule.

(d) Property repairs.

The cost of property repairs must be met when:

1.  the property is income-producing and the repairs are essential to retain that status; or

2.  the repairs are essential to the health or safety of the applicant/recipient.

(e) reserved.

14

ACF 000711

## Energy Assistance.

(a) Tenant and customer of record requirements.

Prior to granting energy assistance under subdivisions (b) through (g) of this section, it must be documented that the applicant/recipient/grantee is the tenant and customer of record.  A tenant of record is a person who has primary responsibility for payment of the monthly rent or mortgage for the dwelling unit. Individuals who contribute a portion of the monthly rent/mortgage to a person responsible for payment of the monthly rent/mortgage for the dwelling unit will not be considered a tenant of record.  A customer of record is a person who has an account in his or her name with a home energy vendor.  An individual who is not the tenant and customer of record is considered to meet the tenant and customer of record requirement(s) when such individual is the spouse of the tenant and customer of record who is living in the same household or who is the surviving spouse of a deceased spouse who was the tenant and customer of record.  The term home energy vendor means an individual or entity engaged in the business of selling electricity, natural gas, oil, propane, kerosene, coal, wood, or any other fuel used for residential heating and/or domestic (lights, cooking, hot water) energy.

(b) Fuel for heating allowances.

Each social services district must grant an allowance for fuel for heating to a public assistance applicant/recipient or self-maintaining grantee in receipt of public assistance for a dependent child or children when it is documented that the applicant/recipient/ grantee is the tenant of record, as defined in subdivision (a) of this section, with primary responsibility for payment of the residential heating costs.  A fuel for heating allowance must also be granted to a public assistance applicant/recipient/grantee whose utility heating bill may include costs for service for the applicant/recipient/grantee's own residential unit and for space outside that unit or whose non-utility heating bill includes costs for the applicant/recipient/grantee's own residential unit and for other residential units when it is documented that the applicant/recipient/grantee is the tenant and customer of record as defined in subdivision (a) of this section.  When a fuel for heating allowance is granted to an applicant/recipient/grantee who is the customer of record for a utility bill which may include costs for service for the applicant/recipient/grantee's own residential unit and for space outside that unit, the social services district must determine whether a referral for a shared meter investigation, in accordance with the provisions of Section 52 of the Public Service Law, is appropriate.  To have primary responsibility for the payment of residential heating costs, the applicant/recipient/grantee must be the customer of record, as defined in subdivision (a) of this section, for the residential heating bill with a home energy vendor.  Fuel for heating allowances must be provided on a 12-month heating season (October 1st-September 30th) in accordance with the following schedules and must be based upon the applicant/recipient/grantee's primary residential heating source:

## SCHEDULE SA-6a - MONTHLY ALLOWANCES FOR FUEL FOR HEATING BEGINNING OCTOBER 1, 1987:

Oil, Kerosene, Propane

**Counties of: Nassau, New York City, Suffolk, Westchester**

| Number of persons: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |
|---|---|---|---|---|---|---|---|---|
| 12 month | $70 | $70 | $70 | $73 | $77 | $82 | $88 | $93 |

15

**Attachment E**

**Counties of: Chautauqua, Dutchess, Orange, Putnam, Rockland, Ulster**

| Number of persons: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |
|---|---|---|---|---|---|---|---|---|
| 12 month | $68 | $68 | $68 | $71 | $74 | $80 | $85 | $91 |

**Counties of: Columbia, Erie, Genesee, Livingston, Monroe, Niagara, Onondaga, Ontario, Orleans, Oswego, Wayne**

| Number of persons: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |
|---|---|---|---|---|---|---|---|---|
| 12 month | $69 | $69 | $69 | $72 | $75 | $81 | $87 | $92 |

**Counties of: Albany, Cayuga, Chemung, Greene, Schenectady, Schuyler, Seneca, Tompkins, Yates**

| Number of persons: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |
|---|---|---|---|---|---|---|---|---|
| 12 month | $69 | $69 | $69 | $72 | $75 | $81 | $87 | $92 |

**Counties of: Allegany, Broome, Cattaraugus, Chenango, Cortland, Delaware, Fulton, Jefferson, Madison, Montgomery, Otsego, Rensselaer, Saratoga, Schoharie, Steuben, Sullivan, Tioga, Warren, Washington, Wyoming**

| Number of persons: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |
|---|---|---|---|---|---|---|---|---|
| 12 month | $72 | $72 | $72 | $75 | $78 | $84 | $90 | $96 |

**Counties of: Clinton, Lewis, Oneida, St. Lawrence**

| Number of persons: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |
|---|---|---|---|---|---|---|---|---|
| 12 month | $71 | $71 | $71 | $74 | $78 | $83 | $89 | $95 |

**Counties of: Essex, Franklin, Hamilton, Herkimer**

| Number of persons: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |
|---|---|---|---|---|---|---|---|---|
| 12 month | $77 | $77 | $77 | $80 | $84 | $90 | $96 | $102 |

## SCHEDULE SA-6a - MONTHLY ALLOWANCES FOR FUEL FOR HEATING BEGINNING OCTOBER 1, 1987:

Natural Gas, Coal, Wood, Municipal Electric Utilities not Regulated by the Public Service Commission, Any Other Fuel not Covered by SA-6a and SA-6c

**Counties of: Nassau, New York City, Suffolk, Westchester**

| Number of persons: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |
|---|---|---|---|---|---|---|---|---|
| 12 month | $56 | $56 | $56 | $58 | $61 | $65 | $69 | $74 |

16

ACF 000713

**Counties of: Chautauqua, Dutchess, Orange, Putnam, Rockland, Ulster**

| Number of persons: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |
|---|---|---|---|---|---|---|---|---|
| 12 month | $55 | $55 | $55 | $57 | $60 | $64 | $68 | $73 |

**Counties of: Columbia, Erie, Genesee, Livingston, Monroe, Niagara, Onondaga, Ontario, Orleans, Oswego, Wayne**

| Number of persons: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |
|---|---|---|---|---|---|---|---|---|
| 12 month | $54 | $54 | $54 | $56 | $58 | $63 | $67 | $71 |

**Counties of: Albany, Cayuga, Chemung, Greene, Schenectady, Schuyler, Seneca, Tompkins, Yates**

| Number of persons: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |
|---|---|---|---|---|---|---|---|---|
| 12 month | $58 | $58 | $58 | $60 | $63 | $68 | $72 | $77 |

**Counties of: Allegany, Broome, Cattaraugus, Chenango, Cortland, Delaware, Fulton, Jefferson, Madison, Montgomery, Otsego, Rensselaer, Saratoga, Schoharie, Steuben, Sullivan, Tioga, Warren, Washington, Wyoming**

| Number of persons: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |
|---|---|---|---|---|---|---|---|---|
| 12 month | $58 | $58 | $58 | $60 | $63 | $67 | $72 | $77 |

**Counties of: Clinton, Lewis, Oneida, St. Lawrence**

| Number of persons: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |
|---|---|---|---|---|---|---|---|---|
| 12 month | $55 | $55 | $55 | $57 | $60 | $64 | $69 | $73 |

