

# OFFICE OF THE ATTORNEY GENERAL
## STATE OF ILLINOIS

## KWAME RAOUL
ATTORNEY GENERAL

June 1, 2026

Honorable Vernon S. Broderick
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: *New York v. Administration for Children and Families, Case No. 26-cv-00172*

Dear Judge Broderick,

I write on behalf of all Parties to provide a joint letter regarding discovery, pursuant to the Court's Individual Practice Rule 3. As described in Parties' previous joint status report (ECF No. 89), following a search for additional documents to add to the administrative record, on May 11 Defendants produced one document, consisting of a chain of ten emails, as well as a privilege log.[1] On May 13, Plaintiffs sent Defendants a letter challenging the claimed privileges, to which Defendants provided a responsive letter on May 21. The Parties conferred via videoconference regarding the disputed claims of privilege on May 15 and 26; however, the Parties were unable to resolve their disagreement and have reached an impasse.

The Parties jointly request an enlargement of pages from five, per the Court's Individual Practice Rules, to seven.

## Plaintiffs' Position

Plaintiffs seek a court order deeming Defendants' claims of privilege over the Email Chain inappropriate and compelling disclosure of a copy of the Email Chain that contains redactions *only* for email addresses and cell phone numbers.[2] Plaintiffs believe the court's intervention is appropriate at this time, notwithstanding further pending discovery in this matter, as this dispute concerns Defendants assertions of privilege concerning the certified Administrative Record, and Plaintiffs believe that it is important to deal with the assertions of privilege to *this* document in a timely fashion, both as it may lead to additional discoverable evidence and also that the court's

---

[1] Defendants produced ACF_000738-741 (the "Email Chain", attached as Exhibit 1) with redactions, and a privilege log characterizing the substantively redacted portions (attached as Exhibit 2).

[2] Plaintiffs do not challenge the redaction of government officials' contact information and are negotiating an agreement to protect such information against unwarranted disclosure.

500 SOUTH SECOND STREET, SPRINGFIELD, ILLINOIS 62706 • (217) 782-1090 • TTY: (217) 785 -2771 • FAX: (217) 782-7046
115 SOUTH LASALLE STREET, CHICAGO, ILLINOIS 60603 • (312) 814-3000 • TTY: (312) 814-3374 • FAX: (312) 814-3806
1001 EAST MAIN, CARBONDALE, ILLINOIS 62901 • (618) 529-6400 • TTY: (618) 529-6403 • FAX: (618) 529-6416

guidance here could provide guidance that may obviate the need for future motion practice on privilege issues should the court provide appropriate guidance.

The Email Chain primarily consists of a series of January 5 emails between Defendant Alex Adams, Assistant Secretary for Family Support at the Department of Health and Human Services (HHS), and Anne DeCesaro, Associate Director at the Office of Management and Budget (OMB) for Education, Income Maintenance and Labor. Defendants have asserted that all substantive redactions are subject to both the deliberative process and work product privileges, except for emails from Anne DeCesaro on January 5, 2026, at 11:25 AM (ACF 000740) and 12:58 PM (ACF 000739), for which Defendants assert only deliberative process privilege.

*Work Product Privilege*

Defendants have made contradictory claims of work product privilege. First, they state in their privilege log (attached as Exhibit 2) that the redacted emails contain "the mental impressions, conclusions, and opinions of attorneys from the Department of Health and Human Services," but only assert the privilege as to non-attorney communications.[3] Defendants suggest, quoting *United States v. Nobles*, 422 U.S. 225, 238–39 (1975), that these non-attorney communications were "material prepared by agents for the attorney" but the redacted conversation is between two non-attorney senior appointees of different federal agencies. Defendants, further, do not assert that the conversation was conveying legal advice or impressions of an attorney, at best indicating that the emails were about draft language in letters generated under the ordinary course of agency business. Just because agency counsel allegedly took part in the drafting of these letters does not make Adam's and DeCastro's conversations about the agency action work product.

Defendants have not carried their "burden of establishing" that these materials are work product. *Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 93 (S.D.N.Y. 2019) (internal quotations omitted). While the Email Chain is clear that Adams and DeCastro are discussing their joint strategy concerning the ACF Freeze, there are no attached drafts of the letters, nor any other indicia that they are discussing the content of the letters themselves or other advice of counsel. Defendants have not sufficiently explained why these non-attorneys' communications should be afforded work product privilege, which is a privilege "designed to shield mental impressions, conclusions, opinions or theories concerning the litigation." *N.Y. Times Co. v. United States DOJ*, 939 F.3d 479, 493-94 (2d Cir. 2019) (cleaned up).

