

**Office of the New York State**
**Attorney General**

**Letitia James**
**Attorney General**

July 17, 2026

Honorable Robyn F. Tarnofsky
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007

Re: *New York v. Administration for Children and Families, Case No. 26-cv-00172*

Dear Judge Tarnofsky,

I write on behalf of Plaintiffs pursuant to the Court's Individual Practice Rule III.B and Local Rule 37.2 to seek a pre-motion conference regarding discovery disputes in this matter. The Parties conferred about these disputes on June 17 and July 1, and exchanged letters regarding them on June 22, June 29, and July 1. Plaintiffs now seek the Court's resolution of these disputes.

### A. Background

This case concerns Defendants' decision to immediately and categorically freeze $10 billion in funding for Child Care and Development Fund, Temporary Assistance for Needy Families, and the Social Services Block Grant to five states, and only five states: Plaintiffs New York, Illinois, Minnesota, Colorado, and California ("Plaintiffs"). Leading up to the freezing of this critical funding, the President and Administration officials repeatedly highlighted publicly their intent to target Plaintiff states. An HHS spokesperson announced that the agency sought to target "Democrat-led states and Governors." Defendants effectuated this decision through letters sent to Plaintiffs on January 5 and January 6, 2026 ("January 5 and January 6 letters"). In those letters, Defendants asserted, without explanation or evidence, that this freeze was based on a "concern[]" about "potential" fraud. *See e.g.*, ECF No. 1, Ex. 1-C. On the same day, Defendants issued a press release stating that they "froze" Plaintiffs' "access to" these funds. ECF No. 40-6. On January 8, 2026, Plaintiffs challenged the funding freeze as unlawful for a variety of reasons, including that it violated the Administrative Procedure Act, ECF No. 1, and filed a request for a temporary restraining order, ECF No. 8, which was granted the following day, January 9, 2026, ECF No. 22. Plaintiffs then moved for a preliminary injunction, ECF No. 39, which was granted, ECF No. 80, and remains in place.

Defendants produced an Administrative Record, ECF No. 85, and then agreed to perform a second search for documents in the Record. They identified one additional document, which the Court recently ordered to be produced to Plaintiffs without redactions. *See* ECF No. 118.

In the meantime, the Parties agreed to conduct some discovery in this matter. On May 15, 2026, Plaintiffs served their First Requests for Production ("Requests," Exhibit 1) and First Set of

Interrogatories ("Interrogatories," Exhibit 2). Shortly thereafter, the Parties conferred, and Defendants agreed that, except for two issues detailed below, they "would not object on the basis that they are outside of the scope of discovery in this case." *See* ECF No. 100. On June 15, 2026, Defendants served their Responses and Objections ("Responses," Exhibits 3 and 4). As noted above, the Parties conferred twice thereafter.

Defendants have at this time responded to Plaintiffs' Interrogatories. Defendants have agreed to perform certain searches in response to Plaintiffs' Requests; have represented they have started collecting documents; and have represented that they "aim[] to have a production to [Plaintiffs] by the end of July."

On July 8, 2026, Defendants sent Plaintiffs letters "rescind[ing]" the January 5 and 6 letters. *See* ECF No. 115-1. On July 10, 2026, the Court held a conference and issued an Order stating that "[i]n view of Plaintiffs' disagreement that this case is now moot, [the Court] decline[d] to grant a stay of discovery at this time." ECF No. 118. Plaintiffs filed an Amended Complaint adding the Office of Management and Budget (OMB) and its director as Defendants on July 14, 2026.

### B. Argument

The Parties have a number of crystalized disputes regarding discovery. Plaintiffs now raise for the Court seven disputes that are ripe as they do not depend on Defendants' forthcoming production: (1) Plaintiffs' Request for Production 1, (2) Defendants' narrowing of their Interrogatory responses, (3) Defendants' narrowing of their Request for Production responses, (4) Defendants' narrowing of the term "ACF Freeze," (5) Defendants' refusal to produce documents that post-date January 6, 2026, (6) Defendants' limitation of their search to a single OMB custodian, and (7) the withholding of certain attachments to an email in the Administrative Record.

