**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>     Plaintiffs,<br><br>          v.<br><br>ADMINISTRATION FOR CHILDREN AND FAMILIES, *et al.*,<br><br>     Defendants. | Case No. 26 Civ. 172 (VSB) (RFT) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS THE COMPLAINT**

JAY CLAYTON
United States Attorney
Southern District of New York
86 Chambers St., 3rd Floor
New York, New York 10007

*Attorney for Defendants*

KAMIKA S. SHAW
MALLIKA BALACHANDRAN
Assistant United States Attorneys

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................................1

FACTUAL BACKGROUND ............................................................................................2

LEGAL STANDARD......................................................................................................6

I.          DISMISSAL PURSUANT TO RULE 12(B)(1) ........................................................6

II.         DISMISSAL PURSUANT TO RULE 12(B)(6) ........................................................6

ARGUMENT ................................................................................................................7

I.          THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS
            ACTION BECAUSE PLAINTIFFS' CHALLENGE TO THE ACF ACTION IS
            MOOT .........................................................................................................7

II.         IF NOT MOOT, THEN PLAINTIFFS' CLAIMS ARE NO LONGER RIPE FOR
            REVIEW ....................................................................................................16

III.        PLAINTIFFS FAIL TO STATE A CLAIM AS TO OMB AND DIRECTOR
            VOUGHT ...................................................................................................18

CONCLUSION............................................................................................................22

**TABLE OF AUTHORITIES**

**CASES**

*Abbott Labs. v. Gardner*,
    387 U.S. 136 (1967) ................................................................................ 16, 17

*Allina Health Servs. v. Sebelius*,
    746 F.3d 1102, 1111 (D.C. Cir. 2014) .................................................... 11

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013) ................................................................................... 10

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990) ................................. 11, 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................... 6-7, 7

*Audubon of Kansas, Inc. v. U.S. Dep't of Interior*,
    67 F.4th 1093 (10th Cir. 2023) ................................................................ 15

*Bank v. NFL Props. LLC*,
    No. 25 Civ. 3981 (CM), 2025 WL 2961849 (S.D.N.Y. Oct. 20, 2025) ................................. 11

*Bennett v. Spear*,
    520 U.S. 154 (1997) ........................................................................... 19, 21

*Better Gov't Ass'n v. Dept of State*,
    780 F.2d 86 (D.C. Cir. 1986) .................................................................. 11

*California ex rel. Lockyer v. U.S. Forest Serv.*,
    No. 04 Civ. 02588, 2006 WL 2038491 (N.D. Cal. July 20, 2006) ................................. 10, 18

*Carver v. Bank of New York Mellon*,
    15 Civ. 10180 (JPO), 2017 WL 1208598 (Mar. 31, 2017) ...................................... 6

*City of Houston v. HUD*,
    24 F.3d 1421 (D.C. Cir. 1994) ............................................................... 11, 17

*City of New York v. U.S. Dep't of Def.*,
    913 F.3d 423 (4th Cir. 2019) ................................................................. 13

*Cook v. Colgate Univ.*,
    992 F.2d 17 (2d Cir. 1993) ..................................................................... 8

*Dalton v. Specter*,
    511 U.S. 462 (1994) ........................................................................ 19, 21, 22

*DiFolco v. MSNBC Cable LLC,*
  622 F.3d 104 (2d Cir. 2010) ................................................................................ 7

*Doe v. Columbia Univ.,*
  551 F. Supp. 3d 433 (S.D.N.Y. 2021) ............................................................... 12

*Exxon Mobil Corp. v. Healey,*
  28 F.4th 383 (2d Cir. 2022) ............................................................................... 12

*FDIC v. Meyer,*
  510 U.S. 471 (1994) ........................................................................................... 19

*Fla. Power & Light Co. v. Lorion,*
  470 U.S. 729 (1985) ............................................................................................. 4

*Fox v. Bd. of Trs. of State Univ. of New York,*
  148 F.R.D. 474 (N.D.N.Y. 1993) ...................................................................... 13

*Fraternal Ord. of Police v. Gates,*
  602 F. Supp. 2d 104 (D.D.C. 2009) ................................................................... 20

*FTC v. Standard Oil Co. of California,*
  449 U.S. 232 (1980) ........................................................................................... 19

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.,*
  460 F.3d 13 (D.C. Cir. 2006) ....................................................................... 16, 19

*Gallop v. Cheney,*
  642 F.3d 364 (2d Cir. 2011) ................................................................................ 7

*Granite State Outdoor Advert., Inc. v. Town of Orange,*
  303 F.3d 450 (2d Cir. 2002) .............................................................................. 15

*Hesse v. Godiva Chocolatier, Inc.*
  F. Supp. 3d 453 (S.D.N.Y. 2020) ........................................................................ 7

*Hist. E. Pequot Tribe v. Off. of Fed. Acknowledgment,*
  No. 23 Civ. 54 (JEB), 2023 WL 7182058 (D.D.C. Nov. 1, 2023) ...................... 20

*In re Allied Artists Pictures Corp.,*
  71 B.R. 445 (S.D.N.Y. 1987) ............................................................................ 10

*J.S. v. Attica Central Schools,*
  386 F.3d 107 (2d Cir. 2004) ................................................................................ 6

*Lewis v. Cont'l Bank Corp.,*
  494 U.S. 472 (1990) ........................................................................................... 12

*Liranzo v. United States,*
  690 F.3d 78 (2d Cir. 2012) .................................................................................. 6

iii

*Lunney v. United States*,
No. 01 Civ. 0897 (LMM), 2001 WL 1636965 (S.D.N.Y. Dec. 20, 2001) ...............................21

*Mantena v. Johnson*,
809 F.3d 721 (2d Cir. 2015) ............................................................................... 6

*Metro. Transportation Auth. v. Duffy*,
No. 25 Civ. 1413 (LJL), 2026 WL 588117 (S.D.N.Y. Mar. 3, 2026) ................................... 22

*Mosseri v. Woodstock Hous. Dev. Fund-Corp.*,
No. 18 Civ. 9431 (VSB), 2019 WL 2287964 (S.D.N.Y. May 28, 2019) .............................. 19

*Natural Resources Defense Council, Inc. v. U.S. Nuclear Regulatory Commission*,
680 F.2d 810 (D.C. Cir. 1982) ........................................................................... 9

*Nat'l Mining Ass'n v. DOI*,
251 F.3d 1007 (D.C. Cir. 2001) ......................................................................... 10

