

**Office of the New York State**
**Attorney General**

**Letitia James**
**Attorney General**

August 3, 2026

Honorable Robyn Tarnofsky
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: *New York v. Administration for Children and Families, Case No. 26-cv-00172*

Dear Judge Tarnofsky,

Per the Court's July 28, 2025 Order, ECF No. 131, Plaintiffs respectfully submit this opposition to Defendants' letter motion to stay discovery, ECF No. 130. A stay is not warranted. Defendants should be held to their agreement to produce discovery—reached after careful and extensive discussions among the parties as to initial scope and nature—especially when Defendants have already begun to gather responsive records. Defendants' contention that this case is moot does not change the analysis: Plaintiffs have not agreed to unwind the mutual agreement, and, in any case, Defendants have not made the required showing to succeed on any of their motions. Plaintiffs should not be required to seek to compel discovery to which Defendants consented and were already gathering. The developments in this case only further emphasize the need for discovery to continue.

Defendants insist that a stay of discovery is necessary because this case is moot. But this Court still has jurisdiction over this case for at least two reasons. ***First***, Plaintiffs seek relief beyond what Defendants have proffered through their July 8 letters or their proposed permanent injunction. As Plaintiffs have explained to Defendants and now memorialized in an alternative proposed judgment sent to Defendants last week, *see* attached Exhibit A (Plaintiff States' proposed stipulation resolving this matter, sent to Defendants' Counsel on July 31, 2026), complete relief in this suit must include: (1) relief against the Office of Management and Budget ("OMB"), (2) relief specifically as to the data demands, and (3) relief addressing the use of impermissible factors to freeze funds, such as the political lean of a state. Defendants' proposed resolution is silent as to all three issues and does not moot this case. ***Second***, Defendants can only moot this case through their own voluntary cessation of the challenged conduct if they make the additional showing that this conduct will *never recur*. Defendants' refusal to include OMB in the resolution of this case and the timing of their mootness strategy on the eve of document production demonstrate an interest in future use of funds to politically target the Plaintiff States.

As explained further below, Defendants have not met their burden in seeking a stay of discovery, which is beginning to reveal the as yet unclear scope of the severely harmful final

agency action challenged here and who was involved with it.  So far, discovery is uncovering that those at the highest levels of the federal government placed the well-being of the neediest children and families at risk to play political games and enact political retribution against the Plaintiff States, while creating post hoc rationalizations that sought to baselessly defame the Plaintiff States' administration of these programs. Plaintiffs are not on a fishing expedition—they are trying to understand and prove the scope of the ACF Freeze so that relief in this action will ensure that this never happens again to the States and the children and families who reside within them.

Defendants are thus likely to lose their motion to dismiss, and the balance of burden and prejudice strongly favor Plaintiffs. Discovery should not be stayed pending a decision on a motion to dismiss that primarily turns on facts, including the role of OMB, that Defendants are aggressively trying to shield from Plaintiffs by any means necessary.

## I.    Background

This case involves a sudden and unlawful freeze of around $10 billion of critical funds to Plaintiff States. What is at stake in this case is the well-being of millions of impoverished children and their families, such that Plaintiffs must be especially careful in ensuring complete relief.

After the Court entered a Preliminary Injunction on February 6, Defendants produced an Administrative Record composed of two post hac decision memos (with attachments) and a single YouTube video. ECF No. 85. After Plaintiffs sent a letter to Defendants stating Plaintiffs' position that the Administrative Record was substantially incomplete, Defendants agreed to conduct an additional search for documents in the Administrative Record and found one more: the Email Chain over which the Parties subsequently litigated the redactions. *See* ECF No. 91-1.

