**Office of the New York State Attorney General**

**Letitia James**
**Attorney General**

September 9, 2026

Honorable Robyn Tarnofsky
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: *New York v. Administration for Children and Families, Case No. 26-cv-00172*

Dear Judge Tarnofsky,

Plaintiffs respectfully submit this letter motion to compel discovery. Defendants are required to produce the "whole" administrative record, 5 U.S.C. § 706, which must disclose the agency's actual reasoning and all information directly or indirectly considered by the agency in reaching its decisions. The administrative record produced by the HHS Defendants[1] is quite apparently deficient: it included only the letters to the states, two post-hoc memos (with attachments), and a YouTube video, and it was subsequently supplemented by only a single email chain. The letters and post-hoc memos, created after the decisions were made, necessarily are not the agency's analysis of information it considered before reaching its decision. And a YouTube video about alleged fraud in one particular program in one state cannot shed light on how Plaintiffs were selected for targeting, why a broad range of ACF funding programs were targeted, or the need and purpose for the data demands, among other issues. The single email chain merely confirms additional discovery is warranted. It reveals that decisions had already been made by January 5 about targeting certain states but contains no information about the lead-up to those decisions.

Months ago, Defendants agreed to discovery after reviewing Plaintiffs' draft motion to compel. Defendants' subsequent desire to avoid discovery—likely after seeing some of the documents they would have to produce—is no reason to absolve them of their obligations. Defendants argue circumstances have changed given their pending motion to dismiss on grounds of mootness. But those arguments are not grounds to refuse to conduct discovery, as this Court has already concluded. Further, there is good reason to expect that the Court will rule that this case is not moot for the reasons outlined in Plaintiffs' opposition to the motion to dismiss. Plaintiffs now seek an order directing Defendants to produce certain discovery, including discovery to which

[1] HHS Defendants refers to all defendants other than the Office of Management and Budget and Russell Vought, its director.

Defendants previously agreed, without further delay.[2] Specifically, Plaintiffs request that responsive documents be produced through weekly rolling productions starting no later than September 28, 2026. Plaintiffs further request that the document responsive to Plaintiffs' Request for Production No. 1—which Defendants have clearly already identified—be produced by Defendants within one business day of entry of an order granting Plaintiffs' motion to compel.

## BACKGROUND

Plaintiffs filed this case on January 8, 2026, alleging that the HHS Defendants had violated the APA and the U.S. Constitution when they froze billions in money intended to benefit children and families in the five Plaintiff States. ECF No. 1. Defendants maintained that notwithstanding Defendants' own public announcements calling their actions a "freeze," there was no freeze, only something they refer to as a "temporary restricted drawdown," and that this action was implemented against the Plaintiff States due to purported concerns about fraud. The Court preliminarily enjoined the freeze and accompanying data demands on February 8, 2026, ECF No. 71, issuing an opinion on March 10, 2026, ECF No. 80. It found in its preliminary assessment that the "agency's attempts to recharacterize their decision as a narrowly fashioned temporary remedy to address their concerns about programmatic fraud" was "merely a post hoc litigation argument." *Id*. at 40.

On April 1, the HHS Defendants produced an administrative record composed of the letters to the States, two *post hoc* decision memos (unsigned, with attachments[3]) and a single YouTube video featuring allegations regarding fraudulent daycare centers in Minnesota. ECF No. 85. After Plaintiffs sent a letter to Defendants stating Plaintiffs' position that the Administrative Record was substantially incomplete, Defendants agreed to conduct an additional search for documents in the Administrative Record and found one more: an email chain over which the Parties subsequently litigated the redactions. See ECF No. 91-1.

---

[2] In addition to an order compelling Defendants to produce discovery they had agreed to produce, Plaintiffs request a decision on one discovery dispute. Discovery conferences between the Parties have crystallized certain discovery disputes, which are described at ECF No. 125. One of the disputes concerns Plaintiffs' request that Defendant Russell Vought, the director of OMB, be included as a custodian. Defendants submitted an interrogatory response stating that Vought "held a decision-making role and/or directly participated in HHS' deliberations with respect to" the freeze. Defendants have refused to include Vought as a custodian. ECF No. 125-4 at 5-6. A decision now will prevent further discovery delays later. Plaintiffs' argument in support of adding Vought is contained in ECF No. 125.

