**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

September 14, 2026

**Via ECF**
Honorable Robyn F. Tarnofsky
United States Magistrate Judge
500 Pearl Street
New York, New York 10007

**Re: *State of New York et al v. Administration for Children and Families et al*, 26 Civ. 172 (VSB) (RFT)**

Dear Judge Tarnofsky:

This Office represents Defendants in the above-referenced action under the Administrative Procedure Act ("APA"). Defendants respectfully submit this letter in opposition to Plaintiffs' letter motion to compel discovery. ECF No. 143 ("Mot."). As detailed below, Plaintiffs filed an APA action. In an APA action, Plaintiffs are only entitled to information in the administrative record which Defendants have filed. In some exceptional cases, Courts have allowed for extra-record discovery. This is not one of those cases, and Plaintiffs have not met their burden to demonstrate that it is. If Plaintiffs take the position that the administrative record as filed does not support the agency action, they may move for summary judgment; they are not, however, entitled to any discovery. Thus, the Court should deny Plaintiffs' letter motion to compel discovery.

**Background**

On February 26, 2025, President Donald J. Trump issued Executive Order ("EO") 14222, Implementing the President's the Department of Government Efficiency ("DOGE") Cost Efficiency Initiative. https://www.federalregister.gov/documents/2025/03/03/2025-03527/implementing-the-presidents-department-of-government-efficiency-cost-efficiency-initiative. As part of its implementation of EO 14222, the Department of Health and Human Services ("HHS") implemented a mechanism called Defend the Spend in March 2025. Declaration of Melissa Bruce, ECF No. 55 ("Bruce Decl."), ¶ 10. To implement Defend the Spend, HHS, through the Administration for Children and Families ("ACF"), imposed temporary restricted drawdowns and data requests for three funding programs for five states. Bruce Decl. ¶ 15; Amended Declaration of Reese Cody Inman, ECF No. 66 ("Inman Decl."), ¶¶ 24, 33–35. Specifically, these new requests and restrictions were applied to the Child Care Development Fund ("CCDF"), Temporary Assistance for Needy Families ("TANF"), and the Social Services Block Grant ("SSBG") (together, the "Programs"), for the following five states who are the Plaintiffs in this action: California, Colorado, Illinois, Minnesota, and New York. Inman Decl. ¶¶ 33–35.

Between January 5 and January 6, 2026, ACF sent letters to New York, California, Colorado, Illinois, and Minnesota, notifying each state that they would be placed on temporary

restricted drawdowns for three grant programs, CCDF, SSBG, and TANF, due to concerns about possible fraud and misuse of funds (the "January 5 and January 6 Letters"). See ECF Nos. 40-1–40-3. The letters explicitly provide that Plaintiffs were placed on restricted drawdown pending review of each state's plan and confirmation of each state's compliance with any applicable laws. *Id.* To aid in the review of the state's plans for completeness, ACF asked each state to provide administrative and verification data for TANF and SSBG funding, ECF Nos. 40-2, 40-3, and certain fiscal accountability data improvements for CCDF funding, ECF No. 40-1.

On January 8, 2026, Plaintiffs filed this action alleging that the HHS Defendants' actions were in excess of HHS' statutory authority and arbitrary and capricious pursuant to the APA, ultra vires, and in violation of separation of powers, the Spending Clause and the Appropriations Clause. ECF No. 1. Plaintiffs requested a temporary restraining order ("TRO") restraining HHS Defendants from keeping the restricted drawdowns in place; the Court granted Plaintiffs' request and entered the TRO on January 9, 2026. ECF No. 22. Plaintiffs subsequently filed a motion seeking a preliminary injunction on January 15, 2026. ECF No. 38 ("Mot."). After the preliminary injunction was fully briefed and a hearing was held, the Court entered an order granting the preliminary injunction on February 6, 2026 ("Preliminary Injunction"). ECF No. 71. The Preliminary Injunction enjoined and stayed the HHS Defendants from "implementing ACF's funding policy at issue, which restricted or cut off federal funding" for the CCDF, TANF, and SSBG to Plaintiff States, "including the entirety of the letters sent to Plaintiffs on January 5, 2026 and January 6, 2026." Preliminary Injunction ¶ 1. The Preliminary Injunction further directed the HHS Defendants to "immediately remove any restrictions outside of permitted statutory authority, on Plaintiffs' ability to draw down funds under" the CCDF, TANF, and SSBG programs, and "further enjoined and stayed [Defendants] from reimposing such restrictions." *Id.* ¶ 2. The Court later issued an opinion on March 10, 2026, ECF No. 80.

