**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ADMINISTRATION FOR CHILDREN AND FAMILIES, *et al.*,<br><br>Defendants. | Case No. 26 Civ. 172 (VSB) |

**REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

JAMES M. MCDONALD
United States Attorney
Southern District of New York
86 Chambers St., 3rd Floor
New York, New York 10007

*Attorney for Defendants*

KAMIKA S. SHAW
MALLIKA BALACHANDRAN
Assistant United States Attorneys

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ...............................................................................................................2

I. Plaintiffs' Claims are Moot Because There is No Further Relief the Court Can Grant ...........................................................................................2

A. This Action is Moot with Respect to OMB Defendants .............................3

B. This Case is Moot with Respect to HHS Defendants .................................4

C. No Exception to the Mootness Doctrine Applies .......................................7

II. Plaintiffs' Claims Are No Longer Ripe ....................................................8

II. Plaintiffs Fail to Articulate any Agency Action that Would Support a Claim as to OMB Defendants ...........................................................................9

CONCLUSION ..........................................................................................................11

## TABLE OF AUTHORITIES

**CASES** **PAGE(s)**

*City of New York v. Mickalis Pawn Shop, LLC*
645 F.3d 114 (2d Cir. 2011)........................................ 5

*Deylii v. Novartis Pharms. Corp.*,
2014 U.S. Dist. LEXIS 82442 (S.D.N.Y. June 16, 2014)........................................ 5

*FBI v. Fikre*
601 U.S. 234 (2024)........................................ 8

*Forschner Grp., Inc. v. Arrow Trading Co.*
124 F.3d 402 (2d Cir. 1997)........................................ 5

*Handschu v. Police Dep't of City of N.Y.*
905 F. Supp. 2d 555 (S.D.N.Y. 2012)........................................ 6

*Lowe v. Gagné-Holmes*
126 F.4th 747 (1st Cir.), *cert. denied sub nom. Lowe v. Gagné-Holmes*,
145 S. Ct. 2795 (2025)........................................ 7

*Main St. Legal Servs., Inc. v. Nat'l Sec. Council*
811 F.3d 542 (2d Cir. 2016)........................................ 10

*Moore v. Cap. Realty Grp., Inc.*
2023 U.S. Dist. LEXIS 127154 (2023)........................................ 4

*New York v. Trump*
171 F. 4th 1 (1st Cir. 2026)........................................ 3, 7

*Podany v. Robertson Stephens, Inc.*
350 F. Supp. 2d 375 (S.D.N.Y. 2004)........................................ 9

*Simmonds v. INS*
326 F.3d 351 (2d Cir. 2003)........................................ 8

*Suffolk Reg'l Off Track Betting Corp. v. United States Small Bus. Admin.*
2025 WL 2173727 (E.D.N.Y. July 31, 2025)........................................ 10

*Swift & Co. v. United States*
196 U.S. 375 (1905)........................................ 6

*Wright v. Ernst & Young Llp*
152 F.3d 169 (2d Cir. 1998)........................................ 5

Defendants the Administration for Children and Families ("ACF"), Alex J. Adams, in his official capacity as Assistant Secretary of ACF, the U.S. Department of Health and Human Services ("HHS"), Robert F. Kennedy Jr., in his official capacity as Secretary of HHS (together with ACF, Assistant Secretary Adams, and HHS, "HHS Defendants") the Office of Management and Budget ("OMB") and Russell Vought, in his official capacity as Director of OMB (together with OMB, "OMB Defendants") (collectively, "Defendants" or the "Government") by their attorney James M. McDonald, United States Attorney for the Southern District of New York, respectfully submit this reply memorandum of law in further support of its motion to dismiss the Amended Complaint ("Am. Compl.), ECF. No. 121 pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs originally brought this action against the HHS Defendants challenging two actions: the implementation of temporary restricted drawdowns and data requests via letters sent to Plaintiff states on January and 5 and 6, 2026 (the "January 5 and 6 Letters"). ACF sent letters to Plaintiff states on July 8, 2026 (the "July 8 Letter"), withdrawing both actions. After withdrawing the letter, HHS agreed to the entry of a permanent injunction that would maintain the status quo established by the preliminary injunction in place in this case going forward. Specifically, HHS agreed that it would be permanently barred from "implementing ACF's funding policy at issue in this action, which restricted or cut off federal funding for the … [relevant] programs to Plaintiff States, including the entirety of the letters sent to Plaintiffs on January 5, 2026 and January 6, 2026[,]"; "implementing any restrictions, outside of permitted statutory authority, on Plaintiffs' ability to draw down funds under the … [relevant] programs"; and "reimposing such restrictions." ECF No. 71. Thus, the parties have returned to the status quo ex ante, as HHS cannot pursue the challenged policy or any other drawdown restrictions in the future,

except as authorized by applicable statutes and regulations. Consequently, Plaintiffs claims for injunctive and declaratory relief are now moot, as they have received all of the relief they possibly could, and no exception to the mootness doctrine applies.

