**Office of the New York State Attorney General**

**Letitia James**
**Attorney General**

September 23, 2026

Honorable Vernon Broderick
Honorable Robyn Tarnofsky
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: *New York v. Administration for Children and Families, Case No. 26-cv-00172*

Dear Judge Broderick,

Plaintiffs respectfully ask that Defendants' second letter motion for entry of a permanent injunction be denied. ECF 149 (the "motion"). Plaintiffs should not be forced into a settlement to which they do not consent, especially when Magistrate Judge Tarnofsky found last week that Plaintiffs "have made a credible showing that the administrative record in this case is incomplete" and issued an order compelling discovery. ECF 155. This discovery is necessary to fully understand the scope and purported justifications of the agency actions, and accordingly, to ensure complete relief. Defendants' permanent injunction would make an end run around the necessary and now compelled discovery. Plaintiffs face significant risk if any judgment does not actually cover what is needed to prevent the unlawful actions at issue in this case from being repeated in some new permutation.

The Court should not enter the proposed permanent injunction. ***First***, Defendants have cited no authority, and Plaintiffs are aware of none, that supports their position that the Court can resolve this lawsuit without adjudicating the merits by entering the injunction proposed by Defendants to enjoin themselves over Plaintiffs' objections. ***Second***, it is prejudicial to force Plaintiffs to accept a settlement when Judge Tarnofsky has just concluded that neither the Plaintiffs nor the Court have the required material in the administrative record in order to assess the basis and scope of the final agency actions challenged in this case. And the OMB defendants, who directed the ACF Freeze alongside HHS, have not even produced any administrative record specific to them as required by the APA. ***Third***, even if this unaccepted settlement could be entered, it does not actually enjoin anticipated reoccurring harms that Plaintiffs have consistently raised. *See* ECF 154.[1] ***Fourth***, to the extent Defendants are indirectly arguing in their motion that this

[1] This case currently stands in a strange posture because Defendants have three outstanding and overlapping motions, including a motion to dismiss, which is now fully briefed; their initial motion for a permanent injunction, which is also fully briefed; and this letter motion seeking a new permanent injunction. In their reply to Plaintiffs' September 14 letter, Defendants remarkably claimed that *Plaintiffs* were the ones seeking a third bite at the apple in merely asking to respond to Defendants' new, third pending motion, which includes a new proposed order and new arguments based on that order. ECF 154. In any event, as the Court recognized in its Order granting leave to file this response, "the

case is mooted by their proposal, nothing about the new proposed injunction changes that this case is not moot: Defendants' unaccepted settlement offer cannot moot this case, and even if mootness could be found, the voluntary cessation exception applies.

**1. The proposed judgment should not be entered.**

**a. Defendants cannot dispose of this case by forcing upon Plaintiffs their preferred judgment, no matter what the terms are.**

Defendants are effectively seeking to end this case unilaterally by offering Plaintiffs their preferred settlement terms, and, once those terms were rejected, asking the Court to force settlement without ever adjudicating the merits. But this is improper as a matter of law under clear Supreme Court precedent:

> When a plaintiff rejects [a settlement] offer—however good the terms—her interest in the lawsuit remains just what it was before. And so too does the court's ability to grant her relief. An unaccepted settlement offer—like any unaccepted contract offer—is a legal nullity, with no operative effect.

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 162 (2016), *as revised* (Feb. 9, 2016) (citation omitted); *accord Radha Geismann, M.D., P.C. v. ZocDoc, Inc.*, 909 F.3d 534, 541 (2d Cir. 2018). This rule is critical, especially where a defendant continues to deny liability, which is occurring here. *See Campbell-Ewald*, 577 U.S. at 163 ("Having rejected Campbell's settlement bid, and given Campbell's continuing denial of liability, Gomez gained no entitlement to the relief Campbell previously offered."). In other words, Defendants' proposed settlement offer could not end the case even if the terms included complete monetary and injunctive relief, which they do not. As described *infra*, this precedent also disposes of any argument that Defendants have mooted this case through their proposed permanent injunction.

