UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STATE OF NEW YORK, et al.,

Plaintiffs,

-against-

ADMINISTRATION FOR CHILDREN AND FAMILIES, et al.,

Defendants.

26-CV-0172 (VSB) (RFT)

**OPINION & ORDER**

**ROBYN F. TARNOFSKY, United States Magistrate Judge:**

Pending before the Court is Defendants' motion for reconsideration (ECF 170, the "MFR") of my discovery order at ECF 163, which directs the Office of Management and Budget ("OMB") to produce an administrative record and includes Director Vought as a custodian. Defendants argue there has not been full briefing on the issue and that the Court has not explained either why OMB should provide an administrative record or why extra-record discovery should be sought from such a high-level official as Director Vought. (ECF 171, Defs.' Memorandum of Law in Supp. of its MFR ("MFR Mem.") at 2.) For the reasons set forth below, the MFR is **DENIED**.

## I. Factual Allegations and Relevant Procedural History

This order assumes familiarity with the allegations in the Complaint (ECF 1) and with the arguments in connection with the pending motion to dismiss (ECF 128, 129, 138, 153).

After Plaintiffs raised a dispute about Director Vought as a custodian (ECF 125), on July 22 and 27, 2026, Defendants moved for a stay of discovery (ECF 127, 130), arguing, among other positions, that Defendants would likely prevail on their motion to dismiss because OMB and Director Vought did not take final agency action, meaning that Plaintiffs therefore could

not state a claim against OMB and Director Vought. (*See* ECF 130, Defs.' Stay Mot. at 2.) On August 3, 2026, Plaintiffs opposed Defendants' motion to stay, arguing, among other positions, that Plaintiffs had stated a claim against OMB and Director Vought by alleging that OMB was a decision-maker in connection with the funding freeze. (*See* ECF 132, Pls.' Stay Mot. Opp. at 6.) Defendants replied on August 4, 2026. (*See* ECF 134, Defs.' Stay Mot. Repl. at 1-2.) On August 7, 2026, I denied Defendants' motion to stay discovery. (*See* ECF 135, Ord. and Op.)

Plaintiffs moved to compel discovery on September 9, 2026. (ECF 143, Pls.' Mot. To Compel).) Defendants opposed. (ECF 150, Defs.' Opp. to Pls.' Mot. To Compel ("Defs.' Compel Opp.").) Plaintiffs raised arguments relating to their request for records from OMB and Director Vought. (*See* ECF 143, Pls.' Mot. To Compel at 2 n.2, 6-8.) Defendants' opposition focused on general arguments about the propriety or not of any discovery. (*See generally* ECF 150, Defs.' Compel Opp.) On September 16, 2026, I granted in part Plaintiffs' motion to compel and directed the parties to propose a discovery order detailing the scope of discovery, concluding that "Plaintiffs have made a non-speculative argument based on the chronology of the agency decision that the record does not include all documents that agency decision-makers considered in making their decision." (ECF 155, Order at 6.) Defendants have objected to that order to Judge Broderick (ECF 165, 166).

As ordered, the parties proposed an order containing the provisions to which they agreed, subject to Defendants' reservation of rights to file objections to my order at ECF 155, and each party proposed its own order that reflected areas of disagreement. (ECF 160, 161.) Plaintiffs' proposed order directed Defendant OMB to produce an administrative record and included Director Vought as a custodian. (*See* ECF 160-2, Pls.' Proposed Order ¶¶ 2-3.)

Defendants' proposed order did not include those two provisions. (*See generally* ECF 161-1, Defs.' Proposed Order.) On September 23, 2026, I issued an order that directed OMB to produce an administrative record within 60 days of the order and included Director Vought as a custodian. (*See* ECF 163, Order at 2, 3.) Defendants now challenge the portions of the order at ECF 163 requiring OMB and Director Vought to produce an administrative record and including Director Vought as a discovery custodian. (*See* ECF 171. Defs.' MFR Mem. at 1.)