**Counties of: Essex, Franklin, Hamilton, Herkimer**

| Number of persons: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |
|---|---|---|---|---|---|---|---|---|
| 12 month | $66 | $66 | $66 | $68 | $71 | $77 | $82 | $87 |

## SCHEDULE SA-6c - MONTHLY ALLOWANCES FOR FUEL FOR HEATING BEGINNING OCTOBER 1, 1987:

Public Service Commission-Regulated Electric Utilities, Village of Greenport Electric

**Counties of: Nassau, New York City, Suffolk, Westchester**

| Number of persons: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |
|---|---|---|---|---|---|---|---|---|
| 12 month | $90 | $90 | $90 | $94 | $99 | $106 | $113 | $120 |

17

ACF 000714

**Attachment E**

**Counties of: Chautauqua, Dutchess, Orange, Putnam, Rockland, Ulster**

| Number of persons: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |
|---|---|---|---|---|---|---|---|---|
| 12 month | $105 | $105 | $105 | $109 | $114 | $123 | $131 | $139 |

**Counties of: Columbia, Erie, Genesee, Livingston, Monroe, Niagara, Onondaga, Ontario, Orleans, Oswego, Wayne**

| Number of persons: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |
|---|---|---|---|---|---|---|---|---|
| 12 month | $107 | $107 | $107 | $111 | $117 | $125 | $134 | $142 |

**Counties of: Albany, Cayuga, Chemung, Greene, Schenectady, Schuyler, Seneca, Tompkins, Yates**

| Number of persons: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |
|---|---|---|---|---|---|---|---|---|
| 12 month | $120 | $120 | $120 | $125 | $131 | $140 | $150 | $160 |

**Counties of: Allegany, Broome, Cattaraugus, Chenango, Cortland, Delaware, Fulton, Jefferson, Madison, Montgomery, Otsego, Rensselaer, Saratoga, Schoharie, Steuben, Sullivan, Tioga, Warren, Washington, Wyoming**

| Number of persons: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |
|---|---|---|---|---|---|---|---|---|
| 12 month | $122 | $122 | $122 | $127 | $133 | $142 | $152 | $162 |

**Counties of: Clinton, Lewis, Oneida, St. Lawrence**

| Number of persons: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |
|---|---|---|---|---|---|---|---|---|
| 12 month | $122 | $122 | $122 | $127 | $133 | $143 | $153 | $163 |

**Counties of: Essex, Franklin, Hamilton, Herkimer**

| Number of persons: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |
|---|---|---|---|---|---|---|---|---|
| 12 month | $140 | $140 | $140 | $146 | $153 | $164 | $175 | $186 |

(c) Payment essential to obtain nonutility heating fuel for an applicant for family assistance (FA), safety net assistance (SNA), veteran assistance or emergency public assistance.

The district must authorize a non-recoupable payment to an applicant for FA, SNA, veteran assistance or emergency public assistance for nonutility (other than natural gas or electricity) heating fuel, including an applicant whose nonutility heating bill includes costs for the applicant's own residential unit and for other residential units, provided such payment is necessary to obtain nonutility heating fuel essential for the applicant's residential heating purposes. Such payment may only be made when it is documented that the applicant is the tenant of record and the customer of record, as defined in subdivision (a) of this section, and alternative payment or housing accommodations cannot be arranged and the applicant is without liquid resources to pay for such nonutility heating fuel.  Such payment must not

18

ACF 000715

exceed the cost of nonutility heating fuel required to meet the applicant's immediate need. However, once an initial payment has been authorized for an applicant whose nonutility heating bill includes costs for the applicant's own residential unit and for other residential units, subsequent emergency payments to obtain nonutility heating fuel for that applicant may only be authorized for deliveries made on an alternate basis with the other unit(s) sharing the fuel source.  Prior to issuing payment for each subsequent delivery, it must be documented that heating fuel in amounts reasonably comparable to the most recent delivery paid for by the social services district has been provided by or on behalf of the other unit(s) sharing the fuel source.  When the alternate delivery requirement has not been met or cannot be documented, the social services district must address the applicant's hearing emergency with alternative methods.  These methods include, but are not limited to, the following:  referrals to services and/or other agencies; exploration of alternative housing; exploration of other funding sources (including HEAP); or the lending of safe supplemental heating devices.  Documentation of need for the social services district payment must be fully recorded in the applicant's case file.

(d) Payment essential to obtain nonutility heating fuel.

This subdivision applies to recipients of FA, SNA, veteran assistance, or self-maintaining grantees in receipt of FA or SNA on behalf of dependent children and in receipt of fuel for heating allowances as outlined in subdivision (b) of this section.  An advance allowance subject to recoupment, in accordance with 18 NYCRR 352.11, must be authorized for such recipient or grantee when it is documented that the recipient/grantee is the tenant and customer of record for the residential heating bill, as defined in subdivision (a) of this section, and when the recipient/grantee has made a request in writing for such an allowance and also has requested in writing that the monthly grant be reduced to recover the advance allowance.  This provision is applicable in those cases where the recipient/grantee's nonutility heating bill includes costs for the recipient/grantee's own residential unit and for other residential units.  Once an initial payment has been authorized for a recipient/grantee whose nonutility heating bill includes costs for the recipient/grantee's own residential unit and for other residential units, subsequent payments to obtain nonutility heating fuel for that recipient/grantee may only be authorized for deliveries made on an alternate basis with the other unit(s) sharing the fuel source.  Prior to issuing payment for each subsequent delivery, it must be documented that heating fuel in amounts reasonably comparable to the most recent delivery paid for by the social services district has been provided by or on behalf of the other unit(s) sharing the fuel source.  When the alternate delivery requirement has not been met or cannot be documented, the social services district must address the recipient/grantee's heating emergency with alternative methods.  These methods include, but are not limited to, the following: referrals to services and/or other agencies; exploration of alternative housing; exploration of other funding sources (including HEAP); or lending of safe supplemental heating devices.

(e) Payment essential to continue or restore utility service for an applicant for family assistance, safety net assistance, veteran assistance or emergency public assistance.