Furthermore, an assertion of work product is appropriate only where the document at issue was prepared "in anticipation of litigation." *Pilkington N. Am., Inc. v. Mitsui Sumimoto Ins. Co. of Am.*, 341 F.R.D. 10, 13 (S.D.N.Y. 2022). Documents that are "prepared in the ordinary course of business, or that would have been created whether or not litigation was anticipated, are not protected by work-product immunity." *Gen. Elec. Co. v. L3Harris Techs., Inc.*, No. 23-CV-10736 (VSB) (VF), 2024 WL 4825995, at *4 (S.D.N.Y. Nov. 19, 2024). A party's "consider[ation of] the possibility of litigation . . . is insufficient to trigger the protection of the work product doctrine[.]" *Id*. (citing *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 75 (S.D.N.Y. 2010)). The unredacted

---

[3] While one email in the chain appears to include, via carbon copy, an HHS attorney, the mere fact an attorney received the email does not turn the document into work product.

portions of the Email Chain, titled an "Update" on the ACF programs, appear to show coordination of Defendants' *implementation* of their decision to freeze funding, with discussion of how to handle the fallout of such a decision among the press and members of Congress. Such implementation documents "would have been created in essentially similar form irrespective of" whether litigation over the freeze was anticipated, and thus the communications on the Email Chain are not protected by work-product immunity. *Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015) (quoting *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998)).

Defendants suggest that litigation regarding Defendants' action was more than a mere possibility because—again, according to Defendants—Plaintiff States have successfully sued to enjoin other illegal agency action involving funding freezes. But just because Defendants have been sued before, does not make every action they undertake and every one of their communications to be "in anticipation" of litigation. These communications clearly fail the "but-for" test set out by the Second Circuit in *Adlman* and *Schaeffler*.

*Deliberative Process Privilege.*

Nor can the communications in the Email Chain be shielded by the deliberative process privilege.[4] By Defendants' own characterization, these emails relate to the issue of the "approach to decision regarding drawdown restrictions," Exbibit 2, which is clearly a question of implementation, rather than the agency's decision *to* restrict funds.

The decision to freeze Plaintiff States' funds was made prior to the Email Chain. Senior HHS officials publicly announced the ACF Freeze as early as December 31, 2025, and the President himself announced on January 4, 2025, that childcare funds would be frozen. The unredacted text of the Email Chain is consistent, as the parties to the emails are discussing an "Update on Child Care and SSBG," clearly *post-dating* prior deliberations and concerned with messaging after the fact. These are issues of implementation not the sort of "give-and-take of the consultative process" that deliberative emails would contain. *Brennan Ctr. for Justice at N.Y.U. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 202 (2d Cir. 2012). This appears to be merely "deliberations over how to spin a prior decision" not afforded the protection of the deliberative process privilege. *Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't*, 486 F. Supp. 3d 669, 701 (S.D.N.Y. 2020).

Second, the core of this case involves Defendants' intent in singling-out Plaintiff States for an unjustified freeze in childcare funding. Deliberative process privilege is not available here, where the Court has already deemed it appropriate for Plaintiffs to explore Defendants' arbitrary political animus in discovery. ECF 80 at 44; *see also In re Subpoena Duces Tecum Served on the Off. of the Comptroller of the Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998); *New York v.*

---

[4] Defendants acknowledge that they have yet to produce an affidavit invoking the deliberative process privilege with a formal and particularized claim from the appropriate department head and have not given Plaintiffs a timeline for doing so. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.,* 274 F.R.D. 106, 110 (S.D.N.Y. 2011).

*Mayorkas*, No. 20-CV-1127 (JMF), 2021 WL 2850631, at *11 (S.D.N.Y. July 8, 2021). Plaintiffs have a substantial need of the redacted materials to probe this animus and the influence it had on Defendants' actions.

For these reasons, Plaintiffs request the Court direct Defendants to re-produce the Email Chain without redactions (other than redactions for government officials' contact information) *or* in the alternative, provide an unredacted copy of the Email Chain to the Court for *in camera* review.