### 1. Plaintiffs' Request 1

On May 11, 2026, Defendants represented to the Court that they identified "one additional document that they declined to add to the [administrative] record, but that Defendants would agree to produce . . . with appropriate redactions pursuant to a discovery request." ECF No. 89. Plaintiffs' Request 1 seeks this document.

Defendants have not produced this document and have provided no basis for refusing to do so. In their initial Responses, Defendants stated that they would "produce non-privileged portions of the document . . . subject to an appropriate protective order." [1] However, Defendants have not identified any applicable privileges or good cause for confidentiality that would warrant a protective order for this document and have confirmed that they "do not yet know what, if anything, in the documents [they] produce will be confidential subject to a protective order," further indicating that there is no basis to withhold this document. Defendants should be ordered to produce it immediately.

---

[1] As described in the Parties' prior status report, ECF No. 111, Defendants provided Plaintiffs with a draft protective order on June 29, 2026. Plaintiffs most recently provided Defendants with revisions to a proposed protective order on July 1, 2026, but Defendants have not responded nor further engaged on this matter.

### 2.      Defendants' Narrowing of Their Interrogatory Responses

Defendants are unilaterally, and improperly, narrowing the scope of Plaintiffs' interrogatories seeking the names of relevant witnesses and custodians. Consistent with Local Rule 33.3, Plaintiffs served narrow interrogatories seeking a list of witnesses and custodians relevant to the freeze. Specifically, Interrogatories 1-4 direct Defendants to "[i]dentify all individuals who were involved in" or "witnessed any portion of" the following: "making the decision to implement" the ACF Funding Freeze (Interrogatory 1), and "the process of drafting, reviewing, revising, and sending or receiving" of any ACF Funding Freeze Payment Instruction (Interrogatory 2), January 5 or 6 Letters (Interrogatory 3), and Data Demands (Interrogatory 4). Interrogatory 5 directed Defendants to "[i]dentify the custodian, location, and general description of all documents and communications relating to" these same four topics: the ACF Funding Freeze, the ACF Funding Freeze Payment Instructions, the January 5 and 6 Letters, and the Data Demands.

Defendants responded to these Interrogatories (both in their initial Responses and in a follow-up response via email on June 29). However, Defendants' Responses improperly narrowed the scope of these Interrogatories. Defendants have *not* identified all witnesses and custodians, and instead have limited their responses to individuals who they deemed to have "held a decision-making role and/or directly participated" (Response 1); "directly participated in drafting []and/or implementing" (Response 2); "directly participated in drafting" (Responses 3-4); and "are reasonably likely to possess responsive documents located on laptops and/or servers that consist primarily of e-mail communications and other documents" (Response 5).

Defendants have no basis to limit their responses. Both the Federal Rules and the Local Rules permit Interrogatories to identify witnesses and custodians. While Defendants assert that their responses are proportional to the needs of the case, Rule 33, which governs interrogatories, does not contain a proportionality requirement, and Defendants have yet to explain why proportionality requires limiting the request to only those directly involved in the events described above. Plaintiffs seek an order directing Defendants to respond to Plaintiffs' Interrogatories in full.

### 3.      Defendants' Narrowing of the Defined Term "ACF Funding Freeze"

As noted above, Defendants issued a press release on January 6, publicly stating that they "froze access to" childcare funds in Plaintiff States. ECF No. 40-6. This case challenges that funding freeze. However, Defendants have taken the litigation position that "the January 5 and 6 Letters did not freeze any funding stream." *See, e.g.*, ECF No. 53 at 19. In the Preliminary Injunction Opinion, Judge Broderick explained that "Defendants' own January 6 press release alongside the issuance of its January 5, 2026 and January 6, 2026 letters belies its characterization that this was . . . not a funding restriction or freeze"; that Defendants were "attempt[ing] to post hoc rationalize" the contemporaneous statements calling this a funding freeze; and that "no matter how Defendants describe this policy—whether as a funding freeze, a drawdown restriction, or a 'monitoring' of Plaintiff States' use of funds—. . . the agency made a decision to condition States' access to childcare funds based on compliance with additional data submissions, which has immediate consequences in how states materially access funding." ECF No. 80 at 33-34.