*Nat'l Park Hospitality Ass'n v. DOI*,
538 U.S. 803 (2003) ....................................................................................... 16

*Nat'l Treasury Emps. Union v. Vought*,
149 F.4th 762 (D.C. Cir. 2025) .................................................................. 13, 16, 18

*Neurological Surgery Prac. of Long Island, PLLC v. HHS*,
145 F.4th 212 (2d Cir. 2025) ........................................................................ 7, 15

*New York C.L. Union v. Grandeau*,
528 F.3d 122 (2d Cir. 2008) ........................................................................ 16, 17

*New York v. Raimondo*,
No. 19 Civ. 09380 (MKV), 2021 WL 1339397 (S.D.N.Y. Apr. 9, 2021) ......................... 9, 10

*Nutritional Health Alliance v. Shalala*,
144 F.3d 220 (2d Cir. 1998) .............................................................................. 17

*Ojo v. U.S.*,
No. 20 Civ. 4882 (MKB), 2020 WL 7262853 (E.D.N.Y. Dec. 9, 2020) ............................. 19

*Palmer v. Amazon.com, Inc.*,
51 F.4th 491 (2d Cir. 2022) ........................................................................... 7, 8

*Phifer v. City of New York*,
289 F.3d 49 (2d Cir. 2002) ................................................................................ 6

*Preiser v. Newkirk*,
422 U.S. 395 (1975) ................................................................................... 7, 12

*Princeton Univ. v. Schmid*,
455 U.S. 100 (1982) ..................................................................................... 10

*Rio Grande Silvery Minnow v. Bureau of Reclamation,*
    601 F. 3d 1096 (10th Cir. 2010) .................................................................................. 9

*Rural Dev. Innovations Ltd. v. Marocco,*
    No. 25-1631 (RJL), 2026 WL 710260 (D.D.C. Mar. 13, 2026) ............................................ 22

*Scheiner v. ACT Inc.,*
    No. 10 Civ. 0096 (RRM) (RER), 2013 WL 685445 (E.D.N.Y. Feb. 24, 2013) ............... 10-11

*Srour v. New York City, New York,*
    117 F.4th 72 (2d Cir. 2024) ...................................................................................... 14

*Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co.,*
    116 F.4th 106 (2d Cir. 2024) .................................................................................... 11

*Texas v. United States,*
    523 U.S. 296 (1998) ............................................................................................... 18

*Touchstone Rsch. Grp. LLC v. United States,*
    No. 18-CV-3451 (OTW), 2019 WL 4889281 (S.D.N.Y. Oct. 3, 2019) ................................ 20

*Town of Newburgh v. Newburgh EOM LLC,*
    151 F.4th 96 (2d Cir. 2025) ...................................................................................... 14

*U.S. Army Corps of Engineers v. Hawkes Co.,*
    Inc., 578 U.S. 590 (2016) ......................................................................................... 19

*Unified Sch. Dist. No. 259, Sedgwick Cnty., Kan. v. Disability Rts. Ctr. of Kansas,*
    491 F.3d 1143 (10th Cir. 2007) ................................................................................. 16

*United States v. Balon,*
    384 F.3d 38 (2d Cir. 2004) ....................................................................................... 17

*Wagschal v. Skoufis,*
    442 F. Supp. 3d 612 (S.D.N.Y. 2020) ........................................................................ 14

## STATUTES

5 U.S.C. § 704 ................................................................................................... 19

42 U.S.C. 616 .................................................................................................... 13

42 U.S.C. § 1397e .................................................................................................. 8

42 U.S.C. § 9858g ................................................................................................. 8

42 U.S.C. §§ 609, 610 ............................................................................................. 8

## REGULATIONS

45 C.F.R. part 98 ............................................................................................. 8, 9

v

45 C.F.R. § 98.90 ................................................................................................................. 8

45 C.F.R. part 96 ................................................................................................................. 8

45 C.F.R. parts 262 ............................................................................................................. 8

Defendants the Administration for Children and Families ("ACF"), Alex J. Adams, in his official capacity as the Assistant Secretary of ACF, the U.S. Department of Health and Human Services ("HHS"),Robert F. Kennedy Jr., in his official capacity as the Secretary of HHS (together with ACF, Assistant Secretary Adams, and HHS, "HHS Defendants") the Office of Management and Budget ("OMB") and Russell Vought, in his official capacity as the Director of OMB (together with OMB, "OMB Defendants") (collectively, "Defendants" or the "Government") by its attorney Jay Clayton, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion to dismiss the Amended Complaint ("Am. Compl.), ECF. No. 121 pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs initially brought this action against ACF, Assistant Secretary Adams, HHS and Secretary Kennedy.  Plaintiffs asserted, and the Court concluded for the purposes of the preliminary injunction in place in the case, that the HHS Defendants impermissibly implemented temporary restricted drawdowns relating to three federal grant programs and issued data requests related to the same.

The facts and circumstances have changed since the entry of the preliminary injunction. On July 8, 2026, ACF sent letters withdrawing both actions.  These actions, as detailed in the January 5 and 6 letters to Plaintiffs state, were the subject of this litigation.  Additionally, these Defendants have agreed to an entry of a permanent injunction that would maintain the status quo established by the preliminary injunction going forward.  As a result, these Plaintiffs no longer suffer any continuing injury, rendering Plaintiffs' claims for injunctive and declaratory relief moot.  No exception to the mootness doctrine applies, as there is no reasonable expectation the

alleged violation will reoccur, particularly in light of the Government's consent to the Court entering a permanent injunction. Even if Plaintiffs could demonstrate that their claims are not moot, their current challenge is no longer right for review.

In an attempt to revive this lawsuit, Plaintiffs amended their complaint to add OMB and its Director as defendants on July 14, shortly after ACF rescinded the letters that form the basis of this lawsuit. Plaintiffs appear to be keeping this case active so they can seek to compel Defendants to produce additional discovery beyond the Administrative Record. Their attempt to keep this case alive is unavailing. Despite adding these two Defendants, Plaintiffs at base, still challenge the exact same action they challenged in their initial complaint: ACF's implementation of the temporary restricted drawdowns and issuance of data demands. Therefore, despite adding OMB as possible contributors to the decision-making that led to the temporary restrict drawdown and data demands, Plaintiffs have still received all the relief they seek and as such, no longer present a live case or controversy fit for review. Further, their claims against OMB and Director Vought cannot support a separate APA claim, as they fail to identify any new or additional final agency action outside of the action they allege ACF took. Indeed, regardless of any additional defendants Plaintiffs attempt to add as Defendants, HHS, via ACF, is the only agency authorized to implement the funding freeze or drawdown restrictions at issue in this lawsuit.