Plaintiffs explained to Defendants that the Record was still inadequate and sent Defendants their portion of a motion to compel discovery, per Judge Broderick's Individual Practice Rules. Rather than filing the motion, the Parties agreed that Plaintiffs could conduct some discovery in this matter. This agreement was memorialized to the Court, first on May 11, when the Parties notified the Court that they "agree[d] that Plaintiffs may conduct some discovery in this matter" and that "the parties w[ould] confer regarding the scope of discovery." ECF No. 89. Judge Broderick "so ordered" it the following day. ECF No. 90. Plaintiffs served their requests for production and interrogatories on May 15, *see* ECF No. 125-1 to 125-4. After Defendants reviewed them, the Parties conferred on scope. The Parties agreed, and then memorialized to the Court, that "Defendants took the position that the following requests are outside of the scope of permissible discovery in this APA case: (a) three requests and one definition, to the extent they each seek documents and communications after January 6, 2026; and (b) Plaintiffs' instruction that Defendants search documents within the possession, custody, or control of the Office of Management and Budget. *With respect to the remaining requests*, Defendants stated during the meet and confer that they would respond or object pursuant to the Federal Rules of Civil Procedure and *would not object on the basis that they are outside of the scope of discovery in this case*." ECF No. 100 (emphasis added).

The Parties thereafter conferred on discovery issues a number of times and exchanged correspondence. The Parties agreed on both custodians and search terms for an initial document search: the custodians listed in Defendants' response to Interrogatory 5 and the search terms in

Exhibit A to Plaintiffs' request (with minor non-substantive modifications by Defendants). *See* ECF No. 125-4 at 10 (custodians), ECF No. 125-1 at 12 (search terms). Defendants represented to Plaintiffs in late June that, in connection with this agreement, they had "started collecting documents and are aiming to have a production to you by the end of July."

On July 7, in connection with the Parties' privilege dispute over the Email Chain, the Court ordered the Parties to appear for a conference a few days later. ECF No. 113.

The following day, Defendant ACF sent each Plaintiff State's benefits agency a substantially similar letter, which stated that ACF was "rescind[ing]" the January 5 and 6 Letters and "rescind[ing] the alleged funding decisions at issue in" this action. *See* ECF No. 115-1. On that same day, Defendants notified Plaintiffs of their view that the case is moot in light of the July 8 letters, and Plaintiffs shared their view that the case is not moot. And the following day, Defendants sought an adjournment of the discovery conference. ECF No. 114.

The Court denied that adjournment, ECF No. 116, and the Parties appeared on July 10. The Court declined to grant a stay of discovery and directed that "Defendants may make a letter-motion for a stay after filing a motion to dismiss." ECF No. 118. Since the Court had ordered discovery to proceed, later that day Plaintiffs notified Defendants of their view that certain additional discovery disputes—separate from the agreed-upon search and production—had been crystalized and that Plaintiffs intended to bring those the Court shortly unless Defendants wished to confer further on those issues. They also notified Defendants that day that, in line with prior discussions between the Parties, Plaintiffs were considering whether to amend their complaint to add OMB and its Director as Defendants and would do so within a week. Plaintiffs filed their amended complaint adding OMB and its director on July 14. ECF No. 121.

On July 13, Defendants first notified Plaintiffs that they would be seeking the entry of a permanent injunction, and they sought such an injunction from the Court hours later. ECF No. 119. Plaintiffs asked the Court to order the Parties to confer and to allow Plaintiffs additional time to respond. ECF No. 120. The next day, the Court granted Plaintiffs' request. ECF No. 122. On July 17, Plaintiffs filed a letter to compel certain additional discovery as they had previewed to Defendants a week earlier. ECF No. 125. Since the Court ordered the Parties to confer on July 14, the Parties have conferred *twice* and engaged in email communications regarding Defendants' proposed order.

On July 27, Defendants filed a motion to dismiss, ECF No. 129, and motion to stay discovery, ECF No. 130. On July 28, the Parties appeared before the court and agreed on a briefing schedule for these motions that was then ordered by the Court. ECF No. 131.