[3] These memos contain attachments that pre-date the decisions to withhold funds. But there is nothing in the Record to indicate that the Defendants considered those attachments prior to those decisions or how they did so, especially because the attachments do not contain new, recent information about Plaintiffs' administration of the programs. And the memos themselves are clear that they post-dated the decisionmaking. *See* ECF No. 85-1 at *85, ACF000229 (ACF "*has* temporarily withheld" funds); ECF No. 85 at *42, ACF000034 ("ACF *has* temporarily restricted the drawdown of funds") (emphasis added).

Plaintiffs explained to Defendants that the Record was still inadequate and sent Defendants their portion of a motion to compel discovery. Subsequently, the Parties "agree[d] that Plaintiffs may conduct some discovery in this matter" and that "the parties w[ould] confer regarding the scope of discovery." ECF No. 89. Judge Broderick "so ordered" this agreement the following day. ECF No. 90.

Following a request from Defendants that Plaintiffs serve formal requests for production and interrogatories, Plaintiffs did so on May 15, *see* ECF No. 125-1 to 125-4. After Defendants reviewed them, the Parties conferred on scope. The Parties agreed, and then memorialized to the Court, that "Defendants took the position that the following requests are outside of the scope of permissible discovery in this APA case: (a) three requests and one definition, to the extent they each seek documents and communications after January 6, 2026; and (b) Plaintiffs' instruction that Defendants search documents within the possession, custody, or control of the Office of Management and Budget." ECF No. 100. With respect to the remaining requests, Defendants stated during the meet and confer that they would respond or object pursuant to the Federal Rules of Civil Procedure and *would not object on the basis that they are outside of the scope of discovery in this case*." *Id.* (emphasis added). And, as to OMB, the Parties later reached agreement that Defendants *would* search one OMB custodian. *See* ECF No. 125-4 at 10.

Defendants served responses and objections to Plaintiffs' discovery requests on June 15, 2026; these Responses and Objections raised a number of generic objections, however, Defendants agreed in all cases, other than those where Defendants had previously maintained objections as to scope, that they would produce responsive documents. *See* ECF Nos. 125-3, 125-4.

The Parties thereafter conferred on discovery issues a number of times and exchanged correspondence. The Parties agreed on both custodians and search terms for an initial document search: the custodians listed in Defendants' response to Interrogatory 5 (including one OMB custodian) and the search terms in Exhibit A to Plaintiffs' request (with minor non-substantive modifications by Defendants). See ECF No. 125-4 at 10 (custodians), ECF No. 125-1 at 12 (search terms). Defendants represented to Plaintiffs in late June that, in connection with this agreement, they had "started collecting documents and are aiming to have a production to you by the end of July."

Several weeks before they were expected to produce discovery, Defendants purported to "rescind" the January 5 and 6 letters, argued the case was moot, and, later, also sought entry of a permanent injunction against themselves. The Parties appeared before this Court on July 10. At the conference, the Court declined to stay discovery and directed that "Defendants may make a letter-motion for a stay after filing a motion to dismiss." ECF No. 118. Given that discovery was not stayed, later that day, Plaintiffs notified Defendants of their view that certain additional discovery disputes—separate from the agreed-upon search and production—had been crystallized and that Plaintiffs intended to bring those to the Court shortly unless Defendants wished to confer further on those issues. They also notified Defendants that day that, in line with prior discussions between the Parties, Plaintiffs were considering whether to amend their complaint to add OMB and its director as Defendants and would do so within a week. Plaintiffs filed their amended complaint adding OMB and its director on July 14. ECF No. 121.

On July 17, Plaintiffs filed a letter seeking the Court's intervention to resolve disputes related to Plaintiffs' discovery requests and ensure a full production, as they had previewed to Defendants a week earlier. ECF No. 125.