On April 1, 2026, HHS Defendants filed the Administrative Record in this case, ECF No. 85, and produced a supplement thereto after conducting a follow-up search, at Plaintiffs' request, for any additional documents the agency considered in deciding to take the action Plaintiffs challenged. As explained in more detail below, the Administrative Record contains the January 5 and 6 Letters to Plaintiff States that reflect the challenged agency action, Decision Memoranda, laying out the rationale behind each of the decisions, along with the materials the agency considered that supported the rationale. The materials the agency considered include media reports of alleged fraud, as well as state plans and expenditure reports for the respective states and Programs.

Although discovery in APA cases is typically limited to the Administrative Record, in an abundance of caution, Defendants voluntarily agreed to conduct certain limited additional discovery. Plaintiffs served their initial requests for production and interrogatories on May 15, 2026 and Defendants timely responded on June 15, 2026 asserting proper objections and narrowing the scope of certain requests.[1]

---

[1] As discussed further below, Defendants withdrew this agreement once they agreed to the relief Plaintiffs have sought, rendering discovery even more improper.

On July 8, 2026, ACF sent a letter to Plaintiff states rescinding the January 5 and January 6 Letters implementing the agency action that forms the basis of Plaintiffs' lawsuit (the "July 8 Letter"), ECF No. 115-1. The letter notified Plaintiffs that any future agency action with respect to the relevant funding programs would comply with the Preliminary Injunction the Court issued on February 6, 2026. Taking the position the case is now moot, HHS Defendants attempted to negotiate a stipulation of dismissal with Plaintiffs. Plaintiffs, however, disagree that the case is moot and refused to meaningfully engage in settlement negotiations.

ACF is no longer implementing the temporary restricted drawdown articulated in the January 5 and 6, 2026 Letters, it has rescinded the data requests, and it has agreed to continue to comply with the Preliminary Injunction going forward. In the interest of efficiency, the HHS Defendants submitted to the Court a proposed permanent injunction order that is nearly identical to the Preliminary Injunction in place since February 2026. ECF No. 119 ("Proposed Permanent Injunction Order"). On July 13, 2026, Plaintiffs asked for leave to meet and confer and took the position that any permanent injunction must include the Office of Management and Budget ("OMB") and include "factual specificity" as to what actions would be enjoined. ECF No. 120. The next day, and roughly a week after ACF withdrew the letters that formed the basis of Plaintiffs' lawsuit, Plaintiffs filed an amended complaint, adding OMB and OMB Director, Russell Vought, as defendants ("Amended Complaint"). ECF No. 121. The relief requested in the Amended Complaint is largely the same as the relief Plaintiffs requested in their original complaint—namely, Plaintiffs request a permanent injunction enjoining Defendants from implementing this action and a declaratory judgment that the action "is in excess in excess of statutory authority, contrary to law, and arbitrary and capricious, in violation of the Administrative Procedure Act and is unconstitutional and ultra vires." Am. Compl., Prayer for Relief. Defendants then moved to dismiss the case, on mootness grounds, and for failure to state a claim as to OMB. ECF No. 129.

On September 14, 2026, Defendants submitted to the Court a revised proposed permanent injunction. ECF No. 149. Defendants' revised proposal includes OMB and its Director; it does not, however, include the factual assertions about what occurred, because that is not necessary to provide Plaintiffs the relief they have requested. The language of the proposed order makes clear that the challenged agency action is enjoined; that Defendants cannot impose the same drawdown restrictions or data requests, or any other restrictions that are not authorized by statute. These terms mirror the language of the Preliminary Injunction Order that is in place, and that has worked for the last approximately seven months.