In a bid to rescue their claims for the purpose of seeking expansive, extra-record discovery, Plaintiffs amended their complaint to add OMB and OMB Director Vought as defendants after HHS Defendants rescinded the actions that form the basis of their lawsuit. Plaintiffs' efforts are futile because, despite adding two new defendants, Defendants still challenge the same agency action they challenged in their initial complaint—the implementation of temporary restricted drawdowns and the issuance of data requests through the January 5 and 6 Letters by ACF, the only agency with the statutory and regulatory authority to administer these programs. Further, OMB Defendants have now agreed to the entry of a permanent injunction to maintain the status quo. Despite amending their claims, Plaintiffs still cannot show they face any continuing injury. In light of the foregoing, Plaintiffs have received all the relief they could possibly obtain; there is no additional meaningful relief the Court could provide.

## ARGUMENT

### I. Plaintiffs' Claims are Moot Because There is No Further Meaningful Relief the Court Can Grant

This case is moot because ACF has rescinded the actions that form the basis of this lawsuit. In a July 8, 2026 letter to the Plaintiffs, ACF withdrew the January 5 and 6, 2026 Letters that implemented the temporary restricted drawdowns and issued the data demands Plaintiffs challenge here. The July 8 Letter also indicates that HHS Defendants will comply with the terms of the preliminary injunction going forward. In further support of this effort to grant Plaintiffs the relief they seek, Defendants proposed a permanent injunction applicable to all Defendants (the

"Proposed Permanent Injunction") that mirrors the preliminary injunction currently in place, is materially identical to the proposed preliminary injunction Order Plaintiffs themselves submitted to the Court and provides Plaintiffs all of the relief they sought in their Amended Complaint. *See* Proposed Permanent Injunction (ECF No. 151-1); Plaintiffs' Proposed Order (ECF No. 38-1); Am. Compl., Prayer for Relief, ¶¶ iv, v (ECF No. 121). Plaintiffs have now received all the relief they claim to seek in their Amended complaint, and no genuine case or controversy remains for this Court to adjudicate.

A. <u>This Action is Moot with Respect to OMB Defendants</u>

Plaintiffs' arguments that the case is not moot as to the OMB Defendants, apart from resting entirely upon conjecture about actions OMB might take (without statutory authority) if it were not bound by an injunction in this case, are now irrelevant, as the Proposed Permanent Injunction covers the OMB Defendants. Plaintiffs speculate that OMB could "implement the freeze" independent of any action by HHS because OMB has, according to Plaintiffs, taken no steps to render the claims against them moot. Pls. Opp. at 7-8. Plaintiffs place particular emphasis on the fact that, "perhaps most crucially," in their reading, the Proposed Permanent Injunction would not bind OMB Defendants. *Id*. at 8. Plaintiffs claim they "cannot obtain complete relief without relief binding upon OMB and Director Vought" because OMB could, in some unspecified way, seek to impose the rescinded actions despite not being the agency with statutory authority to do so. *Id*. at 10. These bald allegations have no basis in law or fact.[1] In any event, in an effort to resolve this matter without

[1] Plaintiffs' reliance on *New York v. Trump*, 171 F. 4th 1 (1st Cir. 2026), is misplaced. The Trump case involved an OMB memorandum directing agencies to analyze financial assistance programs to identify activities that might implicate a series of January 2025 executive orders. There was no allegation, as Plaintiffs claim may occur here, that OMB terminated funding to a State independent of the agency possessing the exclusive statutory authority to do so, let alone when that agency was subject to a court order enjoining it from terminating such

further litigation, the OMB Defendants have agreed to be bound by the Proposed Permanent Injunction, meaning they could not take action to implement the restricted drawdowns or make the data demands at issue in this case. Accordingly, Plaintiffs can no longer rely on any claimed action of the OMB Defendants to avoid dismissal of this action for mootness.