Defendants cite no caselaw—and Plaintiffs are aware of none—that would allow them to obtain their injunction unilaterally over Plaintiffs' objections. Effectively, Defendants are seeking a consent decree in the absence of consent, telling the Court they "***agreed*** to the entry of a permanent injunction that would maintain the status quo established by the preliminary injunction in place in this case going forward." ECF 153 at 1 (emphasis added). But there was never any such agreement. Instead, there was Defendants' settlement offer, and Plaintiffs' rejection of it. That cannot resolve this case. Instead, the APA and the Federal Rules of Civil Procedure provide the framework by which this case should be resolved. Defendants are not entitled to unilaterally self-define the ultimate relief in this case and thereby duck producing a complete administrative record and summary judgment motion practice. As much as any defendant would love to avoid litigation and fashion the relief of their choice, that is not how it works.

---

parties are proceeding with discovery," and Defendants' positions and "the posture of the case" *have* "changed," warranting an opportunity for Plaintiffs to file this response. ECF 158.

**b. Plaintiffs and the Court require some discovery in order to determine what relief may be appropriate.**

Much of Defendants' motion contends that Plaintiffs are on an improper fishing expedition and that any attempt to seek discovery is totally irrelevant to whether their proposal moots this case. But as Judge Tarnofsky just concluded in partially granting Plaintiffs' motion to compel discovery, "Plaintiffs have made a non-speculative argument based on the chronology of the agency decision that the record does not include all documents that agency decision-makers" considered. ECF 155 at 6. And because "[a] court cannot conduct an appropriate review of an agency decision if the agency has failed to [produce a sufficient administrative record]," some discovery is warranted in order for Plaintiffs *and* the Court to understand the scope of the agency's decision. *Id.* (citation omitted). Judge Tarnofsky also stated that "Plaintiffs' complaint includes constitutional claims," which "reinforce[d] [the] conclusion that some discovery is warranted." *Id.* (citation omitted).

Judge Tarnofsky specifically noted that Defendants likely failed to provide the following information: "the materials on which the decision-makers actually relied (as opposed to the materials used to justify the decision)"; the identities of "all decision-makers"; and an "explanation for important aspects of the agency decision, such as its application to certain states but not others."

In short, Defendants are not only wrong to allege that discovery is unwarranted, they are barred by the law of the case, and Plaintiffs are entitled to that discovery so the Court may properly evaluate what scope of permanent relief is necessary to prevent Defendants from continuing or repeating their unlawful actions. Supplementation of the record through discovery is particularly appropriate where Defendants have obscured their motives and the full scope of their actions. *See Schicke v. Romney*, 474 F.2d 309, 315 (2d Cir. 1973). This new motion for a permanent injunction appears to be another attempt to continue to shield potentially embarrassing discovery that would truthfully explain the agency's decision-making.

**c. Plaintiffs expressed multiple concerns regarding Defendants' new proposed permanent injunction, which are not addressed.**

Irrespective of the inadequate record that discovery would complete, Plaintiffs have expressed a number of concerns that are not addressed in Defendants' latest proposed permanent injunction order, even though they have now expanded the proposed injunction to cover all Defendants. As described in Plaintiffs' prior letter, Plaintiffs raised these concerns and were awaiting a promised revised draft when Defendants filed this motion without notice. *See* ECF 154.

***First***, Plaintiffs are reasonably concerned that without an actual finding of illegality, there is a risk that agencies could use these same or similar fraud allegations, no matter how unsubstantiated, and the same purported statutory authority to implement similar policies. Even under the proposed injunction, Defendants will be able to use their enforcement authorities—without any limitation that would result from a finding that their prior efforts were unlawful. As described extensively in Plaintiffs' opposition to Defendants' Motion to Dismiss and first motion for a permanent injunction, federal agencies, including Defendants, have routinely engaged in serial threats to funding. ECF 138 at 8-10.