## II. Legal Standards for a Motion for Reconsideration

To prevail on a motion for reconsideration, the moving party must "identif[y] an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013).[1] Courts routinely deny reconsideration where the moving party fails to "point to controlling decisions or data that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Ravikant v. Rohde*, No. 21-CV-4758 (DEH), 2026 WL 184614, at *1 (S.D.N.Y. Jan. 23, 2026) (quoting *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)).

[1] Unless otherwise indicated, this opinion and order omits internal quotation marks, citations, and alterations from quoted text.

## III. Analysis

Defendants argue that the rulings that OMB should be required to produce an administrative record and that Director Vought should be a custodian are unexplained and unsupported by law and that these issues were not fully briefed. (*See* ECF 171, Defs.' MFR Mem. at 1, 3, 4.) I address each argument in turn.

### A. Sufficiency of the Briefing

On the question of the sufficiency of the briefing, Defendants argue that Plaintiffs' motion to compel (ECF 143) did not address whether OMB should be required to produce an administrative record and that Plaintiffs raised the issue for the first time when the parties submitted their competing discovery orders (ECF 160, 161). (*See* ECF 171, Defs.' MFR Mem. at 4 n.2.) Plaintiffs respond that Defendants had ample opportunity to raise these issues in connection with the motion to compel but elected not to do so, and that Defendants did in fact raise these issues in their letter accompanying their proposed order on the proper scope of discovery (ECF 161). (*See* ECF 177, Pls.' MFR Opp. at 5.)

Plaintiffs have the better of this argument. In describing what Plaintiffs characterized as gaps in the administrative record, Plaintiffs specifically pointed to the absence of information, other than an email chain, about "directives" by OMB to HHS "to withhold funds from Plaintiff States." (ECF 143, Pls.' Mot. To Compel at 6.) Additionally, Plaintiffs specifically asked the Court to compel Defendants to include Director Vought as a custodian. (*See id.* at 10.) In response, Defendants argued that Plaintiffs did not meet the heavy burden of showing that discovery beyond the administrative record was warranted, focusing on the presumption of completeness, the strong showing required to demonstrate bad faith, and the significance or

not of Plaintiffs' constitutional claims for the analysis of the propriety of extra-administrative record discovery. (*See* ECF 150, Defs.' Compel Opp. at 5-9.) Defendants did not raise the question whether OMB should be required to provide an administrative record, whether the pending motions to dismiss militated against requiring production of a more complete administrative record pending adjudication of the motions to dismiss, or whether discovery of Director Vought was appropriate in light of his seniority and the pending motion to dismiss claims against him. (*See generally id.*)

Even though Defendants chose not to make the arguments they now advance in the briefing on Plaintiffs' motion to compel, Defendants did take the opportunity to do so in their letter in support of their version of the proposed discovery order: in that letter, Defendants made some of the same arguments that they make now. As to whether OMB could be required to produce an administrative record, Defendants argued:

> *OMB Administrative Record*. Defendants also object to the production of an administrative record with respect to OMB and Director Vought. First, as stated above, Defendants have moved to dismiss both OMB and Director Vought from this case for failure to state a claim. Second, as Defendants argue in their motion to dismiss, the agency action at issue in this litigation is an action that only HHS, by statute, could take. As such, the appropriate administrative record is what was before the HHS decision makers, not OMB or Director Vought.

(ECF 161, Defs.' Ltr. at 2.)

As to whether Director Vought is a proper custodian, Defendants argued:

> *Discovery Regarding OMB Director Vought*. Defendants object to the inclusion of Director Russell Vought as a custodian. As an initial matter, Defendants have moved to dismiss Director Vought from this action, arguing that Plaintiffs have failed to state a claim as to Director Vought. At minimum, any decisions regarding Director Vought as a custodian should be stayed pending the adjudication of Defendants' motion to dismiss. Furthermore, Plaintiffs have made no showing that the five custodians Defendants have already agreed to search would not be sufficient. Plaintiffs should be required to review materials produced by lower-

> level agency officials before Defendants should be required to provide discovery from the head of a federal agency. This is especially true here, where OMB does not have statutory authority over the programs at issue.

(*Id.*)

Accordingly, I conclude that Defendants had the opportunity to fully brief these issues.