A payment must be made for utilities previously provided to an applicant for family assistance, safety net assistance, veteran assistance or emergency public assistance if such payment is essential to continue or restore utility service.  Payment essential to continue or restore utility service may be provided to an applicant whose utility bill includes costs for service for the applicant's own residential unit and for space outside that unit. Payment may only be made when it is documented that the applicant is the tenant of record and the customer of record, as defined in subdivision (a) of this section, and alternative

19

payment or housing accommodations cannot be made and the applicant is without liquid resources to continue or restore utility service. Payment must not exceed the cost of utilities provided to the applicant during the four most recently completed monthly billing periods or two most recently completed bi-monthly billing periods for which a bill has been issued immediately preceding the date of application for such assistance. Payment is limited to the applicant's proportionate share of the cost of service for the most recently completed four monthly or two most recently completed bi-monthly billing periods for which a bill has been issued immediately preceding the date of application for such assistance when the applicant's utility bill includes costs for service for the applicant's own residential unit and for space outside that unit. Payment must not exceed the balance due on the account. In a shared meter situation subject to the provisions of Section 52 of the Public Service Law, the proportionate share is to be determined by the utility company's apportionment of retroactive charges upon completion of a shared meter investigation and determination. As a condition of receiving such assistance, an applicant not in receipt of recurring public assistance or supplemental security income whose gross monthly household income on the date of application exceeds the public assistance standard of need for the same size household must sign an agreement to repay the assistance within two years of the date of the payment. A household consists of all persons who occupy a housing unit. A house, an apartment or other group of rooms, or a single room is regarded as a housing unit when it is occupied or intended for occupancy as separate living quarters. A household includes related family members and all unrelated persons, if any, such as lodgers, foster children, wards, or employees who share the housing unit. A person living alone, or a group of unrelated persons sharing a housing unit as partners, also constitutes a household. The public assistance standard of need is determined by applying the following statewide standards of need in accordance with Office regulations: the pre-add allowance as set forth in Schedule SA-2a of 18 NYCRR 352.3; the shelter allowance as paid, but not to exceed the maximum allowance set forth in 18 NYCRR 352.3; the fuel allowance set forth in Schedule SA-6a, SA-6b or SA-6c of 18 NYCRR 352.5, if the applicant is the tenant of record and customer of the record for the residential heating bill; the home energy and supplemental home energy payments (HEA and SHEA) as set forth in schedule SA-2b or SA-2c of 18 NYCRR 352.1; and, if applicable, the additional cost of meals for persons unable to prepare meals at home as set forth in schedule SA-5 of 18 NYCRR 352.7. The repayment agreement must set forth a schedule of payments that will assure repayment within two years of the date of payment. Subsequent assistance to continue or restore utility service must not be provided unless any prior utility arrearage payments have been repaid or are being repaid in accordance with the schedule of payments contained in each prior repayment agreement as of the date of application for such subsequent assistance, or unless the enforcement of such prior repayment agreement(s) is suspended by the local social services district during a period of cold weather, defined, for these purposes, as the time period from November 1st of each year and ending April 15th of the following year. Repayment agreements under this subdivision may be enforced in any manner available to a creditor, in addition to any other remedy the district may have pursuant to the Social Services Law.

(f) Payment essential to continue or restore utility service for a recipient of FA, SNA, veteran assistance, or self-maintaining grantee in receipt of public assistance for dependent children and in receipt of a home energy allowance and supplemental home energy allowance (HEA and SHEA) and/or a fuel for heating allowance, as defined in subdivision (b) of this section. For purposes of this subdivision, the term recipient is defined as: a recipient of FA, SNA, veteran assistance, or a self-maintaining grantee in receipt of public assistance on behalf of dependent children and in receipt of a HEA and SHEA and/or a fuel for heating allowance, as defined in subdivision (b) of this section.

20

1.  A payment must be made for utilities previously provided to a recipient of FA, SNA, veteran assistance or grantee in receipt of public assistance for dependent children and in receipt of an HEA and SHEA and/or a fuel for heating allowance, as defined in subdivision (b) of this section if such payment is essential to continue or restore utility service.  Payment essential to continue or restore utility service may be provided to a recipient whose utility bill includes costs for service for the recipient's own residential unit and for space outside that unit.  Payment may only be granted when it is documented that the recipient/grantee is the tenant and customer of record, as defined in subdivision (a)

of this section and when alternative payment or housing accommodations cannot be made and the recipient is without liquid resources to continue or restore utility service. Payment must not exceed the cost of utilities provided to the recipient for the four most recently completed monthly billing periods or two most recently completed bi-monthly billing periods in which service was rendered within the 10 monthly or five bi-monthly most recently completed billing periods immediately preceding the date of request for such assistance. When the recipient's utility bill includes costs for service for the recipient's own residential unit and for space outside that unit, payment is limited to the recipient's proportionate share of the cost of service for the time frames outlined above. In a shared meter situation subject to the provisions of Section 52 of the Public Service Law, the proportionate share is to be determined by the utility company's apportionment of retroactive charges upon completion of a shared meter investigation and determination.  Payment must not exceed the balance due on the account and must be provided in accordance with the provisions of paragraphs (2), (3) and (4), (5), (6), and (7) of this subdivision.

2.  Payment must be provided as a non-recoupable grant when it is documented that during the period specified in paragraph (1) of this subdivision the recipient has fully applied the public assistance grant to purposes intended to be included in such grant. Such documentation for recipients must include proof of payment of: an amount at least equal to the combined Home Energy Allowance and Supplemental Home Energy Assistance (HEA and SHEA) budgeted in the public assistance grant to domestic (lights, cooking, hot water) energy costs; the monthly fuel for heating allowance budgeted in the public assistance grant to incurred heating costs; and the monthly shelter allowance budgeted in the public assistance grant to shelter costs.  In addition, there must be no other evidence of mismanagement.

3.  If such recipient is not eligible for a non-recoupable grant pursuant to paragraph (2) of this subdivision, or for other available non-recoupable grants including Home Energy Assistance Program benefits, payment must be provided as an advance allowance subject to recoupment in accordance with 18 NYCRR 352.11.

4.  Whenever a social services district makes an arrearage payment to continue or restore the utility service of a public assistance recipient, the district must also, prospectively for a period of six months or until the case is closed, whichever occurs first, act as a guarantor of the recipient's future utility bills or place the recipient on voucher payment. When the recipient is the customer of record for a utility bill which includes costs for service for the recipient's own residential unit and for space outside that unit, only the recipient's proportionate share of the bill is the prospective responsibility of the social services district.

5.  If the agency uses a voucher payment to meet the prospective responsibility for an FA recipient the agency must be able to document recipient mismanagement.  For the

ACF 000718

purposes of this subdivision, mismanagement is determined in accordance with the provisions outlined in paragraph (2) of this subdivision.  In such cases, amounts not to exceed the following are restricted from the recipient's grant:

    i. if the recipient's utility bill represents "heat only," the recipient's monthly fuel for heating allowance is removed from the recipient's monthly grant.  Heating costs paid by the district which exceed the amount removed from the recipient's grant are considered to be overpayments subject to recoupment in accordance with 18 NYCRR 352.31(d);

    ii. if the recipient's utility bill represents domestic costs only (lights, cooking, hot water), the recipient's Home Energy Allowance and Supplemental Home Energy Allowance (HEA and SHEA) or the average monthly cost of the recipient's domestic utility service, whichever is less, is removed from the recipient's grant. Domestic energy costs paid by the district which exceed the amount removed from the grant must be considered to be overpayments subject to recoupment in accordance with 18 NYCRR 352.31(d).

    iii. if the recipient's utility bill represents heat and domestic costs, a combination of the amounts outlined in subparagraphs (i) and (ii) of this paragraph is removed from the grant.  If the recipient's combined heat and domestic costs exceed the amounts removed from the recipient's grant, the balance must be considered an overpayment subject to recoupment in accordance with 18 NYCRR 352.31(d).