## **Defendants' Position**

As a threshold matter, the Government believes that it is premature and inefficient for Plaintiffs to seek to litigate privilege assertions on a document-by-document basis, as the parties have only just begun limited discovery in this matter and Plaintiffs are likely to challenge the Government's privilege assertions for other documents yet to be produced.  Plaintiffs served their first set of document requests and interrogatories on May 15, 2026, and Defendants are in the process of responding to those discovery requests.  The Government submits that, rather than engaging in piecemeal motion practice,  it would be more efficient for the parties and the Court for the parties to first complete this discovery, meet and confer on all potential discovery disputes, and then raise any unresolved issues with the Court at one time.[5]  In particular, the Government notes that in defending privilege assertions, it will likely need to obtain supporting declarations from high-level agency officials, and thus it would be more efficient to do so at one time for a complete set of documents, as opposed to doing so one document at a time.  In any event, as Defendants explained to Plaintiffs during the meet-and-confer teleconferences concerning this issue and further outlined below, Defendants have properly asserted work product and deliberative process privileges here.

### *Work Product Privilege*

Defendants have properly asserted the work product privilege.  Fed. R. Civ. P. 26(B)(3), which codified the work product doctrine, makes clear that the doctrine sweeps broadly and protects against "disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney *or other representative* concerning the litigation."  (emphasis added). Consistent with Fed. R. Civ. P. 26's broad language, courts have applied the work-product doctrine to "protect material prepared by non-attorneys in order to apply the doctrine to documents prepared by or for a party or the party's representative." *Lapaix v. City of New York*, No. 13 Civ. 7306 (LGS) (SN,) 2014 WL 11343854, at *2 (S.D.N.Y. Aug. 15, 2014).  In short, "the work product doctrine does not require that the documents be prepared at the behest of

---

[5] Indeed, the Government has noted that certain of Plaintiffs' discovery requests served on May 15, 2026 are outside the scope of this litigation and anticipates having further objections to Plaintiffs' requests.  Further, the parties currently disagree about the need for a protective order in this matter.  We anticipate these disputes will be raised to the Court in the near term.  Again, in the interest of efficiency and judicial economy, the Government submits that these unresolved issues should be raised with the Court at one time.

counsel, only that they be prepared "because of" the prospect of litigation." *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 74 (S.D.N.Y. 2010); *see Parneros v. Barnes & Noble, Inc.,* 332 F.R.D. 482, 492 (S.D.N.Y.)  (internal quotation marks omitted) ("the rule afford[s] protection to materials gathered by non-attorneys even where there was no involvement by an attorney."). Rather, "the doctrine protect[s] material prepared by agents for the attorney as well as those prepared by the attorney himself." *United States v. Nobles*, 422 U.S. 225, 238–39, 95 S. Ct. 2160, 2170 (1975.).  The fact that the statements at issue are not authored by attorneys does not make the privilege unavailable.  Plaintiffs' speculation that the redacted portions of the email chain involve discussions among non-lawyers about strategy does not take the redacted portions of the document referring to work undertaken by agency lawyers outside of the protections afforded by the work product privilege.

Further, the redacted portions satisfy the requirement that the withheld information be prepared in anticipation of litigation.  Plaintiffs cannot undermine this fact by speculating that the redacted material discusses implementation of the temporary restricted drawdowns that would occur regardless of any litigation.  As explained below, the content of this email chain is not, as Plaintiffs' claim, post-decision conversation about the implementation of the agency's decision. The email chain includes pre-decisional agency discussion and, as Defendants mentioned during the parties' May 15, 2026 meet and confer, the redacted material consists of comments regarding working drafts of the letters, which were authored by agency counsel.  As a threshold matter, the privilege does not require that "the primary or exclusive purpose of the document" be to assist in litigation.  *United States v. Adlman*, 134 F.3d 1194, 1199 (2d Cir. 1998).  Instead, Courts look to both "the nature of the document and the factual situation in the particular case" in determining whether the document *Id*. at 1202 (2d Cir. 1998).  Courts in the Second Circuit "have taken a flexible approach in determining whether the work product doctrine is applicable, asking not whether litigation was a certainty, but whether the document was created 'with an eye toward litigation.'" *Am. C.L. Union v. United States Dep't of Just.*, 210 F. Supp. 3d 467, 481 (S.D.N.Y. 2016).  The party asserting the privilege need not have a specific case or claim in mind to assert the privilege.  *See id*. at 482 (noting that Second Circuit case law lacks a "'specific case' requirement.").  Further, litigation "is interpreted broadly" to include not just trials and other proceedings, but also "the *avoidance* of anticipated litigation."  *Gen. Elec. Co. v. Johnson*, No. CIV.A.00-2855 (JDB), 2006 WL 2616187, at *11 (D.D.C. Sept. 12, 2006).  The particular factual situation in this instance raises the specter of litigation as more than a mere possibility.  This case involves the imposition of additional, heightened procedures before releasing millions of dollars of funding to Plaintiffs.  Similar changes to or restrictions on federal funding to states have been the subject of extensive litigation in the past year, emphasizing the risk of litigation in this instance.  *See Authors Guild v. NEH et al.*, No. 25 Civ. 3023 (CM) (S.D.N.Y.); *Illinois et al., v. Vought et al.,* No 26 Civ. 1566 (MS) (N.D. Ill.); *Climate United Fund, et al., v. Citibank, N.A., et al.*, No. 25-cv-00698 (TSC) (D.D.C.).