Consistent with Defendants' own pre-litigation description of their action, and the reality Plaintiff States experienced of frozen funds, Plaintiffs' Requests and their Interrogatories use the term "ACF Funding Freeze," defined as:

> any decision made between December 26, 2025 and January 6, 2026, to alter the normal course of TANF, CCDF, or SSBG payments to any Plaintiff State, including, but not limited to, any decision to implement any "temporary restricted drawdown"; any decision to implement any "enhanced defend the spend" procedures; and any decision to restrict or "fr[ee]ze access to" any of these funds.

Under this definition, all documents and information reflecting "any decision . . . to alter the normal course of" payments must be produced. Nevertheless, in both sets of Responses, Defendants repeatedly "object[] to the term 'ACF Funding Freeze' to the extent it implies that any funds requested by Plaintiff States were frozen between December 26, 2025 and January 6, 2026. Defendants maintain that although pre-payment documentation requirements were implemented, funds were not frozen." Then, throughout their Responses, Defendants replace Plaintiffs' broadly-defined term "ACF Funding Freeze" with the presumably narrower and undefined "pre-payment documentation requirements." *See, e.g.*, Interrogatory Response 1 (Defendants will "identify all individuals who held a decision-making role and/or directly participated in HHS' deliberations with respect to HHS' decision to implement pre-payment documentation requirements").

Plaintiffs' discovery requests, including the definition of ACF Freeze provided, encompass Defendants' political targeting of Plaintiffs and their pre-litigation characterization of their own actions. In litigation, Defendants have run away from their pre-litigation characterization—a politically-targeted funding freeze—and now attempt to provide a narrower characterization of their actions. Narrowing the definition to Defendants' current definition thus would not include relevant, responsive documents. While Defendants assert that their narrowed interpretation will not have "a meaningful impact on the scope of [their] document collection," they have not provided any explanation for why that would be so. The only way Defendants can make the claim that the difference in definition makes no meaningful impact is by accepting Defendants' premise that funds were never frozen, which both Plaintiffs and Judge Broderick have rejected.

Plaintiffs request that Defendants be ordered to respond to Plaintiffs' Requests and Interrogatories using the definition of "ACF Funding Freeze" as written in Plaintiffs' Requests and Interrogatories.[2]

### 4.    Defendants' Narrowing of Their RFP Responses

To facilitate responding to Plaintiffs' document requests, Defendants have agreed to use search terms provided by Plaintiffs and have provided a list of initial custodians to be searched. Plaintiffs are not challenging those initial search terms or custodians at this time, pending review of Defendants' production.

---

[2] The defined term "ACF Funding Freeze Payment Instruction" has the same issue as it derives from the term "ACF Funding Freeze," and Plaintiffs seek an Order that would extend to this definition as well.

As to seven of Plaintiffs' Requests (Requests 2, 7, 9, 16, 17, 21, and 22), Defendants again have unilaterally, and improperly, narrowed their scope. Defendants agree to produce only "documents reflecting information HHS considered in connection with its decisions to implement the pre-payment documentation requirements, issue the January 5 and January 6 letters, and issue the Data Demands" (some of these are further limited). As to six additional Requests (Requests 6 and 10-14), Defendants have agreed to produce only "documents reflecting approval of HHS' decision to issue the" pre-payment documentation requirements, January 5 and January 6 letters, or Data Demands. Defendants' limitation to what HHS "considered" appears to limit their discovery obligation essentially to the administrative record.  Yet, Plaintiffs' discovery requests obviously are broader; Plaintiffs did not need to submit requests for production for an administrative record. Defendants' limitation therefore appears to exclude responsive documents outside the administrative record.

Thus, it appears that documents responsive to the discovery requests and identified by the search terms will be identified as non-responsive by Defendants. Accordingly, Plaintiffs seek a Court order that Defendants produce all documents responsive to their Requests, not just what they conclude that HHS "considered."

## 5. Post-January 6 Documents and Information

Defendants contest that their agency action was a funding freeze, and post-January 6 discovery will be key in identifying the nature of the agency action. Thus, Plaintiffs' Requests and Interrogatories seek limited information after January 6, 2026, which is the date the freeze was announced and most of the January 5 and 6 letters were sent. Specifically:

- Both Plaintiffs' Requests and Interrogatories instruct that "[u]nless otherwise indicated, the relevant time period for purposes of these" Requests "is from December 26, 2025, to January 9, 2026." Thus, they seek information and documents regarding the three-day period between when the freeze was announced on January 6 and when the TRO was entered on January 9.