For these reasons, this action should be dismissed.

## FACTUAL BACKGROUND

On February 26, 2025, President Donald J. Trump issued Executive Order ("EO") 14222, Implementing the President's the Department of Government Efficiency ("DOGE") Cost Efficiency Imitative. https://www.federalregister.gov/documents/2025/03/03/2025-03527/implementing-the-presidents-department-of-government-efficiency-cost-efficiency-initiative. As part of its

implementation of EO 14222, HHS implemented a mechanism called Defend the Spend in March 2025.  Declaration of Melissa Bruce, ECF No. 55 ("Bruce Decl."), ¶ 10.  To implement Defend the Spend, HHS, through the Administration for Children and Families ("ACF"), implemented temporary restricted drawdowns and data requests for three funding programs for five states. Bruce Decl. ¶ 15; Amended Declaration of Reese Cody Inman, ECF No. 66 ("Inman Decl."), ¶¶ 24, 33–35.  Specifically, these new requests and restrictions were applied to the Child Care Development Fund ("CCDF"), Temporary Assistance for Needy Families ("TANF"), and the Social Services Block Grant ("SSBG"), for the following five states who are the Plaintiffs in this action: California, Colorado, Illinois, Minnesota, and New York. Inman Decl. ¶¶ 33–35.

Between January 5 and January 6, 2026, ACF sent letters to New York, California, Colorado, Illinois, and Minnesota, notifying each state that they would be placed on temporary restricted drawdowns for three grant programs, CCDF, SSBG, and TANF, due to concerns about possible fraud and misuse of funds (the "January 5 and January 6 Letters"). *See* ECF Nos. 40-1–40-3.  The letters explicitly provide that Plaintiffs were placed on restricted drawdown pending review of each state's plan and confirmation of each state's compliance with any applicable laws.  *Id*.  To aid in the review of the state's plans for completeness, ACF asked each state to provide administrative and verification data for TANF and SSBG funding, ECF Nos. 40-2, 40-3, and certain fiscal accountability data improvements for CCDF funding, ECF No. 40-1.

Plaintiffs filed this action alleging that HHS Defendants' actions were in excess of HHS' statutory authority and arbitrary and capricious pursuant to the APA, *ultra vires*, and in violation of separation of powers, the Spending Clause and the Appropriations Clause on January 8, 2026.  ECF No. 1 ("Compl.").  Plaintiffs requested a temporary restraining order ("TRO") restraining HHS Defendants from keeping the restricted drawdowns in place; the Court granted Plaintiffs' request

3

and entered the TRO on January 9, 2026.  ECF No. 22.  Plaintiffs subsequently filed a motion seeking a preliminary injunction on January 15, 2026. ECF No. 38 ("Mot."). After the preliminary injunction was fully briefed and a hearing was held, the Court entered an order granting the preliminary injunction on February 6, 2026 ("Preliminary Injunction"). ECF No. 71.  The Preliminary Injunction enjoined and stayed HHS Defendants from "implementing ACF's funding policy at issue, which restricted or cut off federal funding" for the CCDF, TANF, and SSBG to Plaintiff States, "including the entirety of the letters sent to Plaintiffs on January 5, 2026 and January 6, 2026." Preliminary Injunction ¶ 1.  The Preliminary Injunction further directed HHS Defendants to "immediately remove any restrictions outside of permitted statutory authority, on Plaintiffs' ability to draw down funds under" the CCDF, TANF, and SSBG programs, and "further enjoined and stayed [Defendants] from reimposing such restrictions." *Id*. ¶ 2. The Court later issued an opinion on March 10, 2026, ECF No. 80.

On April 1, 2026, HHS Defendants filed the Administrative Record in this case, ECF No. 85, and produced a supplement thereto after conducting a follow-up search, at Plaintiffs' request, for any additional documents the agency considered in deciding to take the action Plaintiffs challenged. Although discovery in APA cases is typically limited to the Administrative Record, *see Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985), the Government agreed to conduce some limited discovery without requiring Plaintiffs to file a motion to compel.

On July 8, 2026, ACF sent a letter to Plaintiff states rescinding the January 5 and January 6 Letters implementing the agency action that forms the basis of Plaintiffs' lawsuit (the "July 8 Letter"), ECF No. 115-1.  The letter notified Plaintiffs that any future agency action with respect to the relevant funding programs would comply with the Preliminary Injunction the Court issued on February 6, 2026. Taking the position the case is now moot, HHS Defendants attempted to

negotiate a stipulation of dismissal with Plaintiffs.  Plaintiffs, however, disagree that the case is moot and refused to meaningfully engage in settlement negotiations.

ACF is no longer implementing the temporary restricted drawdown laid out in the January 5 and 6, 2026 Letters, it has rescinded the data requests, and it has agreed to continue to comply with the Preliminary Injunction going forward.  In the interest of efficiency, HHS Defendants submitted to the Court a proposed permanent injunction order, that is nearly identical the Preliminary Injunction in place. ECF No. 119 ("Proposed Permanent Injunction Order").  On July 13, 2026, Plaintiffs asked for leave to meet and confer and took the position that any Permanent Injunction must include OMB and include "factual specificity" as to what actions would be enjoined.  ECF No. 120. The next day, and roughly a week after ACF withdrew the letters that formed the basis of Plaintiffs' lawsuit, Plaintiffs filed an amended complaint, adding the Office of Management and Budget ("OMB") and OMB Director, Russell Vought, as defendants ("Amended Complaint"). ECF No. 121.  The relief requested in the Amended Complaint is largely the same as the relief Plaintiffs requested in their original complaint—namely Plaintiffs request a permanent injunction enjoining Defendants from implementing this action and a declaratory judgment that the action "is in excess in excess of statutory authority, contrary to law, and arbitrary and capricious, in violation of the Administrative Procedure Act and is unconstitutional and *ultra vires*." Am. Compl., Prayer for Relief.

The Court then ordered the parties to meet and confer regarding HHS Defendants' Proposed Permanent Injunction Order by July 24, 2026. ECF No. 122. In an effort to ensure the parties could engage in substantive negotiations, Defendants asked Plaintiffs to provide written comments and/or a redline with their proposed additions and objections to the Permanent Injunction.  They have yet to do so.  Instead, they have insisted that Defendants first agree OMB must be included in any

Permanent Injunction without providing any details about the terms which they would need to be included in said injunction and they continue to press for discovery.[1]  Because Plaintiffs continue to disagree that the case is moot and because they have refused to meaningfully engage in settlement discussions, Defendants submit this motion to dismiss on grounds of mootness.