Plaintiffs—each sovereign States—cannot agree to any settlement without having had a reasonable time and opportunity to fully review the proposed terms and evaluate whether those terms would provide complete relief and adequately protect the millions of families dependent on these critical funds. Defendants gave Plaintiffs three hours to look at their proposed order before filing their motion to enjoin themselves. Given the risks here—children losing care, families losing shelter, and safety-net programs shuttering—and the lack of clarity around the Freeze's full scope, Plaintiffs are cautious about resolving this case without all necessary parties being bound by the resolution and necessary assurances as to Defendants' future conduct. Despite Defendants'

suggestions to the contrary, ECF No. 130 at 1-2, Plaintiffs have engaged in two good faith conferrals providing this view.

## II.    Argument

### a.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 26(c), the court can stay discovery for "good cause." Fed. R. Civ. P. 26(c). If a motion to dismiss has been filed, "courts typically consider several factors in determining whether to stay discovery; including: (1) whether a defendant has made a strong showing that the plaintiff's claim is unmeritorious, (2) the breadth of discovery and the burden of responding to it, and (3) the risk of unfair prejudice to the party opposing the stay." *Alapaha View Ltd. v. Prodigy Network, LLC*, No. 20-CV-7572 (VSB), 2021 WL 1893316, at *2 (S.D.N.Y. May 10, 2021) (internal citation omitted). Critically, "'[i]mposition of a stay is not appropriate simply on the basis that a motion to dismiss has been filed.'" *Id.* (quoting *In re Currency Conversion Fee Antitrust Litig.*, No. M21-95, 2002 WL 88278, at *1 (S.D.N.Y. Jan. 22, 2002)).

### b.    Plaintiffs' Claims Are Clearly Meritorious

To obtain a stay, Defendants have to clear a high bar. Defendants must "ma[k]e a strong showing that the plaintiff[s'] claim is unmeritorious." *Alapaha View Ltd.*, 2021 WL 1893316, at *2. Here, the Court has already found that Plaintiffs' claims against the ACF Defendants are likely to succeed, and Plaintiffs' claims against the OMB Defendants are similarly strong.

Defendants contend that, instead, the relevant inquiry for the Court is whether their motion to dismiss is likely to resolve the case. But to start, Defendants cite no comparable case, where, as here, the basis of the motion to dismiss is that Defendants claim to have unilaterally provided complete relief to the Plaintiffs. *See* ECF No. 130 at 2 (citing four cases involving typical motions to dismiss, none of which involve mootness). And permitting a stay of discovery in this circumstance would allow any defendant to evade discovery obligations with which it does not want to comply by purporting to unilaterally proffer relief to a plaintiff, wash its hands, and walk away.

### c.    Defendants' Motion to Dismiss Is Unlikely to Resolve this Case

Defendants move to dismiss this case based on mootness. A case "'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Serv. Emps.*, 567 U.S. 298, 307 (2012)). Here, Defendants have not made this showing, neither with ACF's July 8 letters nor the proposed permanent injunction, for at least four reasons.

***First***, OMB and its Director are Defendants in this action, but the July 8 letters and the proposed order do not even purport to obtain any relief from them. The Administrative Record and limited early discovery have demonstrated that OMB was directly involved in the final agency action at issue in this case (*e.g.*, ECF 91-1, OMB stating "Update: We will be including Colorado for childcare"), which means relief against OMB and its Director are necessary. Defendants'

proposed resolution of this case would be silent as to OMB, and Plaintiffs' proposed resolution would provide relief as to OMB. *See* Exhibit A.

Although Defendants claim that an injunction against HHS will be sufficient because OMB can act solely through HHS, that is simply not how OMB has operated during this Administration. OMB has repeatedly exerted unilateral power to illegally withhold, freeze, or delay funds without the involvement of agencies who administer funding programs. Plaintiffs and thousands of other federal recipients, along with millions of affected Americans, have the experience to prove it. This Court need not "exhibit a naiveté from which ordinary citizens are free." *Dep't of Commerce v. New York*, 588 U.S. 752, 785 (2019) (quoting *United States v. Stanchich*, 550 F.2d 1294, 1300) (2d Cir. 1977)). This is particularly true given that there are explicit indicators in this case that OMB is asserting such undue authority—the President stating that he directed Russell Vought, OMB's Director, to freeze the ACF funds, and the discovery that shows that OMB simply *mandated* the states to be targeted without involving the agency's decision-making at all. ECF No. 121 at ¶¶ 137-143.