On July 27, Defendants filed a motion to dismiss (which remains pending), ECF No. 129, and motion to stay discovery, ECF No. 130. The Court denied the motion to stay discovery on August 6. ECF No. 135. The Court held a scheduling conference on August 27 and set a September 9 deadline for the filing of any motion to compel discovery. ECF No. 139. On September 1, Defendants informed Plaintiffs that they would not produce discovery without an order compelling them to do so.

## ARGUMENT

### I. Discovery is required to properly supplement and complete the defective administrative record.

The Administrative Record that Defendants produced in this case is deficient in multiple respects, as described below, and Defendants must supplement it. "[I]n order to permit meaningful judicial review, an agency must disclose the basis of its action." *Dep't of Com. v. New York*, 588 U.S. 752, 780 (2019). The APA provides that the "court shall review the whole record," 5 U.S.C. § 706, which "includes all materials directly or indirectly considered by agency decisionmakers." *Authors Guild v. Nat'l Endowment for the Humans*., No. 25-cv-3657, 2025 WL 3678097, *4 (S.D.N.Y. Dec. 18, 2025).

A court may order an agency to complete an Administrative Record when the initial production was deficient. *Id*. at *7. "[T]o prevail on a motion to compel completion of the administrative record, a plaintiff need only put forth concrete evidence and identify reasonable, non-speculative grounds for its belief that documents were considered by the agency and not included in the record." *Id.* at *5 (quotation omitted). In addition, courts may order supplementation of the record. "[W]hen the agency action cannot be adequately explained in the record it compiled, the court's consideration of evidence outside the agency's administrative record is not only warranted, but necessary to a meaningful judicial review of the agency's action." *Tummino v. Hamburg*, 936 F. Supp. 2d 162, 196 (E.D.N.Y. 2013). Completion and supplementation are appropriate here because the deficiencies in the Administrative Record are manifest. "As the AR currently stands, there is virtually *no* reasoning backing the agency's decision-making process reflected in the record." *New York v. McMahon*, No. 25-10601-MJJ, 2026 WL 622484, at *6 (D. Mass. Feb. 11, 2026).

Plaintiffs have already attempted to obtain a complete record through negotiated conferral with Defendants and Defendants' second administrative record production only yielded a single further document and failed to address the many omissions identified by Plaintiffs. Furthermore, this is not a typical APA case. Instead, this case involves concrete evidence of an improper agency motive with pretextual reasons given for the agency action, circumstances that routinely warrant extra-record discovery. *Authors Guild*, 2025 WL 3678097 at *9. Thus, Plaintiffs are entitled to an order compelling production.

As detailed below, Plaintiffs seek a Court order requiring Defendants to respond to the discovery requests Plaintiffs already served. Defendants already agreed to provide much of this discovery prior to withdrawing that agreement. Such an order is appropriate because it is necessary to complete the deficient administrative record and, independently, based on Defendants' demonstrated bad faith and improper motive in enacting the freeze which lacked any formal findings.

**A. Defendants' administrative record fails to explain the Agencies' actions.**

The Record that Defendants have provided here is deficient many times over, comprised of only the letters informing Plaintiff States of the funding freeze, two memoranda drafted *after* the freeze had started (with attachments), a YouTube video by a content creator, and a single email chain. The Record does not contain information regarding the key aspects of Defendants' decisions. Examples include the following:

- The Record fails to include any information related to Defendants' initial decision to withhold funds from all States or its subsequent decision to narrow this withholding to only Plaintiff States. Defendants announced to the press on December 30, 2025, that they had "frozen all child care payments to the state of Minnesota," and on December 31, 2025, that the administration would be freezing childcare payments to *all* states.[4] Then, on January 5, 2026, HHS publicly announced that it was cutting off funding to "Democrat-led states and Governors." Am. Compl. ¶ 50. The Record does not shed light on the December 30 and December 31 decisions to freeze childcare funding and the January 5 decision announcement narrowing the affected states to only the Plaintiff States. Indeed, the Record does not even include the December 30, 2025 or December 31, 2025 public announcements themselves, let alone any agency record preceding those announcements or reflecting the basis for them.