## <u>Argument</u>

### I. Standards Applicable to a Motion to Compel

Rule 37 of the Federal Rules of Civil Procedure provides that a party may move to compel a discovery response when an opposing party fails to comply with a discovery request. Fed. R. Civ. P. 37(a)(3)(B). "Such a motion must identify responses to requests believed to be inadequate, and provide explanation as to why those responses are inadequate." *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, No. 11 Civ. 6746 (RKE) (HBP), 2012 WL 4791804, at *5-6 (S.D.N.Y. Oct. 9, 2012). Where the moving party fails to comply with these requirements, their motion is properly denied. *See, e.g.*, *id.* (denying motion to compel discovery where, "though plaintiffs' motion is titled a 'Motion to Compel Discovery,' it makes little attempt to identify specific,

allegedly problematic discovery responses by defendant, instead focusing on broader discovery issues" and while "Plaintiffs include their document requests and interrogatories with their motion, along with defendant's responses," they "scarcely reference any specific responses in their memoranda of law"); *Casey v. Pallito*, No. 12 Civ. 284, 2014 WL 13140438, at *3 (D. Vt. Dec. 16, 2014) (citing "lack of specificity" as a "fundamental problem" with motion to compel, where motion "generally seeks production of everything Casey has asked for but has not received"); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, No. 95 Civ. 8833 (RPP), 2000 WL 520647, at *3 (S.D.N.Y. Apr. 28, 2000) ("A motion to compel . . . citing RPR's questions and citing the language of Bristol's answers which are non-responsive or partially non-responsive would have been the appropriate manner to present this issue for the Court's determination.").

## II. Applicable Standards for Discovery in APA Cases

An administrative record "includes all materials compiled by the agency . . . that were before the agency at the time [a] decision was made." *James Madison Ltd. v. Ludwig*, 82 F. 3d 1085, 1095 (D.C. Cir. 1996). "[T]he relevant materials 'before the agency' are those that the agency decision-makers directly or indirectly considered." *Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 308 (S.D.N.Y. Jul. 20, 2012). In compiling the record, an agency "is not obligated to include every potentially relevant document existing within its agency." *Pacific Shores Subdivision Cal. Water Dist. v. U.S. Army Corps. of Eng'rs*, 448 F. Supp. 2d 1, 7 (D.D.C. 2006).

There is a "well-established presumption that an agency has properly designated the administrative record." *Conservation Force v. Ashe*, 979 F. Supp. 2d 90, 98-99 (D.D.C. 2013). "It is the province of the agency to compile and submit the administrative record for review by the Court, and common sense dictates that the agency determines what constitutes the whole administrative record because it is the agency that did the considering . . . ." *Sebelius*, 890 F. Supp. 2d at 309 (citations and quotation marks omitted).

The "strong presumption" that an agency properly designated the record can only be rebutted by "concrete evidence to show that certain documents were presented to the final agency decisionmaker but were not included in the administrative record." *Hadwan v. U.S. Dep't of State*, No. 17 Civ. 578 (VEC), 2021 WL 4037714, at *4 (S.D.N.Y. Sept. 3, 2021). Moreover, to "rebut the presumption of administrative regularity," a party "must show that the materials sought to be added [to the record] were before the agency *decision-maker*"—not just "somewhere within the agency." *Sebelius*, 890 F. Supp. 2d at 309 (emphasis in original). A party "cannot meet its burden simply by asserting that [certain] documents are relevant, were before or in front of the [agency] at the time it made its decision, and were inadequately considered." *Pac Shores*, 448 F. Supp. 2d at 6. Rather, a party "must identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record." *Id.*

Alternatively, a party may request that a Court consider evidence outside the record if the party makes "a strong showing in support of a claim of bad faith or improper behavior on the part of agency decisionmakers." *Hadwan*, 2021 WL 4037714, at *4. Making a showing of bad faith is "no small hurdle," and courts "will not 'ascribe nefarious motives to agency action as a general matter.'" *Id.* (quoting *Estate of Landers v. Leavitt*, 545 F.3d 98, 113 (2d Cir. 2008)).

## III. Plaintiffs Have Not Met Their Heavy Burden Of Demonstrating They Are Entitled to Discovery Beyond the Administrative Record

The administrative record compiled by the HHS Defendants comports with the relevant standard. Plaintiffs have not presented concrete evidence to overcome the presumption of completeness. Plaintiffs have merely offered conclusory and speculative assertions about what they believe the administrative record should include; none of those assertions are based in hard evidence. Neither have Plaintiffs made the strong showing required to demonstrate bad faith or improper behavior. Finally, Plaintiffs alleged constitutional claims also do not entitle them to extra-record discovery. Here, Plaintiffs have the administrative record and thus possess whatever information they need to move for summary judgment.