B. <u>This Case is Moot with Respect to HHS Defendants</u>

Plaintiffs' arguments with respect to the HHS Defendants fare no better. Plaintiffs purport not to know which actions HHS Defendants agree to no longer take and contend that Defendants' Proposed Permanent Injunction—which mirrors the preliminary injunction Plaintiffs themselves proposed to the Court—indicates that Plaintiffs still maintain an interest in this case because there is some other unidentified and amorphous agency conduct they claim could unlawfully interfere with their program funding.

Plaintiffs' own complaint belies their claim that they do not understand what actions the agency took. Plaintiffs make detailed allegations in their Amended Complaint and explicitly define the action implemented by the January 5 and 6 Letters as the action they seek to enjoin: in the Amended Complaint, they identify "ACF Funding Freeze, as implemented through the January 5 and 6 Letters" as the "final agency action" they challenge. Am. Compl. ¶147. The January 5 and 6

---

funding. Plaintiffs' attempt to rely on a proposed regulation concerning programs administered by the Department of State and the U.S. Agency for International Development and International Assistance, is likewise unavailing. Aside from the fact that this is only a proposed regulation, it does not implicate the statutes and regulations at issue in this case, or otherwise have any bearing on the funding programs presented here. To the extent that Plaintiffs are attempting to use this proposed regulation as a means to show OMB involvement in the apportionment process for the funding programs at issue here, they cannot do so, as the Amended Complaint does not challenge and is devoid of allegations concerning the apportionment process, which is governed by an entirely separate statutory scheme. Plaintiffs cannot ask the Court to provide injunctive relief to address conduct not raised in their complaint. *See Moore v. Cap. Realty Grp., Inc.,* 2023 U.S. Dist. LEXIS 127154, *9 (2023)( "[I]t is critical that the requested injunctive relief relate to the allegations contained in the underlying complaint.").

Letters, which Plaintiffs cite in their Amended Complaint, detail the agency action at issue, as does the parties' preliminary injunction briefing. Plaintiffs have thus consistently referred to the actions laid out in the January 5 and 6 Letters as the agency action they seek to challenge. Plaintiffs cannot credibly attempt now—eight months into this litigation and after amending their complaint—to claim that they do not know what conduct is at issue.

This is further bolstered by the fact that Plaintiffs have not raised any issued with the sufficiency of the preliminary injunction that has been in place for the last seven months, as they would have done if they truly did not understand the agency actions at issue here and had doubts about what conduct was enjoined. If Plaintiffs actually take issue with whether there is some conduct to which they believe the preliminary injunction should apply, they are free to raise those issues with Defendants and seek relief from the Court. Plaintiffs cannot, however, now attempt to essentially add new actions or allegations via their opposition by feigning ignorance of the action they are challenging. D*eylii v. Novartis Pharms. Corp*., No. 13 Civ. 6669 (NSR), 2014 U.S. Dist. LEXIS 82442, at *23 (S.D.N.Y. June 16, 2014) ("It is well-settled that a party may not amend its complaint through statements made in motion papers."); *Wright v. Ernst & Young Llp*, 152 F.3d 169, 178 (2d Cir. 1998)( "[A] party is not entitled to amend its complaint through statements made in motion papers[.]").

Nor are Plaintiffs entitled to injunctive relief for actions they have not alleged in their Amended Complaint. "It is well-settled that the essence of equity jurisdiction has been the power to grant relief no broader than necessary to cure the effects of the harm caused by the violation[.]" *Forschner Grp., Inc. v. Arrow Trading Co.*, 124 F.3d 402, 406 (2d Cir. 1997). In keeping with this, the Second Circuit has instructed that "injunctive relief should be narrowly tailored to fit specific legal violations, and "[a]n injunction may not enjoin all possible breaches of the law." *City of New*

*York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011) (internal quotation marks and citations omitted). Plaintiffs ask this Court to do just the opposite by now seeking relief for actions not articulated in their Amended Complaint. The Court should not entertain this request.