The proposed permanent injunction makes clear that Defendants are preserving what they call their "permitted statutory authority" for engaging in freezes of the funding, data demands, and other enforcement actions at issue in this case. ECF 149 at 2. As Plaintiffs have described previously at more length, *see* ECF 138, given Defendants' generous assessments of what their statutory authority is, it is critical that any final judgment concludes that the actions at issue in this case are in fact illegal under these statutes. Defendants have not conceded that they would not again rely on the very same statutes and regulations by which they tried to justify the ACF Funding Freeze, and which the Court concluded did not authorize the expansive authority Defendants claim. *See* ECF 138 at 11-12.

***Second***, Defendants' proposed injunction does not address the legality or prohibition of the remarkable data demands challenged in this case. Defendants' inclusion of the "entirety" of the January 5th and 6th letters is cold comfort again because the proposed injunction does not actually admit that Defendants cannot legally impose such a data demand.

***Third***, the proposed injunction contains no limits on Defendants' ability to resume the partisan targeting that occurred here. That means that Defendants can continue to act on what appears to be a principal—and unlawful—motivation behind the Freeze.[2] And as Judge Tarnofsky acknowledged, one of the key elements missing from the administrative record is what actual decision-making underlays the choice of the Plaintiff States for this action. If federal agencies may selectively target some states to have billions of dollars of funding terminated overnight based on the perceived actions of third parties who may commit fraud, while other states facing similar circumstances suffer no consequences, the pretextual weaponization of fraud prevention will act as a catch-all shield for any and all political targeting federal agencies wish to engage in for other improper purposes.

For all of these reasons, the proposed permanent injunction does not provide Plaintiffs the relief they in fact need based even on the information they have today.

**d. Defendants do not moot this case through their rejected settlement.**

In their motion, Defendants do not argue mootness as they have in the past, including in their pending motion to dismiss. However, to the extent Defendants are indirectly suggesting that the scope of their proposed injunction resolves this case by mooting it, they are incorrect. Nothing about this proposed permanent injunction changes the mootness analysis. Defendants cannot, as a matter of law, moot this case by forcing an unaccepted and incomplete settlement offer. Defendants may believe that this particular proposed settlement resolves the case by mooting it, but that opinion is no basis to deviate from the sensible rule that the Supreme Court adopted in *Campbell-Ewald* that an unaccepted settlement offer cannot unilaterally moot a case, particularly in the absence of a concession of liability. *See supra* at 2. Indeed, the Court went on in that case to conclude that "assuming the case was live before" the settlement offer "because the plaintiff had

[2] Defendants have already conceded, for example, that HHS at least relied on OMB's allegations that Plaintiff States were "sanctuary jurisdictions" in implementing the ACF Freeze. ECF No. 112 ("Specifically, the email from Anne DeCesaro that starts on ACF 00038 and ends on ACF 000739 [which describe Plaintiff states as "sanctuary jurisdictions"] is the relevant portion of the Email Chain that includes information HHS considered regarding California, Illinois, and New York.")

a stake and the court could grant relief—the litigation carries on, unmooted." *Id.* (citation omitted). And even if Defendants' proposal did render Plaintiffs' claims moot, which it does not for the reasons articulated above and in Plaintiffs' opposition to Defendants' Motion to Dismiss, *see* ECF 138, the voluntary cessation exception to mootness applies. As explained in detail in Plaintiffs' earlier Opposition, *see id.* at 13-18, a party's decision to stop "a challenged practice does not deprive a federal court of its power to determine [its] legality." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citation omitted).

**2. Conclusion**

Defendants' motion is the latest among numerous attempts to unilaterally resolve this case without providing a full administrative record or agreeing even to a judgment that bars their aggrandized interpretation of their statutory authority, data demands, and partisan targeting. This gamesmanship should not be rewarded. Plaintiffs face enormous risk if the judgment in this case does not sufficiently bar similar actions in the future. The Freeze involved ten billion dollars—an extraordinary amount of money that supports programs critical to Plaintiffs' ability to support families in their States. These critical programs should not be threatened by unlawful partisan targeting. For the above reasons, Plaintiffs respectfully request that Defendants' motion be denied. Correspondingly, Plaintiffs believe a conference to discuss this motion is unnecessary, but Plaintiffs are, as always, at the Court's disposal.

Sincerely,

*/s/Rabia Muqaddam*
Rabia Muqaddam
*Attorney for Plaintiff State of New York*