B. <u>The Standard for Reconsideration</u>

Plaintiffs argue that Defendants have not met the high standard for reconsideration, in that they have not identified any change in law, new evidence, clear error, or manifest injustice. (*See* ECF 177, Pls.' MFR Opp. at 4.) However, I understand Defendants to be arguing that my order reflects clear error, and so I address the parties' arguments on the merits.

C. <u>Agency Action and Production of an Administrative Record by OMB</u>

Defendants note that there is a distinction between production of an administrative record and discovery going beyond the administrative record. (*See* ECF 171, Defs.' MFR Mem. at 4 n.2.) From this premise, Defendants argue that the Court never fully considered whether OMB and/or Director Vought should be required to produce an administrative record – an action that, according to Defendants, is reserved by statute to HHS. (*See id.* at 4-6) Defendants contend that because the agency action underlying this case could, by statute, only have been taken by HHS and not by OMB or Director Vought, neither OMB nor Director Vought has taken any final agency action – the only type of conduct that may be challenged under the APA, which limits review to final agency actions. (*See id.* (quoting 5 U.S.C. § 704).) Defendants conclude that the pending motion to dismiss the claims against OMB and Director Vought, if successful, would preclude requiring those parties to produce an administrative record. (*See* ECF 171, Defs.' MFR Mem. at 4-6 (citing *In re United States*, 583 U.S. 29, 31 (2017)).)

In response to Plaintiffs' assertion that "a pending dispositive motion does not automatically stay an agency's obligation under the APA to produce an administrative record" (ECF 177, Pls.' MFR Opp. at 6), Defendants argue that Plaintiffs have not established that OMB has any obligation to produce any administrative record, because the agency action underlying this case could, by statute, only have been taken by HHS. (*See* ECF 178, Defs.' MFR Reply at 3.) Defendants characterize as speculative Plaintiffs' reliance on an email chain in the administrative record to support a conclusion that OMB was "directing the freeze against states" (ECF 177, Pls.' MFR Opp. at 6-7); and Defendants accuse Plaintiffs of failing to make specific allegations about the nature of the claimed "OMB Directive" or the identity of the OMB officials who were involved. (ECF 178, Defs.' MFR Reply at 3.) Defendants say they do not dispute that OMB was involved in the decision-making process, but they contest that OMB took agency action, let alone final agency action, and they therefore assert that the appropriate administrative record "is what was before the HHS decision makers, not OMB or Director Vought." (*Id.*)

Defendants' concession that OMB was involved in the decision-making process means that "the administrative record cannot lawfully be confined to documents maintained within" HHS alone. *Authors Guild v. Nat'l Endowment for the Humanities*, No. 25-CV-3657 (CM), 2025 WL 3678097, at *6 (S.D.N.Y. Dec. 18, 2025) (holding that the administrative record was incomplete where it did not include records from other agencies with which the defendant agency consulted and coordinated prior to taking the challenged final agency action). Where, as here, a plaintiff plausibly asserts "that agency action departed from ordinary processes and was influenced by considerations not reflected in the produced record, supplementing the

administrative record is necessary to ensure that review proceeds on a complete factual basis." *Id.* at *7; *see also Nat''l Audubon Soc. v. Hoffman*, 132 F.3d 7, 14-15 (2d Cir. 1997) (citing *Florida Power & Light Co. v. Lorion*, 470 U.S. 138, 142 (1985) and explaining that "[s]upplementation of [the administrative] record . . . may be necessary when the record does not support the agency action, when the agency has not considered all relevant factors, or when the reviewing court simply cannot evaluate the challenged action on the basis of the record before it").