6. If the agency uses a vendor payment to meet the prospective responsibility for an SNA recipient, the agency may do so in accordance with 18 NYCRR 381.3(c)(2).

7. When a recipient has been placed on vendor payment, whereby the social services district pays the energy vendor directly, as a result of mismanagement by the recipient or for administrative ease, the district must at least annually, at case closing, and upon termination of the vendor payment arrangement, determine if there has been an under/overpayment. Identified underpayments/overpayments are to be reconciled in accordance with 18 NYCRR 352.31(d), (e), and/or (f).

(g)

1. For recipients with heating costs in excess of their annual allowance provided pursuant to the schedules set forth in this section, the district should explore the possibility of alternative housing (renters only) and/or weatherization/conservation services.

2. Recipients who retain responsibility for the payment of their own heating bills should be made aware of and encouraged to use budget billing programs offered by their heating vendors.

3. When the heating and/or domestic energy bill of a public assistance recipient/grantee has been placed on vendor payment as a result of a mismanagement determination, voluntary request, or administrative ease provision, the district must determine if there has been an under/overpayment.  This reconciliation must be conducted at least annually, at case closing, and upon termination of the vendor payment arrangement. Identified under/overpayments are to be reconciled in accordance with 18 NYCRR 352.31(d), (e), and/or (f).

(h) The social services official must designate a staff member to function as a liaison to energy vendors, other agencies, and to individuals seeking energy-related information and/or assistance.

22

(i)  The social services official must ensure that 24-hour/seven-day-a-week referral capability exists for receipt of referrals from energy vendors, outside agencies, and individuals with energy-related emergencies.  The official may either designate social services district staff to be available on a 24-hour, seven days a week basis or may choose to designate an agency/organization in the community which agrees to accept calls after normal business hours and on weekends and to assist a referred household in the temporary alleviation of a life-threatening energy emergency until the household can make application for financial assistance on the next normal business day.

## Miscellaneous Shelter Allowances and Grants

(a)

1.  A social services official must provide funds for household moving expenses utilizing the least costly practical method of transportation, a rent security deposit, and/or a brokers' or finders' fee only when, in his judgment, one of the following conditions exists:

    i.  the move is to a less expensive rental property and the amount paid for a security deposit and moving expenses is less than the amount of a two-year difference in rentals; or

    ii.  the move is necessitated by one of the following criteria:

        a.  the need to move results from a disaster/catastrophe and/or a vacate order placed against the premises by a health agency or code enforcement agency;

        b.  the move is necessitated by a serious medical or physical handicap condition. Such need must be verified by specific medical diagnosis;

        c.  the individual or family is rendered homeless as a result of having been put out by another occupant with whom they were sharing accommodations;

        d.  the move is from temporary to permanent housing;

        e.  the move is from permanent housing to temporary housing whenever necessary due to the unavailability of permanent housing;

        f.  the move is from one temporary accommodation to another temporary accommodation whenever necessary due to the unavailability of permanent housing;

        g.  the move is from an approved relocation site or to an approved cooperative apartment; or

        h.  there is a living situation which adversely affects the mental or physical health of the individual or family, and the need for alternate housing is urgent, and not issuing a security deposit, moving expenses and/or brokers' or finders' fees would prove detrimental to the health, safety and well-being of the individual or family.

2.  A security deposit and/or brokers' or finders' fees shall be provided only when an applicant or recipient is unable to obtain a suitable vacancy without payment of such allowances.

3.  Documentation of the need for a security deposit, moving expenses and/or brokers' or finders' fees shall be fully recorded in the case record.

23

(b) Avoidance of abuses in connection with rent security deposits.

1. Whenever a landlord requires that he be secured against nonpayment of rent or for damages as a condition to renting a housing accommodation to a recipient of public assistance, a local social services official may secure the landlord by either of the following means:

    i. by means of an appropriate agreement between the landlord and the social services official; or

    ii. by depositing money in an escrow account, not under the control of the landlord or landlord's agent, subject to the terms and conditions of an agreement between the landlord and the social services official in such form as the department may require or approve; provided, however, that the provisions of this subparagraph do not apply where a public assistance recipient resides in public housing.

2. A social services official may not pay money to a landlord to be held as a security deposit against the payment of rent or for damages by a public assistance recipient, or issue a grant to a recipient of public assistance therefor, except as provided in paragraph (3) of this subdivision.

3. When, in the judgment of a social services official, housing accommodations available in a particular area are insufficient to accommodate properly recipients of public assistance in need of housing, and in order to secure such housing, it is essential that the official pay money to landlords to be held as security deposits against the nonpayment of rent or for damages by public assistance recipients or to issue grants to recipients of public assistance therefor, such social services official may pay or furnish funds for such security deposits until sufficient housing accommodations are available in the particular area to accommodate properly recipients of public assistance in need of housing. Social services officials must not pay or furnish such funds where recipients of public assistance reside in public housing.  In no case will temporary residence in a shelter, including those defined in 18 NYCRR Parts 900 or 1000, a hotel/motel or any other such emergency or transitional residential facility be considered sufficient housing accommodations for purposes of this paragraph. Landlords receiving such security deposits must comply with the provisions of article seven of the General Obligations Law. The recipient is required to assign to the social services official any right the recipient may have to the return of the security deposit and interest accrued thereon. Any social services official paying or furnishing funds for a security deposit in accordance with this paragraph must make diligent efforts to recover such payments or funds from the landlord as allowed by law.  Such efforts must not delay recoupment or recovery from a recipient if recoupment or recovery from the recipient is required by this section.

(c) Recovery of rent security payments.

1. If as a result of nonpayment of the shelter allowance, the security deposit or security agreement for nonpayment of rent is required to be paid to the landlord, such payment must be considered to be an overpayment made to the recipient and as such, must be recovered according to the provisions of 18 NYCRR 352.31(d).  If rent has not been paid due to a legitimate landlord/tenant dispute, a rent strike or as a result of the application of Section 143-b of the Social Services Law, such payment is not an overpayment and cannot be recouped or recovered.

2. When a security deposit or monies under a security agreement are paid to a landlord for damages caused by a recipient, such payment must be considered an overpayment and

24

must be recovered from a recipient pursuant to the provisions of 18 NYCRR 352.31(d) provided that a social services official has conducted (or arranged for) a pre-tenancy and post-tenancy inspection or survey of the premises, or verified by some other means that the damages were caused by the recipient.  The condition of the premises when the recipient moves and when the recipient moves out must be documented and agreed to by signature of the landlord and the recipient. If the verification does not confirm that there are damages caused by the recipient, then cash must not be issued under a security agreement or, if a cash security deposit had been issued and the landlord retains it for alleged damages, the social services official must attempt to recover the deposit from the landlord. When the verification confirms that the recipient caused the damages, the district must recover the deposit amount from the recipient.