*Deliberative Process Privilege*

5

Defendants have properly asserted the deliberative process privilege.[6] The redacted portions of the Email Chain are both predecisional and deliberative. *Nat'l Council of La Raza v. DOJ*, 411 F.3d 350, 356 (2d Cir. 2005) ("An inter– or intra-agency document may be withheld pursuant to the deliberative process privilege if it is: (1) predecisional, *i.e.*, prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, *i.e.*, actually . . . related to the process by which policies are formulated." ) (citation and internal quotation marks omitted).  Contrary to Plaintiffs' assertion that the decision to restrict drawdowns was made prior to the Email Chain, the decision was made at the time the January 5 and January 6 letters were finalized and sent out. The log clearly states that the redacted text reflects "internal deliberations concerning approach to decision regarding drawdown restrictions *not* reflecting final decision on how to implement drawdown restrictions."  Exhibit 2 (emphasis added).  In other words, the redacted text relates to draft language that was being circulated among agency personnel prior to the decision being made.  The deliberative process privilege covers "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473,482 (2d Cir. 1999); *Nat'l Wildlife Fed'n v. United States Forest Serv.*, 861 F.2d 1114, 1118-19 (9th Cir. 1988).  Accordingly, the Government's redactions for deliberative process are entirely appropriate.

Plaintiffs assert that the deliberative process privilege is unavailable because the Government's intent is at issue in this litigation.  But by definition, deliberative communications and documents "reflect[] the personal opinions of the writer rather than the policy of the agency," *Grand Cent. P'ship*, 166 F.3d at 482, and therefore do not represent the agency's overall motivation for making a decision. Further, courts in this district weigh a plaintiff's need for documents reflecting the deliberative process against the government's interest in candid discussions. *See, e.g., In re Delphi Corp.*, 276 F.R.D. 81, 86 (S.D.N.Y. 2011).  Even if the Court were to accept Plaintiffs' argument that this privilege is more circumscribed in a case where, as here, the Government's intent and motivation is at issue, that limitation should only apply to deliberative communications that bear on the subjective motivation of agency decisionmakers relevant to the decision at issue.  As explained during the May 15 meet and confer, the redacted language relates to drafting of the January 5 and January 6 letters, prior to the decision to implement the drawdown restrictions, and has no relevance to the intent or motivations behind

---

[6] Plaintiffs complain that the Government did not supply a declaration from an agency official concerning deliberative process at the time it provided its privilege log.  But, as Defendants conveyed to Plaintiffs in their May 21, 2026 letter, Defendants are not required to provide such a declaration at the time the deliberative process privilege was asserted. *See, e.g., Secs.& Exch. Comm'n v. Downe*, No. 92 Civ. 4092 (PKL), 1994 WL 23141, at *5 (S.D.N.Y. Jan. 27, 1994) (finding position that the S.E.C. was required to provide a declaration regarding privilege prior to formal motion practice to be "without merit.").  However, as conveyed to Plaintiffs during the May 15 meet and confer, Defendants are amenable to providing such a declaration prior to any motion practice, but proposed to provide one such affidavit addressing all deliberative process withholdings in connection with discovery in this matter, which would be more efficient.

6

the purported freeze.  Plaintiffs have not demonstrated why their need for this redacted language outweighs the Government's interest in candid discussions.

Finally, Plaintiffs fail to establish that *in camera* review would be warranted here, proffering only speculation and conjecture that the redacted material pertains to matters other than what the Government has identified and described in its privilege log and through the meet-and-confer confer process.  While the Government maintains that litigating these privilege assertions now would be premature and inefficient, if the Court is inclined to consider them at this time, the Government requests the opportunity to provide a full record to the Court with complete briefing and any supporting declarations.

Sincerely,

Sherief Gaber
*Attorney for Plaintiff State of Illinois*

7