- Plaintiffs define the term "ACF Funding Freeze Payment Instruction" to mean "any instruction, direction or guidance sent or received by any person regarding the processing of any Plaintiff State's TANF, CCDF, or SSBG payment between December 26, 2025, and January 20, 2026." Thus, they seek information regarding payments to Plaintiff States through January 20, which is the date that Defendants submitted evidence in opposition to Plaintiffs' preliminary injunction motion.

Additionally, three of Plaintiffs' Requests specifically seek documents from later in January:

- Plaintiffs' Request 5 seeks "[a]ll guidance relating to the ACF Funding Freeze," including, but not limited to, specific guidance referenced in a declaration submitted by Defendants in opposition to Plaintiffs' preliminary injunction motion, ECF No. 66 ("Inman Declaration") and specific guidance described by Defendants' counsel at the preliminary injunction hearing.

- Plaintiffs' Request 19 seeks documents relating to the "misunderstanding" that caused the rejection of Minnesota CCDF drawdown requests between January 5, 2026, and January 14, 2026, which was described in the Inman Declaration.

- Plaintiffs' Request 20 seeks documents "relating to the 'administrative oversight' that led drawdown requests by Colorado to be 'not fully processed until a few business days after the TRO was entered,'" also described in the Inman Declaration.

As distinct from the other issues raised above, Defendants' position is that "three requests and one definition, to the extent they each seek documents and communications after January 6, 2026," are outside of the scope of discovery that Defendants have agreed to conduct in this APA action. Accordingly, Defendants have not agreed to produce discovery in response to these Requests. Plaintiffs seek an order compelling their discovery requests including information and documents subsequent to January 6, 2026.

"[I]n order to permit meaningful judicial review, an agency must disclose the basis of its action." *Dep't of Com. v. New York*, 588 U.S. 752, 780 (2019). "[W]hen the agency action cannot be adequately explained in the record it compiled, the court's consideration of evidence outside the agency's administrative record is not only warranted, but necessary to a meaningful judicial review of the agency's action." *Tummino v. Hamburg*, 936 F. Supp. 2d 162, 196 (E.D.N.Y. 2013); *Nat'l Audubon Soc. v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997) (supplementation appropriate "where the absence of formal administrative findings makes such investigation necessary in order to determine the reasons for the agency's choice"); *New York v. McMahon*, No. 25-10601-MJJ, 2026 WL 622484, at *5 (D. Mass. Feb. 11, 2026).[3]

Supplementation is appropriate as to the documents showing the events of January 7, 8, and 9, 2026—the three days the ACF Funding Freeze was in effect before it was halted by the Court—because, as detailed above, Defendants maintain there was no funding freeze. These documents will shed light on the nature and scope of the freeze, which is a critical issue in this case and remains contested between the parties.

Supplementation is appropriate as to the post-January 6 payment instructions because instructions regarding how Plaintiffs *should* be paid after the TRO was in effect shed light on whether and how Defendants instructed that Plaintiffs *should not* have been paid before the TRO was in effect. At the preliminary injunction hearing, Judge Broderick appreciated the relevance of Defendants' post-January 6 payment instructions, noting that how these were "unwound" during the post-January 6 time period would indicate what those instructions were in the first place. *See* PI Tr. 51:20; *see generally id.* at 49-52.

Finally, supplementation is appropriate as to Requests 5, 19, and 20, because each of those requests seeks documents that post-date January 6, 2026, that Defendants *themselves* put into the record to support their defense at the preliminary injunction stage. Indeed, each of those Requests seeks documents relating to specific quoted portions of Defendants' statements put forth to oppose

---

[3] Separately, a party may supplement the record upon "a strong showing of bad faith or improper behavior." *Tummino*, 936 F. Supp. at 195. Plaintiffs do not seek supplementation on this basis now, but reserve their rights to do so at a later stage.