<b>LEGAL STANDARD</b>

### I.    Dismissal Pursuant to Rule 12(b)(1)

On a Rule 12(b)(1) motion to dismiss, Plaintiffs bear the burden of "proving subject matter jurisdiction by a preponderance of the evidence."  *Mantena v. Johnson*, 809 F.3d 721, 727 (2d Cir. 2015) (quoting *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012)).  In considering challenges to subject matter jurisdiction under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint," but is "not to draw inferences from the complaint favorable to plaintiff."  *Carver v. Bank of New York Mellon*, 15 Civ. 10180 (JPO), 2017 WL 1208598, at *2 (Mar. 31, 2017) (quoting *J.S. v. Attica Central Schools*, 386 F.3d 107, 110 (2d Cir. 2004)).  The Court may also consider evidence extrinsic to the pleadings.  *Phifer v. City of New York*, 289 F.3d 49, 55 (2d Cir. 2002).

### II.    Dismissal Pursuant to Rule 12(b)(6)

Rule 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to

---

[1] As Defendants explain in their July 22, 2026 letter, ECF No. 127, Defendants have rescinded their prior agreement to engage in limited discovery in light of the fact that: 1) there is no longer a live case or controversy; and 2) Defendants have agreed to a Permanent Injunction providing Plaintiff with the relief they sought at the outset of this case.  In light of that, Defendants are filing a letter-motion to stay discovery with Magistrate Judge Tarnofksy concurrently with this motion.

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff's claims are plausible only when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  Thus, "even if the complaint contains sufficiently 'well-pleaded' allegations, 'only a complaint that states a plausible claim for relief survives a motion to dismiss.'"  *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679). In deciding a Rule 12(b)(6) motion to dismiss, a court may consider (among other things) documents incorporated by reference or integral to the complaint. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).  Judicial notice may be taken "of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination." *Hesse v. Godiva Chocolatier, Inc*., 463 F. Supp. 3d 453, 463 (S.D.N.Y. 2020) (quotation marks and citations omitted).

## ARGUMENT

### I.    The Court Lacks Subject Matter Jurisdiction Over This Action Because Plaintiffs' Challenge to the ACF Action is Moot

Article III of the Constitution requires that a live case or controversy must exist at all stages of federal court proceedings to support a court's subject matter jurisdiction. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). The mootness doctrine "'ensures that [a] litigant's interest in the outcome continues to exist throughout the life of the lawsuit.'" *Neurological Surgery Prac. of Long Island, PLLC v. HHS*, 145 F.4th 212, 223 (2d Cir. 2025) (quoting *Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 503 (2d Cir. 2022)). "If because of changed circumstances 'a case that presented an actual redressable injury at the time it was filed ceases to involve such an injury, it ceases to fall within a federal court's Article III subject matter jurisdiction and must be dismissed for mootness.'" *Palmer*, 51 F.4th at 503 (quoting *Conn. Citizens Def. League, Inc. v. Lamont,* 6

7

F.4th 439, 444 (2d Cir. 2021)). "A case becomes moot when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* (internal quotation marks omitted). So, "a case that is live at the outset may become moot when it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury." *Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir. 1993) (internal quotation marks omitted).

A.  This Action is Moot Because ACF Rescinded the January 5 and January 6 Letters

The ACF action that is the subject of this litigation as documented in the January 5 and January 6 Letters is no longer in effect.  The July 8 Letter issued by ACF to the Plaintiff States' respective agencies stated that the ACF was rescinding the January 5 and January 6 Letters in full, "including all data requests and information requirements associated with those letters." ECF No. 115-1.  The July 8 Letter went on to state that "ACF will continue to administer these programs and exercise its monitoring, oversight, and enforcement authorities in accordance with applicable statutes and regulations including procedures specified in 42 U.S.C. § 9858g and 45 C.F.R. part 98 with respect to the CCDF program, in 42 U.S.C. §§ 609, 610, and 617 and 45 C.F.R. parts 262 and 263 with respect to the TANF program, or in 42 U.S.C. § 1397e and 45 C.F.R. part 96 with respect to the SSBG program."[2] *Id*.  Finally, the July 8 Letter reiterated that, "[f]or the avoidance of doubt,

---

[2] The statutes and regulations cited in the July 8 letter lay out specific procedures ACF can take to monitor and enforce these funding programs. For example, as to CCDF, 45 C.F.R. § 98.90, lays out the Secretary's monitoring ability and includes that "[i]f a review or investigation reveals evidence that the Lead Agency, or an entity providing services under contract or agreement with the Lead Agency, has failed to substantially comply with the Plan or with one or more provisions of the Act or implementing regulations, the Secretary will issue a preliminary notice to the Lead Agency of possible non-compliance." 45 C.F.R. § 98.90(b).  The regulation goes on to provide that the Secretary will then consider comments received from the Lead Agency, and that the Secretary can pursue an investigation in which the Lead Agency "shall make appropriate books, documents, papers, manuals, instructions, and records available to the Secretary." *Id.* (c).  To the extent ACF takes any action to monitor non-compliance with regard to these three funding programs, it will do so pursuant to steps laid out in such regulations. *See* ECF No. 115-1.

this letter rescinds the alleged funding decisions at issue in *New York v.ACF, et al.*, 26 Civ. 172 (SDNY). To the extent that ACF takes any monitoring, oversight, or enforcement action in the future with respect to California, any such action will comply with the Preliminary Injunction entered by the Court in that litigation. ECF No. 71." *Id.* In other words, ACF is no longer going to implement temporary restricted drawdowns for CCDF, SSBG, or TANF for the Plaintiffs, and ACF is withdrawing their data requests. Plaintiffs have been returned to the status quo that existed before the issuance of the January 5 and January 6 Letters. Plaintiffs have received all the injunctive relief they seek in their Amended Complaint. Accordingly, Plaintiffs alleged injuries have been redressed by voluntary agency action, and their claims are moot.