There are numerous instances of OMB unilaterally freezing or cutting funding. On September 3, 2025, on the eve of the expiration of certain appropriations, OMB—on its own—published a "special message" rescinding the use of the remainder of the appropriations close enough to the end of the federal fiscal year that Congress was not able to act to reject those rescissions—these are known as "pocket rescissions." Office of Management & Budget, Rescissions Proposals Pursuant to the Congressional Budget and Impoundment Control Act of 1974, 90 Fed. Reg. 42613 (Sept. 3, 2025). OMB implemented these rescissions per the President's instruction to target "Woke, Weaponized, and Wasteful" spending, despite the fact that legislators of both parties and the Government Accountability Office have stated that these rescissions are illegal.[1] In January of 2025, OMB implemented a massive funding freeze through its own memorandum. That memo was followed by an immediate and devastating government-wide freeze of funding involving no decision-making whatsoever from federal agencies who actually administer federal funding—Treasury and the agencies relied on the authority OMB *alone* asserted. *See New York v. Trump*, 171 F.4th 1 (1st Cir. 2026).

If OMB and its Director are not enjoined, they could, the day after a permanent injunction is entered, impose another funding freeze as to these same benefits programs against these same States without violating the Court's order. The current proposal by the Defendants would not provide complete relief. In the absence of any proposal that addresses these serious concerns, including relief as to Defendants who were clearly involved in the decision-making behind the final agency action here, it cannot be that the motion to dismiss could be granted, much less be "potentially dispositive." *Alapaha View Ltd.,* at *2. OMB's absence from Defendants' proposed resolution of this case is fatal to their mootness arguments. Indeed, even if there were "strong

---

[1] The White House, *Historic Pocket Recission Package Eliminates Woke, Weaponized, and Wasteful Spending*, (Aug. 29, 2025), https://www.whitehouse.gov/briefings-statements/2025/08/historic-pocket-rescission-package-eliminates-woke-weaponized-and-wasteful-spending/; Jennifer Scholtes, *OMB nominee 'can't commit' to forgoing 'pocket rescissions' funding gambit this year*, POLITICO (June 16, 2026), *available at* https://www.politico.com/live-updates/2026/06/16/congress/pocket-rescissions-on-the-table-00963376; Government Accountability Office, B-330330.1 (Dec. 10, 2018), *available at* https://www.gao.gov/assets/b-330330.1.pdf.

arguments on both sides," that would still negate any requisite "strong showing" that Plaintiffs' claims are "unmeritorious." *Simpson-Quin v. Montejano*, No. 23-CV-08113 (MMG), 2024 WL 3347040, at *2 (S.D.N.Y. July 9, 2024) (internal citations omitted).

Defendants' contention that Plaintiffs have failed to state a claim against OMB and Director Vought is baffling. Plaintiffs have alleged, including based on Defendants' own evidence and admissions, that OMB was a decision-maker in the same final agency action at issue in the case—the ACF Funding Freeze.

*Second*, the July 8 letters and the proposed judgment do not address Defendants' prospective authority to issue the extraordinarily burdensome data demands challenged in this case that sought, among other thing, the "complete universe" of Plaintiffs' recipient data. The Court already found these data demands to be "onerous and unrealistic," ECF No. 80 at 45, and Defendants make no commitment to avoid such demands in the future, including as a way to politically target the Plaintiff States again. While they "rescind[]" the "data requests and information requirements" made in January, the proposed judgment lacks any specific commitments as to what data may be demanded in the future. ECF No. 115-1 at 1.