- The Record fails to fully identify the decisionmaker(s) of the January 5 and 6 Letters, whether any briefings occurred with these decisionmakers at which additional information was provided, and how and when any decisions were made and communicated. For example, while the decision memos in the Record indicate that a decision was provided to Secretary Kennedy, nothing in the Record indicates whether the Secretary approved that decision, and one of the memos appears to simultaneously seek the approval of an unspecified Assistant Secretary. *See* ACF 000033-000037 (January 6, 2026 decision memo to Secretary Robert F. Kennedy, Jr., concerning Minnesota's Temporary Restricted Drawdown); ACF 000229-000232 (January 6, 2026 decision memo to Secretary Robert F. Kennedy, Jr., concerning California, Colorado, Illinois, and New York's Temporary Restricted Drawdown). Defendants' Interrogatory Responses have confirmed that a number of individuals "held a decision-making role

[4] Am. Compl. ¶ 43; ABC News, HHS freezing child care payments to all states until they prove funds 'being spent legitimately,' ABC News, Dec. 31, 2025, https://abc7.com/post/hhs-says-freezing-child-care-payments-minnesota-fraud-allegations/18335717/.

and/or directly participated in" the decisionmaking for whom the Record shows absolutely nothing about their involvement. *See, e.g.*, ECF No. 125-4 at 5-6.

- The Record fails to include any information related to ACF's initial decision to impose the temporary restricted drawdown for Minnesota CCDF, which is particularly concerning because the letter to Minnesota freezing CCDF funds was dated January 5, 2026, and the approval memo was dated January 6, 2026.

- The Record fails to address ACF's decision to impose enormous data requests on Plaintiff States, providing only a summary description of a request for information about fiscal control and accounting procedures.

- The Record fails to explain what "additional documentation" the January 5 and 6 Letters sought to require Plaintiff States to submit "with [their] drawdown requests that the agency [would] review," what review was planned for such documentation, and the import of any such review. Tr. 9:11-19; see also Tr. 16:11-21 ("some sort of documentation"); Tr. 40:5-18 ("additional steps in the process of drawing down of funds" that Defendants were "attempting to implement"). The Record likewise fails to include guidance drafted by ACF to Plaintiff States California, Colorado, Illinois and New York, as Defendants described in ECF No. 54, ¶ 37 and ECF No. 66, ¶ 36.

- The Record does not contain any information to allow the Court to resolve the key question of what "additional steps in the process of drawing down of funds" Defendants stated they were "attempting to implement" in issuing the January 5 and 6 letters. Ex. C, PI Tr. 40:5-18; *see also* ECF No. 54, ¶ 37, ECF No. 66, ¶ 36. As the Court noted in its preliminary injunction decision, Defendants have offered various characterizations of their actions: "as a funding freeze, a drawdown restriction, or a 'monitoring' of Plaintiff States' use of funds," ECF No. 80 at 34. The Record does not contain records that would explain those actions, for example, the payment instructions and guidance drafted by ACF, even though they have stated that such records exist. *See* Ex. C, PI Tr. 9:2-19, 50:19-51:25; ECF No. 66 ¶ 36.

- The Record fails to provide any information related to "enhanced defend the spend," including how and when Plaintiffs were notified via any "formal" or informal notification, Tr. 36:11-37:10, or how the "temporary restricted drawdown" referenced in the letters differs from "enhanced defend the spend," see, e.g., Tr. 7:3-10; see also ECF No. 66 at ¶¶ 23-24.

- The Record fails to include information related to the directives of the President, OMB, and other agencies to HHS or ACF to withhold funds from Plaintiff States, other than the email chain. Defendants' statements as well as the President's remarks show that the decision to target Plaintiff States was initiated by the President, directed at least by OMB and ACF via the January 5 and 6 letters. More recent remarks by the President show that he directed OMB to target Plaintiff States' childcare funding.[5] The email

[5] "I said to Russell [Vought], don't send any money for daycare because the United States can't take care of daycare, that has to be up to a state." President Trump Holds Easter Lunch At The

chain produced by Defendants shows that as of Monday, January 5, 2026, at 9:13 a.m., decisions had been made to target the Plaintiff States and OMB was involved in those decisions. Yet, the Record contains no information about what occurred before January 5.