### A. Plaintiffs Have Not Presented Concrete Evidence to Overcome the Presumption of Completeness

The administrative record compiled by the HHS Defendants comports with the relevant standard. It contains "the relevant materials 'before the agency,'" i.e., the information "the agency decision-makers directly or indirectly considered" in making the challenged decision. *See, e.g.*, *Sebelius*, 890 F. Supp. 2d at 308. The documents in the administrative record reflect the roles that Defendants, and others played in the process of deciding to implement temporary restricted drawdowns and make data requests in connection with the Programs with Plaintiff States, the information they considered in deciding to take the action, and the reasons why.

Plaintiffs have not identified evidence sufficient to overcome the strong presumption that the agency properly designated the record. As an initial matter, their focus on the volume of documents is irrelevant. Mot. at 2. "[T]he amount of material in the record is insignificant so long as that material enables the Court to review the agenc[y's] actions and determine the issues in dispute." *Nat'l Min. Ass'n v. Jackson*, Nos. 10-1220, 11-295, 11-446, 11-447 (RBW), 2011 WL 9977235, at *3-4 (D.D.C. Sept. 14, 2011) (rejecting plaintiff's argument that "five documents" could not "adequately explain" a certain agency decision and stating that "the size of the administrative record is unimportant" where record answers "key questions facing the Court").

Further, Plaintiffs' conclusory and speculative suggestions about what the administrative record should include, Mot. at 5–7, are insufficient to rebut the presumption that the record is complete. Plaintiffs have not pointed to any concrete evidence demonstrating that particular documents were before the relevant decisionmakers when deciding to implement the temporary restricted drawdowns or make data requests. *See*, *e.g., Beverly Hills Unified School Dist. v. Fed. Transit Admin.*, No. 18 Civ. 716 (GW), 2018 WL 5919218, *3 (C.D. Cal. Sept. 17, 2018) (plaintiff asserting that record is incomplete must "identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are 'likely' to exist as a result of other documents that are included in the administrative record"). Rather, Plaintiffs have merely listed out their allegations in the case and conclusorily asserted that the record doesn't explain them.

Plaintiffs' main argument—repeated in different formulations—is a claim that the record fails to include information to explain why Defendants took the actions laid out in the January 5 and 6 Letters as to the five Plaintiff States and the three programs. Mot. at 5–6. The record

Defendants produced clearly contains this information. First, the January 5 and 6 Letters themselves (which are part of the administrative record) include HHS's basis for taking the actions at issue here. With respect to Minnesota, the letter states the "action was taken in response to the State's failure to provide required administrative data, the seriousness of the allegations regarding misuse of federal child care funds, and the need to ensure the integrity of federal program expenditures." ACF 000020. And the letters to all five Plaintiff States include that HHS via ACF was "concerned by the potential for extensive and systemic fraud . . . . These concerns have been heighted by recent federal prosecutions and additional allegations that substantial portions of federal resources were fraudulently diverted. . . . ACF has reason to believe that the State . . . is illicitly providing illegal aliens with CCDF benefits." ACF 000001 (CA). Similar language is included in the letters to all the plaintiff states. *See* ACF 000008 (CO); ACF 000014 (IL); ACF 000023 (MN); ACF 000027 (NY).

Second, there are two Decision Memoranda, one for Minnesota and one for the other four Plaintiff States, that explain the materials considered and the reasons ACF took these actions. For example, both Decision Memoranda state "This temporary action is needed to ensure fidelity of federal funds and demonstrate compliance with federal requirements for CCDF, TANF, and SSBG funds. This action is intended to be temporary and will be lifted upon completion of a thorough review." ACF 000034 (MN) and ACF 000229 (other states). They go on to state that the "action was taken in response to the seriousness of the allegations regarding misuse of federal funds and the need to ensure the integrity of federal program expenditures with administrative data." ACF 000034 (MN) and ACF 000230 (other states). The memoranda also explain why the CCDF, TANG, and SSBG, were chosen: "child care is an allowable expense under these programs." *Id.*