Plaintiffs try to make much of the July 8 Letter's indication that ACF would continue to exercise its authority in accordance with applicable statutes. Plaintiffs contend that there is no way to know how the agency will use its statutory authority. As an initial matter, as Plaintiffs themselves lay out in their Amended Complaint, the statutory and regulatory schemes that govern the administrations of the programs at issue set out procedures to address noncompliance in each of these programs, so proclaiming lack of knowledge of what actions the agency could take consistent with their statutory authority is disingenuous. More importantly, Plaintiffs have defined the specific agency actions they challenge as unlawful in their Amended Complaint. Plaintiffs amended their complaint after HHS filed the certified administrative record and still identified the same two agency actions as the basis of their claims: the implementation of the temporary restricted drawdowns and the issuance of data demands as set forth in the January 5 and 6 letters. In claiming that there are some other, unidentified, actions HHS Defendants may have taken that warrant keeping this case alive, Plaintiffs essentially ask the Court to provide injunctive and declaratory relief that goes beyond the agency actions they challenge in their Amended Complaint. However, they are not entitled to relief for some different, unspecified action the agency could possibly take in the future. Again, "an injunction may not undertake to enjoin all possible breaches of the law." *Handschu v. Police Dep't of City of N.Y.*, 905 F. Supp. 2d 555, 562 (S.D.N.Y. 2012) (internal quotation marks omitted). *Swift & Co. v. United States*, 196 U.S. 375, 396 (1905) (Courts "cannot issue a general injunction against all possible breaches of the law.").

C. No Exception to the Mootness Doctrine Applies

The exceptions to mootness Plaintiffs raise are inapplicable because this Court cannot provide Plaintiffs with any further meaningful relief. No exception applies, and this case should be dismissed as moot.

Plaintiffs claim the voluntary cessation exception applies because HHS Defendants' withdrawal of the actions that form the basis of their claims does not guarantee that the actions will not reoccur. In support of this, Plaintiffs point to HHS Defendants' statement in their July 8 Letters indicating that they intend to exercise their statutory authority to administer these programs. Pl. Opp. at 13-14. Further, Plaintiffs point to other actions, again, outside of the actions they challenged in this lawsuit, as indicia that the conduct will reoccur. Specifically, Plaintiffs point to an Executive Order signed three months after the agency actions that precipitated this lawsuit and a separate lawsuit involving some of the states that are Plaintiffs here brought in August 2026 challenging a proposed revision to a regulation that HHS proposed in June 2026—six months after this lawsuit was initiated. *Id*. at 14-15.

Reference to these actions is nothing more than an attempt to muddy the waters regarding what actions Plaintiffs challenge in *this* lawsuit in an attempt to keep this suit alive. References to separate, unrelated actions that post-date the allegations in Plaintiffs' lawsuit do not change the fact that Plaintiffs challenge the following agency actions that were finalized in January 2026: the implementation of temporary restricted drawdowns and the issuance of data demands via the January 5 and 6 Letters to each Plaintiff state for the three programs identified in their Amended Complaint. These unrelated actions Plaintiffs reference are irrelevant to the mootness inquiry here. ACF has now rescinded the actions Plaintiffs proclaim to challenge in their lawsuit. Crucially, beyond just rescinding the challenged actions, all defendants have proposed entering a permanent injunction that would prevent them from taking the challenged actions again. Plaintiffs have not

articulated how the challenged actions could reasonably reoccur in light of the fact that Defendants agree to the imposition of an injunction that would enjoin the Defendants from taking those actions.[2] The same is true with respect to Plaintiffs' assertion that the conduct is capable of repetition, yet evading review. Plaintiffs cannot plausibly contend that it is probable that they will face the same action—the imposition temporary restricted drawdowns and issuance of data demands as implemented in the January 5 and 6 Letters—where the Proposed Permanent Injunction would prevent Defendants from taking these actions.

## II. Plaintiffs' Claims Are No Longer Ripe

Plaintiffs claim that this case is ripe for review because: 1) they challenge "concrete agency actions that have already happened,"; and 2) they face ongoing hardship because there is still some unidentified agency action that could impact Plaintiffs' access to funds for these three programs despite the agency rescinding the January 5 and 6 Letters. Pl. Opp. at 19, 21. Plaintiffs' arguments are unavailing. Constitutional ripeness "prevents courts from declaring the meaning of the law in a vacuum and from constructing generalized legal rules unless the resolution of an actual dispute requires it." *Simmonds v. INS*, 326 F.3d 351, 357 (2d Cir. 2003). While the agency actions Plaintiffs challenge did already happen, they were rescinded. As such, there is no live case or controversy for the Court to adjudicate. Plaintiffs are essentially asking this Court to provide what would amount to an advisory opinion about an agency policy that is no longer operative. For the same reasons, Plaintiffs cannot show that they would face ongoing hardship. The only evidence

[2] To the extent Plaintiffs suggest this case is not moot because Defendants, previously in this litigation, asserted that the challenged actions were within their statutory and regulatory authority, Pl. Opp. at 17, this argument is unavailing. Wholesale repudiation of an agency's past conduct is not a prerequisite for determining that a case is moot. *See FBI v. Fikre*, 601 U.S. 234, 244 (2024) ("What matters is not whether a defendant repudiates its past actions, but what repudiation can prove about its future conduct. It is on that consideration alone—the potential for a defendant's future conduct—that we rest our judgment.").