I previously concluded that the administrative record as produced did not reflect the entire record within the meaning of the APA. (*See* ECF 155, Order at 6.) Defendants do not appear to seriously contest that conclusion, or the legal principle that a court cannot conduct an appropriate review of an agency decision if the agency has not provided the entire record. As I explained in my September 16, 2026 order:

> Plaintiffs have made a non-speculative argument based on the chronology of the agency decision that the record does not include all documents that agency decision-makers considered in making their decision. . . . [Plaintiffs argue that] the agency decision preceded the assembly of the record, which does not include the materials on which the decision-makers actually relied (as opposed to the materials used to justify the decision); that the record does not clearly identify all decision-makers; and that the record contains no explanation for important aspects of the agency decision, such as its application to certain states but not others. I fail to see how the Court can assess Plaintiffs' credible challenge to the completeness of the record without permitting at least limited discovery. *See, e.g., Dopico v. Goldschmidt*, 687 F.2d 644, 654 (2d Cir. 1982); s*ee also Authors Guild,* 2025 WL 3678097, at *10.

(ECF 155, Order at 6.) Under these circumstances, it is appropriate for OMB and Director Vought to provide the documents reflecting their contributions to the decision-making process, and it is appropriate for those documents to be designated as part of the administrative record, even though the statutory authority to make the challenged final agency decision may technically rest with HHS. *See, e.g, Authors Guild,* 2025 WL 3678097, at *6.

Defendants also contend that if their pending motion to dismiss the claims against OMB and Director Vought is granted, OMB and Director Vought would not be required to produce an administrative record. (*See* ECF 171, Defs.' MFR Mem. at 10-11.) Plaintiffs respond that a District of Columbia District Court rule requires an agency to file the administrative record simultaneously with a dispositive motion. (*See* ECF 177, Pls.' MFR Opp. at 6.) Defendants point out that there is no comparable rule in this District, and that as a result, "the Court should allow Defendants' threshold argument to play out first, because if accepted, it likely would eliminate the need for the District Court to examine a complete administrative record." (ECF 178, Defs.' MFR Reply at 4 (citing *In re United States*, 583 U.S. at 32, and *Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367, 385 (2004), for the proposition that courts should resolve threshold questions that might obviate the need for production of an administrative record by a part of the Executive Office of the President before requiring production of that record).) Defendants overstate the rulings in *Cheney* and *In re United States.* In *Cheney,* the Supreme Court found that the district court had issued an overbroad discovery order that might impinge on the President's Article II prerogatives. *See Cheney,* 542 U.S. at 383-86. Similarly, in *In re United States,* the Court concluded that the government had made "serious arguments that at least portions of the District Court's order are overly broad." *See In re United States,* 583 U.S. at 31-32. The cases say nothing about resolving threshold questions that might obviate the need for production of an administrative record by a part of the Executive Office of the President before requiring production of the record where, as here, the scope of the record sought is reasonable. (*See* ECF 163, Order at 2-3 (ordering OMB to produce the administrative record and

for Director Vought to produce documents responsive to Plaintiffs' nine document requests from the brief period between December 26, 2025 to January 6, 2026).)

Accordingly, I am unpersuaded that *Cheney* and *In re United States* support staying my order requiring OMB and/or Director Vought to produce an administrative record within 60 days.

D. Discovery from Director Vought as a Document Custodian

Defendants also rely on *Cheney* to argue that I erred in designating Director Vought as a custodian in light of his role at OMB, which is part of the Executive Office of the President. (*See* ECF 171, Defs.' MFR Mem. at 7-8.) *Cheney* required the Supreme Court "to consider the circumstances under which a court of appeals may exercise its power to issue a writ of mandamus to modify or dissolve the orders when, by virtue of their overbreadth, enforcement might interfere with the officials in the discharge of their duties and impinge upon the President's constitutional prerogatives." *Cheney,* 542 U.S. at 372-73. The Court held that courts of appeals could modify or dissolve overbroad discovery orders where enforcement might interfere with the President's constitutional prerogatives. *See id.* 390-91.

Defendants also contend that Plaintiffs have made no showing that the five lover-level officials at HHS and OMB, who are already providing responsive materials, would not be sufficient to provide the limited discovery beyond the administrative record that has been ordered, and thus that at a minimum, any decision whether Director Vought should be a custodian should be deferred pending a decision on the motion to dismiss the claims against him. (*See* ECF 171, Defs.' MFR Mem. at 7-8.)