(d) When nonpayment of the shelter allowance or client-caused damages as confirmed by a pre-tenancy inspection and post-tenancy inspection or survey conducted (or arranged for) by the social services district or by some other means of verifying that the damages were caused by the recipient pursuant to paragraph (c)(2) of this section necessitates the authorization of finders' or brokers' fees, or household moving expenses, such payments must be considered to be overpayment made to the recipient and as such, must be recovered according to the provisions of 18 NYCRR 352.31(d).  If rent has not been paid due to a legitimate landlord/tenant dispute, a rent strike or as a result of the application of Section 143-b of the Social Services Law, such payments are not overpayments and cannot be recouped or recovered.

(e) Unless prohibited by State or Federal law or regulation, an allowance for expenses, not otherwise authorized under this Title, for the repair, maintenance or retention of housing occupied by, but not owned by, a recipient of public assistance must be paid when necessary for the health and safety of the recipient and his or her family, when other appropriate housing is not available and when the payment is necessary to permit the recipient and his or her family to remain in the housing.  An allowance for expenses for repair and maintenance must be paid only when the owner of the housing is not obligated to provide the repair or maintenance.  An allowance under this subdivision does not include payments for utility deposits for gas and electricity, payments covered under subdivision (b) of this section, payments for rent, property taxes or mortgage arrears and payments for litigation costs of any kind, including attorney's fees.

(f) An allowance for storage of furniture and personal belongings must be made when it is essential, for circumstances such as relocation, eviction or temporary shelter, so long as eligibility for public assistance continues and so long as the circumstances necessitating the storage continue to exist, and no other storage options exist.

1. Furniture to be stored must not exceed the rooms and items in schedule SA-4a of 18 NYCRR 352.7(a)(2). Furniture to be stored cannot exceed the amount needed for the household size.

2. Personal belongings to be stored cannot exceed the amount needed for the household size and should be reasonable in number and total volume. For the purpose of storage, personal belongings are those items not found in schedule SA-4a of 18 NYCRR 352.7(a)(2), such as:

   i. legal and identification documents;

   ii. kitchen items, such as tables and chairs, cookware, appliances, dishware, glassware and utensils;

   iii. bedding and towels;

25

    iv.  clothing of the household members;

    v.  washing machine and dryer;

    vi.  assistive medical devices;

    vii.  items needed for employment, excluding business inventory except as otherwise provided for in 18 NYCRR 352.12(a)(2);

    viii.  household electronic devices;

    ix.  items needed for educational purposes; and

    x.  personal keepsakes, including children's toys, highchairs, and changing tables.

3.  Such allowance is limited to the furniture and personal belongings, as provided for in paragraphs (1) and (2) of this subdivision, in the household's possession at the time the circumstance necessitating the storage occurred.

## Allowances and Grants for Other Items of Need.

(a) Furnishings.

1.  If provision therefor cannot otherwise be made, each social services district shall provide for the purchase of necessary and essential furniture, furnishings, equipment and supplies required for the establishment of a home for persons in need of public assistance. For purposes of this subdivision, such an allowance shall be provided only when, in the judgment of the social services official, one of the following conditions exists:

    i.  An individual or family temporarily housed in a hotel, motel, homeless shelter, residential program for victims of domestic violence or other temporary accommodation to which the individual or family has been referred by the social services district is being permanently rehoused in unfurnished housing accommodations, and suitable furnished accommodations are not available.

    ii.  An unattached individual, whose needs cannot otherwise be met under 18 NYCRR Part 397, is discharged from an institution, is determined to be capable of maintaining an apartment in the community, and suitable furnished accommodations are not available.

    iii.  An adult, whose needs cannot otherwise be met under 18 NYCRR Part 397, is discharged from an institution and wishes to rejoin his family, which is in need of additional furniture to provide adequate shelter for him.

    iv.  A child is returned to his parents, who are in need of additional furniture to provide adequate shelter for him.

    v.  An individual's or family's living situation adversely affects the physical and mental health of that individual or family, and it is essential that the individual or family be rehoused in unfurnished housing accommodations in order to safeguard his or their health, safety and well-being.

2.  An allowance provided under paragraph (1) of this subdivision may not exceed the amounts authorized for the appropriate rooms and items in the following schedule:

26

### SCHEDULE SA-4a - INITIAL OR REPLACEMENT COST OF ESSENTIAL HOUSEHOLD FURNITURE, FURNISHINGS, EQUIPMENT AND SUPPLIES

| Room Description | Cost |
|---|---|
| **Living room:** | $182 |
| **Bedroom** | |
| with a single bed: | $145 |
| with two single beds: | $205 |
| with double bed: | $184 |
| **Kitchen (excluding appliances):** | $142 (plus $12 for each additional person) |
| Range: | $182 |
| Refrigerator: | $182 (or $258 for four or more persons) |
| **Bathroom:** | $6 (plus $4 for each additional person) |
| **Other equipment** | |
| Cabinet for linens: | $22 |
| Stove for heating: | $72 (or $82 for five or more persons) |

3.  Documentation of the need for such furniture must be fully recorded in each case record.

(b) Equipment repairs.

Each social services district must provide for the essential repair of heating equipment, cooking stoves and refrigerators used by persons in need of public assistance in their homes, provided provision therefor cannot otherwise be made except that replacement may be authorized when less expensive than repair. Such allowances for cooking stoves and refrigerators cannot exceed the amounts authorized under schedule SA-4a.

(c) Additional cost of meals.

Each social services district must provide for the additional costs of meals for persons unable to prepare meals at home or who do not otherwise receive meals in their residences in accordance with the following schedule:

### SCHEDULE SA-5 - RESTAURANT ALLOWANCE SCHEDULE

Monthly allowances to be added to appropriate monthly grants and allowances for combinations of restaurant meals and meals prepared at home or meals otherwise provided in the residence, including sales tax.

| Meal Type | Allowance |
|---|---|
| Dinner in a restaurant | $29.00 |
| Lunch and dinner in a restaurant | $47.00 |
| All meals in a restaurant | $64.00 |

ACF 000724

Additional special restaurant allowance as described below:

Effective November 1, 1986, a special monthly restaurant allowance of an additional $36 must be granted to any pregnant woman or person under 18 years of age, or any person under 19 years of age who is a full-time student regularly attending a secondary school or in the equivalent level of vocational or technical training if, before such person attains age 19, such person may reasonably be expected to complete the program of such secondary school or training.

## HOME DELIVERED MEALS

Monthly allowances to be added to appropriate monthly grants and allowances.

| Extra Allowance | $36.00 |
|---|---|

(d) Replacement of clothing or furniture.

Each social services district shall provide for partial or total replacement of clothing or furniture which has been lost in a fire, flood or other like catastrophe, provided such needs cannot otherwise be met through assistance from relatives or friends or from other agencies or other resources. Such allowances shall not exceed the amounts authorized under schedules SA-4a and SA-4b.

## SCHEDULE SA-4b – REPLACEMENT COST OF CLOTHING

| Age | Allowance |
|---|---|
| Birth through 5 years | $48.00 |
| 6 through 11 years | $73.00 |
| 12 through adult | $89.00 |

*(e)-(f) Reserved*

(g)  Payment for services and supplies already received.