Plaintiffs' preliminary injunction motion. Discovery on these defenses is both proper and narrowly tailored. And, in any event, each of these Requests relates directly to payment instructions following the TRO: the "guidance" sought by Request 5 was, according to Defendants, going to show the conditions placed in Plaintiffs' funding, and the documents sought by Requests 19 and 20 relate to the administration of payments to Minnesota and Colorado after the TRO was in place.

Accordingly, Plaintiffs ask the Court to order that Defendants respond to Plaintiffs' requests.

### 6. Additional OMB Custodian

Defendants should search for documents from all appropriate custodians, including those at OMB who were involved in the decision-making behind the freeze. Defendants eventually agreed to search a single custodian at OMB: Anne DeCesaro, who Defendants represented was "the main point of contact between HHS and OMB during the deliberations and decision making" for the freeze. But Defendants' own Responses to Interrogatories identified *another* individual at OMB, its Director Russell Vought, as among the individuals who "held a decision-making role and /or directly participated in HHS' deliberations with respect to" the freeze. Interrogatory Response 1. Ms. DeCesaro was thus clearly not the only individual at OMB involved in the freeze. Indeed, Mr. Vought is the *only* individual other than agency attorneys and Secretary Kennedy who Defendants represented held a decision-making role and/or directly participated in the HHS's deliberations with respect to the freeze who Defendants have not agreed is an appropriate custodian. *Compare* Interrogatory Response 1 *with* Interrogatory Response 5.

Defendants had no basis for excluding Mr. Vought as a custodian even prior to Plaintiffs' amendment; now that OMB and Mr. Vought are Defendants, they have no reasonable argument. Given the Defendants' own admission of Mr. Vought's involvement, his documents should be searched alongside Ms. DeCesaro's. Following many conferrals regarding this issue during which the Parties' disagreement was crystalized, on July 14, 2026, Plaintiffs sought to confirm Defendants had not changed their position after the amendment to add OMB and Mr. Vought as Defendants; Defendants stated they were not willing to confer again until they had an unspecified amount of additional time to consult with agencies.

### 7. Attachments

Plaintiffs also contend that certain attachments should be produced. As the Court is aware, on June 16, Defendants produced a revised version of the Email Chain at issue in the Parties' earlier discovery dispute, *see* ECF No. 103 at 1 n.1, which for the first time suggested the existence of attachments to that Chain, *see* ECF No. 108 at 2. The Court ordered further briefing by Defendants and engaged in *in camera* review of these attachments, *see* ECF Nos. 109, 110, 112. On July 10, the Court issued an order "declin[ing] at this time to order Defendants to produce the" attachments as part of the Administrative Record, but noted the Court's "understanding that the parties have agreed on production of certain documents outside the administrative record" and stated that "[t]o the extent that the memoranda fall within the scope of that production but are withheld on the ground of privilege, Plaintiffs may move to compel by letter-motion." ECF No. 118. That same day, Plaintiffs notified Defendants of their position that the attachments were responsive to, at a minimum, Plaintiffs' Request 13 (for "All documents, electronically stored information, and

communications relating to the January 5 and 6 Letters"), and directed Defendants to produce them. Defendants have not provided a detailed privilege log to substantiate their claim of privilege. Either Defendants must produce that log or produce the documents. On July 14, 2026, Plaintiffs again sought to confer regarding, and obtain, Defendants' position on these attachments. Defendants stated they were not willing to confer again until they had an unspecified amount of additional time to consult with agencies.

## III.    Conclusion

Plaintiffs respectfully ask the court to direct Defendants to (1) produce the document in Request 1; (2) respond to Plaintiffs' Interrogatories in full; (3) respond to Plaintiffs' Requests and Interrogatories using the definition of "ACF Funding Freeze" set forth in Plaintiffs' Requests and Interrogatories; (4) respond to Plaintiffs' Requests 2, 6-7, 9-14, 16-17, and 21-22 in full; (5) respond to Plaintiffs' Requests and Interrogatories to the extent they seek documents and information subsequent to January 6, 2026; (6) extend Defendants' search to the additional OMB custodian; and (7) produce or provide a detailed privilege log for the email attachments.

Sincerely,


*/s/ Rabia Muqaddam*
Rabia Muqaddam
*Attorney for Plaintiff State of New York*

8