As the D.C. Circuit noted in *Natural Resources Defense Council, Inc. v. U.S. Nuclear Regulatory Commission*, 680 F.2d 810 (D.C. Cir. 1982) ("NRC"), "[c]orrective action by an agency is one type of subsequent development that can moot a previously justiciable issue." *Id.* at 814; *see also Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1117 (10th Cir. 2010) (the "[w]ithdrawal or alteration of administrative policies can moot an attack on those policies") (citing cases). In this case, ACF intended the July 8 Letter rescinding the previous letters to be a corrective action. To the extent there is any concern that should this case end, ACF would just take the same action again, ACF indicated in the letters to Plaintiffs that it would comply with the Court's Preliminary Injunction going forward. ECF No. 115-1 at 1. Indeed, as discussed further below, ACF has submitted a Proposed Permanent Injunction to the Court that mirrors the Preliminary Injunction, further demonstrating that the agency does not intend to take these actions again.

Because ACF's action at issue is no longer in effect, and is not expected to occur again in the future, "the issues presented are no longer live and the Court cannot afford the relief Plaintiffs

9

seek." *New York v. Raimondo*, No. 19 Civ. 09380 (MKV), 2021 WL 1339397, at *2 (S.D.N.Y. Apr. 9, 2021). This case therefore is moot and should be dismissed. *See Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (holding that amendment to regulations mooted challenge to validity of old regulation); *Nat'l Mining Ass'n v. DOI*, 251 F.3d 1007, 1010-11 (D.C. Cir. 2001) (declaring challenge to revised rule moot, noting that "[t]he old set of rules, which are the subject of this lawsuit, cannot be evaluated as if nothing has changed" because "[a] new system is now in place" and "[a]ny opinion regarding the former rules would be merely advisory").

In other words, the issuance of the July 8 Letter, and the Proposed Permanent Injunction, means that ACF will not be "free to return to [its] old ways." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 92 (2013) (quotation and citation omitted). As described above, all three programs are governed by particular statutes and regulations that allow ACF to take certain actions in order to monitor or investigate the programs. Going forward, as stated in the July 8 Letter, ACF will only take actions authorized by those statutes.  While Plaintiffs may assert that the July 8 Letter "resulted purely as a response to this litigation," ACF's decision to rescind the January 5 and January 6 Letters "nevertheless renders the Court incapable of providing 'effective relief.'" *California ex rel. Lockyer v. U.S. Forest Serv.*, No. 04 Civ. 02588, 2006 WL 2038491, at *1-2 (N.D. Cal. July 20, 2006).

Plaintiffs might argue that the July 8 Letter moots their request for injunctive relief but does not address their request for declaratory relief. Plaintiffs' request for a "a judicial declaration that the ACF Funding Freeze is in excess of statutory authority, contrary to law, and arbitrary and capricious, in violation of the [APA] and is unconstitutional and *ultra vires*," Am. Compl. Prayer for Relief ¶ i, does not save their challenge from mootness. "A declaratory judgment may be rendered only to resolve some *actual* controversy." *In re Allied Artists Pictures Corp.*, 71 B.R. 445, 448 (S.D.N.Y. 1987).  "Federal district courts have no jurisdiction to render declaratory judgments

10

when the underlying questions are moot or otherwise non justiciable." *Scheiner v. ACT Inc.*, No. 10 Civ. 0096 (RRM) (RER), 2013 WL 685445, at *3 (E.D.N.Y. Feb. 24, 2013) (internal quotation marks and citations omitted)[3]. *Cf. City of Houston v. HUD*, 24 F.3d 1421, 1429 (D.C. Cir. 1994) (even "if a plaintiff's specific claim has been mooted, it may nevertheless seek declaratory relief forbidding an agency from imposing a disputed policy in the future, so long as the plaintiff has standing to bring such a forward-looking challenge and the request for declaratory relief is ripe"). Here, Plaintiffs' have alleged one specific agency action: ACF's decision to implement temporary drawdown restrictions and request data, what Plaintiffs define as the "ACF Funding Freeze." They have not challenged an ongoing policy as would be required to seek declaratory relief. *See, e.g.*, *Better Gov't Ass'n v. Dept of State*, 780 F.2d 86, 91 (D.C. Cir. 1986) (finding Plaintiffs' challenge to their respective FOIA fee waiver denials to be moot where Defendants ultimately granted Plaintiffs fee waivers, but Plaintiffs "arguments concerning the facial validity" of the guidelines that denied them the fee waivers to not be moot).[4]

---

[3] It is well-settled that the Declaratory Judgement Act ("DJA"), which Plaintiffs cite in seeking declaratory relief, "does not—and cannot—confer subject matter jurisdiction on a federal court." *Bank v. NFL Props. LLC, No.* 25 Civ.-3981 (CM), 2025 WL 2961849, at *3 (S.D.N.Y. Oct. 20, 2025), *reconsideration denied*, No. 25 Civ.3981 (CM), 2025 WL 3090126 (S.D.N.Y. Nov. 5, 2025). Instead, "[t]he DJA only provides courts with discretion to fashion a remedy" where jurisdiction and a cause of action otherwise exist. *Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co.*, 116 F.4th 106, 113–14 (2d Cir. 2024)

[4] Plaintiffs cannot argue that the case will not be moot until ACF has articulated the circumstances leading to the decision to implement the action, so that future circumstances can be specifically prohibited in an injunction—relief they did not request in their Amended Complaint--because a challenge to particular circumstances leading up to an agency action, is more akin to challenging a "program" rather than "an identifiable action or event" and would not be redressable under the APA. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891, 110 S. Ct. 3177, 3190, 111 L. Ed. 2d 695 (1990). Even if Plaintiffs remain unsatisfied, they cannot ask the Court to direct the agency how best to achieve compliance with the relevant statutes. *See Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1111 (D.C. Cir. 2014) ("[T]he court erred by directing the Secretary how to calculate the hospitals' reimbursements, rather than just remanding after identifying the error." (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 201 (1947)). Plaintiffs have received all the relief they are due, and there is no more effective relief this Court can provide.

Thus, Plaintiffs' claim for declaratory relief is moot as well. *See, e.g.*, *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 479 (1990) ("Even in order to pursue the declaratory and injunctive claims," plaintiffs must establish a "specific live grievance" and "not just an abstract disagreement" (cleaned up and citations omitted)); *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 394-95 (2d Cir. 2022) ("[T]he Supreme Court [has] made clear that a request for a declaratory judgment as to a past violation cannot itself establish a case or controversy to avoid mootness." (citing *Green v. Mansour*, 474 U.S. 64, 73-74 (1985))). Plaintiffs' continued challenge concerning ACF's Action, "amounts to a request for advice as to what the law would be upon a hypothetical state of facts, or with respect to contingent future events that may not occur as anticipated, or indeed may not occur at all." *Lewis*, 494 U.S. at 479-80 (cleaned up and citations omitted); *see also Doe v. Columbia Univ.*, 551 F. Supp. 3d 433, 459 (S.D.N.Y. 2021) ("Federal courts may not decide questions that cannot affect the rights of litigants in the case before them or give opinion[s] advising what the law would be upon a hypothetical state of facts." (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013))).