*Third*, the July 8 letters and the proposed judgment do not address, either retrospectively or prospectively, the targeting of funding to Plaintiff States on the basis of impermissible factors, such as political affiliation or so-called sanctuary jurisdiction status. These claims are central to this case, and critical to protecting Plaintiffs.

*Fourth,* even if the Court concluded that Defendants' proposed permanent injunction resolved all disputed issues in this case, which it does not, this Court would still have jurisdiction over this suit under the voluntary cessation doctrine. A party's decision to stop "a challenged practice does not deprive a federal court of its power to determine [its] legality." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Under the voluntary cessation exception to mootness, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id*. at 190. Defendants must show that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Doe v. McDonald*, 128 F.4th 379, 385 (2d Cir. 2025).

Defendants fall well short of this burden. It is far from clear that OMB will not direct future freezes towards the Plaintiff States based on politics.[2] Defendants cannot say such a risk has been

---

[2] There are numerous instances where the government has admitted to targeting funding for partisan reasons. *See, e.g.*, *City of St. Paul v. Wright*, 816 F.Supp.3d 65, 69 (D.D.C. 2026) (Defendants admit that "[a] primary reason for the selection of which DOE grant termination decisions were included in the October 2025 notice tranche was whether the grantee was located in a 'Blue State.'"); *New York v. Noem*, 812 F. Supp. 3d 321, 335 (S.D.N.Y. 2025) (enjoining a policy removing funding from New York and transferring it to other states on the eve of an expiring appropriation where the government admitted that anti-terrorism funds were denied based on New York being a supposed "sanctuary" jurisdiction that did not use its limited law enforcement resources to advance federal immigration policy); *Thakur v. Trump*, ECF No. 211-6, 25-CV-4737 (N.D. Cal.) ("DOE accepts that neither the inclusion of the ARCHES grant nor any other grants in the October notice tranche was based on any programmatic, statutory, cost-reduction, or

"irrevocably eradicated," while at the same time providing Plaintiffs no relief as to OMB at all. Indeed, the timing of Defendants' mootness strategy strongly suggests that Defendants are acting "strategically to moot the case by voluntarily ceasing [their] allegedly unlawful conduct." *Town of Newburgh v. Newburgh EOM LLC*, 151 F.4th 96, 102 (2d Cir. 2025); *see also Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 242 (2024) (finding case not moot where plaintiff alleged he was targeted for "constitutionally impermissible reasons"). Defendants issued the letters that purportedly mooted this case forty-eight hours before they were scheduled to appear in Court at a hearing called by Judge Tarnofsky regarding documents relevant to Plaintiffs' claims that Defendants had not identified or produced to Plaintiffs. *See* ECF Nos. 108-110, 112. These defects in Defendants' mootness arguments make it unlikely that Defendants' pending motion will resolve this case.

### d.  The Limited Breadth and Burden of Discovery Weigh Against a Stay

Furthermore, Defendants have already represented that they have been actively gathering responsive materials—without having previously raised a breadth or burden concern as to that discovery and, to the contrary, affirmatively agreeing to conduct. This alone strongly indicates that the limited discovery proceeding in this case is not particularly broad or burdensome.

The ACF Funding Freeze was apparently implemented on short notice and lasted for a matter of days before it was enjoined: the entire Administrative Record concerns a twelve-day period from the December 26, 2025 YouTube video to the January 6, 2026 decision memos. The idea that 22 document requests about a policy that was implemented for only a very short period of time in the last year are unduly burdensome strains credulity.