- The Record fails to include any information as to why Defendants targeted Plaintiffs States' funding. As mentioned, HHS's December 31, 2025 statements indicated that the agency initially decided to freeze payments to all states. The email chain contains an email identifying the Plaintiff States as "sanctuary" jurisdictions, but that email was sent after the decisions already had been made. And it contains no information for why Colorado was being added, only that it would be included in the funding freeze. These omissions are particularly glaring in light of other evidence of targeting that has been produced in separate lawsuits against federal agency defendants involving decisionmaking from the relevant frame. For example, Plaintiff State Colorado has obtained, in separate litigation, a December 15, 2025 communication in which White House staff scheduled a call with a number of federal agencies asking each agency to come prepared to discuss how they could target Colorado funding.[6] And, in another lawsuit, the Department of Energy has stipulated that in October 2025, it based grant termination decisions solely on the political identity of the grant recipient's state (namely, terminating grants associated with "blue" states while sparing "red" state grants).[7]

The APA requires more. An agency must disclose "both the agency's reasoning and the information it considered." *Authors Guild*, 2025 WL 3678097, at *5.

To remedy this deficient administrative record, the Court should compel Defendants' responses to the limited discovery requests Plaintiffs have already served. *Authors Guild*, 2025 WL 3678097, at *15. Plaintiffs' document requests seek documents and communications relating to the agencies' decisionmaking process, the information on which the agencies relied, and the steps the agencies took to implement their scheme. See ECF No. 125-1. Appropriate responses to these requests will fill the gaps Defendants have created through their sparse production.

---

White House With Hours Until Iran Address, Forbes Breaking News (April 1, 2026), available at, https://youtu.be/u-Ay6bTN1yU?t=1019.

[6] *Colorado v. Trump*, Case No. 1:25-cv-03428-RBJ, ECF. No. 106-2 (D. Colo. Aug. 19, 2026), available at https://wp-cpr.s3.amazonaws.com/uploads/2026/08/US_DIS_COD_1_25cv3428_106_Exhibit-1_106_2.pdf.

[7] *Thakur v. Trump*, Case No. 3:25-cv-04737-RL, ECF No. 211-6 (N.D. Cal. July 15, 2026), available at https://storage.courtlistener.com/recap/gov.uscourts.cand.450653/gov.uscourts.cand.450653.211.6.pdf.

Further, the need for a complete record is particularly strong here, where Plaintiffs have also asserted constitutional claims, "the presence of" which "makes it all the more imperative that the record be completed to include the materials relied upon by all agencies and officials who participated in the ultimate decision." *Authors Guild*, 2025 WL 3678097, at 14.

**B. Extra-record discovery is particularly appropriate where an agency's intent and bad faith are at issue.**

Furthermore, this is a case where the dispute both involves (1) a showing of "bad faith or improper behavior on the part of agency decisionmakers" and (2) the "absence of formal administrative findings," such that "investigation" is "necessary in order to determine the reasons for the agency's choice." *Nat'l Audubon Soc. v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997). Under both circumstances, *extra-record* discovery is appropriate and necessary to actually explain the agency's actions, even if a complete administrative record had been provided. *Id*.

Plaintiffs have shown bad faith and improper motives in this instance with evidence from *outside* the record showing that the Plaintiff States were selected for cruel cuts to child care funding for partisan reasons. Such evidence includes statements by the President mocking the leaders of the Plaintiff States, claiming that "Governor Walz has destroyed the State of Minnesota, but other like Governor Newscum, JB Pritzker, and Kathy Hochul, have done, in my opinion, and even more dishonest and incompetent job." ECF No. 40-7 at 5, and explaining that the administration was "going to have Walz go pay" and adding "we're not going to pay California, and we're not going to pay Illinois, with the big slob of a governor that they have." ECF No. 40-8 at 28. And leaders from within the Defendant agency confirmed the partisan nature of the freeze, as the HHS General Counsel described the targeted states as "Democrat-led states," ECF No. 40-7 at 9, and the HHS deputy secretary's explanation that they took action against "Five blue states." *Id*. at 13. The Court has already recognized such evidence of partisan targeting, observing when preliminarily enjoining the freeze that "Defendants' public statement provides an alternative, potentially arbitrary reason for the termination of these grants: partisan targeting." ECF No. 80 at 43.