The Minnesota Decision Memorandum also chronicles the initial inquiries ACF made and its conclusion that Minnesota's response was insufficient. ACF 000035. The memorandum cites conversations ACF had with Minnesota's officials and lists evidence of certain child care centers that received funding despite certain specified violations. *Id.* As support for the allegations in the Decision Memorandum, attached is an HHS OIG report from May 2025 which found compliance issues with Minnesota's child care programs. ACF 000209. Similarly, the Decision Memorandum for the other states attached supporting evidence including a California Department of Education report of "fraud indicators" and multiple press releases detailing criminal actions relating to alleged fraud in child care. *See, e.g.,* ACF 000233–246, ACF 000509. These same reasons—fraud indicators, criminal allegations, and allegations of benefits being used for illegal aliens—are reflected in the email chain in the administrative record between ACF officials and OMB. ACF 000738–39. Thus, the basis for the actions in question are clearly and consistently detailed in the administrative record.

Plaintiffs also allege that that the record fails to "identify the decisionmaker(s) of the January 5 and January 6 Letters, whether any briefings occurred . . . at which additional information was provided, and how and when any decisions were made and communicated." Mot. at 5. However, the record does in fact reflect the decisionmakers: Secretary Kennedy received the memoranda from Assistant Secretary Adams, *see e.g.*, ACF 000033; Assistant Secretary Adams and Deputy Secretary O'Neill signed letters to Plaintiff States, *see, e.g.,* ACF 000142-144, ACF 000136-137; and emails were exchanged between Assistant Secretary Adams and OMB's Anne DeCesaro, ACF 000738 to ACF 000741. Contrary to Plaintiffs' assertion, the record does identify

the decisionmakers, how they were briefed, and the information they considered.

Plaintiffs further refer to remarks by the President and evidence obtained in separate litigation, regarding different federal agency actions unrelated to this one, suggesting they are indicative of missing information in the administrative record. Mot. at 7. However, Plaintiffs are merely speculating that because the President or agency officials made public remarks about general policy positions or because they have seen communications produced in a separate litigation, that relate to different federal agency actions, that there might be other documents and information, rendering the administrative record "deficient." But those are mere speculations and insufficient to demonstrate that information is missing from this record, relating to this agency action. Rather, "the relevant materials 'before the agency' are those that the agency decision-makers directly or indirectly considered." *Sebelius*, 890 F. Supp. 2d at 308. In compiling the record, an agency "is not obligated to include every potentially relevant document existing within its agency." *Pacific Shores Subdivision Cal. Water Dist. v. U.S. Army Corps. of Eng'rs*, 448 F. Supp. 2d 1, 7 (D.D.C. 2006).

In sum, Plaintiffs' assertion that the administrative record is incomplete is nothing more than a merits argument that the agency lacked a sufficient basis for the action that it took. If Plaintiffs believe the administrative record does not provide a basis for the action the agency took, they can make that argument in a motion for summary judgment. That assertion does not, however, entitle them to discovery.

**B. Plaintiffs Have Not Made the Strong Showing Required to Demonstrate Bad Faith or Improper Behavior**

Plaintiffs have not come close to making the requisite "strong showing of bad faith or improper behavior" that would justify extra-record discovery. *See SRC Ent., LLC v. SBA*, No. 22-CV-01547 (APM), 2026 WL 353056, at *1 (D.D.C. Feb. 9, 2026); *see also Friends of Animals v. U.S. Bureau of Land Mgmt.*, 728 F. Supp. 3d 45, 82–83 (D.D.C. 2024) ("[C]ourts consider extra-record evidence in APA cases only in extraordinary circumstances."); *Citizens for Resp. & Ethics in Washington v. FEC*, No. 22 Civ. 35 (CRC), 2025 WL 833075, at *7 (D.D.C. Mar. 17, 2025) ("As countless cases have recognized, discovery is generally inappropriate in cases challenging agency action." (collecting cases)). Extra-record discovery is disfavored in APA cases, regardless of whether constitutional claims are asserted. *See, e.g.*, *Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32, 43 (D.D.C. 2018) ("[D]istrict courts have been hesitant to permit a plaintiff asserting a constitutional challenge to agency action to avoid the APA's bar on extra-record evidence." (collecting cases)), *aff'd*, 7 F.4th 1201 (D.C. Cir. 2021).