Plaintiffs offer in support of this contention is speculation that Defendants will take the same action again. Plaintiffs once again ignore the Proposed Permanent Injunction, which negates any claim that it is probable that Defendants would seek to reinstate the temporary restricted drawdowns and data demands. In sum, there is no actual dispute for this Court to adjudicate because the policy Plaintiffs challenge is no longer in effect and would be barred from reoccurring by the Proposed Permanent Injunction.

## III. Plaintiffs Fail to Articulate any Agency Action that Would Support a Claim as to OMB Defendants

Plaintiffs contend that their vague allegations regarding an unidentified OMB directive are sufficient to state a claim as to the OMB defendants. They are wrong. Plaintiffs acknowledge that these claims lack specificity. In making their case, Plaintiffs claim that basic information about this so-called directive, including who issued it and what the actual content of it was, will become available via discovery. Pl. Opp. at 22. After hastily amending their complaint in a bid to keep this case alive, Plaintiffs seek to fix their deficient pleadings after the fact with extra-record discovery.[3] Plaintiffs cannot use the prospect of discovery as a means of developing facts sufficient to state a claim to avoid dismissal pursuant to 12(b)(6) where the complaint, as is the case with respect to OMB Defendants, is deficient on its face. That is not the purpose of discovery. Rather, "discovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether

---

[3] Plaintiffs claim their amendments to the complaint were in line with "prior conversations between the Parties." Pl. Opp. at 5. This representation is misleading. The parties discussed on one occasion prior to the issuance of the July 8 Letters, at Defendants' prompting, whether Plaintiffs intended to add OMB as a party to this suit. Plaintiffs indicated that they thought it would be inconvenient to do so and that they did not think they needed to do so in order to seek discovery from OMB but would consider it as a tool to extract discovery. Plaintiffs only indicated that they were going to amend their complaint to add OMB Defendants on July 10, two days after the July 8 Letters were sent.

he has such a claim[.]" *Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004). Plaintiffs are "not entitled to discovery" where, as is the case here, they have "failed adequately to state a claim[.]" *Main St. Legal Servs., Inc. v. Nat'l Sec. Council*, 811 F.3d 542, 567 (2d Cir. 2016).[4]

Plaintiffs further try to bolster their claims by asserting that OMB did engage in a discrete, parallel agency action. In doing so, Plaintiffs point to two other litigations that challenge other actions taken by OMB. These cases undercut, rather than bolster, Plaintiffs' argument. Plaintiffs in both cases pleaded more factual details regarding some discrete agency action taken by OMB. Plaintiffs cannot simply slap the label of "directive" onto some amorphous, ill-defined action and claim what they identify is akin to the defined actions challenged in these lawsuits. Whether or not OMB Defendants collaborated with or advised HHS Defendants on the implementation of the actions Plaintiffs challenge, it remains the case that Plaintiffs challenge only two identifiable agency actions: the implementation of the temporary restricted drawdown and the issuance of data demands through the January 5 and 6 letters. These are actions that only the agency with the statutory and regulatory authority to administer the programs—HHS—could take. Plaintiffs' complaint identifies no separate action the OMB Defendants took with respect to Plaintiff states' ability to draw down funds from the programs at issue. Consequently, they fail to state any claim for which this court could grant relief.

[4] Defendants maintain that Plaintiffs are not entitled to discovery at all in this case brought pursuant to the Administrative Procedure Act, much less for the purpose of fixing their deficient pleadings. *See Suffolk Reg'l Off Track Betting Corp. v. United States Small Bus. Admin.*, No. 24 Civ. 07058 (SJB) (JMW), 2025 WL 2173727, at *1 (E.D.N.Y. July 31, 2025). ("A bedrock principle of judicial review of administrative decisions is that the reviewing court consider only the record presented to the agency at the time the decision was rendered.").

## CONCLUSION

For the foregoing reasons, Plaintiffs' Amended Complaint should be dismissed.

Dated: New York, New York
September 15, 2026

Respectfully submitted,
JAMES M. MCDONALD
United States Attorney
Southern District of New York
*Attorney for Defendants*

By: /s/ *Kamika S. Shaw*
KAMIKA S. SHAW
MALLIKA BALACHANDRAN
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: 212-637-2768/2781
Email:Kamika.shaw@usdoj.gov
mallika.balachandran@usdoj.gov

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 3,500 words.