1. Applying *Cheney*

Plaintiffs note that Defendants did not raise *Cheney* in its prior briefing, and assert that "[w]here, as here, a party's reconsideration motion merely cites new case law . . . that it failed to cite or advance originally, the motion should be denied. (ECF 177, Pls.' MFR Opp. at 8 (citing *Grabin v. Marymount Manhattan Coll*., No. 12-CV-3591 (KPF), 2014 WL 3639136, at *2 (S.D.N.Y. July 22, 2014) and *Disney Enters., Inc. v. Sarelli*, No. 16-CV-2340 (GBD), 2018 WL 5019745, at *3 (S.D.N.Y. Sept. 26, 2018)).)

On the merits of Defendants' argument that discovery is inappropriate in light of Director Vought's role as head of an agency that is part of the Executive Office of the President, Plaintiffs argue that courts have rejected federal agencies' efforts to invoke *Cheney* to prevent targeted discovery that does not implicate executive prerogatives. (*See* ECF 177, Pls.' MFR Opp. at 9-10 (citing *Authors Guild*, 2025 WL 3678097, at *8, for the proposition that "[r]outine discovery designed to ensure that APA review proceeds on the whole record does not approach the extraordinary circumstances that justified interlocutory mandamus relief in *Cheney*," and citing *New Mexico v. Musk*, 770 F. Supp. 3d 192, 202 (D.D.C. 2025), for the proposition that compliance with limited discovery requests is unlikely "to interfere with the Executive's Article II prerogatives").) Defendants respond that *Cheney*'s instruction regarding judicial restraint in view of the "special considerations that control when the Executive Branch's interest are implicated by discovery requests bolsters Defendants' position that discovery should not be required by the Director of OMB at this juncture, especially without the Court fully considering or articulating a basis for deciding otherwise." (ECF 178, Defs.' MFR Reply at 5 (quoting *Cheney,* 542 U.S. at 385).)

Plaintiffs are correct that *Cheney* does not preclude targeted discovery that is unlikely to interfere with the President's Article II prerogatives. *See Authors Guild,* 2025 WL 3678097, at *8; *Musk*, 770 F. Supp. 3d at 202. And unlike in *Cheney,* the discovery sought by Plaintiffs is reasonably circumscribed and therefore is not likely to cause any disruption of the President's prerogatives. Indeed, Defendants do not argue that the discovery that has been ordered would interfere with the President's constitutional prerogatives. As was the case in *Authors Guild,* Plaintiffs here

> do not seek discovery into presidential deliberations, advisory processes, or the confidential communications of the President or Vice President. Nor do they seek to probe abstract policy formulation untethered from final agency action. Instead, Plaintiffs seek narrowly tailored discovery designed to identify materials that were actually before, considered by, or relied upon by the officials and personnel . . . who participated in or influenced the decision-making process culminating in . . . a final agency action subject to review under the APA.

*Authors Guild*, 2025 WL 3678097, at *8.

Accordingly, *Cheney* does not lead me to reconsider my discovery order.

2. Director Vought's Seniority

Defendants next argue that Director Vought's seniority makes it inappropriate for the Court to order that he be a custodian, at least until after discovery is taken from more junior officials. (*See* ECF 171, Defs.' MFR Mem. at 7.) Plaintiffs respond that Defendants do not cite any case law suggesting that someone, such as Director Vought, who was personally involved in the challenged conduct is an improper custodian based on his seniority. (*See* ECF 177, Pls.' MFR Opp. at 7-8.)

As Plaintiffs note, Defendants' own interrogatory responses identify Director Vought as one of two individuals, other than agency attorneys and Secretary Robert F. Kennedy, who