Assistance grants shall be made to meet only current needs. Under the following specified circumstances payment for services or supplies already received is deemed a current need:

1.  Replacement of lost or stolen checks.

    i.  If an applicant or recipient reports to a local social services official that a check has been lost or stolen, an affidavit of loss must be required of the recipient, and payment of the check must be stopped. If the recipient has not already done so, he shall be required by the local social services official to report the loss or theft to the police, to obtain from them the blotter entry number, or classification number, or file number or other available evidence of the reporting, and to furnish such evidence to the local social services official. When satisfied that such police report has been made, the local social services official shall issue a replacement check to the recipient, on which there shall appear above the place for the recipient's signature, the following: "By endorsing or cashing this check I acknowledge that this is a replacement for a check, number __ dated __ drawn to my order on __ which was lost/stolen; that I have not received the proceeds of said check directly or indirectly;

28

and that I have been informed it is illegal for me to cash said check, and if I do so, I am liable to prosecution."

    ii.  If payment is not stopped on the original check and it and the replacement check are both cashed, only one shall be subject to State reimbursement, and the social services district shall limit its claim for State reimbursement to one of the two checks.

    iii.  If it is established that a recipient endorsed and cashed an allegedly lost or stolen check which has been replaced, the amount of such check shall be recovered from the recipient as provided for by the provisions of the regulations of this department.

2.  Replacement of electronic benefits.

When a recipient claims that he or she has not received electronic cash public assistance benefits which the department's computer issuance record indicates were issued, the social services district must verify the validity of the computer issuance record in accordance with procedures established by the department.  If it is verified that a valid issuance transaction occurred, the benefits cannot be replaced.  If it is determined that a valid issuance transaction did not occur, the benefits must be restored in accordance with 18 NYCRR 352.31(f).

In accordance with Social Services Law § 152-D, Public Assistance recipients shall receive replacement assistance for the loss of benefits in instances when such assistance has been stolen as a result of card skimming, cloning, third party misrepresentation or other similar fraudulent activities. Replacement of benefits will occur after the local social services district has verified the public assistance was stolen in accordance with procedures established by the department. Replacement benefits will include the lesser of the amount of the public assistance stolen or the amount of public assistance equal to two months of the monthly allotment of the household prior to the date upon which the public assistance was stolen. Replacement assistance provided in accordance with this section is exempt from recoupment and recovery provisions provided that it is not later determined that benefits were not stolen as a result of card skimming, cloning, third party misrepresentation or other similar fraudulent activities.

3.  A grant may be made to pay for rent, property taxes or mortgage arrears for the time prior to the month in which the public assistance case was opened or for applicants for emergency assistance under 18 NYCRR Parts 370 and 372.  Shelter arrears payments authorized for applicants under this paragraph are limited to a total period of six months once every five years unless the district determines at its discretion that additional shelter arrears payments are necessary based on the individual case circumstances.  Such payments may be made only when:

    i.  such payment is essential to forestall eviction or foreclosure and no other shelter accommodations are available; or

    ii.  the health and safety of the applicant is severely threatened by failure to make such payment; and

    iii.  the authorization for the payment receives special written approval by the social services official or such other administrative officer as he or she may designate, provided such person is higher in authority than the supervisor who regularly approves authorization;

    iv.  the applicant reasonably demonstrates an ability to pay shelter expenses, including any amounts in excess of the appropriate local agency maximum monthly shelter

ACF 000726

allowance, in the future.  However, when in the judgment of the local social services official, the individual or family has sufficient income or resources to secure and maintain alternate permanent housing, shelter arrears need not be paid to maintain a specific housing accommodation;

v.  such payment does not exceed the local agency maximum monthly shelter allowance.  A district may, consistent with subparagraph (iv) of this paragraph, issue a grant for arrears in excess of the maximum monthly shelter allowance. However, any amount above the local agency maximum monthly shelter allowance paid towards the monthly arrears is an overpayment subject to recovery and recoupment in accordance with 18 NYCRR 352.31;

vi.  the applicant, if accepted for on-going public assistance, agrees to future restriction of shelter payments in accordance with 18 NYCRR Part 381; and

vii.  in the case of an applicant who is not eligible for Safety Net Assistance, Family Assistance, Emergency Assistance to Families, or Emergency Assistance to Adults, such applicant is without income or resources immediately available to meet an emergency need, such applicant's gross household income at the time of application does not exceed 125 percent of the Federal income official poverty level as defined and annually revised by the United States Department of Health and Human Services under the authority of 42 U.S.C. 9902(2), and such applicant signs an agreement to repay the assistance in a period not to exceed 12 months from receipt of such assistance.  The repayment agreement must set forth a schedule of payments that will assure repayment within the 12-month period, and must specify the frequency of the payments, the due date of the first payment, the address where payments must be made and the consequences of failing to repay the assistance as agreed.  Subsequent assistance to pay arrears may not be granted unless there are not past-due amounts owed under any such repayment agreement.  The social services district, in addition to any rights it has pursuant to the Social Services Law, may enforce the repayment agreement in any manner available to a creditor.

4.  A recipient of public assistance who is threatened with eviction or foreclosure or who is being evicted or whose property is being foreclosed upon for nonpayment of rent, mortgage or taxes incurred during a period for which a grant had been previously issued to the recipient may be provided with an advance allowance for rent, mortgage principal and interest payments or taxes in accordance with 18 NYCRR 352.11.  Shelter arrears payments, including advance allowance payments, authorized under this paragraph are limited to a total period of six months once every five years unless the district determines at its discretion that additional shelter arrears payments are necessary based on the individual case circumstances.  Advance investigation of the need for restricted payments must be conducted in accordance with 18 NYCRR Part 381.  An allowance for rent, mortgage principal and interest payments or taxes which exceeds the appropriate local agency maximum monthly shelter allowance can be made only if all of the following conditions are met:

i.  notwithstanding 18 NYCRR 352.23(b), the recipient agrees to use all available liquid resources for the payment of shelter expenses necessary to prevent eviction or foreclosure;

ii.  the recipient demonstrates an ability to pay shelter expenses in the future, including any amounts in excess of the appropriate local agency maximum monthly shelter allowance;

30

    iii.  the recipient agrees to future restriction of rent or mortgage payments; and

    iv.  the recipient has not previously received an allowance in excess of the appropriate local agency maximum shelter allowance pursuant to this paragraph and, subsequent to receiving such allowance, requested discontinuation of restriction of the shelter payments to which he or she agreed pursuant to this paragraph.

(h) Chattel mortgages or conditional sales contracts.

If the furniture or household equipment of an applicant, who has not been a recipient of public assistance within the previous six months preceding his application, is essential to making his living accommodations habitable but are presently encumbered by a chattel mortgage or a conditional sales contract, every effort shall be made to defer, cancel or reduce payments on such chattel mortgage or conditional sales contract. If all such efforts fail, an allowance may be made for a compromise settlement of such payments or, if a compromise cannot be reached, for other essential payments; provided, however, that the compromise settlement or allowances must not exceed the cost of replacement.

(i) Camp fees.

When funds cannot be obtained from other sources, camp fees may be paid for children receiving FA and SNA not in excess of total cost of $400 per child per annum, in amounts not to exceed $200 per week.