At bottom, there is no longer a real and substantial controversy for which the Court can grant effective relief. *See Preiser*, 422 U.S. at 401 (stating that the judgments of federal courts "must resolve a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts" (internal quotations and citations omitted)). Given that ACF has withdrawn its drawdown restrictions and data requests, there is no longer any ongoing controversy—let alone violation of the APA or Constitution, and Plaintiffs cannot ask this Court to serve in the untenable position as ACF's compliance monitor pursuant to the APA. *See Lujan v.*

*Nat'l Wildlife Fed'n*, 497 U.S. 871, 899 (1990) (plaintiffs "cannot demand a general judicial review of the [agency]'s day-to-day operations" under the APA); *City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019) (under the APA, courts do not "adjudicate generalized grievances asking us to improve an agency's performance or operations," and cannot "engage in day-to-day oversight of the executive's administrative practices"). Put another way, "the APA does not make federal courts 'roving commissions' assigned to pass on how well federal agencies are satisfying their statutory obligations." *Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762, 780-81 (D.C. Cir. 2025) ("*NTEU*") (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 610-11 (1973)).

Plaintiffs' last-minute amendment to add OMB after HHS Defendants sent out the July 8 letters rescinding the actions which prompted Plaintiffs' lawsuit does not change the calculus.  As discussed *infra,* Section III, in their Amended Complaint, Plaintiffs continue to identify "ACF Funding Freeze, as implemented through the January 5 and 6 Letters" as the agency action they seek to challenge. Am. Comp. ¶¶ 147, 160.  Their allegations against OMB amount to no more than suggesting, in vague terms, that OMB participated in the decision-making that led to ACF issuing the January 5 and 6 Letters.  By statute, HHS, via ACF, is the only agency that has authority to administer the programs at issue*, see* Sec. 416. [42 U.S.C. 616], and because the Proposed Permanent Injunction covers HHS, there is no reason to enjoin OMB, or any other federal entity or official for that matter, who may be involved in the decision making.  In sum, Plaintiffs challenge the same action challenged in their original complaint.  Because of that, simply adding OMB on the theory that they were part of the decision-making for the action Plaintiffs seek to enjoin does not change the fact that the controversy that was at issue here is no longer live.   See, e.g., *Fox v. Bd. of Trs. of State Univ. of New York*, 148 F.R.D. 474, 487 (N.D.N.Y. 1993), *aff'd*, 42 F.3d 135 n.30 (2d Cir. 1994) (noting that "allowing a plaintiff who no longer has a personal stake in the outcome of

the controversy to amend a complaint to revive an otherwise dead or moot action" is impermissible because, by definition, the court lacks subject matter jurisdiction over a moot action.)

B.  No Exception to the Mootness Doctrine Applies

Although there are exceptions to the mootness doctrine under which a court may retain jurisdiction even when it can no longer grant the relief sought, none apply here. The Second Circuit has recognized "exceptions to the mootness doctrine includ[ing] voluntary cessation cases and cases capable of repetition but evading review." *Srour v. New York City, New York*, 117 F.4th 72, 81 (2d Cir. 2024) (internal citation and quotation omitted).

The exception for conduct that is capable of repetition, yet evading review involves challenged conduct that "is too short in duration to be fully litigated before it ceases, and it is probable that the pleading party will need to seek the same relief from the defendant's same conduct again in the future." *Town of Newburgh v. Newburgh EOM LLC*, 151 F.4th 96, 102 (2d Cir. 2025) (internal quotation and citation omitted). Here, although it may be theoretically possible for ACF to disregard its July 8 Letter and implement some variation of the restricted drawdown or data request in the future, such "mere speculation" about ACF's future actions and their possible effects on Plaintiffs "does not rise to the level of a reasonable expectation or demonstrated probability of recurrence." *Id.* (quoting *Dennin v. Conn. Interscholastic Athletic Conf., Inc.*, 94 F.3d 96, 101 (2d Cir. 1996) (internal quotation marks and citation omitted)). "As courts in this Circuit have held, it is inappropriate for Court's to revive a moot case by speculating about a defendant's future actions." *Wagschal v. Skoufis*, 442 F. Supp. 3d 612, 622 (S.D.N.Y. 2020), *aff'd*, 857 F. App'x 18 (2d Cir. 2021). And to the extent ACF does take such an action in the future, it would be prohibited by the Proposed Permanent Injunction. Accordingly, the exception for cases capable of repetition but evading review does not apply here.

14

The same is true for the voluntary cessation exception. Under that exception, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Neurological Surgery*, 145 F.4th at 223 (internal quotation and citations omitted). "Instead, to render the case moot, a defendant must demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* (internal quotation and citation omitted).  Here, ACF has demonstrated—by both sending out the July 8 Letter and submitting the Proposed Permanent Injunction—that there is no reasonable expectation that the alleged violation will recur. And there is no suggestion in the record that the same course of events are likely to recur.  Given ACF's submission of the Proposed Permanent Injunction, the likelihood of another implementation of the temporary drawdown restrictions or data request is "only a theoretical and speculative possibility." *Neurological Surgery*, 145 F.4th at 224 (internal quotation and citation omitted); *see also Granite State Outdoor Advert., Inc. v. Town of Orange*, 303 F.3d 450, 451-52 (2d Cir. 2002) ("[T]here is no reason to think that, having completely revised its regulations through proper procedures, [defendant] has any intention of returning to the prior regulatory regime.").

Moreover, ACF's recission of the January 5 and January 6 Letters means that any effects of the Action at issue here have been eradicated. Since the entry of the Preliminary Injunction, Plaintiffs have been able to make drawdown requests and receive funding as they would have prior to the January 5 and January 6 Letters.

Finally, the voluntary cessation exception does not apply when the challenged conduct is "highly fact-and-context-specific, rather than conduct that is likely to 'recur' on similar facts and in the same context." *Audubon of Kansas, Inc. v. U.S. Dep't of Interior*, 67 F.4th 1093, 1104

15

(10th Cir. 2023) (quotation and citation omitted).  Now that ACF has rescinded the January 5 and January 6 Letters in their entirety and consented to the entry of the Proposed Permanent Injunction prohibiting the same, any future instances of "wrongful behavior" may be "quite different than the complained-of example that has already ceased." *See, e.g.*, *Unified Sch. Dist. No. 259, Sedgwick Cnty., Kan. v. Disability Rts. Ctr. of Kansas*, 491 F.3d 1143, 1150 (10th Cir. 2007); *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 23 (D.C. Cir. 2006) ("[T]he essential point is that the case before us is highly dependent upon a series of facts unlikely to be duplicated in the future." (internal quotation and citation omitted)). As a result, the voluntary-cessation exception does not apply.