Defendants have thus far produced a single email chain.  This is not a scenario like *Alapaha View Ltd. v. Prodigy Network, LLC*, which involved, as Defendants quote, discovery "spanning over multiple years." No. 20-CV-7572 (VSB), 2021 WL 1893316, at *2 (S.D.N.Y. May 10, 2021). If discovery of this "magnitude" is overly broad and burdensome, ECF No. 130 at 3, then almost any case involving discovery would present overly broad and burdensome requests.  As another court in this district has noted: "conclusory statements about broad discovery" that "do not move

---

performance-based factor." "DOE accepts that the inclusion of grants in the October notice tranche was based solely on the political identity of the grant recipient's state, i.e., whether the recipient's location and/or place of performance was in a Blue State or a non-Blue State." "DOE will not contend that it looked beyond the prime grantee(s) to consider the political identity or geographic distribution of downstream beneficiaries of the grant funds."); Similarly, there are many instances where courts, including this Court, have concluded that the government has engaged in political targeting. *See, e.g.*, *In re Grand Jury Subpoenas*, ECF No. 1, 26-mc-43 (D. Minn. June 22, 2026) ("Initiating a criminal investigation in order to harass political opponents or to coerce them into taking official action-particularly official action that the federal government cannot directly require those political opponents to take-is a blatantly unlawful and unethical use the grand-jury process."); *New York v. ACF*, 26-CV-172, 2026 WL 673848 at *19 (S.D.N.Y. Mar. 10, 2026) ("Defendants' public statement provides an alternative, potentially arbitrary reason for the termination of these grants: partisan targeting."); *Illinois v. Noem*, 813 F. Supp. 3d 282, 305 (D.R.I. 2025) ("The Court has found that Defendants expressly considered sanctuary status when reallocating grant funding. . . . None of the statutory factors for evaluating relative risk encompass recipients' civil immigration priorities . . . . ).

beyond generally describing the costs of participating in standard civil discovery" for a comparable case, do not support a conclusion of overbreadth or burden. *RBG Mgmt. Corp. v. Vill. Super Mkt., Inc.*, No. 22-CV-07996 (JLR), 2023 WL 1996920, at *2 (S.D.N.Y. Jan. 24, 2023). The limited discovery that is being conducted in this case is, at a minimum, no different, if not far more minimal, than any extra-record discovery conducted in any other APA case where the administrative record produced is so obviously lacking. And, regardless, the stakes of this case are so extraordinarily high, and the administrative record so empty, that the basic discovery the Parties have agreed to should be the floor, not the ceiling.

### e.  A Stay will Significantly Prejudice Plaintiffs

Plaintiffs would be prejudiced by a stay here, given the seriousness of the conduct at issue and Plaintiffs' reasonable reliance on Defendants' prior agreements to provide relevant documents and information. The discovery Plaintiffs seek in this case is relevant to the crucial issue of how and why these states were selected for a horribly disruptive funding freeze for programs families and children rely on every day. Such discovery includes information regarding OMB's involvement and the political machinations motivating the freeze. Defendants, multiple times over, have agreed to provide discovery in this case. Now, suddenly, Defendants have withdrawn their discovery agreement and argue Plaintiffs must be left in the dark as to the details of the $10 billion freeze.

It is by definition prejudicial for Defendants to attempt to dispatch this case with conclusory assertions about OMB's lack of involvement and the baselessness of Plaintiffs' concerns. The very purpose of discovery is to investigate such involvement and to discover how the decision was made. Plaintiffs will certainly be prejudiced by being prevented from substantiating OMB's involvement before a Motion to Dismiss on the grounds of mootness (which very much involves OMB) is decided. Defendants' unlawful conduct needs to be uncovered and addressed with fully effective permanent relief as soon as possible.

### f.  Requiring Plaintiffs to Move to Compel Discovery Is Unwarranted

Requiring Plaintiffs to move to compel discovery to which Defendants consented is not warranted in the absence of a stay. For the same reasons as discovery should not be stayed, Plaintiffs should not be forced to compel discovery already underway. Defendants should not be able to simply withdraw their agreement to discovery, particularly when their proposed resolution of this case is so deficient.

## III.    Conclusion

In sum, Plaintiffs' position regarding the continuation of this case and discovery and the risk they face notwithstanding Defendants' purported resolution is well-founded. Plaintiffs respectfully request that the Defendants' motion be denied.

Sincerely,

_/s/Rabia Muqaddam_
Rabia Muqaddam
_Attorney for Plaintiff State of New York_