Despite public evidence of partisanship motivating these cuts, Defendants concealed this motive when initially producing their Administrative Record, including only boilerplate statements that the Defendants were "concerned by the potential for extensive and systematic fraud" in child care services, *see, e.g.*, ECF No. 85 at 9, or that there was a need for compliance with "federal requirements" for the child care funding programs. *E.g.*, id. at 41. In the Record, Defendants provided such generalities without any concrete evidence of fraud, nor any identification of the "requirements" that allegedly had not been met. The single email chain Defendants subsequently produced under Plaintiffs' exhortation that they complete this record almost immediately showed the involvement of OMB and the targeting of Plaintiffs on the express basis that Plaintiffs made the sovereign decision not to use their limited law enforcement resources to assist with federal immigration enforcement (*see* ECF No. 91-1)—an explanation that appears nowhere in the letters that effectuated the Freeze. Plaintiffs' discovery requests will merely gather evidence showing the true reasons for Defendants' actions and that the announced reasons were pretextual. Defendants have conceded that they have additional information responsive to those requests, and the discovery they have produced thus far, including the identification of a number of custodians, already shows that there is more critical information being withheld.

Courts need not defer to obvious agency pretext. They are "not required to exhibit a naiveté from which ordinary citizens are free." *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019). Instead, where evidence shows the agency's *actual* reasons for acting are "unrelated" to the authority it invoked, such that the stated reason for acting "seems to have been contrived," extra-record discovery is appropriate. *Id.* The sharp disconnect between Defendants' public statements acknowledging the partisan motives at work here, their internal email focusing on "Sanctuary" policies, and their formal record production, which demonstrates an attempt to paper over those improper motives, is exactly the kind of scenario where extra-record discovery is warranted.

Furthermore, even if there were no public evidence of political targeting, the lack of any "administrative findings" regarding the selection of the five Plaintiff States for adverse action warrants additional discovery. *Nat'l Audubon Soc.,* 132 F.3d at 14. Defendants made a series of inflammatory statements about the integrity of Plaintiff States' social service administration, yet the record lacks even a *single finding of fraud* that any Defendant made prior to initiating the funding freeze, or any effort for comparative analysis between these states and any others. Defendants provided only news stories regarding past investigations, apparently collected by the agency *after* funds were already frozen, as a post-hoc justification. But mere stories about fraud can be found in any state, as Plaintiffs have shown before. *See, e.g.*, ECF No. 40-8 at 21-26 (describing $100 million child care fraud scandal in Mississippi). The fact the core factual allegation that purportedly justified the freeze in only five particular states is entirely unsubstantiated is a further reason for extra-record discovery into the actual "reasons for the agency's choice." *Nat'l Audubon Soc.*, 132 F.3d at 14.

## II. Defendants have already conceded the appropriateness of much of the necessary discovery in this case, and Plaintiffs are prejudiced by their about-face.

Given that the Record is deficient on its face and the evidence of Defendants' motives make this case particularly suited to extra-record discovery, it is no surprise that Defendants *consistently agreed* to conduct discovery in this case before suddenly withdrawing such an agreement in an act of gamesmanship. As this Court has already found, Plaintiffs will be prejudiced by Defendants' continued delay in producing discovery.

The nature of Defendants' agreement was set out in the May 11, 2026 joint status report, in which the Parties reported that they had agreed to limited discovery. ECF No. 89. At the time of that agreement, Defendants *never raised* the argument that the nature of this case excluded discovery entirely. And in reliance on the Parties' *joint* representations in that letter, the Court "so-ordered" and endorsed the agreement on June 12, 2026. ECF No. 90. Accordingly, as noted above, Plaintiffs served document requests and interrogatories on Defendants. The parties conferred a number of times and agreed on both custodians and search terms for an initial document search. Defendants represented to Plaintiffs in late June that, in connection with this agreement, they had "started collecting documents and are aiming to have a production to you by the end of July."