In support of their assertion of bad faith or improper motives, Plaintiffs cite to public statements made by the President and other HHS officials, that relate to the five Plaintiff states. Mot. at 8. But even in the case on which Plaintiffs rely, *Nat'l Audubon Soc. v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997), the Second Circuit agreed with the District Court in finding that those plaintiffs had not met the high burden of alleging bad faith even when they submitted an affidavit of a former agency employee who alleged improper conduct on the part of the agency. *Id.* Here, Plaintiffs do not have a sworn affidavit to support their allegations of bad faith. Rather, they point only to tweets or remarks to the press. Mot. at 8. "Plaintiff's general allegations of [] misconduct [by the administration] accordingly do not constitute a strong showing of bad faith." *Saleh v.*

*Blinken*, 596 F. Supp. 3d 405, 416 (E.D.N.Y. 2022), *aff'd,* No. 22-1168, 2023 WL 5091819 (2d Cir. Aug. 9, 2023).

Plaintiffs' further attempt to demonstrate improper motive by baldly alleging that Defendants "concealed [their] motive when initially producing their Administrative Record," is utterly baseless. Mot. at 8. Defendants did no such thing. After volunteering to conduct one confirmatory search, Defendants identified an additional email chain that related to the action at issue, and decided to amend the record with the email chain, out of an abundance of caution. The email was not conceled. That it was produced subsequently was a minor error on the agency's part in compiling the record, an "error [that] does not even 'hint[ ] ... that evidence of the agency decision-makers' true motives exists outside the [AR].'" *Saleh*, 596 F. Supp. 3d at 415 (citation omitted). This is not a case where Defendants withheld a document from the record that Plaintiffs then obtained by other means. Plaintiffs' "'naked assertion of bad faith' . . . is therefore insufficient to justify extra-record discovery." *Id*.

Plaintiffs contend that the email chain in the administrative record "showed" the "targeting of Plaintiffs on the express basis that Plaintiffs made the sovereign decision not to use their limited law enforcement resources to assist with federal immigration enforcement." Mot. at 8. If, as Plaintiffs contend, the email demonstrates the true basis for the challenged action, then Plaintiffs do not need extra-record discovery, as they have a complete administrative record upon which they can move for summary judgment. Similarly, Plaintiffs complain that the administrative record contains no findings of fraud, as opposed to allegations; this argument fails to establish that the administrative record is incomplete. Plaintiffs can argue that the agency decision was arbitrary and capricious by relying on allegations instead of actual findings of fraud. But, it does not follow that there are fraud findings that the agency failed to collect and include in the administrative record.

Plaintiffs' showing does not rise to the high level required to demonstrate bad faith or improper motive. The "standard has been 'variously described as a strong, substantial, or prima facie showing ... that [the plaintiff] will find material in the agency's possession indicative of bad faith or an incomplete record.'" *Cook Cnty., Illinois v. Wolf*, 461 F. Supp. 3d 779, 795 (N.D. Ill. 2020) (citing *Air Transp. Ass'n of Am. v. Nat'l Mediation Bd.*, 663 F.3d 476, 487-88 (D.C. Cir. 2011)). "Allegations of bad faith must be based on hard facts.... Evidence, and not merely counsel's argument, must support the showing." *Saget v. Trump*, 375 F. Supp. 3d 280, 342 (E.D.N.Y. 2019). Here, Plaintiffs have all the information required to argue their claims on summary judgment.

**C. Plaintiffs Alleged Constitutional Claims Do Not Entitle Them to Extra-Record Discovery**

Neither do Plaintiffs supposed constitutional claims change the calculus. As numerous courts have stated, the existence of standalone constitutional claims does not automatically obviate the "black-letter administrative law" that in "reviewing agency action," a court "should have before it neither more nor less information than did the agency when it made its decision." *Bellion Spirits*, 335 F. Supp. 3d at 37-38 (quoting *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013)). The record review rule is founded not merely on the language of the APA, but on a "fundamental" principle, *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985), that review of an "agency decision" is generally "confined to the administrative record compiled by

that agency when it made the decision," *Audubon*, 132 F.3d at 14; *see also Chiayu Chang v. USCIS*, 254 F. Supp. 3d 160, 161 (D.D.C. 2017) ("Judicial review of agency action is generally limited to the administrative record."). This principle is rooted in the longstanding "recognition that further judicial inquiry into executive motivation represents a substantial intrusion into the workings of other branches of Government and should normally be avoided." *Dep't of Commerce v. New York*, 588 U.S. 752, 780-81 (2019) (quotation marks omitted).