"held a decision-making role and/or directly participated" in the agency action challenged in this case. (ECF 125-4, Pls.' Letter-Mot. For Pre-Motion Conference at 5-6.) It therefore was not unreasonable, let alone clear error, to conclude that Director Vought was an appropriate custodian. *See, e.g., Authors Guild*, 2025 WL 3678097, at *6 (finding that a Department of Government Efficiency-affiliated government employee was an appropriate custodian where the defendant agency deferred decision-making authority to him); *Ctr. for Biological Diversity v. U.S. Env't Prot. Agency*, 279 F. Supp. 3d 121, 141-42 (D.D.C. 2017) (holding that the EPA's document searches were inadequate in part because it did not search documents of 10 EPA employees with personal involvement in the subject of the plaintiff's FOIA request); *Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't Agency*, 877 F. Supp. 87, 100 (S.D.N.Y. 2012) (holding that DHS improperly excluded the principal deputy of the Office of General Counsel as a custodian where the principal deputy had reviewed and endorsed ICE's analysis of the policy issue that was the subject of one of plaintiffs' FOIA request); *Sanders v. SUNY Downstate Med. Ctr.*, No. 22-CV-4139 (KAM) (CLP), 2024 WL 4198355, at *4 (E.D.N.Y. Sept. 16, 2024) (finding that a hospital CEO was an appropriate custodian based on his personal involvement in relevant conduct). Defendants counter that discovery from Director Vought would be appropriate only if Plaintiffs showed and the Court found that Director Vought had unique knowledge. (ECF 178, Defs.' Reply at 5-6.) But the cases cited by Defendants in support of their "unique knowledge" argument arise in the context of depositions, which are fundamentally more intrusive and producing documents. *See In re U.S. Dep't of Com.*, No. 18-2856, 2018 WL 6006885, (2d Cir. Oct. 9, 2018); *In re U.S. Dep't of Com.*, No. 18-2652, 2018 WL 6006904 (2d Cir. Sept. 25, 2018). While it may be the case that a senior government official may

be deposed only if he has such unique knowledge, I am unaware of case law requiring that the senior government official has unique knowledge before ordering that his files be searched in connection with producing documents in response to tailored requests.

Accordingly, I decline to order that a search of Director Vought's custodial files should be stayed until after review of the documents from the five more junior custodians.

3. Staying Director Vought's Discovery Obligations Pending A Decision on the Motion To Dismiss the Claims Against Him

Defendants argue that any obligation on the part of Director Vought to comply with my discovery order as a custodian (ECF 163) must be stayed pending a decision on the motion to dismiss the claims against him (ECF 128). (*See* ECF 171, Defs.' MFR Mem. at 7.) Plaintiffs are correct that Defendants previously sought a stay of discovery, including of discovery from Director Vought as a custodian (ECF 130), and that I declined to grant the requested stay (ECF 135.) (*See* ECF 177, Pls.' MFR Opp. at 11.) Plaintiffs argue that Defendants failed to preserve the issue by timely seeking reconsideration or timely objecting to Judge Broderick. (*See id.* at 10 (citing *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-04394 (AJN) (BCM), 2017 WL 9802844, at *5 (S.D.N.Y. Sept. 15, 2017), for the proposition that where "no party objected or sought reconsideration, [the Magistrate Judge's] ruling is now the law of the case").) I nevertheless will again explain the basis for my conclusion that Defendants have not shown the requisite good cause to warrant a stay of discovery, including as to Director Vought.

First, while Defendants argued that Plaintiffs sought "broad and complex" discovery, they did not substantiate that position, so that the reasonable scope of the requested discovery counsels against a stay. (ECF 135, Order at 2.) Second, the strength of the underlying motion to dismiss supports a stay, by which I mean only that I cannot conclude that Defendants' motion is

unfounded in law, because Defendants' legal memoranda provide colorable arguments supported by relevant caselaw. (*See id.* at 2-3.) Third, Plaintiffs "raise credible concerns that entities not subject to the preliminary injunction could take steps to re-impose the funding freeze without violating the Court's order," which would be prejudicial to Plaintiffs and therefore weighs against granting a discovery stay. (*Id.* at 3.)

On balance, the factors do not support granting the requested stay pending a decision on the motion to dismiss claims against Director Vought. (*See id.*)

## CONCLUSION

For the foregoing reasons, the Motion for Reconsideration (**ECF 170**) is **DENIED**. The Clerk of Court is respectfully requested to terminate **ECF 170**.

Dated: October 28, 2026
New York, NY

SO ORDERED.

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**