(j) *[Reserved]*

(k) Additional needs because of pregnancy.

A monthly allowance of $50 must be added to the appropriate monthly grant and allowance of a needy pregnant woman beginning with the fourth month of pregnancy or the month in which medical verification of the pregnancy is presented to the district, whichever is later.

(l) *[Reserved]*

(m) Supplemental payments.

The social services official must provide a monthly allowance to supplement the income of an FA, SNA or VA household when the household experiences a net loss of cash income due to the acceptance of employment by a participant who is a member of the household, when such acceptance is required by the social services district.  A net loss of cash income occurs when the monthly gross income of the household, subtracting necessary actual work-related expenses, is less than the cash assistance the household received in the month in which the offer of employment was made.  The supplement must equal the monthly net loss of cash income that would occur if the supplement were not paid to the household.

1. Gross income includes, but is not limited to, earnings, unearned income and cash assistance.

2. Cash assistance means the budget deficit as defined in 18 NYCRR 352.29.

3. Necessary actual work-related expenses are the actual, verifiable and unreimbursed expenses directly related to maintaining employment.

    i.  Such expenses include, but are not limited to:

        a.  mandatory payroll deductions such as Federal, State and local taxes, social security taxes, disability insurance and union dues;

        b.  tools, materials, uniforms and other special clothing required for the job;

ACF 000728

    c.   mandatory fees for licenses or permits fixed by law;

    d.   deductions for medical insurance coverage;

    e.   childcare up to the local market rate; and

    f.   transportation, including the cost of transporting children to and from day care, except that the amount for use of a motor vehicle must be computed on a mileage basis at the same rate paid to employees of the social services district and must only be allowed when public transportation is not available.

  ii.  Such expenses do not include:

    a.   meals;

    b.   business-related depreciation;

    c.   personal business and entertainment expenses;

    d.   personal (not work-related) transportation;

    e.   purchase of capital equipment; and

    f.   payments of the principal of loans.

(n) Burials.

Allowances shall be made for burial of applicants for and recipients of public assistance in accordance with Section 141 of the Social Services Law.

(o) Removals.

Allowances must be made to applicants for or recipients of public assistance who are removed to another state or country in accordance with this section.  Such allowances can only be made for the reasonable and necessary expenses of such removals, as authorized by the following:

1.  Conditions for removals. A social services official shall authorize removal of a person to another state or foreign country only when the official has determined that:

  i.  the person belongs in the other state or foreign country, based upon settlement, residence or otherwise, or relatives or friends have given assurances that they will support the person, in whole or in part; and

  ii.  the welfare of the person to be removed and the interest of the State will be promoted by the removal.

2.  Costs of removal. Costs of removing persons from this State to another state or another country are reimbursable at 50 percent for reasonable and necessary expenditures for:

  i.   meals enroute;

  ii.   transfer of baggage;

  iii.   transportation by such means as circumstances warrant; and

  iv.   other reasonable and necessary expenses, including meals and lodging, and transportation costs of an attendant, including the attendant's meals and lodging but excluding charges for the attendant's time or services.

ACF 000729

OMB Control No: 0970-0114

Expiration date: 03/31/2027

THE PAPERWORK REDUCTION ACT OF 1995 (Pub. L. 104–13)

The purpose of this information collection is the application for CCDF funds and provides ACF and the public with a description of, and assurance about, the States' and Territories' child care programs. Public reporting burden for this collection of information is estimated to average 150 hours per response, including the time for reviewing instructions, gathering, and maintaining the data needed, and completing the form. This is a mandatory collection of information (Pub. L. 113–186), and 42 U.S.C. 9858.

An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information subject to the requirements of the Paperwork Reduction Act of 1995, unless it displays a currently valid OMB control number. The OMB # is 0970-0114 and the expiration date is 03/31/2027. If you have any comments on this collection of information, please contact ACF's Office of Child Care.



**Appendix 1: Lead Agency Implementation Plan**
**for**
**State/Territory New York**

**FFY 2025 – 2027**

**Version: Initial Plan**

**Plan Status:  Approved as of 2024-11-09 00:31:17 GMT**

For each non-compliance, Lead Agencies must describe the following:

- Action Steps: List the action steps needed to correct the finding (e.g., update policy manual, legislative approval, IT system changes, etc.). For each action step list the:
  o   Expected Completion Date: List the expected completion date for the action step.
- Overall Target Date for Compliance: List date Lead Agency anticipates completing implementation, achieving full compliance with all aspects of the findings. (Note: Compliance will not be determined until the FFY 2025-2027 CCDF Plan is amended and approved).

EQUAL ACCESS:AFFORDABILITY

Reason(s) for non-compliance:

• The Lead Agency does not limit all family co-payments to seven percent or less of family income, as required by 98.45(l)(3). Specifically, the lead agency is non-compliant because though co-payments for the lowest income families participating in CCDF are relatively negligible they do exceed 7% in some cases. (Plan Question 3.1.1a). Please note the Lead Agency has an approved waiver for this requirement through August 1, 2026.

• The Lead Agency does not provide data on the extent to which CCDF providers charge families additional amounts above the required co-payment (including data on the size and frequency of such amounts), as required by 98.45(b)(5). (Plan Question 3.1.2eii)

Overall Target Completion Date: 08/01/2026

| Action Step Number | Action Step Description | Target Completion Date |
|---|---|---|
| 1 | Co-payments: OCFS to set the family share (co-payment) at 1% of income exceeding the federal poverty level (FPL) for all families who are required to pay a family share.  Effective 10/01/23, local social services districts (districts) can no longer select the percentage a family must pay toward the cost of child care assistance. This ensures consistency for families throughout New York State, in addition to lowering costs for families. This 1% family share cap means that the vast majority of families will pay no more than 0.7% of their income towards the cost of child care, significantly lower than the required 7% cap. | 10/01/2023 |
| 2 | Co-payments: OCFS to collaborate with local departments of social services commissioners, and other relevant stakeholders in order to discuss the potential impacts of this provision. | 06/02/2025 |
| 3 | Co-payments: OCFS to draft, approve and file regulatory amendments to ensure that OCFS limits all family co-payments to seven percent or less of family income. | 06/02/2025 |

ACF 000731

| 4 | Co-payments: OCFS to draft, approve and issue policy updates related to the revised co-payment practices. | 06/02/2025 |
|---|---|---|
| 5 | Co-payments: OCFS to update computer systems to change the family share calculation requirements and process. | 06/02/2025 |
| 6 | Co-payments: OCFS to develop and update training materials related to the revised co-payment practice. | 06/02/2025 |
| 7 | Co-payments: OCFS to limit all family co-payments to seven percent or less of family income, as required by 98.45(l)(3). | 06/02/2025 |
| 8 | Data on provider charges above the co-payment: OCFS reviewed the plan question (3.1.2.e.ii) and after further review, proposed that if content is added to the answer, this could meet this non compliance | 12/12/2024 |
| 9 | Data on provider charges above the co-payment: OCFS drafted the proposed changes, which were submitted to OCC, and  discussed the plan with them on 12/20/24 | 12/20/2024 |
| 10 | Data on provider charges above the co-payment: OCFS to submit amendment, for plan question 3.1.2.e.ii)  to include the size of the additional amounts charged, as per the MRS. | 04/30/2025 |

HEALTH AND SAFETY:POSTING INSPECTION REPORTS

Reason(s) for non-compliance:


• The Lead Agency does not post full monitoring and inspection reports that include all areas of compliance and non-compliance for all licensed centers, license-exempt family child care (including group homes) and license-exempt in-home providers, as required by 98.33(a)(4). (Plan Question 5.5.4a). Please note the Lead Agency has an approved waiver for portions of this requirement through August 1, 2026.