**II.**      **If Not Moot, Then Plaintiffs' Claims Are No Longer Ripe for Review**

To the extent Plaintiffs take the position that this case is not moot because they do not have assurance that ACF will not take some similar action in the future, those claims are not ripe for review. The January 5 and January 6 Letters have been withdrawn in their entirety.  The propriety of any future drawdown restriction or data request that ACF may implement will turn on the particular facts at issue at that time.  Simply put, "regularly moving targets do not raise issues fit for review." *NTEU*, 149 F.4th at 786.

"The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. DOI*, 538 U.S. 803, 808 (2003) (internal quotation marks omitted). A central purpose of this doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner,* 387 U.S. 136,

16

148 (1967). To determine whether a challenge to administrative action is ripe for judicial review, a court proceeds with a two-step inquiry, "'requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *New York C.L. Union v. Grandeau*, 528 F.3d 122, 131-32 (2d Cir. 2008) (quoting *Abbott Labs.*, 387 U.S. at 149)).

A. Plaintiffs' Challenge Is No Longer Fit For Review

Plaintiffs' challenge is no longer fit for review because it necessarily depends on the highly fact-specific nature of any future temporary drawdown restriction or data request implemented by ACF. Thus, unlike "a purely legal question that is eminently fit for judicial review," *Nutritional Health Alliance v. Shalala*, 144 F.3d 220, 227 (2d Cir. 1998), the propriety of any future such action "is distinctly a matter of fact beyond the prescience of this court and is thus currently subject to abstract disagreements over matters that are premature for review." *United States v. Balon*, 384 F.3d 38, 46 (2d Cir. 2004) (internal quotation marks and citation omitted). The Court is not in a position to enjoin some future action that ACF has not taken, that is merely hypothesized by Plaintiffs.

Plaintiffs' claim for declaratory relief is similarly not ripe for review. "[E]ven assuming that [Plaintiffs'] request for declaratory relief is not moot, it is plain that such a challenge is not ripe for review." *City of Houston*, 24 F.3d at 1430. First, Plaintiffs' challenge concerns ACF's prior decision to implement drawdown restrictions and data requests, a decision which is no longer in effect. Second, this Court has "no means to evaluate in the abstract the myriad circumstances that might" implicate a future alleged violation. *Id.* at 1431. Indeed, were the Court to rule on Plaintiffs' challenge with respect to any hypothetical drawdown restriction or data request, "it would be required to conduct a pseudo-rulemaking proceeding by examining

17

and weighing all of the considerations that might lead the agency to [take a similar action] in the future." *Id.* (internal quotation and citation omitted).

The July 8 Letter rescinding the action at issue here "removes any semblance of a relevant and applicable factual record that can be analyzed to determine whether and to what extent relief is appropriate." *California ex rel. Lockyer.*, 2006 WL 2038491, at *2. Any further relief, beyond what is contemplated in the Proposed Permanent Injunction, "at this point would be untethered to an existing controversy or factual record." *Id.*

B. Plaintiffs Will Not Suffer Hardship

Plaintiffs similarly will not suffer any cognizable hardship if the Court declines further review of ACF's past actions for compliance with its statutory authority. The July 8 Letter has removed any concrete threat to Plaintiffs' access to the three funding programs. Even if there was a threat to their access still at stake, such an "abstraction" is not the type of hardship that may make a claim ripe because it is "inadequate to support suit unless the person's primary conduct is affected." *Texas v. United States*, 523 U.S. 296, 302 (1998). "Unlike in cases allowing pre-enforcement review, the actions challenged here do not require [Plaintiffs] 'to engage in, or to refrain from, any conduct.'" *NTEU*, 149 F.4th at 786 (quoting *Texas v. United States*, 523 U.S. at 301). "And if their fears come to pass"—*e.g.*, for some unforeseen reason ACF takes the same action again, in contravention of statutory authority—Plaintiffs "may 'protect all of their rights and claims by returning to court when the controversy ripens.'" *Id.* (quoting *Atl. States Legal Found. v. EPA*, 325 F.3d 281, 285 (D.C. Cir. 2003)).

III.    **Plaintiffs Fail to State a Claim as to OMB and Director Vought**

Plaintiffs have amended their complaint to now include OMB and Director Vought as Defendants. As discussed above, ACF withdrew the January 5 and January 6 Letters implementing the agency action that Plaintiffs seek to challenge, and this amendment does not

18

revive Plaintiffs' claims.  Plaintiffs allege no separate final separate agency action that would either keep their claims alive or give rise to a separate APA action against OMB.  Even if the Court finds this case is not moot, because Plaintiffs fail to articulate some final agency action that OMB took, they have failed to state a claim against OMB and Director Vought.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  In order for there to be a waiver of sovereign immunity for an executive agency, the waiver must be both (1) expressly in the statutory text, and (2) authorized by Congress.  *Ojo v. U.S.*, No. 20 Civ. 4882 (MKB), 2020 WL 7262853, at *5 (E.D.N.Y. Dec. 9, 2020). "The APA is a limited waiver of sovereign immunity, allowing for judicial review of the final administrative action of a federal agency[.]" *Mosseri v. Woodstock Hous. Dev. Fund-Corp.*, No. 18 Civ. 9431 (VSB), 2019 WL 2287964, at *2 (S.D.N.Y. May 28, 2019).