Defendants cannot simply ignore the fact they made these repeated representations to both Plaintiffs and the Court. "Discovery is not a matter of gamesmanship nor conducted like a game of chess." *Gordon v. Target Corp.*, 318 F.R.D. 242, 246 (E.D.N.Y. 2016). Plaintiffs have been prejudiced by Defendants' tactics, as they would have moved for an order to supplement the

deficient administrative record or to seek extra-record discovery months ago had Defendants ever even hinted that one would be necessary here.

The only basis Defendants have provided to reverse their agreement is their argument that they have a pending motion to dismiss on the grounds of mootness. But the Court has already considered—and rejected—this argument that discovery should cease for that reason. ECF No. 135 at 3 (denying motion to stay discovery pending resolution of mootness issue, and explaining "there would be prejudice to Plaintiffs in delaying discovery, which counsels against permitting a stay"). Defendants' stay motion necessarily presumed the existence of a discovery obligation—the obligation they were seeking to stay. Defendants never objected to the Court's denial of the stay, nor sought to reconsider that motion. Instead, they are simply acting as if the court *granted* that motion, and now require an additional court order before they produce documents in this case. They have no sound basis for such conduct.

## CONCLUSION

For the foregoing reasons, Plaintiff States respectfully request that the Court compel Defendants to include Vought as a custodian and produce the discovery they previously agreed to produce. Plaintiffs also request that the Court order Defendants to produce responsive documents through weekly rolling productions starting no later than September 28, 2026, and to produce the document responsive to Plaintiffs' Request for Production No. 1 within 1 business day of entry of an order granting this Motion.

Dated: September 9, 2026

Respectfully submitted,

**LETITIA JAMES**
Attorney General for the State of New York

By: */s/ Rabia Muqaddam*
Rabia Muqaddam
*Chief Counsel for Federal Initiatives*
Jessica Ranucci
Molly Thomas-Jensen
*Special Counsel*
Victoria Ochoa
*Assistant Attorney General*
28 Liberty St.
New York, NY 10005
(212) 416-8333
rabia.muqaddam@ag.ny.gov
jessica.ranucci@ag.ny.gov
molly.thomas-jensen@ag.ny.gov
victoria.ochoa@ag.ny.gov

*Attorneys for the State of New York*

**ROB BONTA**
Attorney General for the State of California

By: */s/ Daniel C. Sheehan*
Daniel C. Sheehan*
*Deputy Attorney General*
Paul Stein*
Christine Chuang
*Supervising Deputy Attorneys General*
Jesse Basbaum
Alexis Piazza
Harald Kirn
James Bowen
*Deputy Attorneys General*
California Department of Justice
300 South Spring Street, Los Angeles, CA 90013
(213) 269-6078
Daniel.Sheehan@doj.ca.gov

*Attorneys for the State of California*

**PHILIP J. WEISER**
Attorney General for the State of Colorado

By: */s/ David Moskowitz*
David Moskowitz
*Deputy Solicitor General*
Nora Passamaneck
*Senior Assistant Attorney General*
Colorado Department of Law
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
david.moskowitz@coag.gov

*Attorneys for the State of Colorado*

**KWAME RAOUL**
Attorney General of the State of Illinois

By: */s/ Vikas Didwania*
Vikas Didwania
*Complex Litigation Counsel*
Sherief Gaber
Michael Tresnowski
*Assistant Attorneys General*
Office of the Illinois Attorney General
115 South LaSalle Street
31st Floor
Chicago, Illinois 60603
(312) 814-3000
Vikas.Didwania@ilag.gov
Sherief.Gaber@ilag.gov
Michael.Tresnowski@ilag.gov

*Attorneys for the State of Illinois*

**KEITH ELLISON**
Attorney General of the State of Minnesota
By: */s/ Lindsey E. Middlecamp*
Lindsey E. Middlecamp
Special Counsel, Rule of Law
445 Minnesota Street, Suite 600
St. Paul, Minnesota, 55101
(651) 300-0711
Lindsey.middlecamp@ag.state.mn.us

*Attorneys for the State of Minnesota*

*Pro hac vice application forthcoming