Although some courts have permitted extra-record discovery in cases in which plaintiffs have brought constitutional challenges to agency action,[2] the existence of constitutional claims does not entitle a party to broad ranging discovery under Rule 26, without consideration of the administrative record. *See Bellion*, 335 F. Supp. 3d at 43 ("[D]istrict courts have been hesitant to permit a plaintiff asserting a constitutional challenge to agency action to avoid the APA's bar on extra-record evidence."); *Chang*, 254 F. Supp. 3d at 161-62 (discussing different approaches taken by courts); *Hadwan*, 2021 WL 4037714, at *6 n.9 (collecting cases and stating that "'broad ranging discovery under Rule 26, beyond the administrative record in every case where a plaintiff alleges a constitutional claim, would be inappropriate'"). If it did, "almost any APA plaintiff could skirt the record rule" by bringing such a claim. *Carlsson v. USCIS*, No. 12 Civ. 7893, 2015 WL 1467174, at *13 (C.D. Cal. Mar. 23, 2015); *see also Jarita Mesa*, 58 F. Supp. 3d at 1237-38 (explaining that to "allow fresh discovery, submission of new evidence and legal arguments" because a plaintiff pled "standalone" constitutional claims would "incentivize every unsuccessful party to agency action" to allege constitutional violations).

"Accordingly, whether the record is thick or thin, it is all that is necessary to resolve the [Constitutional] claims." *Mayor & City Council of Baltimore v. Trump*, 429 F. Supp. 3d 128, 144 (D. Md. 2019).

## IV. Defendants Did Not Concede That Discovery Was Appropriate and Regardless, the Circumstances Have Changed as the Merits Are No Longer At Issue

Defendants never conceded that discovery was appropriate in this APA case. Defendants agreed to conduct some limited discovery, without ever taking a position on whether that limited discovery was appropriate. Further, Defendants are not "simply ignore[ing] the fact" that they agreed to limited discovery. As Defendants have explained to Plaintiffs multiple times, and Plaintiffs choose to ignore, the nature of this litigation has changed. Plaintiffs have already received all the relief to which they are entitled. The agency has withdrawn the action precipitating this lawsuit, promised to comply with the preliminary injunction going forward, and presented to the Court a proposed permanent injunction with the same terms as the preliminary injunction. Also, Plaintiffs have now amended their complaint to include additional parties, thus expanding the scope of any potential discovery. Plaintiffs' expansion of the case, coupled with the fact that

---

[2] Courts also have denied extra-record discovery despite plaintiffs' assertions of constitutional claims. *See, e.g.*, *Bellion*, 335 F. Supp. 3d at 41-45 (First Amendment); *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F. Supp. 3d 1191, 1237-38 (D.N.M. 2014) (First Amendment retaliation); *Chang*, 254 F. Supp. 3d at 161-63 (due process and equal protection); *Hadwan*, 2021 WL 4037714, at *6 n.9 (due process); *Afianian v. Duke*, No. 17 Civ. 7643 (RAO), 2018 WL 9619346, at *5-7 (C.D. Cal. Nov. 30, 2018) (due process and equal protection).

the case is unquestionably moot, make it entirely reasonable for Defendants to withdraw their agreement to discovery. Finally, the fact that Defendants moved to stay discovery does not run counter to their position that discovery was always based on their own voluntary participation, rather than a court order. Defendants requested a stay out of an abundance of caution and the letter-motion requesting a stay stated that if the Court denies the request, Plaintiffs should be required to move to compel.

Defendants maintain that the "focal point for judicial review should be the administrative record already in existence" when the challenged action occurred, and that Plaintiffs' requests for extra-record discovery should take account of the record and be tailored to what Plaintiffs need beyond that record to prove their claims. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see also National Audubon Soc. v. Hoffman*, 132 F.3d 7, 10, 14-16 (2d Cir. 1997). Here, where Defendants have provided the requested relief, Plaintiffs are not in need of or entitled to any discovery.

We thank the Court for its consideration of these matters.

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney
Southern District of New York
*Attorney for Defendants*

By: /s/ *Mallika Balachandran*
KAMIKA S. SHAW
MALLIKA BALACHANDRAN
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: 212-637-2768/2781
Email:kamika.shaw@usdoj.gov
mallika.balachandran@usdoj.gov

cc: All counsel of record (via ECF)