ACF 000732

**Overall Target Completion Date: 08/01/2026**

| Action Step Number | Action Step Description | Target Completion Date |
|---|---|---|
| 1 | OCFS to develop capacity to display  full inspection results    for LE programs. | 01/31/2025 |
| 2 | OCFS to submit a draft proposal to OCC for review. | 01/31/2025 |
| 3 | OCFS to implement procedures to upload PDF versions of inspections for LE child care providers into the existing computer system of record, the Child Care Facility System (CCFS). | 03/31/2025 |
| 4 | OCFS to draft, approve and issue policy updates and communication to LE providers related to displaying inspections for LE child care providers. | 06/30/2025 |
| 5 | OCFS to update and develop training materials related to the display of inspections  for LE child care providers. | 06/30/2025 |
| 6 | OCFS to initiate uploading inspection reports   for LE child care providers. | 08/30/2025 |
| 7 | OCFS to post full inspection reports for legally exempt (LE) informal child care providers (in-home child care and family child care), and LE group programs on the OCFS web site as per 98.33a. | 08/01/2026 |

EQUAL ACCESS:PAYMENT PRACTICES

Reason(s) for non-compliance:

• The Lead Agency does not pay all provider types prospectively or alternatively does not demonstrate that it is not a generally-accepted practice for all provider types, as required by 98.45(m)(1). (Plan Question 4.4.1a). Please note the Lead Agency has an approved waiver for this requirement through August 1, 2026.
• The Lead Agency does not pay based on enrollment or alternatively does not provide justification that this is impracticable or is not a generally-accepted practice, as required by 98.45(m)(2). (Plan Question 4.4.1b). Please note the Lead Agency has an approved waiver for this requirement through August 1, 2026.

ACF 000733

Overall Target Completion Date: 08/01/2026

| Action Step Number | Action Step Description | Target Completion Date |
|---|---|---|
| 1 | Prospective Payment: OCFS to collaborate with local departments of social services commissioners, and other relevant stakeholders in order to discuss the potential impacts of this provision.<br><br>OCFS to collaborate with NYC to identify and address any barriers to this provision specific to NYC. NYC may need to make changes to the City Charter to accommodate paying prospectively. This change will need to take place over multiple budget cycles, which requires legislative and executive approvals. | 03/31/2025 |
| 2 | Prospective Payment: OCFS to draft, approve and propose changes to statute to require that child care providers are paid prospectively. Statutory changes must be passed by the NYS Legislature and signed by the Governor.<br>OCFS to draft, approve and file regulatory amendments to require prospective payments.<br><br>OCFS to draft, approve and issue policy updates related to prospective payments. | 04/30/2026 |
| 3 | Prospective Payment: OCFS to ensure that there is adequate funding to address the shift of costs to LDSSs. | 01/30/2026 |
| 4 | Prospective Payment: OCFS to update computer systems to process payments prospectively.<br>OCFS to update and develop training materials related to prospective payments. | 07/31/2026 |
| 5 | Prospective Payment: OCFS to pay all provider types prospectively or alternatively demonstrate that it is not a generally-accepted practice for all provider types, as required by 98.45(m)(1). | 07/30/2026 |
| 6 | Payments Based on Enrollment: OCFS to collaborate with local departments of social | 03/31/2025 |

ACF 000734

| | | |
|---|---|---|
| | services commissioners, and other relevant stakeholders in order to discuss the potential impacts of this provision. | |
| 7 | Payments Based on Enrollment: OCFS to draft, approve and propose changes to statute to allow the CCAP to pay providers based on enrollment. Statutory changes must be passed by the NYS Legislature and signed by the Governor. | 06/30/2025 |
| 8 | Payments Based on Enrollment: OCFS to draft, approve and file regulatory amendments to require payments based on enrollment. OCFS to draft, approve and issue policy updates related to requiring payments based on enrollment. | 04/30/2026 |
| 9 | Payments Based on Enrollment: OCFS to update computer systems to process payments based on enrollment.  OCFS to update and develop training materials related to payments based on enrollment. | 08/31/2026 |
| 10 | Payments Based on Enrollment: OCFS to pay based on enrollment or alternatively provide justification that this is impracticable or is not a generally-accepted practice, as required by 98.45(m)(2). | 08/31/2026 |

PROGRAM INTEGRITY:EFFECTIVE FISCAL MANAGEMENT PRACTICES

Reason(s) for non-compliance:

• The Lead Agency is on a corrective action plan (CAP) for an error rate over 10% reflecting that not all of its fiscal management and internal control practices are sufficiently effective, as required by 98.68(a). (Plan Questions 10.1.2, 10.1.3, 10.1.4, 10.1.5a, and 10.1.6a)

Overall Target Completion Date: 08/01/2026

| Action Step Number | Action Step Description | Target Completion Date |
|---|---|---|

ACF 000735

| 1 | OCFS to conduct case file reviews annually. | 03/31/2025 |
|---|---|---|
| 2 | OCFS to gather information during annual site visits and assess district barriers. | 03/31/2025 |
| 3 | OCFS to review district settings in CCTA for districts that use CCTA. | 06/30/2025 |
| 4 | OCFS to formulate and administer income calculation and family share work sheet for districts to follow. | 12/31/2025 |
| 5 | OCFS to conduct quarterly examiner calls to provide clarification and regulation and policy support. | 03/31/2026 |
| 6 | OCFS to host bi-annual meetings with districts where review of policy and expectations will occur. | 03/31/2026 |
| 7 | OCFS to encourage districts to review training calendar and engage in relevant training, to aid with this, OCFS will disseminate a training newsletter. Staff attendance at trainings will be reviewed and discussed during site visits | 03/31/2026 |
| 8 | OCFS to evaluate the potential of development of additional income calculation tools for districts to utilize. | 03/31/2026 |
| 9 | OCFS to reduce the error rate to below 10% reflecting that its fiscal management and internal control practices are sufficiently effective, as required by 98.68(a). | 07/30/2026 |

ACF 000736

# DOCUMENT PRODUCED IN

# NATIVE FORMAT:

# YouTube Video

"I Investigated Minnesota's Billion Dollar Fraud Scandal," video by Nick Shirley, uploaded to YouTube.com on December 26, 2025, available at https://youtu.be/r8AulCA1aOQ?si=RLDksGI-F1KjmgNd.

ACF 000737