The APA does not permit "judicial review over everything done by an administrative agency." *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 19 (D.C. Cir. 2006) (quotation marks omitted).  Rather, it limits review to "final agency action[s]," and expressly excludes review of "preliminary, procedural, or intermediate agency action[s] or ruling[s]."  5 U.S.C. § 704; *accord Dalton v. Specter,* 511 U.S. 462, 469 (1994).  This finality requirement seeks to avoid "piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary." *FTC v. Standard Oil Co. of California*, 449 U.S. 232, 242 (1980). Agency action is final only when it (1) "'mark[s] the consummation of the agency's decisionmaking process'" and (2) is "'one by which rights or obligations have been determined, or from which legal consequences will flow.'" *U.S. Army Corps of Engineers v. Hawkes Co., Inc.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78

(1997)).  As a threshold matter, "to properly state a claim for relief under the APA, plaintiffs must first identify the final agency action being challenged." *Fraternal Ord. of Police v. Gates*, 602 F. Supp. 2d 104, 107 (D.D.C. 2009)

Plaintiffs now name OMB and its director as Defendants, but they have not alleged what final agency action OMB and Director Vought took.  They vaguely allege that OMB and Director Vought "played an important role' in the challenged conduct.  Am. Compl. ¶ 9. According to Plaintiffs, OMB "directed and/or participated in the decision-making for the ACF Funding Freeze" and that ACF "implemented the Funding Freeze" pursuant to "one or more" unidentified directives by OMB, which they define as the "OMB Directive." *Id*.  ¶ 137. Plaintiffs now ask this court to permanently enjoin Defendants from implementing the unidentified OMB directives. But beyond identifying OMB individuals who were involved in the decision-making process, Plaintiffs make no specific allegations as to what the "OMB Directive" was or who was involved.   These vague allegations fail to articulate any separate agency action on the part of OMB, much less one that is final.  "The plaintiff, not the court, must identify the challenged final agency action." *Hist. E. Pequot Tribe v. Off. of Fed. Acknowledgment*, No.  23 Civ.54 (JEB), 2023 WL 7182058, at *6 (D.D.C. Nov. 1, 2023) (internal quotation marks and citations omitted). Plaintiff identifies no separate action taken by OMB as a final agency action, nor could they. The fact that OMB, according to Plaintiffs, participated in the decision-making or provided some unidentified direction does not establish some final agency action apart from the challenged funding restrictions ACF implemented that could give rise to an APA claim against OMB.  As an initial matter, Plaintiffs amended complaint refers to "one or more OMB directives" but the allegations fail to define what the specific directive or directives are that Plaintiffs seek to challenge.  These conclusory and vague allegations about undefined directive

20

fail to articulate an agency action that was the consummation of a decision-making process or one from which legal consequences flowed.   *See e.g., Touchstone Rsch. Grp. LLC v. United States*, No. 18 Civ. 3451 (OTW), 2019 WL 4889281, at *6 (S.D.N.Y. Oct. 3, 2019) (Plaintiff's allegation that the Department of Defense took a final agency action by "implementing rules and procedures" governing disclosure of certain information failed to explain what specific rules or procedures Plaintiff sought to challenge or articulate how they constituted final agency action).

To the extent Plaintiffs are only alleging that OMB was involved in the final agency action alleged in their original complaint, the action taken by ACF that is at issue in this litigation, that allegation also fails to state a claim against OMB or Director Vought because that is an action taken by ACF, not OMB.  Plaintiffs state that "[t]he ACF Funding Freeze, as implemented through the January 5 and 6 Letters, constitutes final agency action, because it marks "the consummation" of agency decisionmaking and determines "'rights or obligations' . . . from which 'legal consequences'" flowed. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (quoting *Port of Boston Marine TerminalAssn. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970))." Am. Compl. ¶¶ 147, 160.  OMB's alleged involvement "carr[ies] no direct consequences" for the funding at issue because "[t]he action that [] directly affect[ed]" the streams of funding was taken by ACF, not OMB.  *Dalton*, 511 U.S. at 469(quoting *Franklin v. Massachusetts*, 505 U.S. 788, 798, 112 S. Ct. 2767, 2774, 120 L. Ed. 2d 636 (1992).  Even if, as Plaintiffs claim, OMB had a hand in determining the scope or states to be included, that is immaterial.  "What is crucial is the fact that [ACF], not [OMB], takes the final action that affects" the flow of funds. *Dalton*, 511 U.S. at 470..  By statute, the authority to administer the funds at issue rests with HHS.  *See* Sec. 416. **[**42 U.S.C. 616**]**.  As such, the only agency that could have taken a final action that affected the funds is HHS through ACF.  *See, e.g., Lunney v.*

21

*United States*, No. 01 Civ.0897 (LMM), 2001 WL 1636965, at \*3 (S.D.N.Y. Dec. 20, 2001),

*aff'd*, 319 F.3d 550 (2d Cir. 2003) (concluding that Congress delegated responsibility regarding

custody of the Congressional Medal of Honor to the President of the United States, not the

Secretary of the Navy and as such, it was the President, not the Secretary, who took the final

binding action that affected the custody of the medal.).   Without identifying any final agency

action OMB allegedly took, Plaintiffs cannot plausibly seek relief against the OMB Defendants

under the APA.[5]

**CONCLUSION**

For the foregoing reasons, Plaintiffs' complaint should be dismissed in its entirety.

---

[5] Plaintiffs' supposed constitutional claims do not survive either.  Plaintiffs purport to bring constitutional claims alleging violations of Separation of Powers, the Appropriations Clause and the Spending Clause.  Am. Compl., Counts IV-XI.  While Plaintiffs attempt to cloak their claims in constitutional language, these are actually statutory claims.  "[E]very action by the President, or by another elected official, in excess of his statutory authority" is not "*ipso facto* in violation of the Constitution."  *Dalton*, 511 U.S.at 462–63 (1994).  Where, as is the case here, "Plaintiffs' claims are [] predicate[d] on statutory violations" those claims "cannot be repackaged as constitutional claims."  *Rural Dev. Innovations Ltd. v. Marocco*, No. 25-1631 (RJL), 2026 WL 710260, at \*4 (D.D.C. Mar. 13, 2026) (internal quotation marks omitted). For similar reasons, Plaintiffs' *ultra vires* claim fairs no better, as "the standalone *ultra vires* count is simply a variant of their other claims, for which there are adequate forms of judicial review." *Metro. Transportation Auth. v. Duffy*, No. 25 Civ. 1413 (LJL), 2026 WL 588117, at \*62 (S.D.N.Y. Mar. 3, 2026) (citation modified).

Dated: New York, New York
    July 27, 2026

          Respectfully submitted,

          JAY CLAYTON

          United States Attorney

          Southern District of New York
          *Attorney for Defendants*

    By:     /s/ *Kamika S. Shaw*
          KAMIKA S. SHAW
          MALLIKA BALACHANDRAN
          Assistant United States Attorneys
          86 Chambers Street, 3rd Floor
          New York, New York 10007
          Tel.: 212-637-2768/2781
          Email:Kamika.shaw@usdoj.gov
             mallika.balachandran@usdoj.gov

### Certificate of Compliance

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 7,670 words.